UNITED STATES DISTRICT COURT
District of Massachusetts

PETER A. CRAWFORD, Plaintiff )
)
v. )
)
WOLVERINE, PROCTOR & SCHWARTZ, INC., )
Steven F. Chilinski, Deepak S. Kulkarni, )
)
Defendants )
)

Civil Action No.

05 10078 DPW

RECEIPT # 64411
AMOUNT $ 150.00
SUMMONS ISSUED 3
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. M.P.
DATE 1/12/05

MAGISTRATE JUDGE RBC

## INTRODUCTION

This is a diversity action for, inter alia, breach of a written contract to pay nearly $600,000 in bonus wages due to the plaintiff as a result of his service as Chief Operating Officer of Wolverine, Proctor & Schwartz, Inc., a corporation headquartered in Merrimac, Massachusetts. The plaintiff successfully turned around that company.

## JURISDICTION

1. Plaintiff Peter A. Crawford is a citizen of the State of New Hampshire.

2. Defendant Wolverine, Proctor & Schwartz, Inc. ("Wolverine Inc.") is incorporated in the State of Delaware and has its principal place of business at Merrimac, Massachusetts.

3. Defendant Deepak S. Kulkarni is the former Chairman and Chief Executive Officer of Wolverine, Inc., resides in Boston, Massachusetts and is a citizen of the Commonwealth of Massachusetts.

1

4. Defendant Steven F. Chilinski is the current President and Chief Executive Officer of Wolverine Inc., and assumed that position sometime between January 15, 2002 and January 31, 2002. He performs his duties relating to that position at the Wolverine Inc. headquarters in Merrimac, Massachusetts. His domicile is unknown.

5. This complaint seeks in excess of $1,792,710 in damages, which amount is in controversy.

6. Plaintiff invokes this Court's jurisdiction pursuant to its diversity jurisdiction under 28 U.S.C. §1332(a)(1) and its supplemental jurisdiction under 28 U.S.C. §1367(a).

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7. The allegations of paragraphs 1-6 above are incorporated herein by reference.

8. Wolverine Inc. is primarily engaged in the business of producing large machines for the heating, cooking or drying of food and other products in continuous processes. During 2000 and 2001, it had major operations in Massachusetts, North Carolina, and the U.K. Portions of the company had been in existence since the mid-1800s.

9. Mr. Crawford became employed by Wolverine Inc. as its Chief Operating Officer ("COO") on December 30, 1999. A written contract (the "Employment Contract") governing the terms of his employment was executed by him and Deepak Kulkarni, on behalf of Wolverine Inc., on January 4, 2000 within the Commonwealth of Massachusetts. Said Employment Contract provided for wages, including a base salary of $150,000 annually, a bonus (the "Bonus"), and stock options in Wolverine Inc.

10. At the time that Mr. Crawford joined Wolverine Inc., Deepak Kulkarni was Chairman and Chief Executive Officer of Wolverine Inc. and had been so since prior to 1994. During Mr. Kulkarni's tenure, Wolverine Inc.'s fortunes had declined, culminating in an EBITDA (earnings before interest, taxes, depreciation and amortization) loss of $4.700 million during calendar 1999. After Mr. Crawford joined and assumed day-to-day operating responsibility for the Wolverine Inc. operations, Wolverine Inc.'s profits improved dramatically. Wolverine Inc.'s EBITDA for the 12 months commencing ending September 30, 2001 was $4.028 million on revenues of $39.615 million.

11. Nevertheless, Wolverine Inc. continued to be severely cash constrained during 2000 and 2001 due to heavy bank debt and the continued withdrawal by Mr. Kulkarni of approximately $2 million annually from Wolverine Inc. to finance a lavish lifestyle and the renovation of a multi-million dollar townhouse in Boston's exclusive Back Bay neighborhood. Distrustful of Mr. Kulkarni, becoming increasingly aware of the magnitude of Mr. Kulkarni's cash withdrawals, and growing weary of his frequent harangues and bombastic negotiating style, the company's lender forced the sale of Wolverine Inc. in late 2001.

12. But for the leadership exercised by Mr. Crawford, Wolverine Inc. would not have survived in its current form, and its shares would have become worthless.

13. At the time the Employment Contract was entered into, Mr. Crawford knew that Wolverine Inc. was cash-constrained, but agreed to accept the position anticipating that his primary financial reward would come from the Bonus and stock options once the turnaround was complete. However, he never received any Bonus, and

his stock options have been converted into an unmarketable equity interest in Wolverine Inc.'s current parent company, although Mr. Crawford received a $150,000 "equity advance."

14. Under the terms of the Employment Contract, Mr. Crawford was to receive an annual Bonus equal to 5 percent of Wolverine's adjusted profits for any calendar year in which he was an employee. The adjusted profit for purposes of the bonus calculation is equal to EBITDA less capital expenditures, interest, and taxes.

15. From prior to 1994 through late December, 2001, Mr. Kulkarni was the sole shareholder of Wolverine Inc. His duties while Mr. Crawford was COO were largely limited to general oversight of Wolverine and its subsidiaries and affiliates, while Mr. Crawford managed and operated Wolverine Inc.

16. In late 2001, an agreement was reached with a Boston-based investment firm, Parthenon Capital, and related entities, including Parthenon Investors II, L.P., PCIP Investors and J&R Founders' Fund, L.P. (collectively "Parthenon"). Mr. Kulkarni was previously acquainted with certain principals of that firm. Under the agreement, Mr. Kulkarni's shares in Wolverine Inc. and a related entity were transferred to a new entity, Wolverine, Proctor & Schwartz, LLC ("Wolverine LLC"), and Parthenon lent funds to Wolverine Inc. sufficient to retire all of its bank debt. This transaction was closed between December 28, 2001 and December 31, 2001. Following the transaction, Parthenon controlled a majority of the Board of Directors of Wolverine LLC, which in turn owned all of the shares of Wolverine Inc.

17. In connection with this transaction, Mr. Kulkarni ceased to be CEO of Wolverine Inc. but became a consultant to Wolverine Inc. and continued as a member of

4

the Wolverine LLC Board of Directors. The successful turnaround and sale being completed, Mr. Crawford expressed little interest in remaining with Wolverine Inc., other than as CEO, but agreed to remain for a transition period. Parthenon made the securing of the services of Mr. Crawford after the sale a condition of closing the transaction.

18. In connection with this transaction, Mr. Crawford on December 28, 2001 executed a Transition Agreement that specifically preserved his rights to the Bonus, and continued his base salary at the prior rate. The Transition Agreement was executed within the Commonwealth of Massachusetts.

19. The Wolverine Inc. consolidated financial statements for 2001, audited by Arthur Anderson LLP, set forth EBITDA for 2001 of $9,683,723. Subtracting capital expenditures, interest, and taxes set forth in these financial statements of $2,526,598 leaves $7,157,125 as a base for the bonus calculation, of which Mr. Crawford is entitled to five percent, or $357,856.25, under the written Employment Contract.

20. Under the terms of the Transition Agreement, Mr. Crawford committed to not knowingly taking any action contrary to the best interests of Wolverine Inc.

21. During early 2001, prior to January 14, Mr. Crawford met with Erik Scott, an employee of Parthenon and one of its representatives on the Board of Directors of Wolverine LLC. Mr. Scott informed Mr. Crawford that he had been doing a fantastic job holding Wolverine Inc. together and suggested that Mr. Crawford should remain with Wolverine Inc. until Mr. Crawford and Parthenon were both comfortable that the transition was complete. The two also discussed the large sums that Mr. Kulkarni had extracted from Wolverine Inc. prior to its sale, and Mr. Scott assured Mr. Crawford that

he could call Mr. Scott directly at any time, particularly regarding any issue of payments to Mr. Kulkarni.

22.  During the afternoon of January 14, 2002, Mr. Kulkarni summoned Mr. Crawford to a meeting to discuss the payment of $135,000 to Mr. Kulkarni, which he alleged was due him as fringe benefit compensation above and beyond his normal salary for the month of December, 2001. Mr. Kulkarni stated that the Wolverine Inc. Chief Financial Officer ("CFO") had declined to make such payment in accordance with Mr. Crawford's instructions. Inasmuch as such payment request was wholly without any credible rationale whatsoever, such that payment would constitute embezzlement under Massachusetts law (M.G.L. c. 266 §30), Mr. Crawford suggested that representatives of Parthenon be contacted for approval. To this, Mr. Kulkarni angrily replied that he alone would deal with Parthenon, that henceforth the CFO and his U.K. counterpart alone would deal with any cash disbursement decisions, and that Mr. Crawford remained employed by Wolverine Inc. only because of his actions.

23.  Mr. Crawford attempted unsuccessfully to contact Mr. Scott, and later on January 14, 2002, Mr. Crawford was informed that the Board of Directors had voted to terminate his employment immediately. A letter dated January 18, 2002 from the Wolverine Inc. Human Resources Manager confirmed this action, however, no written notice of termination from Wolverine's Chief Executive Officer was ever received.

AS AND FOR A FIRST CAUSE OF ACTION
(Breach of the written contract to pay Bonus)

24.  The allegations of paragraphs 1-23 above are incorporated herein by reference.

25.  The Employment Contract is valid, binding and enforceable.

26. The Employment Contract makes the Bonus due upon "completion of the audit of each year's results," or April 15, if no audit is performed. The audit report of the Wolverine 2001 consolidated financials prepared by Arthur Anderson LLP is dated March 26, 2002. The 2001 bonus was thus due no later than March 26, 2002.

27. In a letter to Steven F. Chilinski, Chief Executive Officer of Wolverine, Inc., dated December 2, 2004, Mr. Crawford detailed the calculations, derived directly from the Employment Contract and the audited 2001 financial statements of Wolverine, leading to a bonus payment for 2001 of $357,856.25 (rounded off in the letter). The only reply Mr. Crawford received to that letter was a letter dated December 22, 2004 from Daniel Blake of Epstein Becker & Green, counsel for Wolverine Inc., to which was attached a letter dated December 8, 2004 which merely states that "[t]he Company does not believe that it owes you a bonus for 2001 and disagrees with the various calculations set forth in your letter," but provides no support for its belief. The letter indicates that the matter is being forwarded to Mr. Kulkarni's accountants for "clarification."

28. Mr. Crawford's December 2, 2004 letter states that if no payment is received by December 17, 2004, further action may be taken without further notice or demand.

29. No payment of the Bonus for 2001 has been received by Mr. Crawford, nor has there been any explanation as to the reason, beyond that noted above.

30. Defendant Wolverine Inc. has therefore breached the Employment Agreement, plaintiff has been damaged by that breach, and plaintiff is entitled to recover the amount of $357,856.25 in damages.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>
(Violation of Massachusetts Payment of Wages Statute)

31. The allegations of paragraphs 1-30 above are incorporated herein by reference.

32. Defendant Chilinski is a an "officer[] or agent[] having the management of" Wolverine Inc. within the meaning of Massachusetts General Laws ("M.G.L.") c. 149 §148.

33. Defendant Chilinski took actions within the Commonwealth of Massachusetts that caused the Bonus and other wages not to be paid to Mr. Crawford.

34. The Bonus wages were earned in connection with Mr. Crawford's employment within the Commonwealth of Massachusetts and are thus subject to the provisions of M.G.L. c. 149 §§148 and 150 (the "Massachusetts Payment of Wages Statute").

35. The office of the Attorney General of Massachusetts has assented in writing to the filing of this suit. The plaintiff is therefore authorized to bring this action pursuant to M.G.L. c. 149 §150.

36. The Bonus has remained due for more than six days of the "termination of the pay period when earned" and has not been paid. Defendants Wolverine and Chilinski are therefore jointly and severally liable to the plaintiff under the Massachusetts Payment of Wages Statute for damages of treble the amount in the First Cause of Action, $1,073,568.75, an additional $715,712.50 in the case of defendant Wolverine Inc. Defendants Wolverine Inc. and Chilinski are furthermore liable for costs and attorney fees pursuant to M.G.L. c. 149 §150.

AS AND FOR A THIRD CAUSE OF ACTION
(Breach of the oral contract to pay additional Bonus)

37. The allegations of paragraphs 1-36 above are incorporated herein by reference.

38. During February 2001, Mr. Crawford and Mr. Kulkarni, in his capacity as Chairman and Chief Executive Officer of Wolverine Inc., reached an oral agreement to increase the bonus percentage for calculation, pursuant to the formula in the Employment Contract, from five percent to eight percent. This agreement was reached within the Commonwealth of Massachusetts.

39. As consideration for this increase, Mr. Crawford continued to perform his duties as Chief Operating Officer of Wolverine Inc.

40. The oral agreement reached was capable of being fully executed within one year of the date made, inasmuch as the underlying Employment Agreement makes the Bonus due upon completion of the audit, which completion, in the case of the 2001 Bonus, could have occurred any time after December 31, 2001.

41. Wolverine Inc. has failed to pay the additional Bonus resulting from the above-detailed oral agreement when due.

42. Defendant Wolverine Inc. has therefore breached the Employment Contract, as orally modified, plaintiff has been damaged by that breach, and plaintiff is entitled to recover an additional amount of $214,713.75 in damages from defendant Wolverine Inc., said amount representing the increase in the bonus due as a result of the oral contract.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Violation of Massachusetts Payment of Wages Statute on additional Bonus)

43. The allegations of paragraphs 1-42 above are incorporated herein by reference.

44. The additional bonus amount set forth in the Third Cause of Action has remained unpaid for more than six days after the termination of the pay period when earned. Defendants Wolverine Inc. and Chilinski are therefore jointly and severally liable to the plaintiff under the Massachusetts Payment of Wages Statute for damages of treble the amount in the Third Cause of Action, $644,141.25, an additional $429,427.50 in the case of defendant Wolverine Inc.

45. Defendants Wolverine and Chilinski are furthermore liable for costs and attorney fees pursuant to M.G.L. c. 149 §150.

AS AND FOR A FIFTH CAUSE OF ACTION
(Breach of Transition Agreement)

46. The allegations of paragraphs 1-45 above are incorporated herein by reference.

47. The Transition Agreement provides for employment of the plaintiff until March 31, 2002 unless terminated earlier by virtue of either the consummation of a working capital facility or written notice of termination by the Chief Executive Officer of Wolverine Inc.

48. No working capital facility was consummated by Wolverine Inc. prior to March 31, 2002.

49. No written notice of termination by the Chief Executive Officer of Wolverine Inc. was received by the plaintiff.

50. Defendant Wolverine Inc. was notified of its breach of the Transition Agreement by way of the letter to Mr. Chilinski of December 2, 2004. Defendant Wolverine Inc. responded to that letter by way of the December 8, 2004 letter from Daniel Blake, which merely alleges that no compensation was due because the plaintiff

"did not perform services for the Company during that time" and "[y]ou were given effective notice." Such interpretation of the Transition Agreement is wholly unreasonable as it would render void and superfluous the provision requiring written notice of termination by the Chief Executive Officer of Wolverine.

51. The December 2, 2004 letter from the plaintiff constituted a final notice and demand.

52. As a result of its breach of the Transition Agreement, the plaintiff received no wages from Wolverine Inc. for the period from February 1, 2002 through March 31, 2002.

53. Defendant Wolverine Inc. therefore breached the Transition Agreement and is liable to the plaintiff in the amount of $25,000, the amount of unpaid wages for February and March 2002.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Violation of Massachusetts Payment of Wages Statute on Transition Payments)

54. The allegations of paragraphs 1-53 above are incorporated herein by reference.

55. The payments set forth in the Fifth Cause of Action has remained unpaid for more than six days after the termination of the pay period when earned. Defendants Wolverine Inc. and Chilinski are therefore jointly and severally liable to the plaintiff under the Massachusetts Payment of Wages Statute for damages of treble the amount in the Third Cause of Action, $75,000.00, an additional $50,000.00 in the case of defendant Wolverine Inc.

56. Defendants Wolverine Inc. and Chilinski are furthermore liable for costs and attorney fees pursuant to M.G.L. c. 149 §150.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Tortious interference with contractual and business relations)

57. The allegations of paragraphs 1-56 above are incorporated herein by reference.

58. Defendant Kulkarni knew that the $135,000 that he sought to have paid to him by Wolverine Inc. was not owed to him and that the receipt thereof would have constituted a fraudulent misappropriation of Wolverine Inc. funds. The terms of his relationship to Wolverine Inc., as consultant to, and former CEO of, the company enabled him to attempt to receive disbursement of these funds.

59. Following the plaintiff's refusal to permit defendant Kulkarni to embezzle and unlawfully convert $135,000 from Wolverine Inc., defendant Kulkarni took actions to persuade, cause and induce the Board of Directors of Wolverine to terminate the plaintiff's employment.

60. Fraudulent and criminal intent by Mr. Kulkarni to convert the $135,000 to his own use was demonstrated by his vehement unwillingness to have the plaintiff disclose the attempt to representatives of Parthenon, and by his actions resulting in the termination of the plaintiff's employment to cover up his fraudulent and criminal attempt.

61. But for the plaintiff's refusal to permit embezzlement and conversion of $135,000 from Wolverine Inc., the plaintiff's employment would not have been terminated.

62. Plaintiff Crawford was ready, willing and able to perform his duties under the Transition Agreement. But for defendant Kulkarni's actions, Mr. Crawford would have remained employed with Wolverine Inc. through March 31, 2002 or later.

63. Defendant Kulkarni took such actions to terminate the plaintiff's employment knowing that the plaintiff would be economically damaged thereby, and with malice, fraud and misrepresentation wrongfully attempted to intimidate the plaintiff into permitting the embezzlement and unlawful conversion of funds by Mr. Kulkarni.

64. Defendant Kulkarni was aware of the Transition Agreement as he signed it on December 28, 2001 in his then-current capacity as CEO of Wolverine Inc.

65. As of a date prior to January 14, 2002, Mr. Kulkarni had ceased to be Chairman or CEO of Wolverine Inc., and was neither an officer nor an employee of that corporation.

66. The actions taken by Mr. Kulkarni to terminate the plaintiff's employment were beyond the scope of his authority as a consultant to Wolverine Inc., not related to a legitimate business purpose of Wolverine Inc., and in furtherance of his own greed and his personal objective of extracting funds from Wolverine Inc.

67. The actions of Mr. Kulkarni to terminate the plaintiff's employment were taken with actual malice and in retaliation for Mr. Crawford's refusal to permit disbursement of Wolverine Inc. funds to Mr. Kulkarni.

68. The actions taken by Mr. Kulkarni to terminate the plaintiff's employment took place within the Commonwealth of Massachusetts.

69. If plaintiff had permitted the payment of $135,000 to Mr. Kulkarni, the plaintiff would have both have violated the Transition Agreement that prohibited actions adverse to those of Wolverine Inc., would have breached his fiduciary duties to Wolverine Inc., and would have committed an unlawful and criminal act as well.

70. Plaintiff Crawford had a legally protected interest in the Transition Agreement and in other prospective business relations.

71. Defendant Kulkarni interfered these those interests without justifiable cause and for the unlawful purpose of permitting him to convert and embezzle funds from Wolverine Inc.

72. Plaintiff Crawford was damaged by defendant Kulkarni's actions in that he did not receive the full benefits of the Transition Agreement, his reputation was damaged, any prospect of his being selected as CEO of Wolverine Inc. was eliminated, and other prospective business relations were interfered with.

73. Defendant Kulkarni therefore did tortiously interfere with the Transition Agreement between the plaintiff and Wolverine Inc., and with other prospective business relationships, the plaintiff was damaged thereby, and Mr. Kulkarni is liable to the plaintiff for damages.

WHEREFORE, Plaintiff seeks damages for breach of contract from defendant Wolverine Inc. in the total amount of $597,570.

WHEREFORE, Plaintiff seeks treble damages for violation of the Massachusetts Payment of Wages Statute in the amount of $1,792,710 from defendants Wolverine Inc. and Chilinski, of which $597,570 of these damages are duplicative of those in the above paragraph with respect to defendant Wolverine Inc. only.

WHEREFORE, Plaintiff seeks damages from Mr. Kulkarni for tortious interference with contractual relations.

WHEREFORE, Plaintiff seeks attorney fees and costs.

WHEREFORE, Plaintiff seeks interest of 18 percent per annum, commencing from the date of breach, pursuant to M.G.L. c. 231 §§6C and 6F.

WHEREFORE, Plaintiff seeks an accounting of the financial results of Wolverine Inc. for 2001.

WHEREFORE, Plaintiff seeks a declaratory judgment that Mr. Kulkarni tortiously interfered with his contractual and business relations.

WHEREFORE, Plaintiff seeks such other relief as the Court finds just and meet.

Respectfully submitted,

*Peter A. Crawford*

Peter A. Crawford, pro se
23 Newcastle Dr. #11
Nashua, NH  03060
(603)888-4574

Date: January 12, 2005

≠JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Peter A. Crawford

**DEFENDANTS**
Wolverine, Procter & Schwartz, Inc.,
Steven F. Chilinski,
Deepak S. Kulkarni

(b) County of Residence of First Listed Plaintiff: Hillsborough, NH
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: Essex, MA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number): Peter Crawford, pro se
23 Newcastle Dr #11
Nashua, NH 03060  (603) 888-4574

Attorneys (If Known): 05 10078 DPW

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  |  | ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  |  | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** |  | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other |  |  |  |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN  (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. s. 1332(a)(1)
Brief description of cause: Breach of contract for unpaid bonus wages

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 1,792,716
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE ___
DOCKET NUMBER ___

DATE: January 12, 2005
SIGNATURE OF ATTORNEY OF RECORD: Peter A. Crawford, pro se

**FOR OFFICE USE ONLY**

RECEIPT # ___  AMOUNT ___  APPLYING IFP ___  JUDGE ___  MAG. JUDGE ___

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Peter A. Crawford v. Wolverine, Proctor & Schwartz, et al.__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    ___ I. 160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ___ II. 195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

    _X_ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

    ___ IV. 220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

    ___ V. 150, 152, 153.

    **05 10078 DPW**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

    _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
    YES ___   NO _X_

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
    YES ___   NO _X_

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
    YES ___   NO _X_

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
    YES ___   NO _X_

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
    YES _X_   NO ___

    A. If yes, in which division do all of the non-governmental parties reside?
        **Eastern Division**     Central Division     Western Division

    B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
        Eastern Division     Central Division     Western Division

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
    YES ___   NO _X_

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME __Peter A. Crawford, pro se__
ADDRESS __23 Newcastle Dr. #11, Nashua, NH 03060__
TELEPHONE NO. __603-888-4574__

(Coversheetlocal.wpd - 10/17/02)