**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
_____

PETER A. CRAWFORD,

       Plaintiff,

v.

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,

       Defendants.
_____

Civil Action No.
05-cv-10078 (DPW)

## AFFIDAVIT OF MARK M. WHITNEY

MARK M. WHITNEY, being duly sworn deposes and says:

1.      I am an attorney licensed to practice law in the Commonwealth of Massachusetts and am a member of the bar of this Court. I am counsel for defendants, Wolverine, Proctor & Schwartz, Inc. ("Wolverine"), Steven F. Chilinski ("Chilinski") and Deepak S. Kulkarni ("Kulkarni") (collectively referred to herein as "Defendants"), in the above-captioned matter. I have knowledge of the facts and circumstances and key documents relating to this matter, and am familiar with the pleadings on file with the Court.

2.      I submit this Affidavit in support of Defendants' Motion for Partial Dismissal.

3.      Throughout the Complaint, the plaintiff, Peter A. Crawford ("Crawford"), makes reference to and quotes language from a written employment contract (the "Employment Contract") that he executed with Kulkarni, Wolverine's President and Chief Executive Officer ("CEO"), on January 4, 2000. A full and complete copy of the parties' Employment Contract is attached hereto as <u>Exhibit 1</u>.

-2-

4. On December 28, 2001, Crawford and Kulkarni, as CEO of Wolverine, executed a Transition Agreement (the "Transition Agreement"). Crawford makes reference to and quotes language from the Transition Agreement throughout the Complaint. A full and complete copy of the parties' Transition Agreement is attached hereto as <u>Exhibit 2</u>.

Signed under the penalties and pains of perjury the 8th day of April, 2005.

                                      <u>/s/ Mark M. Whitney</u>
                                      Mark M. Whitney, Esq (BBO # 637054)

-3-

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on April 8, 2005, I filed the foregoing document with the Clerk of the Court by using the ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing to the pro se plaintiff, Peter A. Crawford, 23 Newcastle Drive, #11, Nashua, NH  03060, by U.S. mail, on April 8, 2005.

                                  /s/ Mark M. Whitney
                                  Mark M. Whitney, Esq.

# Wolverine Proctor

January 4, 2000

Mr. Peter A. Crawford
23 New Castle Drive, Apt. 11
Nashua, NH 03060

Dear Peter:

We are pleased to offer you the position of Chief Operating Officer for Wolverine, Proctor & Schwartz, Inc. (the "Company"). The following will be the terms of your employment.

1. You will report to the Company's Chief Executive Officer and be based at the Company's Merrimac, Massachusetts headquarters.

2. Your employment will commence on December 30, 1999. You will be an employee at will.

3. You will be paid a base salary of $150,000 per year, to be paid ratably on each of the Company's regular paydays.

4. You will receive a bonus for each year, commencing 2000, which will calculated as follows:

$$BONUS = (EBITDA - CAPX - INT - TAXES) \times .05$$

For purposes of this calculation, the above terms will be calculated based upon the annual consolidated financial results of the Company, in accordance with generally accepted accounting principles, and have the following meanings:

EBITDA means the earnings before any interest, taxes or deductions for depreciation or amortization. Excluded from EBITDA will be any non-operating adjustments to reserves, to the extent that those adjustments affect EBITDA, or any operating expenses charged against reserves.

CAPX means capital expenditures, except that portion which the Company has expensed in arriving at EBITDA.

INT means interest expense, whether or not paid, net of interest income.   TAXES means imputed taxes on the income of the Company, computed as follows:

$$(EBITDA + BOOKDIF - DEPR - INT) \times TAXRATE$$

If the calculation of TAXES yields a negative number, TAXES will be deemed to be zero. No amounts will be carried backward or forward for TAXES.

BOOKDIF means those adjustments, positive or negative, to make EBITDA equal to those earnings before interest, taxes, depreciation and amortization, which are taxable.

DEPR means depreciation, amortization and capital expenditures which are deductible for tax purposes and which have not previously been deducted in arriving at EBITDA.

TAXRATE means (for the year for which the computation is being performed) the maximum U.S. federal income tax rate applicable to individuals with respect to income attributable to Sub-chapter S of the Internal Revenue Code, plus the maximum Massachusetts tax rate on such income net of the federal tax benefit received, if any, with respect to such Massachusetts tax rate (currently, 1 minus the above-mentioned federal tax rate), plus that portion of federal FICA tax which applies on a marginal basis at all income levels (i.e. Medicare tax or other similar FICA taxes not subject to an annual cap) plus any other taxes on income applicable on a marginal basis to all income levels, which may be later introduced or may apply from time to time. If the calculation of TAXRATE requires clarification, Arthur Andersen & Company or such other accounting firm nominated to prepare the individual tax returns of the sole shareholder of the Company shall be the binding arbiter of the TAXRATE.

The BONUS calculation will be performed annually, based upon the consolidated audited financial results of the Company. The bonus will be due upon completion of the audit of each year's results, or if no such audit is performed, by April 15. In the event that you leave the Company involuntarily, other than for cause (defined as including only dishonesty, disloyalty, conviction for a felony, misappropriation of funds, habitual insobriety, substance abuse, willful misconduct or gross negligence in the performance of your duties), prior to the end of any calendar year, the bonus will be prorated for that fiscal year based upon the number of months, or portions of months, during which you were employed, divided by 12, and the result multiplied by the calculated BONUS for that year. For any year in which you were employed by the Company on December 31 you will receive the full bonus without proration. In the event that you leave the company for cause, as defined above, no BONUS will be paid for that year. In the event that any bonus calculation yields a negative number, no amount will be due back from you, and no negative calculation can be carried forward or backward from one year to another. If the calculation of BONUS requires clarification, Arthur Andersen & Company or such other accounting firm nominated to prepare the individual tax returns of the sole shareholder of the Company shall be the binding arbiter of the BONUS.

Wolverine Proctor & Schwartz, Inc.

5. You will receive non qualified stock options representing 5 percent of the fully diluted number of common shares (after issuance of your options) of the Company as of January 1, 2000 (the "Option"). The terms of the Option will be as follows:

   a. The Option will fully vest upon the completion of your 24th month of employment with the Company, or upon a change in control, as defined below, whichever occurs first.

   b. The amount per share which you would have to pay upon exercising the Option (the "Strike Price") will be the fair market value per share of the underlying stock as of January 1, 2000 as determined by an appraisal conducted by the Company prior to June 30, 2000, or as otherwise agreed.

   c. Once vested, the Option shall remain in effect regardless of whether or not you remain employed by the Company. However, the Company shall have the right to call your Option by informing you in writing of its intent to exercise the call within ten days after your separation from the Company for any reason or under circumstances qualifying as a Change in Control (defined under d. below). This call shall be exercised by paying you (for each share underlying your Option), the difference, if any, between the value, as of the end of the fiscal quarter immediately prior to the separation date, of the underlying stock represented by your Option, less the Strike Price, computed in accordance with generally accepted principles of valuation (without considering any discount for the minority nature of the stock underlying the Option) (the "Call Payment"), using the procedure detailed in 6. below.

   d. The Option may be exercised only upon or after a change in control of the Company, defined as any event which causes Deepak Kulkarni voluntarily to control less than 50 percent of the then-existing common shares of the Company (other than for estate planning purposes and other than in circumstances involving a restructuring of the Company's indebtedness), or an event whereby the Company sells substantially all of its assets other than cash and marketable securities (a "Change in Control"). The Company agrees to give you ten days prior written notice of any Change in Control so as to enable you to decide whether or not to exercise your Option and for you individually to secure financing to do so, if needed. Notwithstanding the foregoing, the Option may not be exercised under circumstances which could cause the Company to lose its status as a Sub-Chapter S corporation.

   e. The Strike Price and the number of shares on which you have the Option will be subject to the customary proportional adjustments in the event of a stock split or stock dividend (defined as an event which causes additional shares to be issued, without new investment and without affecting the percentage ownership of any shareholder). No adjustment will be made for dividends

Wolverine Proctor & Schwartz, Inc.

    paid in cash. The Option will be subject to dilution with respect to any shares, options, warrants or other similar instruments granted to other employees of the Company or to sources of capital in exchange for valuable consideration received.

    f.  You will enter into a Stockholder Agreement (in the form attached) ceding control of the shares, other than after a public offering of the Company's shares, or other than in circumstances qualifying as a Change in Control.

6. The following procedure will be utilized in the event your Option is called pursuant to 5c. above, and you and the Company are unable to agree on the fair market value of the underlying shares:

    a.  Based upon the average of appraisals conducted by two independent appraisers qualified in business valuations; one appointed and paid for by the Company, and the other appointed and paid for by you. However, in the event that the ratio of the greater of the appraisals to the lesser exceeds 1.05, the two appraisers shall jointly appoint a third appraiser, the reasonable cost of whom will be equally borne by you and the Company. The valuation arrived at by the third appraiser shall be binding unless the ratio of the third appraisal to the average of the first two is greater than 1.15 or less than .87. Under such circumstances, the highest and lowest value shall be discarded, and the remaining value shall be deemed to be the appraised value.

    b.  In the event that an appraisal is required, the Company shall provide such financial statements, financial projections, and other information as any appraiser may reasonably require in order to complete his appraisal; and any statements, projections or other information provided to one appraiser shall be provided to all. The Company may elect to require all appraisers appointed to sign a customary confidentiality agreement.

7. In the event that the Company elects to call your Option, it may choose either to make the Call Payment in a lump sum, or to immediately issue you an unsecured promissory note. In such event, the promissory note shall provide for five equal principal repayments, paid annually over five years, commencing upon the first anniversary of its issuance. In addition, simple interest of 8 percent per annum of the average principal balance outstanding during the prior year shall be paid annually commencing upon the first anniversary of the note's issuance. Payments of interest or principal under such a note, and all of its terms, will be subordinated, in all respects, to the Company's then outstanding indebtedness, plus any refinancings thereof in any amounts, on terms acceptable to the Company and its then lenders or sources of capital. The Company may cancel and reissue its promissory note to you to comply with any restrictions or subordination arrangements during the life of the promissory note, and you agree to execute an intercreditor agreement so providing, or if you fail to do so within ten business

Wolverine Proctor & Schwartz, Inc.

days of written request, the Company may execute such an agreement on your behalf. In the event that the Company becomes insolvent or is the debtor in a bankruptcy case which is not dismissed, the remaining principal balance shall become immediately due and payable.

8. In addition to the above-mentioned compensation, you will be eligible for the normal fringe benefits of the Company, including but not limited to medical benefits, 401(k), vacation, and similar benefits. You will also receive reimbursement of business and travel expenses incurred in connection with your employment in accordance with normal policies and procedures of the Company.

9. You may elect to join the Company's Board of Directors at any time while you are employed by the Company. If you do so, the Company will indemnify you in connection with your duties as a director and officer of the Company, on terms at least as favorable to you as the most favorable ones enjoyed by any other director or officer.

To indicate your acceptance of these terms, please countersign below.

Sincerely,

*[signature]*

Deepak S. Kulkarni
President and CEO

Accepted by:

*[signature: Peter A. Crawford]*

Peter A. Crawford

January 4, 2000
Date

# WOLVERINE PROCTOR & SCHWARTZ, INC.

## Transition Agreement

THIS IS AN AGREEMENT made as of December 28, 2001 by and between Wolverine Proctor & Schwartz, Inc., a Delaware corporation (the "Company"), and Peter Crawford (the "Employee").

WHEREAS, the Company desires to obtain the services of the Employee and the Employee desires to provide such services to the Company to facilitate transitional needs arising from a change of control of the Company.

NOW, THEREFORE, in consideration of the mutual covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which consideration are hereby acknowledged, the parties agree as follows:

1. <u>Services</u>

During the Transition Period, the Employee agrees to perform such services to and for the Company as may be reasonably requested by the Chief Executive Officer of the Company or its Board of Directors to facilitate the transition of the Company's management. The Employee's commitment to the Company during the Transition Period will be full-time and shall take into account the Employee's expertise in managing and operating the Company.

2. <u>Term</u>

Unless sooner terminated as provided below, the term of the Employee's engagement under this Agreement will be from the date hereof until the earlier of (i) March 31, 2002, (ii) the consummation by the Company of a working capital facility with an institutional lender, or (iii) two weeks after the date on which the Chief Executive Officer provides written notice of termination, for any reason or no reason, to the Employee (the "Transition Period").

3. <u>Extent of Services</u>

During the Transition Period, the Employee will devote his best efforts to the performance of his duties under this Agreement. Under no circumstances will the Employee knowingly take any action contrary to the best interests of the Company.

4. <u>Compensation</u>

4.1 <u>Base Salary Fee</u>. During the Transition Period, the Company will pay the Employee compensation at the rate of $150,000 per annum, which shall be payable in accordance with the Company's normal payroll practices (the "Base Salary Fee").

8698745.2

4.2 **Expenses.** The Company will, upon substantiation thereof, reimburse the Employee for all reasonable expenses of types authorized by the Chief Executive Officer of the Company in the ordinary course of business and incurred by the Employee in connection with the Company's business affairs. The Employee must comply with such accounting and reporting requirements as the Company may from time to time establish in order to obtain such reimbursement.

4.3 **Benefits.** During the Transition Period, the Employee shall be entitled to participate in the Company's life, disability, medical, dental and other insurance programs available to key executives on the same terms as such are available generally to other key executives of the Company.

4.4 **Equity Advance.** Within three months after the expiration of the Transition Period, the Company shall pay to the Employee the amount of $150,000, subject to appropriate deductions for withholding and similar taxes.

5. **Release.**

5.1 The Employee agrees, promises and covenants that he will not file, charge, claim, sue or cause to permit to be filed, charged, claimed or sued, any action for damages or other relief (including injunctive, declaratory or other equitable relief) against the Company or any of its affiliates involving any matter occurring in the past up to the date hereof. The Employee agrees that he has not, and will not, assign any claims which he has or may have against the Company or any of its affiliates to any third party. The preceding sentence shall not apply to any matter arising out of the performance or nonperformance of the obligations of the Company under this Agreement or the Employee's right to a bonus payment (the "Bonus Payment") provided by paragraph 4 of the Employment Letter dated January 2001, a copy of which is attached hereto as Exhibit A (the "Employment Letter").

5.2 In consideration of the covenants set forth herein, and more particularly the payments to the Employee hereunder, and other good and valuable consideration, the Employee, his agents, heirs, legatees, successors and assigns (collectively hereinafter the "Employee-Releasors"), hereby irrevocably and unconditionally releases, remises, and forever discharges the Company, Deepak Kulkarni, their respective affiliates, any entity owned or controlled by the Company or Deepak Kulkarni, their officers or directors and their respective present and former directors, officers, employees, agents, attorneys, subsidiaries, successors, insurance carriers and assigns, and each of them (collectively hereinafter the "Company-Releasees"), of and from any and all actions, causes of action, suits, debts, charges, complaints, claims, liabilities, obligations, injuries, promises, agreements, controversies, damages, and expenses (including attorneys' fees and costs actually incurred), of any form whatsoever, whether known or unknown, foreseen or unforeseen, anticipated or unanticipated, suspected or unsuspected, manifest or latent, intentional or negligent (collectively, "Claims") which the Employee or the Employee's successors in interest now own or hold, have at any time heretofore owned or held or may at any time own or hold by reason of any matter or thing based upon, relating to or arising out of the Employee's employment relationship with the Company or any of its affiliates or the termination of that relationship, including but not limited to, claims arising out of any right to an equity interest in the Company (including, without limitation, under

8698745.2

-2-

that certain letter agreement between the Employee and the Company dated January 4, 2000 or that certain letter agreement between the Employee and the Company dated December 4, 2001), expressly excluding any rights to the Bonus Payment, or claims arising under the Age Discrimination in Employment Act of 1967, Title VII of the civil Rights Act of 1963 and any other federal, state or local laws prohibiting age, sex, disability or any other forms of discrimination, which existed or may have existed prior to or contemporaneously with the execution of this Agreement. Notwithstanding the foregoing, this Section 5.2 shall not release the Company from any obligation set forth in this Agreement or in the Settlement Agreement of even date herewith between the Employee and Deepak Kulkarni.

6. Confidentiality of Agreement. The parties agree that all information relating in any way to the terms of and amounts payable under this Agreement shall be held confidential by the parties and shall not be publicized or disclosed to any person (other than an immediate family member (including, without limitation, any spouse, parent, child, and/or sibling), physician, psychologist, legal counsel or financial advisor, provided that any such individual to whom disclosure is made agrees to be bound by these confidentiality obligations), business entity or government agency, except as mandated by state or federal law, upon lawful subpoena by a court or agency of competent jurisdiction or pursuant to the mutual consent of the parties. If such subpoena is received by any party to this Agreement, a copy thereof shall be promptly provided to all other parties.

7. Notices

All notices under this Agreement must be in writing and must be delivered by hand or mailed by certified or registered mail, postage prepaid, return receipt requested, to the parties as follows:

If to the Company:    Wolverine Proctor & Schwartz, Inc.
                     51 E. Main Street
                     Merrimac, MA 01850
                     Attention: Chief Executive Officer

with a copy to:      Deepak Kulkarni
                     124 Commonwealth Ave.
                     Boston, MA 02116

If to the Employee:  To the address set forth below the signature of the Employee;

or to such other address as is specified in a notice complying with this Section 8. Any such notice is deemed given on the date delivered by hand or three days after the date of mailing.

8698745.2

-3-



8. **Miscellaneous**

    8.1    <u>Modification</u>. This Agreement constitutes the entire Agreement between the parties with regard to the subject matter hereof, superseding all prior understandings and agreements, whether written or oral. This Agreement may not be amended or revised except by a writing signed by the parties.

    8.2    <u>Successors and Assigns</u>. This Agreement is binding upon and inures to the benefit of both parties and their respective successors and assigns, including any corporation with which or into which the Company may be merged or which may succeed to its assets or business, although the obligations of the Employee are personal and may be performed only by him.

    8.3    <u>Severability</u>. The provisions of this Agreement are severable, and invalidity of any provision does not affect the validity of any other provision. In the event that any court of competent jurisdiction determines that any provision of this Agreement or the application thereof is unenforceable because of its duration or scope, the parties agree that the court in making such determination will have the power to reduce the duration and scope of such provision to the extent necessary to make it enforceable, and that the Agreement in its reduced form is valid and enforceable to the full extent permitted by law.

    8.4    <u>Governing Law</u>. This Agreement is to be construed under and governed by the laws of The Commonwealth of Massachusetts.

WOLVERINE    Fax:9783464213    Dec 7 '04 12:00    P.13/21

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

                WOLVERINE PROCTOR & SCHWARTZ, INC.

                By: _____
                Name:
                Title: Chairman

                _____
                Peter Crawford

                Address:   23 New Castle Drive #11
                              Nashua, New Hampshire 03060

8698745.2