UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

PETER A. CRAWFORD,

    Plaintiff,

v.

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,

    Defendants.

Civil Action No.
05-cv-10078 (DPW)

**Oral Argument Requested**

---

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR A PROTECTIVE ORDER

**I.   INTRODUCTION**

Defendants Wolverine, Proctor & Schwartz, Inc. ("WPS"), Steven F. Chilinski and Deepak S. Kulkarni hereby submit their memorandum of law in opposition to plaintiff *pro se* Peter A. Crawford's Motion to Compel and in support of defendants' Cross-Motion for a Protective Order pursuant to F.R.C.P. 26(c).

Defendants seek a protective order prohibiting the plaintiff from seeking the disclosure from any party or non-party of any materials, documents or other information related to WPS's February 2005 recapitalization or WPS's current (fiscal year 2005) financial statements.[1]  A Protective Order is warranted for the following reasons:

---

[1] As Crawford indicates in paragraph 16 of his Complaint, in late 2001 the stock of Wolverine, Proctor & Schwartz Inc. ("WPS Inc.") was transferred to a new entity, Wolverine, Proctor & Schwartz, LLC ("WPS LLC"). Both Crawford's Employment Contract and his Transition Agreement were entered into with WPS Inc. The enterprise that was WPS Inc., however, has now been entirely transferred to WPS LLC.

- The requested materials, which relate to WPS's current financial performance or the company's 2005 recapitalization, have no conceivable relevance to Crawford's claims. The events central to each of Crawford's claims occurred in either 2001 or the first three months of 2002, while the requested materials pertain to events in 2005.

- Crawford's contention that the requested materials are discoverable as relevant to the defendants' ability to satisfy a potential judgment is directly contradicted by the Federal Rules. It is well-established that a party may not obtain pre-trial discovery into another party's assets or its capacity to satisfy a potential judgment.

- Crawford's argument that the requested materials are discoverable because they may confirm Crawford's suspicions that the defendants have committed other, un-alleged acts of malfeasance is also without merit. The Federal Rules do not permit litigants to conduct so-called discovery "fishing expeditions" into suspected acts of misconduct or purported wrongdoing not related to the asserted claims and defenses.

For the foregoing reasons, and those more fully articulated below, defendants request that this Court deny Crawford's Motion to Compel and grant defendants' Cross-motion for a Protective Order pursuant to F.R.C.P. 26(c) barring Crawford from conducting any discovery on such manifestly irrelevant matters as WPS's current financial performance or the company's 2005 recapitalization.

---

Crawford's discovery requests demand materials from both WPS Inc. and WPS LLC. Technically, the 2005 recapitalization agreement and financial statements that are the subject of this motion relate to WPS LLC. To avoid unnecessary confusion, both WPS Inc. and WPS LLC will be referred to here simply as WPS.

## II. NATURE OF THE CASE AND FACTUAL BACKGROUND

### A. Crawford's Employment History

Crawford began his employment as WPS's Chief Operating Officer on December 30, 1999. See, Complaint ¶ 9. On January 4, 2000, Crawford and Kulkarni, then WPS's President and Chief Executive Officer, executed a written employment contract (the "Employment Contract"). Id. Crawford's Employment Contract provided for an annual base salary of $150,000, stock options and an annual bonus (the "Bonus"). Id. The Employment Contract contained a formula by which any potential Bonus due Crawford was to be calculated. See, attached Affidavit of Jeffrey D. Kuhn, Exhibit C.

Pursuant to the language in his Employment Contract, Crawford was eligible for an annual Bonus equal to 5% of WPS's adjusted EBITDA. Id. More precisely, Crawford's potential annual Bonus was defined in his Employment Contract as:

$$BONUS = (EBITDA - CAPX - INT - TAXES) \times .05$$

EBITDA (a popularly used non-GAAP accounting term) was defined in the Employment Contract as WPS's "earnings before any interest, taxes or deductions for depreciation or amortization." Id.

Crawford's Employment Contract states that the annual Bonus calculation was to be "based upon the consolidated financial results of [WPS]." Id. The Employment Contract also provides that, "if the calculation of [the Bonus] requires clarification, Arthur Andersen & Company or such other accounting firm nominated to prepare the individual tax returns of the sole shareholder of the Company shall be the binding arbiter of the BONUS." Id.

3

On December 28, 2001, Crawford entered into a Transition Agreement with WPS (the "Transition Agreement"). See, Complaint ¶ 18. Under Section 2 of Crawford's Transition Agreement, Crawford's ongoing employment with WPS was limited to a maximum of three additional months, <u>viz.</u>, until March 31, 2002 at the latest. See, Kuhn Aff. exh. "D". Besides the three-month sunset provision, the Transition Agreement also allowed WPS to terminate Crawford's employment at an earlier point "for any reason or no reason." <u>Id.</u>

On January 14, 2002, Crawford was informed that the WPS Board of Directors had elected to terminate his employment. See, Complaint ¶ 23. On January 18, 2002, Crawford received formal written notice and confirmation of the Board's action terminating his employment with WPS. <u>Id.</u>

On December 2, 2004, Crawford sent a letter to WPS's CEO, Steven Chilinski, in which Crawford argued that he was entitled to a Bonus based on his 2001 employment. See, Kuhn Aff. exh. "E". Crawford also argued that, under the provisions of the Transition Agreement, Crawford was owed $25,000 for approximately ten weeks of unpaid salary (for the period of January 15 through March 31, 2002) because the written notice of termination Crawford received on January 18, 2002 was not signed by the proper party. <u>Id.</u>

On December 8, 2004, Daniel J. Blake, counsel to WPS, sent a letter to Crawford responding to the arguments included in Crawford's December 2, 2004 letter. See, Kuhn Aff. exh. "F". Blake informed Crawford that, pursuant to the terms of Crawford's Employment Agreement, the matter had been submitted to the accounting firm of Vitale

4

Caturano & Co., Ltd. as the "binding arbiter" of Crawford's potential Bonus for 2001. Id.

  B. <u>Specific Claims Asserted by Crawford</u>

Crawford commenced the instant suit on January 12, 2005. Crawford's Complaint asserts seven separate causes of action:

1. WPS breached Crawford's written Employment Contract by failing to pay Crawford's 2001 Bonus;

2. WPS violated the Massachusetts Wage Statute by failing to pay Crawford's 2001 Bonus;

3. WPS breached an oral amendment to Crawford's Employment Contract whereby Crawford's Bonus was increased from 5% to 8% of WPS's adjusted EBITDA;

4. WPS violated the Massachusetts Wage Statute by failing to pay Crawford's 2001 Bonus pursuant to the 8% oral adjustment;

5. WPS breached Crawford's Transition Agreement by terminating him in January 2002 without providing Crawford with proper written confirmation;

6. Given Crawford's invalid termination under the Transition Agreement, WPS violated the Massachusetts Wage Statute by failing to pay Crawford an additional ten weeks of compensation; and

7. Deepak Kulkarni tortiously interfered with Crawford's Transition Agreement by wrongfully influencing WPS to terminate Crawford's employment.

Both Crawford's memorandum in support of the instant motion and the materials exchanged during the discovery process have confirmed that the dispute with respect to

Crawford's Bonus entitlement is based entirely on the parties' disagreement as to the value of WPS's 2001 EBITDA.  See, Crawford Memorandum of Law, pg. 3.

In response to Crawford's December 2, 2004 letter, WPS consulted with its accountants and confirmed that WPS lost money in 2001.  See, Kuhn Aff. exh. "G".  According to the WPS's 2001 Consolidated Financial Statements, WPS's EBITDA for fiscal year 2001 was a *loss* of $486,116.  Id.  WPS's failure to turn a profit in 2001 and its resultant negative EBITDA meant that Crawford was not entitled to a Bonus for 2001.  See, Kuhn Aff. exh. "C".

Crawford, who acknowledges in his memorandum that the Bonus described in his Employment Contract was contemplated as a percentage of WPS's "profits," maintains that, contrary to WPS's Consolidated Financial Statements, the company's EBITDA for 2001 was actually a gain of $9,683,723.  See, Crawford Memo., pg. 3.  Crawford's calculus is based on adding $10,169,839 in debt forgiveness to WPS's 2001 EBITDA loss of $486,116.  Id.

Crawford's first four causes of action relate solely to his claim that he is owed an unpaid Bonus for his 2001 employment with WPS.  See, Complaint ¶¶ 24-45.  The facts relevant to those causes of action are limited to WPS's financial performance in 2001, the formation of the operative contracts (either the written documents or the purported oral modification), and WPS's response to Crawford's Bonus demand in December of 2004.

Crawford's final three causes of action have nothing to do with WPS's finances or its financial performance.  See, Complaint ¶¶ 46-73.  Each of Crawford's final three claims relate to the supposed breach of his Transition Agreement by WPS in January of 2002.  Id.  Crawford's Transition Agreement was negotiated and executed in December

of 2001 and Crawford's employment ended in mid-January 2002. See, Complaint ¶¶ 18, 23. Even if Crawford's employment had not been terminated by WPS in January, his Transition Agreement with WPS was scheduled to expire on March 31, 2002. See, Kuhn Aff. exh. "D".

Crawford's final cause of action alleges that WPS's breach of the Transition Agreement was wrongfully precipitated by Kulkarni's tortious interference. See, Complaint ¶¶ 57-73. Kulkarni's supposedly tortious conduct is alleged to have occurred on or before January 14, 2002. Id. Therefore, the facts relevant to Crawford's final three causes of action occurred on or before March 31, 2002. Id.

    C.    The Parties' October 11, 2005 Discovery Conference

In response to defendants' interrogatory answers and document production, Crawford sent two letters to defense counsel, dated August 28, 2005 and October 3, 2005, which outlined nineteen separate issues related to defendants' discovery responses. See, Kuhn Aff. ¶ 4, exh. "A". These nineteen issues included follow-up questions to interrogatory responses and requests that the defendants certify that their responses were complete. Id. Although defendants regarded many of Crawford's requests for additional information or further certifications as exceeding the mandates of the Federal Rules, defendants made a good faith effort to resolve any discovery disputes during an October 11, 2005 telephone conference with Crawford. See, Kuhn Aff. ¶ 5. The discovery conference was attended by Crawford and defense counsel Mark Whitney and Jeffrey Kuhn. Id. The conference took place from 1:30 p.m. until approximately 3:00 p.m. Id. As a result of this conference, the parties reached agreement on the vast majority of the outstanding discovery matters. See, Kuhn Aff. ¶ 6.

However, the parties were unable to reach agreement with respect to the discoverability or relevance of certain documents – specifically, a WPS recapitalization agreement executed in February 2005 and documentation of WPS's current (fiscal year 2005) financial performance.  See, Kuhn Aff. ¶ 7.

**III. CRAWFORD IS NOT ENTITLED TO DISCOVERY RELATING TO WPS'S FEBRUARY 2005 RECAPITALIZATION OR WPS'S 2005 FINANCIAL STATEMENTS  AND A PROTECTIVE ORDER IS WARRANTED**

Crawford's motion seeks to compel the defendants to produce documentation and information concerning WPS 2005 recapitalization and the company's current (fiscal year 2005) financial statements.  The requested documents are completely irrelevant to this action, which concerns events which occurred in 2001 and the first three months of 2002.  Furthermore, the two arguments offered by Crawford in support of the discoverability of the subject documents are without merit and have been unequivocally rejected under the Federal Rules: first, a litigant may not obtain pre-trial discovery into an opposing party's assets or its capacity to satisfy a potential judgment against it; second, a party is prohibited from using the discovery process to attempt to discover or flesh-out other, unasserted claims they suspect they may have against the opposing party.  Thus, Crawford's motion to compel must be denied and defendant's cross-motion for a protective order must be granted.

A party from whom discovery is sought may seek a protective order to prevent or limit certain discovery to protect from "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  Such a protective order may require "that the disclosure or discovery not be had … that certain matters not be inquired into, or that the

scope of the disclosure or discovery be limited to certain matters." Fed. R. Civ. P. 26(c)(1, 4).

Request three included in Crawford's First Request for the Production of Documents asked for:

> Copies of any and all agreements, contracts, undertakings, understandings or other documents which amend, purport to amend, rescind, replace, supercede, or otherwise modify, expand, reduce, or alter in any way any of the four agreements referred to in paragraphs 1 and 2 above, or any of the exhibits thereto.

In response to this request, defendants furnished Crawford with two separate documents: "Amendment No. 1 to Deepak Kulkarni Representation and Warranty, Indemnity and Subscription Agreement" and "Amendment No. 1 to Consulting Agreement," both of which are dated November 13, 2002. See, Kuhn Aff. ¶ 12.

During the discovery process, Crawford became aware that WPS was recapitalized on February 11, 2005. See, Kuhn Aff. ¶ 7. During the parties' October 11, 2005 discovery conference, defense counsel were frank with Crawford and acknowledged that documents related to the February 2005 recapitalization were very likely to exist, but that defendants took the position that those agreements were not responsive to Crawford's document request and, more fundamentally, a recapitalization of WPS in February 2005 (over three years after Crawford's termination) could not possibly be relevant to the matters at issue in this litigation.[2]  See, Kuhn Aff. ¶¶ 7-9.

---

[2] Crawford's memorandum attempts to circumvent the glaring issue of the ultimate relevance of either the 2005 recapitalization or WPS's 2005 financial statements by arguing that defendants have waived any objections based on relevance by failing to raise such an objection to Crawford's document requests.  In reality, however, defendants' responses to Crawford's document requests make their objections to the relevance and materiality of Crawford's requests abundantly clear.  Section A of defendants' General Responses and Objections clearly "raises objection to: (1) the relevance, materiality, or admissibility" of Crawford's requests.  In Section H, defendants objected "to the production of documents that are unrelated to the allegations in the Complaint."

When questioned by defense counsel how he could honestly argue that WPS's recent recapitalization was germane to the facts at issue in this case, Crawford posited the same argument he now puts forward in his memorandum, viz., there is a possibility that the WPS's 2005 recapitalization either deprived WPS of assets or assigned its potential liability to Crawford to another entity. Id. Crawford argues that WPS's February 2005 recapitalization is relevant to the merits of this case because:

> Plaintiff could possibly obtain a judgment against defendant Wolverine, only to discover that it has no assets, but that the liability has been assumed by a successor entity. Plaintiff might then have to proceed anew against such successor.

See, Crawford's Memorandum of Law, pg. 7. During the discovery conference, defense counsel maintained that Crawford's line of reasoning as to the relevance of WPS's recapitalization was fallacious and not supported by the Federal Rules; however, in an effort to allay Crawford's concerns and with hopes of avoiding a motion to compel, defense counsel offered to somehow demonstrate to Crawford that his anxieties were unfounded. See, Kuhn Aff. ¶ 11. Defense counsel offered to furnish Crawford either with those select portions of WPS's recapitalization agreement pertinent to his concerns or with a sworn statement concerning the potentially-liable entity. Id. Crawford rejected each of these compromise proposals and answered that the defendants' only options were to turn over the 2005 recapitalization documents or face a motion to compel their production. Id.

In addition to documentation related to WPS's February 2005 recapitalization, Crawford also moves this Court to compel WPS's production of its 2005 financial

statements.[3] Although Crawford's memorandum fails to articulate any logical rationale for how WPS's *current* financial statements have any possible bearing on the merits of the instant action, defendants presume that Crawford has also requested these documents to reassure himself that WPS has sufficient assets to satisfy a potential judgment against it.

      A.    <u>The Federal Rules Do Not Permit Pre-Trial Discovery Into a Defendant's Assets or its Capacity to Satisfy a Potential Judgment Against It.</u>

Fed. R. Civ. P. 26, which governs the scope of discovery, "will not permit the discovery of facts concerning a defendant's financial status, or ability to satisfy a judgment, since such matters are not relevant, and cannot lead to the discovery of admissible evidence." <u>McCurdy v. Wedgewood Capital Management Co., Inc.</u>, No. 97-4304, 1998 WL 964185, *10 (E.D. Pa. Nov. 16, 1998) (court denied plaintiff's motion "to compel discovery of facts concerning Defendant's financial status in order to determine Defendant's 'ability to satisfy a judgment'"); see <u>Ranney-Brown Distributors, Inc. v. E.T. Barkwick Industries, Inc.</u>, 75 F.R.D. 3, 4 (S.D. Ohio 1977).

Crawford's memorandum argues that documents related to WPS's February 2005 recapitalization are relevant to this action because those documents may demonstrate that WPS "has no assets" and, as a result, may not be able to satisfy a potential judgment against it. See, Crawford Memo, pg. 7. Crawford further argues that, "even if not admissible, such agreements would be discoverable on the same basis as insurance agreements." Crawford's arguments notwithstanding, however, it is well-established that "the Federal Rules of Civil Procedure do not permit pre-trial discovery of a defendant's

---

[3] Crawford demands production of WPS's 2005 financial statements in request number 6 of his First Request for Production of Documents. The language of request number 6 is included on pages 8 and 9 of Crawford's Memorandum of Law.

11

finances." Pinkert v. Olivieri, No. 99-380, 2001 WL 641735, *7 (D. Del. May 24, 2001); see U.S. v. General Electric Co., 158 F.R.D. 161, 163 (D. Oregon 1994) (corporate tax returns and financial statements of plaintiff were not discoverable because financial condition was not relevant to issue of whether contractor was fully compensated for work it performed); Oriental Commercial & Shipping Co., Ltd. v. Rosseel, 125 F.R.D. 398, 401 (S.D.N.Y. 1989) (denying motion to compel where "defendant concedes that the information sought is not meant to elicit evidence to be presented," but was rather a request for "information concerning the location of plaintiffs' assets to evaluate the likelihood of being able to collect an award, should an award be granted…"); Renshaw v. Ravert, 82 F.R.D. 361, 363 (E.D. Pa. 1979) (inquiry into defendant's personal financial status is not ordinarily permitted) (citing, 8 Wright & Miller, Federal Practice & Procedure § 2010, at 93 (1970)); Bogosian v. Gulf Oil Corp., 337 F. Supp. 1228 (E.D. Pa. 1971) (deposition questions with respect to antitrust plaintiff's net worth and his ability to satisfy judgment in the event defendants prevailed were not relevant to the subject matter of the lawsuit).

The district court's decision in Gangemi v. Moor, 268 F. Supp. 19 (D. Del. 1967), is instructive. In Gangemi, the court considered a plaintiff's motion to compel the defendants to answer certain interrogatories. One of the plaintiff's interrogatories called for a schedule of the defendants' assets. 268 F. Supp at 21. After noting that the plaintiff's interrogatory was "without precedent in this Court's experience," the district court observed that Federal Rule 69(a) makes "special provision for the discovery of assets of a judgment debtor by way of supplemental proceedings." Id. The plaintiff argued that, Rule 69(a) notwithstanding, Rule 26 permitted a litigant to conduct discovery

into an opposition's assets. Id. The court in Gangemi rejected the plaintiff's argument, holding that "the interpretation of Rule 26(b) urged by the plaintiffs would make Rule 69(a) superfluous," and "any such interpretation of the Federal Rules should be avoided." Id.; see Sanderson v. Winner, 507 F.2d 477, 480 (10th Cir. 1974) (overturning an order compelling discovery into issue of whether a party would be able "to pay a judgment," the court held that "defendant will have ample opportunity for discovery under Rule 69 F.R.Civ.P. [sic] if it obtains judgment").

Presumably as an alternative argument, the plaintiff in Gamgemi also maintained – as Crawford argues in his memorandum – that discovery of a party's assets should be permitted as analogous to the discovery of insurance agreements, which the Federal Rules allow. Id. The plaintiff's arguments in this regard, however, were summarily rejected by the court in Gamgemi, which noted that, "even in those cases where discovery of insurance was permitted, the courts have carefully distinguished the case of insurance from other types of assets: 'automobile liability insurance protection is not in the same category as other assets of the insured.'" Id. (citing, Johanek v. Aberle, 27 F.R.D. 272, 278 (D. Mont. 1961)).[4]

Here, Crawford, like the plaintiff in Gamgemi, is simply not entitled to discovery which is relevant only to the quantity of WPS's assets or WPS's capacity to satisfy a potential judgment against it. In the event Crawford obtains a judgment against the defendants, the special provisions of F.R.C.P. 69(a) provide the exclusive discovery mechanism for a party to explore the "assets of a judgment debtor." Gangemi v. Moor, 268 F. Supp. at 21.

---

[4] In the instant case, defendants turned over a copy of an insurance policy that may provide coverage with their Rule 26(a) disclosures.

13

Thus, there is simply no support whatsoever in the Federal Rules for Crawford's contention that he is entitled to discovery on the issues of WPS's 2005 recapitalization or its current financial status on the basis that those subjects are relevant to WPS's ability to satisfy a potential judgment in Crawford's favor.

> B. The Federal Rules Do Not Permit Discovery Into Un-alleged Acts of Misconduct or Purported Wrongdoing Not Related to the Asserted Claims or Defenses.

As an alternative to his "capacity to satisfy a judgment" argument outlined above, Crawford contends that WPS should be compelled to surrender documentation or other information relating to its 2005 recapitalization because WPS's refusal to do so "raises suspicions that the transaction may have been structured to deprive the plaintiff of other contractual rights to which he is entitled under the December 28, 2001 agreements…" See, Crawford Memo, pg. 8. Crawford suspects that "in so doing, one or more of the defendants *may* have engaged in fraud, bad faith, unfair dealing, or downright dishonesty, matters which would surely be relevant to demonstrate the reputation for veracity of one or more of the defendants or probable witnesses in this case." Id. (emphasis added). During the parties' October 11, 2005 discovery conference, Crawford made identical arguments to defense counsel. See, Kuhn Aff. ¶ 10.

Thus, Crawford does not argue that he is entitled to the 2005 recapitalization documents because they are in any way relevant to the merits of this case; rather, Crawford maintains that WPS should be compelled to surrender otherwise confidential materials because those materials *may* confirm Crawford's *suspicions* that the defendants or third parties engaged in other tortious conduct – conduct which is not the subject of this action. Crawford acknowledges that he is attempting to use the discovery process in

14

this litigation to develop and flesh out certain unspecified claims which Crawford has not yet brought. The Federal Rules are clear, however, that the discovery process cannot be used in such a manner.

Rule 26(b)(1) of the Federal Rule of Civil Procedure, as amended in 2000, provides in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, that is *relevant* to the claim or defense of any party… For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. [emphasis added].

The 2000 amendments, "while not intended to alter dramatically the scope of discovery, were intended to make it 'narrower than it was, in some meaningful way.'" Collens v. City of New York, 222 F.R.D. 249, 252 (S.D.N.Y. 2004). "The Advisory Committee explained that the amendments were designed to 'focus [discovery] on the actual claims and defenses involved in the action,' and 'when judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action.'" Id. "While Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses." Id.; see Surles v. Air France, No. 00-5004, 2001 WL 815522, *4 (S.D.N.Y. July 19, 2001) (stating that even under un-amended version of Rule 26(b)(1), courts "would routinely decline to authorize fishing expeditions").

Likewise, Crawford's argument that he is entitled to the recapitalization agreement because the contents of that document *may* have some bearing on the general veracity of potential witnesses is also wholly devoid of merit. See Ameristar Jet Charter,

15

Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001) (affirming grant of protective order and quashing of "fishing expedition" subpoena where party's only basis for seeking subject testimony was mere "hope" that the witness would contradict earlier testimony) (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 187 (1st Cir. 1989) (holding that a party may not "undertake wholly exploratory [discovery] operations in the vague hope that something helpful will turn up")).

The court's opinion in Tottenham v. Trans World Gaming Corp., No. 00-7697, 2002 WL 1967023 (S.D.N.Y. June 21, 2002), is instructive. The plaintiff in Tottenham, a former chief executive officer of the defendant corporation, sued the defendant, TWG, for wrongful termination. TWG countersued for unjust enrichment, conversion and breach of fiduciary duties, alleging that the plaintiff used corporate funds for particular personal expenses (specifically, buying stock and paying for his car insurance). TWG eventually moved for an order compelling discovery of essentially all of the plaintiff's financial information, a request which clearly exceeded the scope of the specific allegations of malfeasance included in TWG's counterclaims. In defense of the breadth of its discovery requests, TWG argued that "if Tottenham used company money to pay for his personal insurance needs, he may well have used company money to pay other personal expenses." 2002 WL 1967023, at *1.

In denying TWG's motion to compel Tottenham to surrender his financial records, the Tottenham court held that "discovery requests cannot be based on pure speculation or conjecture;" and the discovery process itself "is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for

16

which they initially have at least a modicum of objective support." Id. at *2. The Tottenham court noted that:

> …although the Answer contains allegations with respect to specific instances of defalcation (namely the Plaintiff's alleged misuse of company funds to purchase stock and to pay for his wife's automobile insurance), the Defendant's document requests constitute no more than a fishing expedition to discover additional instances of wrongdoing beyond those already alleged in the Answer. We will not condone such a fishing expedition on the mere speculation that the Plaintiff "may well have used company money to pay other personal expenses."

Id.; see U.S. v. Consolidated Edison Co. of New York, 1988 WL 138275, *1-2 (E.D.N.Y. Dec. 15, 1988) (denying motion to compel where the requested discovery constituted no more than a fishing expedition by the plaintiff to discover additional violations beyond those alleged in the complaint).

Here, Crawford acknowledges that he has requested documentation related to WPS's 2005 recapitalization for the express purpose of uncovering further acts of "fraud, bad faith, unfair dealing, or downright dishonesty" on the part of the defendants or other third parties. See, Crawford Memo, pg. 8. During the October 11, 2005 discovery conference, Crawford confirmed to defense counsel that the primary reason he was interested in obtaining the recapitalization agreement was to develop certain claims which Crawford was considering bringing at some future date. Crawford is apparently proceeding under the misapprehension that Rule 26 grants him carte blanche to inquire into any area and to request any document from the defendants that he sees fit, regardless of whether the subject matter of inquiry is relevant to the actual claims or defenses at issue in this matter. The Federal Rules are clear, however, that so-called discovery "fishing expeditions" – *i.e.* inquiries into otherwise irrelevant topics in the hopes of

17

discovering (or "fleshing out") additional, unasserted claims against a party – are prohibited. See Tottenham, 2002 WL 1967023, *1; Surles, 2001 WL 815522, *4.

## IV.    CONCLUSION

Crawford's motion to compel production of documentation related to WPS's 2005 recapitalization or WPS's 2005 financial statements must be denied. The requested documents have no conceivable relevance on the factual merits of Crawford's claims. WPS's current capitalization or financial performance is irrelevant to the issue of whether Crawford is entitled to a Bonus as a result of his 2001 employment with the company. Nor can the subject documents have any bearing on Crawford's claims for breach of his Transition Agreement or tortious interference against Kulkarni – both of which claims are based on events which occurred in January 2002.

The reasons posited by Crawford as the basis for compelling production of the subject documents are clearly without merit under the Federal Rules. Discovery relevant only to a party's capacity to satisfy a potential judgment is prohibited. Likewise, discovery requests propounded only to discover or develop unasserted claims against the defendants are also impermissible under the Federal Rules. Thus, Crawford's motion to compel should be denied and defendants' cross-motion for a protective order should be granted.

Dated: November 4, 2005

Respectfully submitted,

WOLVERINE, PROCTOR &
SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI

By their attorneys,


/s/ Mark M. Whitney
Mark Whitney (BBO #637054)
Jeffrey D. Kuhn (BBO #662326)
MORGAN, BROWN & JOY, LLP
200 State Street
Boston, Massachusetts   02109
(617) 523-6666

TO:   Peter A. Crawford, *pro se*
      23 Newcastle Drive #11
      Nashua, New Hampshire   03060
      (603) 888-4574

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 4, 2005, I filed the foregoing document with the Clerk of the Court by using the ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing to plaintiff *pro se* Peter A. Crawford, 23 Newcastle Drive #11, Nashua, New Hampshire 03060 by U.S. mail, on this 4th day of November, 2005.

/s/ Mark M. Whitney
_____