**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
_____

PETER A. CRAWFORD,

        Plaintiff,

                                    Civil Action No.
v.                                  05-cv-10078 (DPW)

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,                **Oral Argument Requested**

        Defendants.
_____

## MEMORANDUM IN SUPPORT OF DEFENDANTS' SECOND MOTION FOR A PROTECTIVE ORDER CONCERNING EVIDENCE OF COMPENSATION AND OTHER PAYMENTS MADE TO DEEPAK KULKARNI

Mark M. Whitney (BBO # 637054)
Jeffrey D. Kuhn (BBO # 662326)
MORGAN, BROWN & JOY, LLP
*Attorneys for the Defendants*
200 State Street
Boston, Massachusetts  02109
(617) 523-6666

## PRELIMINARY STATEMENT

As the discovery process has advanced, it has become abundantly clear that the plaintiff *pro se*, Peter A. Crawford ("Crawford"), wishes to explore matters that stray well beyond the scope of this action.  Specifically, Crawford persists in devoting considerable time in depositions seeking to discover information about compensation and fringe benefit payments made by defendant Wolverine, Proctor & Schwartz, Inc. ("WPS") to defendant Deepak S. Kulkarni ("Kulkarni"), the *sole shareholder* of WPS for most of the period relevant to this case.  Defense counsel initially gave Crawford reasonable latitude to conduct his depositions as Crawford saw fit, but as discovery progressed it became clearer that Crawford would not relent in his quest to delve into Kulkarni's private and irrelevant compensation information.

As described more fully below, Crawford seeks disclosure of Kulkarni's compensation and fringe benefit payments for periods roughly covering 1999 to 2005. As rationale for his pursuit, Crawford has explained that he seeks this information in support of Count VII of his Complaint, which alleges that Kukarni took steps to interfere with Crawford's employment contract after Crawford attempted to halt *one specific payment* from WPS to Kulkarni in the amount of $135,000 on *one specific day* (January 14, 2002).  Crawford alleges without any support that this payment was improper; despite the fact that the evidence will show that WPS's then-new majority shareholders approved the payment.  The broad net that Crawford attempts to cast is particularly exposed as the true "fishing expedition" that it is by the undisputed fact that the contract at issue existed for only two-weeks – from December 28, 2001 to January 14, 2002.

1

This Court should issue a protective order that prohibits Crawford from discovering from any party or nonparty information relating to compensation and benefit payments from WPS to Kulkarni, other than the $135,000 payment alleged in Count VII his Complaint, because:

- the information is irrelevant to any claims or defenses in this action;

- the information is sought to be used as improper "propensity" evidence;

- allowing inquiry into irrelevant payments would be unnecessarily annoying, harassing, and intrusive to Kulkarni;

- allowing inquiry into irrelevant payments would multiply the scope of this action considerably, as numerous mini-trials concerning the propriety of each payment would be necessary, requiring additional rebuttal witnesses and, in all likelihood, expert testimony;

Upon balancing all of these interests and issues, it is well within this Court's discretion to grant the relief requested in this Motion.

## BACKGROUND OF DISCOVERY DISPUTE

### Relevant Factual Background

Crawford began his employment as WPS's Chief Operating Officer on December 30, 1999.  Complaint ¶ 9.  On January 4, 2000, Crawford and Kulkarni, WPS's President and Chief Executive Officer ("CEO"), executed a written employment contract (the "Employment Contract").  Id.[1]

In late 2001, WPS (with Kulkarni as its sole shareholder) and a group of investment entities which included Parthenon Investors II, L.P., PCIP Investors and J&R

---

[1]      A copy of Crawford's Employment Agreement is attached as Exhibit C to the Affidavit of Jeffrey Kuhn ("Kuhn Aff.") [On file as Attachment #1 to Docket Item #23]

Founders' Fund, L.P. (collectively referred to as "Parthenon") entered into an acquisition agreement. Complaint ¶ 16. Under the acquisition agreement, Kulkarni's shares in WPS were transferred to a new entity, Wolverine, Proctor & Schwartz, LLC ("WPS LLC"). Id. Following this transaction, which closed between December 28 and December 31, 2001, Parthenon controlled a majority of the board of directors of WPS LLC, which, in turn, owned all of the shares of WPS. Id.[2]

On December 28, 2001, Crawford entered into a Transition Agreement with WPS (the "Transition Agreement"). Complaint ¶ 18. Under Section 2 of the Transition Agreement, Crawford's future employment with WPS was limited to a maximum of **three months** – *i.e.*, until March 31, 2002, at the latest.[3] The Transition Agreement also contained a provision whereby Crawford's future employment with WPS could be terminated prior to March 31, 2002 "for any reason or no reason," provided that the CEO furnished Crawford with written notice of termination. Id. The contract only existed for **two-weeks**, until January 14, 2002, when Crawford's employment was terminated. Complaint ¶ 23.

### Count VII of Crawford's Complaint -- Intentional Interference with Contract

Crawford alleges that defendant Kulkarni tortiously interfered with Crawford's contractual rights under the Transition Agreement. Complaint ¶¶ 57-73. The Complaint alleges that, on January 14, 2002, Kulkarni became angry in response to Crawford's

---

[2]     As Crawford indicates in paragraph 16 of his Complaint, in late 2001 the stock of Wolverine, Proctor & Schwartz Inc. ("WPS Inc.") was transferred to a new entity, Wolverine, Proctor & Schwartz, LLC ("WPS LLC"). Both Crawford's Employment Contract and his Transition Agreement were entered into with WPS Inc. To avoid unnecessary confusion, both WPS Inc. and WPS LLC will be referred to here simply as WPS.

[3]     A copy of the Transition Agreement is attached as Exhibit D to the Kuhn Aff. [On file as Attachment #1 to Docket Item #23]

attempt to block one payment of $135,000 in "fringe benefit compensation" from WPS to

Kulkarni. Complaint ¶¶ 22, 59. Without offering *any* basis or support whatsoever,

Crawford alleges in conclusory fashion that Kulkarni's efforts to obtain payment of the

$135,000 constituted "embezzlement," and were "fraudulent" and "criminal." Complaint

¶¶ 59-60.[4]

    Crawford asserts that Kulkarni next "took actions to persuade, cause and induce

the Board of Directors of WPS to terminate the plaintiff's employment" under the

Transition Agreement. Complaint ¶ 59. Kulkarni and WPS admit that Kulkarni, in close

consultation with WPS senior staff and WPS's Board of Directors, was involved in

efforts to terminate Crawford's employment on January 14, 2002. See defendants'

answer to Crawford's First Set of Interrogatories, No. 4. [*See* Exhibit A to the Affidavit

of Mark M. Whitney ("Whitney Aff"), submitted in support of the instant motion.]

Crawford admits that he was informed on January 14, 2002, that the WPS Board of

Directors had elected to terminate his employment. Complaint ¶ 23. Crawford

specifically and unambiguously asserts that Kulkarni's actions were undertaken in direct

response to Crawford's "refusal to permit embezzlement and conversion of $135,000"

from WPS. Complaint ¶ 61.

    **The Present Discovery Dispute**

    During the course of discovery, Crawford has focused a substantial portion of his

efforts on seeking the disclosure of various payments made by WPS to Kulkarni.

[Whitney Aff. ¶ 3.] Despite the fact that Count VII relies on an alleged dispute about just

one payment request that occurred on January 14, 2002, and despite the fact that the

---

[4]    This is despite the fact that the evidence will show that Parthenon, the controlling shareholder of
WPS as of January 14, 2002, approved the $135,000 payment upon Kulkarni's request.

contract at issue existed for just two-weeks at the beginning of 2002, Crawford has

sought payment information from as far back as 1999 and as far forward as 2005.

[Whitney Aff. ¶ 4.]

After it became clear that Crawford intended to seek disclosure of payments

spanning a broad period, defense counsel commenced discussions with Crawford in an

effort to understand the basis for Crawford's desire for the information.  [Whitney Aff.

¶ 5.]  Specifically, defense counsel demanded that Crawford explain his basis for seeking

evidence relating to any payment information other than the one payment he alleges led

to his termination.  [*See* Exhibit B to the Whitney Aff.]  Crawford's explanation is

detailed in an e-mail that he sent to defense counsel on November 13, 2005.  [*See* Exhibit

C to the Whitney Aff.]

## ARGUMENT

District Courts are unquestionably empowered to impose discovery limitations to

prevent discovery of matters that stray beyond the scope of the underlying claims.  As the

Supreme Court has explained:

> [T]he discovery provisions, like all of the Federal Rules of Civil
> Procedure, are subject to the injunction of Rule 1 that they "be construed
> to secure the just, *speedy*, and *inexpensive* determination of every action."
> (Emphasis added.)  To this end, the requirement of Rule 26(b)(1) that the
> material sought in discovery be "relevant" should be firmly applied, and
> the district courts should not neglect their power to restrict discovery
> where "justice requires [protection for] a party or person from annoyance,
> embarrassment, oppression, or undue burden or expense …."  Rule 26(c).
> With this authority at hand, judges should not hesitate to exercise
> appropriate control over the discovery process.

*Herbert v. Lando*, 441 U.S. 153, 177 (1979).  As set forth below, these and other

important principles warrant granting the relief sought by defendants in this Motion.

## POINT I

**PAYMENTS MADE BY WPS TO KULKARNI BEFORE OR
AFTER JANUARY 14, 2002 ARE WHOLLY IRRELEVANT TO ANY
CLAIM OR DEFENSE PENDING IN THIS ACTION**

The broad range of payments to Kulkarni that Crawford seeks to discover, with
the exception of the $135,000 alleged in Count VII of the Complaint, is wholly irrelevant
to any claims or defenses in this action. When the irrelevance of Crawford's request is
viewed in light of the highly confidential, personal and private nature of the information
sought, the instant motion should be granted.

Through the required pre-motion written communications as well as in several
conversations between defense counsel and Crawford, Crawford has repeatedly asserted
that his desire to explore a vast range of payments from WPS to Kulkarni is to help him
prove Count VII.[5] [*See* items numbers 1 and 2 of Crawford's 11/13/05 email, attached as
Exhibit C to the Whitney Aff.] It is therefore critical that this Court recognize the
specifics alleged in Count VII when evaluating this motion. Crawford's allegations in
support of Count VII are unambiguous and finite:

- Crawford alleges that, on January 14, 2002, he tried to block one payment
  in the amount of $135,000 that Kulkarni had requested be made by WPS.

- He alleges that Kulkarni became angry in response to Crawford's effort to
  thwart the payment.

- He claims that Kulkarni retaliated against Crawford by improperly
  interfering with Crawford's employment contract on January 14, 2002.

Discovery is available to obtain any non-privileged matter "that is relevant to the
claim or defense of any party ...." Fed. R. Civ. P. 26(b)(1). A party seeking information

---

[5] Indeed, such evidence could not have any bearing on Crawford's other claims.

in discovery over an objection bears the initial burden of showing its relevance.  *Caouette v. OfficeMax, Inc.,* 352 F. Supp. 2d 134, 136 (D.N.H. 2005).  In addition, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.*  The advisory committee notes to the 2000 amendment of Rule 26(b)(1) explain that concern had arisen about the scope of discovery under the broad "subject matter" language and that the committee decided not to eliminate that language but to limit its application by requiring more management of discovery by the court.  *See Sallis v. Univ. of Minn.,* 408 F.3d 470, 477 (8th Cir. 2005).  Therefore, when an objection arises as to the relevance of discovery, "the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it, so long as it is relevant to the subject matter of the action." Fed. R. Civ. P. 26(b)(1) 2000 advisory committee note; *see also* 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.41[3][a] (3d ed.2005).  However, "[t]he Committee intends that the parties and the court focus on the *actual claims and defenses involved*." Fed. R. Civ. P. 26(b)(1) 2000 advisory committee note (emphasis added); *see also Elvig v. Calvin Presbyterian Church,* 375 F.3d 951, 968 (9th Cir. 2004).

Nonetheless, if discovery relates to matters that are irrelevant under Rule 26(b), courts have begun to [circumscribe discovery in advance pursuant to Rule 26(c)(4)] with more frequency …."  6 James Wm. Moore et al., *Moore's Federal Practice* § 26.24 (3d ed. 2005); *see also Naval Orange Administrative Comm. v. Exeter Orange Co.,* 722 F.2d 449 (9th Cir. 1983) (protective order limiting discovery of irrelevant material consistent with court's discretion under Rule 1).  Thus, a showing of irrelevancy of proposed discovery can satisfy the "good cause" requirement of Rule 26(c).  *See, e.g., Smith v.*

*Dowson*, 158 F.R.D. 138, 140-41 (D. Minn. 1994); United *States v. Princeton Gamma-Tech, Inc.*, 817 F. Supp. 488, 493 (D.N.J. 1993); *Cooper v. Secretary of Air Force*, 132 F.R.D. 119, 122 (D.D.C. 1990).

Under Massachusetts law, in order to succeed on a claim of tortious interference with contractual relations, a plaintiff must prove that: (1) he had a contract with a third party; (2) that the defendant knowingly and improperly induced the third party to breach that contract; and (3) that the plaintiff was harmed by the defendant's action. G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 272 (1991); United Truck Leasing Corp. v. Geltman, 406 Mass. 811 (1990). The only possible relevance of payments to Kulkarni other than the $135,000 is to help Crawford prove the second element of the claim – improper inducement of the breach.

For the discovery to be relevant to Crawford's claim in Count VII, it therefore must relate to Crawford's need to prove the impropriety of Kulkarni's alleged intentional acts to interfere with his contract that occurred on January 14, 2002. Crawford's inquiry into payments made to Kulkarni by WPS other than the January 14, 2002 $135,000 payment amounts to a fishing expedition that this Court should decline to endorse. Simply put, evidence of additional transactions from as far back as 1999 and as far forward as 2005 does not and cannot relate to Crawford's burden of proving that Kulkarni improperly interfered with his contract on January 14, 2002.

Defendants anticipate that Crawford will suggest at trial that Kulkarni's involvement in Crawford's termination on January 14, 2002 was in reaction to Crawford's attempt to thwart the $135,000 payment. Defendants agree that Crawford would be entitled to make such an argument, even though the evidence at trial will show

that WPS's entire management team sought Crawford's termination and its Board agreed. However, transactions other than the $135,000 payment that Crawford seeks to discover cannot form the basis of any improper intent on the part of Kulkarni because, by Crawford's own allegations, Kulkarni's improper intent arose on January 14, 2002 because Crawford attempted to block the one payment (on January 14, 2002) and Crawford does not allege that he attempted to block any other payments.

It is undisputable that Crawford could not possibly have attempted to block any payments made to Kulkarni after Crawford's termination date of January 14, 2002. Moreover, the contract at issue only existed for *a two-week period* (from its execution on December 28, 2001 to Crawford's termination on January 14, 2002). Thus, Kulkarni could not have possibly harbored any intent to interfere the contract for any period longer than the two-weeks that the contract existed. These temporal limitations provide further rationale for prohibiting discovery of payments outside the date of January 14, 2002, or at a minimum outside the two-week contractual time frame.

Even though the standard of relevancy for discovery purposes is broader than at trial, "the parties should not be permitted to roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might become so." *Blum v. Schlegel*, 150 F.R.D. 38, 39 (W.D.N.Y. 1993). Evidence of pre- or post-January 14, 2002 payments from WPS to Kulkarni (i.e., other then the $135,000 payment alleged in the Complaint) bear no relation to Crawford's Count VII, and thus are wholly irrelevant to this action. Accordingly, this Court should exercise its discretion to limit discovery of such payments.

## POINT II

### NO MATTER HOW CREATIVELY PLAINTIFF TRIES TO SPIN HIS REASONS FOR SEEKING KULKARNI'S PRIVATE COMPENSATION INFORMATION, THE ESSENCE OF HIS PURPOSE IS IMPERMISSIBLE "PROPENSITY" EVIDENCE

Crawford asserts that he needs to explore all payments made to Kulkarni from WPS is to show that they were part of a plan to improperly extract money from the company to support Kulkarni's lifestyle. Crawford contends that evidence of other improper payments demonstrates a pattern and practice of improper payments, and that similar transactions tend to make it more likely that his allegations Count VII are true. [*See generally* Crawford's 11/13/05 email, items 1-3, attached as Exhibit B to the Whitney Aff.] By Crawford's own admission, he seeks to introduce alleged payments as improper "propensity" evidence.

The Federal Rules of Evidence generally preclude the use of evidence of wrongs that are offered to show a propensity for bad acts. Fed. R. Evid. 404(b). Here, Crawford seeks to introduce pre- and post-January 14, 2002 allegedly improper payments to show that Kulkarni had a habit, or pattern and practice, of receiving improper payments. In other words, Crawford seeks to use this extrinsic evidence of alleged prior and post-termination bad acts to show that it was more likely that the only payment at issue, the $135,000 payment, was also improper. In so doing, Crawford seeks to treat the payment evidence as habit or pattern/practice evidence akin to "semi automatic" acts like "going down a particular stairway two stairs at a time, or giving the hand-signal for a left turn[.]" *See* Fed. R. Evid. 406, advisory committee note. Such a contention borders on the frivolous. Similarly, this evidence does not fit within the Rule 404(b) "other acts" exception to the general rule that, in civil cases, character evidence "is not admissible for

the purpose of proving action in conformity therewith on a particular occasion[.]" *See* Fed. R. Evid. 404(a); *see also Rocky Mountain Helicopters, Inc. v. Bell Helicopters Textron*, 805 F.2d 907, 917 (10th Cir. 1986); *Crowley v. Cooperstein*, 1996 WL 524101, at *2 (E.D. Pa. Sept. 11, 1996); *Fryou v. Gaspard*, 1991 WL 68440, at *1 (E.D. La. Apr. 25, 1991).

It is clear that Crawford seeks to use the pre- and post-January 14, 2002 evidence of alleged improper payments to prove that Kulkarni acted in a certain way on Crawford's termination date. No matter how creatively Mr. Crawford tries to explain his position, this is impermissible "propensity" evidence.

## POINT III

### THE EVIDENCE SOUGHT BY CRAWFORD OF PRIVATE PAYMENTS MADE TO KULKARNI IS UNNECESSARILY ANNOYING, HARASSING, EMBARASSING, AND INTRUSIVE

Because the liberality of pretrial discovery has the potential to impinge upon the privacy of a party, courts may issue protective orders which restrict permissible discovery if it would unduly annoy or burden the other party. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984). Rule 26(c) states in pertinent part, that: "the court … may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"[6] A court is given broad discretion regarding whether to issue a protective order. *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (grant and nature of protection is singularly within the district court's discretion); *Cruden v. Bank of New York*, 957 F.2d 961, 972 (2d Cir. 1992) (order regarding sequence of discovery at discretion of trial judge).

---

[6]    A comparable prohibition exists in Fed. R. Evid. 611(a), which instructs courts to exercise reasonable control over the trial proceedings so as to "protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a)(3).

The information Crawford seeks concerning payments to Kulkarni is private financial information. It is undisputed that WPS was and still is a close corporation. It is also undisputed that Kulkarni was the sole shareholder of WPS until the transaction with Parthenon at the end of 2001. As such, the irrelevant information Crawford seeks is confidential financial information of WPS, and private compensation information of Kulkarni. Exposing this private and confidential information to the public record from such a vast range of time is unduly burdensome, annoying, embarrassing, and intrusive to WPS and Kulkarni. Accordingly, this Court should exercise its discretion to deny the requested discovery.

## POINT IV

**IF THIS COURT PERMITS INQUIRY INTO THE PAYMENT EVIDENCE, THE EFFECT WOULD BE TO MULTIPLY THIS PROCEEDING CONSIDERABLY BY CREATING NUMEROUS MINI-TRIALS CONCERNING THE PROPRIETY OF EACH PAYMENT**

An important policy underlying the Evidence Rules is to eliminate unjustifiable expenses and delay in both the discovery process and at trial. Fed. R. Civ. P. 1; Fed. R. Evid. 611(a)(2). This same policy justifies denying the admissibility of evidence under Fed. R. Evid. 608(b). In this case, the evidence Crawford seeks to discover will increase the scope of both pre-trial and trial proceedings in this case significantly.

Courts may, in their discretion, limit the scope of individual depositions and discovery in general in order to provide that the information produced is likely to be relevant and in order to ensure the efficiency of the litigation process. *See, e.g., Cobell v. Norton*, 226 F.R.D. 67, 83 (D.D.C. 2005) (court limited scope of questioning for various depositions and prohibited discovery into areas that it determined as straying beyond the scope of the underlying litigation and to ensure efficiency of the litigation). Likewise,

12

doubts over whether the alleged specific instances of misconduct in fact occurred or are actually improper can lead to time-consuming and distracting mini-trials, warranting exclusion of such evidence. *See, e.g., U.S. v. Rios Riz*, 579 F.2d 670, 674 (1st Cir. 1978) ("one of the policy reasons for Rule 608(b) [is] avoiding fact-finding detours to determine whether allegations of prior misconduct on the part of the witness are accurate"); Charles Alan Wright et al., 28 *Federal Practice & Procedure – Federal Rules of Evidence* § 6118.

Crawford's allegation in Count VII of his Complaint that the requested $135,000 was improper is made without any support. Investigating and litigating the propriety of this payment alone will take time and require testimony of witnesses. Defendants will present evidence at trial that show the payment was in-fact proper, lawful and approved by WPS's new majority shareholder (Parthenon).

Allowing Crawford to examine all payments made to Kulkarni over a vast period would expand the scope of discovery needed to prepare for trial and result in numerous time-consuming and distracting mini-trials concerning the propriety of each payment. This would greatly increase the number of pre-trial and trial witnesses, and would likely require outside accounting and close-corporation experts to testify about the payments.

For example, many of the payments Crawford seeks to explore occurred prior to the December 28, 2001 Parthenon acquisition, and prior to a related transaction that occurred with WPS's former lender (Citizens Bank) which involved forgiveness of more than $10 Million in loans. To fully explore the propriety of any payments prior to the Parthenon acquisition and Citizens Bank loan forgiveness would require testimony from all persons involved in the payments. Both the Parthenon acquisition and the Citizens

Bank loan forgiveness transactions involved substantial due diligence investigation by auditors representing both entities. It is reasonable to expect that a review of those due diligence exercises will be required. It may also be necessary to conduct depositions of those responsible for conducting due diligence audits to inquire about their conclusions concerning the payments to Kulkarni. Indeed, the evidence will show that both Citizens Bank and Parthenon executed releases in connection with their various transactions *after* conducting extensive due diligence. For all payments made after the Parthenon acquisition, testimony would be required from persons at Parthenon who approved of such payments. Some of the payments to Kulkarni were tax-related, which would likely require testimony from witnesses with tax expertise to explain the propriety of such payments. Simply put – the scope of examining the propriety of every payment made to Kulkarni is daunting, especially in light of the irrelevance of such information and the likely inadmissibility of such evidence under Fed. R. Evid. 403 and 611.

If Crawford has his way in discovery, he will turn a molehill in to a mountain from an evidence perspective. Indeed, investigating and litigating the propriety of numerous payments to Kulkarni – other than the sole $135,000 payment at issue - would likely overshadow the main case. For this reason, this Court should exercise its discretion to limit discovery to Crawford's unambiguous allegations in Count VII and preclude discovery into any payments beyond the $135,000 payment that Crawford tried to thwart.

## CONCLUSION

By this Motion, the defendants seek a reasonable ruling from this Court – simply, to limit Crawford's discovery efforts to the scope of his claims. Evidence of payments

beyond the one alleged in Count VII is irrelevant to this case. Likewise, Crawford should

not be permitted delve into such irrelevant areas to support his admitted primary purpose

in doing so – to obtain improper "propensity" evidence. Disclosure of the irrelevant

payments would also be unduly annoying, harassing, embarrassing, and intrusive to WPS

and Kulkarni. Finally, investigating and litigating those numerous payments would

multiply the scope of this case by creating numerous mini-trials over the propriety each

payment. Neither the pre-trial discovery rules nor the rules of evidence require that such

an expansive inquiry be permitted. Thus, defendants respectfully request that this Court

limit discovery in this case to an exploration of the propriety of the sole payment alleged

in Count VII.

Dated: November 27, 2005

Respectfully submitted,

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,

By their attorneys,

/s/ Mark M. Whitney
Mark Whitney (BBO #637054)
Jeffrey D. Kuhn (BBO #662326)
MORGAN, BROWN & JOY, LLP
200 State Street
Boston, Massachusetts  02109
(617) 523-6666

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 27, 2005, I filed the foregoing document

with the Clerk of the Court by using the ECF system and served copies of the same upon

Peter A. Crawford via e-mail.  I further certify that I mailed the foregoing document and

the notice of electronic filing to the pro se plaintiff, Peter A. Crawford, 23 Newcastle

Drive, #11, Nashua, NH  03060, by U.S. mail, on the next business day, November 28,

2005.

/s/ Mark M. Whitney
Mark M. Whitney, Esq.