**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
————————————————————————————

PETER A. CRAWFORD,

       Plaintiff,

                                 Civil Action No.
v.                               05-cv-10078 (DPW)

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,                **Oral Argument Requested**

       Defendants.
————————————————————————————

## AFFIDAVIT OF MARK M. WHITNEY IN SUPPORT OF DEFENDANTS' SECOND MOTION FOR PROTECTIVE ORDER

MARK M. WHITNEY, being duly sworn deposes and says:

1.      I am a member of the bar of the Commonwealth of Massachusetts and of this Court.  I am counsel for all three defendants in the above-captioned matter.  I make this declaration in support of defendants' second motion for a protective order, which seeks to limit discovery concerning all payments of compensation and fringe benefits paid from defendant Wolverine, Proctor & Schwartz, Inc. ("WPS") to defendant Deepak Kulkarni ("Kulkarni"), except for the one payment alleged in Count VII of the Complaint – a payment of $135,000 that *pro se* plaintiff, Peter Crawford ("Crawford") attempted to block on January 14, 2002.

2.      Annexed hereto as **Exhibit "A"** is a copy of excerpted pages from the defendants' response to plaintiff's first set of interrogatories, interrogatory #4.

3.      During the course of discovery, Crawford has focused a substantial portion of his efforts on seeking the disclosure of various payments made by WPS to Kulkarni.

4.     Despite the fact that Count VII relies on an alleged dispute about just one payment that occurred on January 14, 2002, , and despite the fact that the contract at issue covered a brief three-month period at the beginning of 2002, Crawford has sought payment information from as far back as 1999 and as far forward as 2005.

5.     After it became clear that Crawford intended to seek disclosure of payments spanning a broad period, defense counsel commenced discussions with Crawford in an effort to understand the basis for Crawford's desire for the information.  Specifically, defense counsel demanded that Crawford explain his basis for seeking evidence relating to any payment information other than the one payment he alleges led to his termination.  Annexed hereto as **Exhibit "B"** is a copy of an email that I sent to Crawford on November 10, 2005, seeking to resolve the issues raised in this motion.

6.     Crawford's explanation is detailed in an e-mail that he sent to defense counsel on November 13, 2005.  Annexed hereto as **Exhibit "C"** is a copy of an email sent by Crawford to me on November 13, 2005, explaining the reasons why he seeks discovery of payments to Kulkarni.

/s/ Mark M. Whitney
Mark M. Whitney

Dated:  November 27, 2005

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on November 27, 2005, I filed the foregoing document with the Clerk of the Court by using the ECF system and served copies of the same upon Peter A. Crawford via e-mail.  I further certify that I mailed the foregoing document and the notice of electronic filing to the pro se plaintiff, Peter A. Crawford, 23 Newcastle Drive, #11, Nashua, NH 03060, by U.S. mail, on the next business day, November 28, 2005.

<u>/s/ Mark M. Whitney</u>
Mark M. Whitney, Esq.

Using this formula, however, yields a different result than that obtained by Crawford. BOOKDIF = ($43,984 − [−$2,324,067.61]) / 0.4396 = $5,386,832.60. Therefore, the WPS BOOKDIF for 2001 is $5,386,832.60.

**INTERROGATORY NO. 3:**

State the basis for the statement in the Affidavit of Mark Brown, dated April 6, 2005, and submitted by Defendants in support of their Motion to Dismiss that on January 14, 2002, "Deepak Kulkarni [was] then the Chief Executive Officer of Wolverine." Identify each and every document upon which defendant WPS relies to support this contention. For each and every position held by Mr. Kulkarni with WPS from December 1, 2001 through present, whether such position be Chairman, President, CEO, consultant, or any other title, state the dates on which Mr. Kulkarni held that position. State the basis for the contention by WPS that he held that position. Provide any additional information which is required by Local Rules 26.5(c)(4) and 26.5(c)(8) as a result of the plaintiff's use of the words "identify" and "state the basis" in this interrogatory.

**ANSWER:**

The basis for Mr. Brown's statement are the minutes of the WPS Board of Directors meeting held on February 28, 2002. Mr. Kulkarni served as the CEO and Chairman of the Board of WPS from prior to December 1, 2001 through February 28, 2002. Subsequent to February 28, 2002, Mr. Kulkarni served as Chairman of the Board of WPS and as a company consultant.

**INTERROGATORY NO. 4:**

State the basis for the statement in the Affidavit of Mark Brown, dated April 6, 2005, and submitted by Defendants in support of their Motion to Dismiss that Mr. Brown "later learned

- 11 -

that… Mr. Kulkarni had obtained the authority to terminate Mr. Crawford from the WPS Board of Directors."

   a. Identify each member of the Wolverine Board of Directors as of January 14, 2002 (hereinafter "Wolverine Board Member").

   b. State the means by which each Wolverine Board Member was consulted, if that person was, regarding the plaintiff's termination and the date and time at which such consultation was made.

   c. Identify each and every communication between or among any of Mr. Kulkarni, Mr. Brown or any Wolverine Board Member, whether by telephone, in person, by electronic mail, or by any other means, on January 14, 2002, and the nature and content of such communications.

   d. Identify each document (of whatever form as defined in Fed. R. Civ. P. Rule 34(a)), including, but not limited to telephone bills, cellular telephone bills, or electronic mails, which provides any evidence of any Board Communication on January 14, 2002. For purposes of this interrogatory, the term "Board Communication" includes any call by landline telephone originating from any telephone at the Wolverine, Proctor & Schwartz, Inc. facility at 51 East Main St., Merrimac, MA and destined for a Board Member Telephone Number, any cellular or landline telephone call originating from a Board Member Telephone Number and destined for an 800 or other toll free telephone number utilized by the Wolverine, Proctor & Schwartz, Inc. facility at 51 East Main St., Merrimac, MA, or any call or electronic mail originating from, or destined for, any cellular telephone number or electronic mail account customarily utilized by Mr. Kulkarni or Mr. Brown, and communicating with any Board Member Telephone Number

- 12 -

or electronic mail account known by WPS to be utilized by any Wolverine Board Member. For purposes of this interrogatory, the term Board Member Telephone Number includes any telephone known to WPS as being a telephone in the offices of Parthenon Capital in Boston, MA, the home or cellular telephone number of any employee, principal of, or consultant to, Parthenon Capital, any home or cellular telephone number customarily utilized by Mr. Kulkarni or Mr. Brown, or any of the following telephone numbers: 617-478-7064, 617-236-8135, 617-306-4000, 617-478-7091, 617-710-5443, 617-710-5443, 617-262-7960, 617-262-7961, 617-460-5445, 603-433-4745, or 978-764-4679.

e. Identify each document (of whatever form as defined in Fed. R. Civ. P. Rule 34(a)) including, but not limited to, board meeting minutes or board resolutions evidencing action or discussion by any member of the Wolverine Board of Directors relating in any way to termination of the plaintiff's employment.

f. Provide any additional information which is required by Local Rule 26.5(c)(3), 26.5(c)(4) or 26.5c(8) as a result of the plaintiff's use of the words "identify" and "state the basis" in this interrogatory.

**ANSWER:**

a. **WPS Board of Directors as of January 14, 2002:**

- Mark A. Brown
- Ernest K. Jacquet
- Deepak S. Kulkarni
- John C. Rutherford
- Erik Scott

b. On January 14, 2002, after consultation with the WPS senior staff, Messrs. Kulkarni and Brown conducted a teleconference with Mr. Scott to discuss Crawford's potential termination.

Messrs. Kulkarni, Brown and Scott agreed that it was appropriate for WPS to terminate Crawford's employment.    Mr. Scott then consulted in-person with Messrs. Jacquet and Rutherford on the topic of Crawford's termination from WPS.    Messrs. Scott, Jacquet and Rutherford all agreed that Crawford's immediate termination as CEO of WPS was appropriate. Mr. Scott then conducted another teleconference with Messrs. Kulkarni and Brown in which Mr. Scott communicated the positions of Messrs. Rutherford and Jacquest to Messrs. Kulkarni and Brown.  It was then determined that the WPS Board of Directors was unanimous in its collective determination that Crawford should be immediately terminated.

c.    On January 14, 2002, after consultation with the WPS senior staff, Messrs. Kulkarni and Brown conducted a teleconference with Mr. Scott to discuss Crawford's potential termination. Messrs. Kulkarni, Brown and Scott agreed that it was appropriate for WPS to terminate Crawford's employment.    Mr. Scott then consulted in-person with Messrs. Jacquet and Rutherford on the topic of Crawford's termination from WPS.    Messrs. Scott, Jacquet and Rutherford all agreed that Crawford's immediate termination as CEO of WPS was appropriate. Mr. Scott then conducted another teleconference with Messrs. Kulkarni and Brown in which Mr. Scott communicated the positions of Messrs. Rutherford and Jacquest to Messrs. Kulkarni and Brown.  It was then determined that the WPS Board of Directors was unanimous in its collective determination that Crawford should be immediately terminated.

d.    Objection.  WPS objects to this interrogatory because it is overly broad, unduly burdensome, redundant and cumulative, seeks information that is irrelevant to the issued raised in this action, and is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the above objections or any of the General Objections, and without investigating whether the requested phone records even exist more than three years later, WPS

states that on January 14, 2002 numerous telephone calls were placed between and among the persons relevant to this interrogatory, many of which had nothing to do with Crawford's termination. WPS further states that it will not be able to ascertain, more than three years later, which telephone calls pertained to Crawford's termination and which did not. However, WPS states that the witnesses identified in subparts "b" and "c" above can testify as to their personal recollection of participating in the telephone calls and face-to-face discussions described therein relating to Crawford's termination.

e.    Minutes of the WPS Board of Directors meeting held on February 28, 2002

f.    N/A

As to objections only,

WOLVERINE, PROCTOR & SCHWARTZ, INC.,

By Its Attorneys,

_____
Mark Whitney (BBO #637054)
Jeffrey D. Kuhn
MORGAN, BROWN & JOY LLP
200 State Street
Boston, Massachusetts 02109
(617) 523-6666
*Counsel for Defendant*

Dated: August 5, 2005

- 15 -

**Whitney, Mark**

| | |
|---|---|
| **From:** | Whitney, Mark |
| **Sent:** | Thursday, November 10, 2005 7:19 PM |
| **To:** | 'Peter Crawford' |
| **Cc:** | Kuhn, Jeff; Kugell, Jaclyn; Robert R. Berluti Esq. (rberluti@bermac-law.com) |
| **Subject:** | Wolverine case - discovery issue to resolve |
| **Importance:** | High |

**Mr. Crawford,**

**Please consider this email as initiating a discovery conference as required by local rules, and as our attempt to resolve a discovery issue with you directly in the hope of avoiding motion practice.  The issues raised herein relate to all future depositions in this matter.**

**At the deposition of Mr. Brown, you spent a considerable amount of time asking questions about payments to Mr. Kulkarni and other transactions that occurred outside the period relevant to this case, and well outside the scope of the allegations in your complaint.  As I am sure you recall, I eventually began objecting to those types of questions as irrelevant and bordering on harassment of the witness.  As I explained at more than one point in Brown's deposition, such questioning has no relevance to your claims.  It is the defendants' position that this line of questioning, like your pursuit of 2005 financial/recap information, amounts to nothing more than a harassing, "fishing expedition."  (I should also note that the line of questioning that you pursued was often cumulative as well.)  We do not suggest that your questioning about events and circumstances relating to the $135k payment in January 2001 is irrelevant to your claims.**

**Simply put, I will not permit this line of questioning to take place at subsequent depositions unless you can demonstrate its relevance to this case.  If you cannot demonstrate to us that this line of questioning is relevant, proper and non-harassing, and if you intend to continue asking such questions, then we will be making a second motion for a protective order to address the issue with the court.**

**You may want to consider whether or how this impacts the dates of the depositions.  Like we did with Brown, we are willing to go forward with the depositions as scheduled and to make the appropriate statements and objections on the record.  Of course, if we were to lose this second potential motion, we would make the witnesses available to answer such questions as the court permits, without waiving the 7-hour limit.**

**I will only be in the office tomorrow until 12 noon.  However, you can feel free to discuss these issues with Jeff Kuhn, who will be here all day.**

*Mark M. Whitney*
Morgan, Brown & Joy, LLP
200 State Street
Boston, MA  02109-2605
Direct Ph: 617-788-5023
Direct Fx: 720-293-9696
Mobile Ph: 617-365-7529
Bio and V-card download
MB&J Website

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.

**Whitney, Mark**

---

| | |
|---|---|
| **From:** | Peter Crawford [petercra@ix.netcom.com] |
| **Sent:** | Sunday, November 13, 2005 5:46 PM |
| **To:** | Whitney, Mark |
| **Subject:** | Re: Wolverine case - discovery issue to resolve |

Mr. Whitney:

As you know, the Local Rules provide for a discovery conference within 7 days. In order that such a conference might be fruitful, I would ask that you review the applicable Federal Rules of Evidence and the underlying case law prior to such a conference. Among these authorities are the following:

1. Fed. R. Evid. 404(b). It is plaintiff's position that the other transactions that you allege are irrelevant shed light upon a continuing plan by Mr. Kulkarni improperly to extract money from WPS, with the motive of supporting his lavish lifestyle, that the preparation for such plan included the hiding of certain alleged liabilities of the company to him from Parthenon Capital and from me, and that transfers made to him, including those in December 2001 and those identified in the Omnibus Agreement of November 2002 were all part of this plan. Such evidence is highly relevant as it demonstrates a pattern and practice of the very type of transaction alleged in Count Seven of the Complaint. Rule 404(b) makes such evidence admissible as the evidence is for a purpose beyond proving character or actions in conformity therewith.

2. Huddleston v. United States 485 U.S. 681, 685 (1988) (Rule 404(b) applicable in both civil and criminal contexts, and extrinsic act evidence is admissible).

2. Fed R. Evid. 401. All evidence tending to make a fact of consequence more likely is admissible (unless prohibited by another rule). Of course, evidence of the similar other transactions would tend to make it more likely that the events alleged as a basis for Count Seven are true. To be sure, if another rule prohibits admission of the evidence Rule 401 would not override it, but that's not the case.

3. Fed. R. Evid. 406. The transfers and the consistent response of Mr. Kulkarni to his cash needs was to invent rationales of varying validity for such transfers. Thus other evidence of such a routine practice is admissible to show action in conformity therewith.

4. Fed. R. Evid. 608(b). Specific instances of conduct, when probative of truthfulness or untruthfulness may, in the court's discretion, be inquired into on cross examination. Evidence of fraudulent or Improper transfers may therefore provide a basis for cross examination and would therefore be discoverable as being reasonably calculated to lead to admissible evidence.

5. Hickman v. Taylor, 329 U.S. 495, 507 (1947). Time honored cry of "fishing expedition" does not preclude inquiry into facts.

You should also note that Rules 404(b) and 406 apply to admissibility at trail. A much broader standard is applicable during discovery: it is only necessary that it be demonstrated that the request or question be reasonably calculated to lead to the discovery of admissible evidence.

I also suggest that you consider these authorities carefully before objecting or advising your client not to answer in any of the upcoming depositions.


Peter Crawford



On Nov 10, 2005, at 7:18 PM, Whitney, Mark wrote:


**Mr. Crawford,**


**Please consider this email as initiating a discovery conference as required by local rules, and as our attempt to resolve a discovery issue with you directly in the hope of avoiding motion practice. The issues raised herein relate to all future depositions in this matter.**


**At the deposition of Mr. Brown, you spent a considerable amount of time asking questions about payments to Mr. Kulkarni and other transactions that occurred outside the period relevant to this case, andwell outside the scope of the allegations in your complaint. As I am sure you recall, I eventually began objecting to those types of questions as irrelevant and bordering on harassment of the witness. As I explained at more than one point in Brown's deposition, such questioning has no relevance to your claims. It is the defendants' position that this line of questioning, like your pursuit of 2005 financial/recap information, amounts to nothing more than a harassing, "fishing expedition." (I should also note that the line of questioning that you pursued was often cumulative as well.) We do not suggest that your questioning about events and circumstances relating to the $135k payment in January 2001 is irrelevant to your claims.**


**Simply put, I will not permit this line of questioning to take place at subsequent depositions unless you can demonstrate its relevance to this case. If you cannot demonstrate to us that this line of questioning is relevant, proper and non-harassing, and if you intend to continue asking such questions, then we will be making a second motion for a protective order to address the issue with the court.**


**You may want to consider whether or how this impacts the dates of the depositions. Like we did with Brown, we are willing to go forward with the depositions as scheduled and to make the appropriate statements and objections on the record. Of course, if we were to lose this second potential motion, we would make the witnesses available to answer such questions as the court permits, without waiving the 7-hour limit.**


**I will only be in the office tomorrow until 12 noon. However, you can feel free to discuss these issues with Jeff Kuhn, who will be here all day.**


*Mark M. Whitney*

Morgan, Brown & Joy, LLP

200 State Street

Boston, MA  02109-2605

Direct Ph: 617-788-5023

Direct Fx: 720-293-9696

Mobile Ph: 617-365-7529

Bio and V-card download

MB&JWebsite

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS ATTORNEY PRIVILEGED AND/OR CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.