UNITED STATES DISTRICT COURT
District of Massachusetts

Civil Action
No. 05-10078-DPW

PETER A. CRAWFORD, Plaintiff )
)
)
v. )
)
WOLVERINE, PROCTOR & SCHWARTZ, INC., )
Steven F. Chilinski, Deepak S. Kulkarni, )
)
Defendants )

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO COMPEL THE DEPOSITION OF DEFENDANT KULKARNI AND FOR SANCTIONS AND EXPENSES**

**I. DISCOVERY CONFERENCE**

Plaintiff and attorneys for all defendants (Mark Whitney and Jeffrey Kuhn of Morgan, Brown and Joy) met at the offices of Morgan, Brown & Joy on Monday, November 21, 2005 at approximately 11:00 a.m. for approximately 10 minutes. Their position was that defendant Kulkarni would not attend the deposition scheduled at that time because of concerns that questions might be asked regarding payments to him similar to the one that defendant Kulkarni sought, as alleged in Count 7 of the Complaint. They indicated that they planned to, but had not yet filed a motion for a protective order relating to this issue. This position was unchanged from that announced, for the first time, in an e-mail to the plaintiff of the prior Friday, November 18, 2005. Plaintiff suggested that the prior procedure of counsel objecting or advising their client not to answer, followed by a refusal of the client to answer would permit testimony into a large

1

number of indisputably relevant areas while preserving the rights of all parties. Counsel responded that Mr. Kulkarni was unwilling to return to answer additional questions as would be necessary if he refused to answer certain questions, but lost a related motion to compel.

II. NATURE OF THE CASE AND FACTS RELEVANT TO DISCOVERY MATTERS

This case seeks damages for breach of a written contract for a bonus payable to the plaintiff in the amount of $357,856.25, based upon his employment of Chief Operating Officer ("COO") of Wolverine, Proctor & Schwartz, Inc. ("Wolverine") during 2001. Additional amounts are sought under an oral agreement to increase the bonus percentage, and treble damages are sought from defendants Wolverine and Chilinski (the CEO of Wolverine until early 2005) under the Massachusetts Payment of Wages statute. Additional amounts are sought from all defendants, including Kulkarni (Wolverine CEO during 2001), relating to the early termination of an agreement providing for 3 months of employment of the plaintiff after the sale of Wolverine.

The plaintiff assumed the position of COO of Wolverine in late 1999, successfully turning around the company and permitting its sale in late 2001. Between December 28, 2001 and December 31, 2001, Wolverine was recapitalized and Parthenon Capital took majority control of the company. Complaint ¶16. Prior to that, defendant Kulkarni had been the sole shareholder. Complaint ¶15. On December 17, 2001, defendant Kulkarni transferred $159,298.52 from the company's bank account to his own account, and on December 27, 2001, a single day before the recapitalization transaction closed, he transferred an additional $188,178.55. See Plaintiff's Affidavit in Support of

2

his Motion to Compel the Deposition of Defendant Kulkarni and for Sanctions and Expenses (hereinafter "Plaintiff's Affidavit") ¶13, Exhibit D.

Parthenon was provided with balance sheets, as of November 30, 2001, for Wolverine prior to the late December, 2001 transaction. In addition, Kulkarni had represented, prior to the transaction that there had not been "any change in the assets, liabilities or financial condition of any of the Contributed Companies or any of their respective Subsidiaries from that set forth in the unaudited balance sheet as at (sic) such date included in Exhibit F hereto, other than changes in the Ordinary Course of Business which have not been, either in any case or in the aggregate, materially adverse…"[1]

Also on December 28, 2001, the plaintiff entered into a Transition Agreement whereby he agreed to remain with Wolverine through March 31, 2002 and to "perform such services to and for the Company as may be reasonably requested by the Chief Executive Officer of the Company or its Board of Directors to facilitate the transition of the Company's management."[2] Defendant Kulkarni on the same day entered into a Consulting Agreement whereby he agreed that he would "have no right, power or authority in any way to bind the Company to the fulfillment of any condition, contract or obligation or to create any liability binding on the Company."[3]

On January 14, 2002, defendant Kulkarni sought authorization from the plaintiff for a payment of $135,000 from Wolverine, above and beyond his stated compensation under the Consulting Agreement of $1 million per year (of which $.5 million was a

---

[1] Deepak Kulkarni Representation and Warranty, Indemnity and Subscription Agreement dated December 28, 2001 §3.8(a). The Contributed Companies included Wolverine and other subsidiaries and related companies. Exhibit F was apparently the September 30, 2001 balance sheet.
[2] Transition Agreement ¶1, attached to Plaintiff's Affidavit in Support of his Motion to Compel Responses to his Request for Production of Documents, Set No. 1
[3] Paragraph 3(b) of the Consulting Agreement, produced by defendants as Bates number W0739.

bonus). After the plaintiff indicated that representatives of Parthenon should be contacted for approval, defendant Kulkarni angrily replied that he alone would deal with Parthenon, and that henceforth the Wolverine CFO and his U.K. counterpart alone would deal with disbursement decisions, and that the plaintiff remained employed by Wolverine only because of defendant Kulkarni's actions. Later that day, the plaintiff was informed that the Wolverine board of directors had voted to terminate his employment immediately. Complaint ¶¶22-23. Count Seven of the Complaint alleges that defendant Kulkarni thereby tortiously interfered with plaintiff's contract. Complaint ¶¶57-73.

Under the terms of a letter agreement dated January 4, 2000 (the "Employment Contract"), the plaintiff became entitled to five percent of Wolverine's profits as a bonus, the profits being defined by a formula based upon earnings before interest, taxes or deductions for depreciation or amortization (EBITDA) less certain deductions for capital expenditures, interest, taxes or reserve adjustments. Based upon this formula, plaintiff maintains that Wolverine's 2001 profits were $7,157,125, an amount that includes an "extraordinary gain" of $10,169,839. Based upon their response to Plaintiff's Interrogatories, Set No. 1, Interrogatory 2, the inclusion of this gain is the sole dispute that defendant Wolverine has with the plaintiff's calculation. Nothing in the Employment Contract, however, indicates that the extraordinary gain was to be excluded, and the bonus provisions of the Employment Contract were reaffirmed and preserved on December 28, 2001 by the Transition Agreement between Wolverine and the plaintiff. At the time of this agreement the fact and magnitude of the extraordinary gain were known.

During the discovery process, a dispute arose between the parties as to the discoverability of certain documents and facts related to a subsequent recapitalization of Wolverine Proctor LLC, the parent company of Wolverine, in early 2005. This recapitalization apparently created a new entity, Wolverine, Proctor & Schwartz, LLC. The 2005 recapitalization and 2005 financial statements are the subject of a pending Motion to Compel by plaintiff, and a Cross Motion for a Protective Order by defendants. These motions are scheduled to be heard on November 28, 2005. Because of the pending motions, the parties agreed that, during depositions occurring prior to a decision on these motions, that defendants' counsel would advise the witness not to answer any questions relating to the 2005 matters, and the witness would refuse to answer, with the proviso that, if the plaintiff prevailed on the Motion to Compel, that the witness would return to answer further questions. See Plaintiff's Affidavit ¶ 14, Exhibit E. The depositions of Mark Brown, current president of Wolverine Proctor & Schwartz, LLC ("WPS LLC"), Marian Lord, staff accountant of WPS LLC, and Steve Chilinski have already been conducted, and in each case the parties followed this procedure. On November 15, 2005, Ms. Lord testified extensively regarding various payments to defendant Kulkarni during 2001.

On or before October 26, 2005, plaintiff and defendant Kulkarni's counsel agreed that November 21, 2005 would be a mutually convenient date for the deposition of defendant Kulkarni, that Mr. Kulkarni would be available on that date, and that such deposition would occur at the offices of Morgan, Brown & Joy in Boston. A notice of taking of that deposition was mailed to defendant Kulkarni's counsel on October 26, 2005. See Plaintiff's Affidavit ¶2, Exhibit A.

As the depositions of Mr. Brown, Mr. Chilinski and Ms. Lord progressed, it became apparent that defendants' counsel had some concerns regarding inquiry into payments to defendant Kulkarni, however, the witnesses were permitted to answer questions regarding those payments that occurred in 2001 and 2002, and defendants had produced 149 pages of documents relating to defendant Kulkarni's compensation and payments to him, in response to plaintiff's first request for production of documents. See defendants' response to these requests, Request No. 9, attached to Plaintiff's Affidavit in Support of his Motion to Compel Responses to his Request for Production of Documents, Set No. 1, filed on October 24, 2005.

Nevertheless, on Friday, November 18, 2005, just one business day prior to his scheduled deposition, defendant Kulkarni's counsel notified plaintiff by e-mail that they objected to any inquiry into payments to Mr. Kulkarni beyond the specific one alleged in the Complaint, and that defendant Kulkarni would not be attending the deposition because of the fact that questions relating to such other payments might be asked. No concern was expressed in that e-mail regarding questions relating to the 2005 recapitalization and the 2005 financials, the only subjects of the single Motion for a Protective Order that had actually been filed by defendants' counsel. See Defendants' Cross-Motion for a Protective Order, filed on November 4, 2005. Plaintiff responded that there was no basis for refusing to attend a deposition because of questions that might be asked and he refused to delay the deposition. Plaintiff's Affidavit ¶4, Exhibit C. Plaintiff appeared, prior to 11:00 a.m. on November 21, 2005, at the offices of Morgan, Brown & Joy, together with a court reporter. He was advised at that time by defendants' counsel that Mr. Kulkarni would not be attending, but plaintiff nevertheless remained

6

until 12:01 p.m. at which time he left. The court reporter remained until 11:33 a.m. As a result of the failure of defendant Kulkarni to attend, plaintiff has incurred, or will incur, expenses of $220.97. See Plaintiff's Affidavit ¶¶5-12.

Despite the fact that defendants' attorneys represented to plaintiff that a motion for a protective order would be filed prior to the time scheduled for the Kulkarni deposition, according to this Court's Pacer web site, none had been, as of 11:00 a.m. on November 22, 2005.

This Court has established December 16, 2005 as the date by which all discovery is to be completed.

### III. PLAINTIFF IS ENTITLED TO AN ORDER COMPELLING DEFENDANT KULKARNI TO ATTEND HIS DEPOSITION, INDEPENDENT OF CONCERNS REGARDING QUESTIONS THAT MIGHT BE ASKED

The Federal Rules of Civil Procedure are crystal clear that, once a notice of deposition has been issued to a party, attendance is required. While the refusal or failure to answer a particular question requires that a Motion to Compel be ruled upon, and a party fail to follow a court order before sanctions may be imposed, the situation is different when a party fails to attend a deposition at all. Fed. R. Civ. P. Rule 37(d) states that "[i]f a party… fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice… the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule." Rule 37(d) goes on to state that:

> "[i]n lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure

7

>unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust. The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c).

There is no dispute that defendant Kulkarni has information that is relevant, admissible and discoverable in this case. There is simply no basis for defendants' contention that defendant Kulkarni need not answer <u>any</u> questions because <u>some</u> questions that <u>might</u> be asked at his deposition <u>might</u> be objectionable. If such were the case, parties would be able to postpone their depositions indefinitely by inventing a succession of objectionable topics, and filing, or threatening to file, motions for protective orders. The circumstances of this case are even more compelling, where the deposition had been scheduled for nearly a month, and the range of "permissible" questions was narrowed by defendants only the Friday before the Monday deposition, and counsel did not file for a protective order prior to the deposition.

## IV. <u>PLAINTIFF IS ENTITLED TO SANCTIONS AND EXPENSES</u>

Plaintiff is clearly entitled to expenses under Fed. R. Civ. P. Rule 37(d). It was necessary for him and the court reporter to appear on November 21, 2005 as Rule 37(d) specifically requires that the "party fail[] to appear before the officer who is to take the deposition..." It was necessary for him to make this futile effort to preserve his right to sanctions and expenses under Rule 37(d).

Sanctions are also clearly available in this case. See Moore's Federal Practice (hereinafter "Moore") §37.91[1] (sanctions available after failing to appear for deposition after being served with notice; notice that deponent will not appear is not a substitute for a motion for a protective order). See also Wright, Miller & Marcus, Federal Practice and

Procedure Civil 2d (hereinafter "Wright") §2291 (no court order required to bring Rule 37(d) into play, notice of deposition is sufficient). Furthermore, even if a motion for a protective order had been pending, sanctions would not be precluded. Rule 37(d) provides that failure "may not be excused" unless there is a pending motion for a protective order, indicating that the Court may <u>not</u> take into account alleged objections in the absence of such a motion and that sanctions and/or the award of expenses are mandatory in such a case. Furthermore, Rule 37(d) clearly <u>does not prohibit</u> the award of sanctions or expenses even when a motion for a protective order is pending. In <u>Alexander v. F.B.I.</u>, 186 F.R.D. 78 (D. D. C. 1998), the issue of failure to appear for a deposition in a civil case arising out of "Filegate," was addressed. "This passage [referring to Advisory Committee notes] makes clear that the failure to appear at a deposition constitutes a violation of Rule 37(d) regardless of whether a motion for protective order has been filed." <u>Alexander</u> at 86. See also Moore §37.94, Wright §2291 (may not defend under Rule 37(d) by contending discovery is improper and objectionable; must apply for a protective order under Rule 26(c)).

    Furthermore, there is no substantial justification for defendant Kulkarni's failure to attend his deposition. By arguing that Mr. Kulkarni does not want to appear on a second day to answer further questions, his counsel is implicitly admitting that he is likely to lose on any motion for a protective order, if one is ever filed. Without addressing the merits of such a motion at this time, it is clear that he would in fact lose, as the December 2001 payments to him of over $345,000 clearly establish a pattern, practice, motive and plan of which the payment of $135,000 sought on January 14, 2002 is but a continuation. Plaintiff is not seeking to prove previous occurrences of tortious

interference by Mr. Kulkarni, but rather previous questionable transfers by Mr. Kulkarni, of which the January 14, 2002 instance is but part of the plan and scheme. This is not evidence of character and action in conformity therewith, that might be excludable at trial (but is probably still discoverable) under Fed. R. Evid. 404(b). Mr. Whitney's e-mail of November 18, 2005 indicates that he would seek to preclude discovery even relating to the December, 2001 payments. See Fed. R. Evid. 404(b), Plaintiff's Opposition to Defendants' Cross Motion for a Protective Order at 15-17.

The Federal Rules clearly contemplate the imposition of sanctions without a prior motion to compel in a case where, as here, there is a complete failure to respond. See Moore §37.90. See also R.W. Intern. Corp. v. Welch Foods, Inc., 937 F.2d 11, 15 n.2 (1st Cir. 1991) (distinguishing between failure to answer questions at deposition from failure to attend at all); Telluride Mgt. v. Telluride Inv. Group, 55 F.3d 463 (9th Cir. 1995) (affirming sanctions for failure to attend a deposition).

Furthermore, the case law is crystal clear that suppression of a deposition is rarely permitted. "Protective orders prospectively suppressing depositions are rarely granted; deponents are expected instead to assert their objections during the deposition…" Kaiser v. Mutual Life Ins. Co. of New York, 161 F.R.D. 378, 380 (S.D. Ind. 1994). See also West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301, 302 (S.D. Fla. 1990) (protective orders totally prohibiting deposition are rarely granted). Even where the deposition of counsel is sought, some courts have ruled that the deposition should proceed, with objections made at the deposition. "The circumstances are rare which justify an order that a deposition not be taken at all, and the existence of privilege is not one of those circumstances." Scovill Manufacturing Co. v. Sunbeam Corp., 61 F.R.D.

598, 603 (D. Del. 1973). But see <u>N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.</u>, 117 F.R.D. 83, 84, 87 (M.D.N.C. 1987) (prohibiting deposition of attorney but noting that orders totally preventing a deposition should rarely be granted).

Thus, even if defendants had filed a motion for a protective order prohibiting, or delaying, the deposition of defendant Kulkarni, it is clear that such a motion would have had virtually no prospect of success and would have been interposed in bad faith, thus justifying sanctions under Fed. R. Civ. P. Rule 37(d) and probably also under Fed. R. Civ. P. Rule 11(b)(1). If the motion for a protective order had been directed solely at certain questions that might be asked, the chances of success on that motion might have been slightly greater, but nothing in Fed. R. Civ. P. Rule 37(d) suggests that one may fail to attend a deposition in which valid and discoverable questions undeniably will be asked, merely because of the possibility that objectionable questions might be asked. The entire intent of the Federal Rules relating to discovery is to require responses to discovery requests that are not objectionable when such responses are due. See Fed. R. Civ. P. 33(b)(1) (must answer interrogatories to the extent not objectionable); Fed. R. Civ. P. 34(b) (if objection only to part, must permit inspection of remaining parts); Fed. R. Civ. P. 37(a)(2)(B) (proponent of deposition question may complete the deposition or adjourn it following a failure to answer a deposition question).

Finally, the suggestion of inconvenience to Mr. Kulkarni contained in Mr. Whitney's e-mail of November 18, 2005 is without significant merit. Plaintiff understands that Mr. Kulkarni resides at 130 Commonwealth Ave. in Boston, approximately a 10 minute cab ride from the Morgan, Brown & Joy offices at which the deposition was to have been held. Attendance on two different occasions would thus be

but a slight inconvenience to Mr. Kulkarni. Even if a default judgment were to be entered against Mr. Kulkarni, he remains a fact witness as to the claims against defendants Wolverine, Proctor & Schwartz, Inc. and Chilinski.

V. CONCLUSION

For the above stated reasons, Mr. Kulkarni should be ordered by this Court to attend his deposition within three business days after the Court's order, expenses of $220.97 should be imposed against defendant Kulkarni and his counsel, and this Court should impose such sanctions as it determines are just, up to and including the entry of a default judgment against Mr. Kulkarni, as permitted by Fed. R. Civ. P. Rules 37(d) and 37(b)(2)(C).

Respectfully submitted,

/s/ Peter A. Crawford
Peter A. Crawford, pro se
23 Newcastle Dr. #11
Nashua, NH 03060
(603)888-4574

Date: Nov 22, 2005

12