UNITED STATES DISTRICT COURT
District of Massachusetts

Civil Action
No. 05-10078-DPW

PETER A. CRAWFORD, Plaintiff )
)
v. )
)
WOLVERINE, PROCTOR & SCHWARTZ, INC., )
Steven F. Chilinski, Deepak S. Kulkarni, )
)
Defendants )

## PLAINTIFF'S OBJECTION TO THE PARTIAL DENIAL OF HIS MOTION TO COMPEL AND ALLOWANCE OF DEFENDANTS' CROSS MOTION FOR A PROTECTIVE ORDER

Now comes the plaintiff in the above-captioned action and objects, pursuant to Fed. R. Civ. P. 72(a), to the partial denial of his Motion to Compel Responses to His Request for Production of Documents, Set No. 1 (Docket No. 21) (hereinafter "Plaintiff's Motion to Compel") and the granting of Defendants' Cross-Motion for a Protective Order (Docket No. 24) (hereinafter "Defendants' Cross-Motion"). In support of his objection, plaintiff states that the partial denial of his motion and the granting of Defendants' Cross-Motion is clearly erroneous and contrary to law in that Local Rule 34.1(c)(1), which has the force of law under Supreme Court precedent, requires mandatory waiver of untimely objections. Furthermore, denial of the requested discovery was clearly erroneous as it is relevant to demonstrate damages, a necessary element to prove fraud in the making of the Transition Agreement, an agreement underlying defendants' defenses to Counts 5 and 6 of the Complaint in this case. In any case, plaintiff submits herewith his Plaintiff's

1

Motion for Leave to Amend his Complaint to add counts for fraud and an accounting. The requested discovery is undeniably central to the two additional counts that he seeks to add to his Complaint.

I. THE MAGISTRATES' RULING THAT DEFENDANTS FAILED TIMELY TO OBJECT REQUIRES THAT PLAINTIFF'S MOTION TO COMPEL MUST BE ALLOWED AS A MATTER OF LAW

Plaintiff's Motion to Compel and Defendants' Cross-Motion were heard on November 28, 2005. At the hearing, Magistrate Collings ruled that

"defendant waived any of the objections it either stated or might have stated to plaintiff's document requests because of its failure to serve the responses/objections within the time frame set by Rule 34, Fed.R.Civ.P. Court also rules that Request #3 fairly requested the documents re: the February 2005 recapitalization. Defendant urges Court to exercise its discretion and deny the discovery notwithstanding. Court takes that matter under advisement." (Docket entry 11/28/05).

Plaintiff had refused to grant defendants a two week extension of time to respond, due to their egregious lack of planning and lack of demonstrated necessity. Defendants failed even to meet the two week extension they had themselves requested. The request for production is dated August 8, 2005, defendants' response is dated September 28, 2005. See Plaintiff's Opposition to Defendants' Cross Motion for a Protective Order (hereinafter "Plaintiff's Opposition") at 14, FN8.

Local Rule 34.1(c)(1) is clear and unambiguous, and permits no discretion.

"When an objection is made to any document request, or subpart thereof, it shall state with specificity all grounds upon which the objecting party relies. Any ground not stated in an objection within the time provided by the Federal Rules of Civil Procedure, or any extensions thereof, shall be deemed waived." (emphasis supplied)

Magistrate Collings' decision in Krewson v. City of Quincy, 120 F.R.D. 6 (D. Mass. 1988) is in accord, although that decision appears to provide some discretion. It

was in the apparent exercise of this discretion that Magistrate Collings' ruled on January 6, 2006 that "[t]he motion to compel Request #3 is allowed only to documents generated before December 31, 2002; otherwise, denied. Request #6 is denied." However, Local Rule 34.1(c)(1) was adopted effective October 1, 1992, after the decision in Krewson. Furthermore, defendants' late response to request 3 failed to state any objection, and their response to request 6 objected only on the grounds of vagueness and ambiguity. See the memorandum in support of Plaintiff's Motion to Compel at 5, 8-9.

The Supreme Court has on a number of occasions made it clear that Court Rules, even Local Rules, have the force of law. In Rio Grande Irrigation & Colonization Co. v. Gildersleeve, 174 U.S. 603 (1899), the Supreme Court affirmed a default judgment where the Court Rule required that a motion to vacate be filed within 10 days, and two months had passed before the motion had been filed. It held that:

> "[a]s no discretionary power was reserved to the trial judge, he could not dispense with this rule of court. As was said in Thompson v. Hatch, 3 Pick. 512: 'A duly-authorized rule of court has the force of law, and is binding upon the court as well as upon parties to an action, and cannot be dispensed with to suit the circumstances of any particular case. ... The courts may rescind or repeal their rules, without doubt, or, in establishing them, may reserve the exercise of discretion for particular cases. But the rule, once made, without any such qualification, must be applied to all cases which come within it, until it is repealed by the authority which made it.'" Rio Grande at 608-609.

The same principle applies to Local Rules. In United States v. Hvass, 355 U.S. 570 (1958), the Supreme Court reversed the dismissal of a perjury indictment against an attorney testifying under a Local Rule of a U.S. District Court, notwithstanding the fact that the statute required that "a law of the United States [must] authorize[] an oath to be administered." Hvass at 571, FN1. The Supreme Court held that "[t]he phrase 'a law of the United States,' as used in the perjury statute, is not limited to statutes, but includes as well Rules and Regulations which have been lawfully authorized and have a clear legislative base..." Hvass at 575. Here, as in Hvass, 28 U.S.C. §2071(a) provides such a basis.

3

"The Supreme Court and <u>all courts established by Act of Congress</u> may from time to time prescribe rules for the conduct of their business." (emphasis supplied) See also Fed. R. Civ. P. 83(a)(1) (authorizing, and setting forth the procedure for the adoption of, Local Rules and requiring that such rules "remain[] in effect unless amended..." or abrogated by the judicial council); and <u>Weil v. Neary</u>, 278 U.S. 160, 169 (1929) (authorized rule of court has the force of law). <u>U.S. v. Diaz Villafane</u>, 874 F.2d 43, 45-47 (1st Cir. 1989) is not to the contrary. In that case, a Local Rule permitted a District Court to suspend the rules by a written order. There appears to be no equivalent rule in the District of Massachusetts and the docket entry denying plaintiff's motion includes no written suspension of Local Rule 34.1(c)(1).

## II. PLAINTIFF"S AMENDED COMPLAINT WILL MAKE, IF IT IS NOT ALREADY, THE REQUESTED DISCOVERY CENTRAL TO THE CLAIMS AND DEFENSES OF THIS CASE

The plaintiff seeks most particularly the documents relating to the February 2005 recapitalization of Wolverine Proctor LLC ("WP, LLC")[1], whereby it appears that the assets of WP, LLC. were transferred to a new entity, Wolverine, Proctor & Schwartz, LLC ("WPS, LLC") one month after this suit was filed[2]. Magistrate Collings held, in the docket entry made on November 28, 2005 and reproduced above, that such documents fell squarely within Request 3. Nevertheless, his order of January 6, 2006 precludes the production of these documents as it limits the required compliance to documents "generated before December 31, 2002," and defendants' protective order, which refers to such documents, was granted, also on January 6, 2006.

---

[1] As a result of the December 2001 recapitalization of defendant WPS, Inc., the holding company WP, LLC owned substantially all of the shares of another holding company, Wolverine Proctor, Inc., which in turn owned substantially all of the shares of WPS, Inc.

[2] The text from the WP LLC 2004 financial statements referring to this recapitalization is reproduced on pages 4-5 of the Memorandum supporting Plaintiff's Motion to Compel.

As plaintiff further argues in his memorandum supporting Plaintiff's Motion to Compel at 4-8 and Plaintiff's Opposition at 4-6, the recapitalization documents amend the contracts that must be taken together with, and interpreted as a whole along with, those upon which this case is based. They also likely evidence a continuation of defendant Kulkarni's fraudulent attempts (the subject of the proposed Amended Complaint) to deprive the plaintiff of his equity rights under the Settlement Agreement[3]. That agreement was entered into on December 28, 2001, the same day as the Transition Agreement[4], upon which Counts 5 and 6 of the Complaint are based, was signed. Also on that day, plaintiff was told by defendant Kulkarni that he had no rights to distributions or other monies other than those under a $1 million per year consulting agreement and sections 5.2 and 5.3 of an LLC Agreement, both also being executed that day[5]. Under the terms of the Settlement Agreement, the plaintiff exchanged his equity interest under the January 4, 2000 Employment Agreement[6] (which agreement also forms the basis for the bonus payment sought in this action), for 4 or 8 percent of distributions made by WP, LLC to Kulkarni pursuant to section 5.3, but not 5.2, of the LLC Agreement. Plaintiff relied on Kulkarni's representation to allay his concerns that payments or distributions to Kulkarni by WPS, Inc. or WP, LLC, in which plaintiff was not entitled to share, would reduce the value of the distributions in which he was.

Following the 2001 recapitalization, a minority interest in WP, LLC was owned by Kulkarni, and plaintiff shared in that ownership interest under the Settlement

---

[3] The Settlement Agreement is attached to the Affidavit supporting Plaintiff's Motion to Compel as pages PAC0048-PAC0051.
[4] The Transition Agreement is attached to the Affidavit supporting Plaintiff's Motion to Compel as pages PAC0043-PAC0047.
[5] See ¶8 of the Affidavit in support of Plaintiff's Opposition
[6] The Employment Agreement is attached to the Affidavit in support of Plaintiff's Motion to Compel as pages PAC0001-PAC0005.

5

Agreement. Kulkarni apparently provided to Parthenon, no earlier than December 27, 2001, the day before the 2001 recapitalization, a 153 page computer listing in which was hidden an accrued dividend, apparently payable to him by WPS, Inc., of $624,263[7]. Furthermore, no disclosure of the continuing existence of that liability was made to the plaintiff, and Kulkarni's statement to the plaintiff on December 28, 2001 that he was not entitled to "distributions or other monies" was manifestly false.

In November, 2002, Kulkarni entered into an Omnibus Agreement[8] with Parthenon whereby his right to the hidden $624,263 dividend was exchanged for the right to at least $765,980 in payments, mostly as Special Distributions under section 5.2 of the LLC Agreement[9]. Having relied on Kulkarni's false denial of his right to the accrued dividend, plaintiff was damaged when the distributions to Kulkarni reduced the present or future value of distributions to the plaintiff under section 5.3 of the LLC Agreement.

Then, one month after the filing of this suit, in a manner as yet unclear because of the inability of the plaintiff to obtain a copy of the 2005 recapitalization documents, the assets of WP, LLC were apparently transferred to WPS, LLC. Until defendants' production of documents on September 28, 2005, plaintiff was unaware of this transaction and did not receive any portion of the distributions that were most likely associated with the winding up of WP, LLC. In fact, defendants' counsel has actively misled this Court and the plaintiff as to the underlying facts in an attempt to hide even the

---

[7] At his deposition, Kulkarni claimed that the existence of that liability to him had been disclosed to Price Waterhouse Coopers, Parthenon's auditors, but he admitted that representatives of Parthenon were unhappy that they had not been told directly.

[8] The Omnibus Agreement is attached as Exhibit B to the Affidavit in support of Plaintiff's Opposition.

[9] The section of the LLC Agreement relating to distributions is attached to the Affidavit in support of Plaintiff's Opposition as Exhibit C.

existence of the 2005 recapitalization[10]. See Plaintiff's Opposition at 6-8. The WP, LLC 2004 financial statements state that Kulkarni "acquired new equity interests" in connection with the 2005 recapitalization, which new equity interests would appear to constitute distributions under the LLC Agreement. Given Kulkarni's prior fraud in connection with the negotiation of the December 28, 2001 agreements, it appears likely that the fraud was extended with the 2005 recapitalization, particularly given its suspicious timing. Plaintiff's Amended Complaint seeks damages for fraud and an accounting for the monies or other assets that may be due him under the Settlement Agreement. The 2005 recapitalization documents and the 2005 financial statements of WPS, LLC thus become indispensable to the claims and defenses in this suit.

III. CONCLUSION

For the reasons stated above, plaintiff is entitled to an order overruling Magistrate Collings' decisions on the two motions indicated. Plaintiff is entitled to have his Motion to Compel allowed with no restrictions, and defendants are not entitled to have their Cross-Motion for a Protective Order allowed.

Respectfully submitted,

_____
Peter A. Crawford, pro se
23 Newcastle Dr. #11
Nashua, NH  03060
(603)888-4574

Date: Jan. 17, 2006

---

[10] Indeed, defendants continue to obfuscate the facts and mislead the plaintiff. On December 20, 2005, defendants produced redacted documents evidencing Omnibus Agreement payments to Mr. Kulkarni of $130,967.00 on November 19, 2002, and $135,500 on April 15, 2003. However, they hid, until January 13, 2006, the existence of a $229,000 payment to Kulkarni under that agreement, made on December 20, 2002.

7

<u>Affidavit of Service</u>

I, Peter A. Crawford, plaintiff, hereby say and depose, under pains and penalties of perjury, that I this day served the within papers upon defendants' attorney, by causing copies thereof to be mailed, first class postage prepaid, to Mark Whitney, Morgan Brown & Joy, 200 State St., Boston, MA 02109.

_____

Date: Jan. 17, 2006