UNITED STATES DISTRICT COURT
District of Massachusetts

Civil Action
No. 05-10078-DPW

PETER A. CRAWFORD, Plaintiff )
)
v. )
)
WOLVERINE, PROCTOR & SCHWARTZ, INC., )
   Steven F. Chilinski, Deepak S. Kulkarni, )
)
   Defendants )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION FOR LEAVE TO AMEND HIS COMPLAINT

This motion arises out of new facts that were revealed only as a result of discovery in this case or occurred after the filing of this suit. At the time the Complaint in this matter was filed on January 12, 2005, the defendant Wolverine, Proctor & Schwartz, Inc. was owned by Wolverine Proctor, Inc., which was in turn owned by Wolverine Proctor, LLC. On February 11, 2005, Wolverine, Proctor & Schwartz, Inc. was recapitalized and the assets of Wolverine Proctor, LLC distributed to a new entity, Wolverine Proctor & Schwartz, LLC, apparently owned and controlled by defendant Kulkarni. This fact was not disclosed by defendants until September 28, 2005. Furthermore, the existence of an Omnibus Agreement, defrauding the plaintiff, was not disclosed until November 9, 2005. Plaintiff had hoped that pending discovery motions would permit additional discovery into these matters, but his access to much of the information needed to elect a remedy for fraud was denied on January 6, 2006.

1

On December 28, 2001, plaintiff entered into two agreements, a Transition Agreement and a Settlement Agreement. The former agreement relates to Counts 5 and 6 of the original Complaint in this action, and defendants have interposed the Transition Agreement as a defense to those counts. The Transition Agreement limited the continued employment by the plaintiff to three months following a transaction, in late December 2001, that recapitalized defendant Wolverine, Proctor & Schwartz, Inc., bringing in Parthenon Capital and related investors (hereinafter "Parthenon") as new majority owners through the newly-created Wolverine Proctor, LLC. The Settlement Agreement exchanged the options that plaintiff had been granted in Wolverine, Proctor & Schwartz, Inc. for an indirect equity interest in Wolverine Proctor, LLC. Under that agreement, plaintiff received the right to 4-8 percent of General Distributions to defendant Kulkarni under section 5.3 of an LLC Agreement, which governed the relationship between defendant Kulkarni, Parthenon, and Wolverine Proctor, LLC. Under that agreement, defendant Kulkarni retained an approximately 40% ownership position in Wolverine Proctor, LLC[1]. Plaintiff had no right to Special Distributions under section 5.2 of the LLC Agreement[2].

On November 9, 2005, defendants belatedly produced an Omnibus Agreement, following several months of obfuscation and outright misrepresentations to the plaintiff

---

[1] The LLC Agreement specified tiered percentages for distributions, the effect of which was to give approximately a 40% interest to defendant Kulkarni.in the event that the valuation at which Wolverine Proctor LLC was ultimately sold was the same as that implied by the December 2001 transaction.

[2] The applicable part of the LLC Agreement is attached to Plaintiff's Affidavit in Support of his Memorandum in Opposition to Defendants' Second Motion for a Protective Order as Exhibit B, the Transition Agreement as Exhibit C, the Settlement Agreement as Exhibit D, the Omnibus Agreement as Exhibit E.

2

and this Court[3]. That agreement was entered into on November 13, 2002, and by it defendant Kulkarni exchanged the alleged right to receive $624,263 in accrued dividends from Wolverine, Proctor & Schwartz, Inc. for the right to at least $765,980 in payments, most to be made as Special Distributions under section 5.2 of the LLC Agreement. On December 28, 2001, just prior to the execution by the plaintiff of the Transition Agreement and the Settlement Agreement, the plaintiff was told by defendant Kulkarni that he had no rights to distributions or other monies other than a $1 million per year Consulting Agreement and sections 5.2 and 5.3 of the LLC Agreement. That statement was false, as it denied the existence of the accrued dividend. Plaintiff was harmed when Kulkarni exchanged the hidden right to the dividend for payments that plaintiff was not entitled to share in. Prior to November 9, 2005, plaintiff was not aware that he had been defrauded as a result of defendant Kulkarni's misrepresentation. At the time of the December 2001 transaction, Parthenon was unaware of the accrued dividend, which was buried in the middle of 153 pages of computer printouts provided to it the day before the transaction closed[4].

On February 11, 2005, Wolverine, Proctor & Schwartz, Inc. was recapitalized and the assets of Wolverine Proctor, LLC apparently distributed. Plaintiff was not informed of this recapitalization until documents produced by defendants on September 28, 2005 were produced that referred to it briefly. It seems likely that even this disclosure was inadvertent as defendants had long sought, through obfuscation and outright

---

[3] See Plaintiff's Opposition to Defendants' Cross Motion for a Protective Order at 6-8 for a complete list of the repeated attempts by defendants to avoid disclosing the Omnibus Agreement and prevent the discovery of the February 11, 2005 recapitalization of defendant Wolverine, Proctor & Schwartz, Inc.

[4] Defendant Kulkarni, however, claimed at his deposition that the accrued dividend had been disclosed to Price Waterhouse Coopers, Parthenon's accountants, but never alleged that Parthenon had been told directly.

misrepresentations to this Court and to the plaintiff, to hide the fact of the recapitalization[5]. At his deposition, Mark Brown indicated that he is President of Wolverine Proctor & Schwartz, LLC, suggesting that defendant Wolverine, Proctor & Schwartz, Inc. has been liquidated, a fact that defendants do not deny, but that plaintiff has been precluded from discovering by the rulings of January 6, 2006[6]. Plaintiff believes, but is unable to ascertain for certain, that he should have been entitled under the Settlement Agreement to a portion of the distributions that must have been associated with the 2005 recapitalization. Alternatively, it is possible that defendant Kulkarni breached his fiduciary duties to the plaintiff by negotiating an amendment to the LLC Agreement that indirectly extinguished or diminished plaintiff's right to distributions.

While the fact of the fraud, at least as to the Omnibus Agreement, is clear, the remedy is not. Under general principles of the law relating to fraud, plaintiff is entitled to an election of remedies, and may select either rescission of the fraudulent contracts, or damages. See 37 Am. Jur. 2d Fraud and Deceit §359. Without knowing all of the facts as to the payments received by defendant Kulkarni, and the altered contract rights of defendant Kulkarni, and through the Settlement Agreement, the plaintiff, he cannot make an intelligent choice. Furthermore, to the extent that he appears to accept the benefits of the Transition Agreement by pursuing Counts 5 and 6, he could be equitably estopped from later rescinding that contract.

This motion does not seek to add any defendants. Nor is it anticipated that significant additional discovery would be needed, beyond the interrogatories and

---

[5] See Plaintiff's Opposition to Defendants' Cross Motion for a Protective Order at 6-8 for a description of these misrepresentations and obfuscations.

[6] Separate objections to those rulings are being filed herewith.

4

document requests previously served by the plaintiff.[7] To the extent that defendants have failed to respond to certain requests on the basis of relevancy, such objections would have to be viewed in the light of the claims and defenses of the Amended Complaint and additional responses would likely be required.

Fed. R. Civ. P. 15(a) provides that leave to amend should be "freely given when justice so requires." There is no "undue delay, bad faith or dilatory motive," nor is there any "undue prejudice to the opposing party" as would justify a denial of this motion. See Foman v. Davis, 371 U.S. 178, 182 (1962). Plaintiff is filing this motion a little more than a week after the rulings on discovery that necessitate it, and only two months after the long-hidden Omnibus Agreement was revealed. It would simply be necessary for defendants to provide additional documents and interrogatory responses that have long been requested. On the other hand, denying this motion would prejudice the plaintiff by requiring that he elect between rescinding the Transition and Settlement Agreements and seeking damages without having full knowledge of the facts.

Respectfully submitted,

*/s/ Peter A. Crawford*

Peter A. Crawford, pro se
23 Newcastle Dr. #11
Nashua, NH 03060
(603)888-4574

Date: Jan. 17, 2006

---

[7] Depending on the responses, it might also be necessary for additional deposition testimony to be obtained from defendant Kulkarni, however, it is likely that that will be necessary in any case, given the central position of his testimony to this case, and the fact that that his deposition was suspended due to the late hour, following an afternoon of long winded and unresponsive testimony by him, combined with his insistence upon stopping to read in detail each document introduced into evidence.

5