UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

PETER A. CRAWFORD,

      Plaintiff,

                                    Civil Action No.
v.                               05-cv-10078 (DPW)

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,

      Defendants.

_____

## DEFENDANTS' MOTION TO COMPEL PRODUCTION OF ELECTRONIC DATA FILES

### REQUEST FOR ORAL ARGUMENT

Defendants hereby request, pursuant to Local Rule 7.1(d), that oral argument be permitted on this motion.

### MOTION

Now comes the defendants Wolverine, Proctor & Schwartz, Inc. ("WPS"), Steven F. Chilinski ("Chilinski") and Deepak S. Kulkarni ("Kulkarni") to move that this Honorable Court compel plaintiff *pro se* Peter A. Crawford to respond to Requests No. 1, No. 9 and No. 18 from defendants' November 11, 2005 First Request for the Production of Documents and, more specifically, to produce all electronic data files currently in plaintiff's possession which relate to plaintiff's employment as WPS's Chief Operating Officer.

## CERTIFICATE OF CONFERRAL

Defense counsel hereby certifies that they have complied with the provisions of

Local Rule 37.1, as further detailed in the accompanying memorandum of law.

Dated: March 22, 2006

<div style="margin-left:40%">

Respectfully submitted,

WOLVERINE, PROCTOR &
SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI

By their attorneys,


/s/ Jeffrey D. Kuhn_____
Mark Whitney (BBO #637054)
Jeffrey D. Kuhn (BBO #662326)
MORGAN, BROWN & JOY, LLP
200 State Street
Boston, Massachusetts  02109
(617) 523-6666

</div>

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 22, 2006, I mailed the foregoing document

to the pro se plaintiff, Peter A. Crawford, 23 Newcastle Drive, #11, Nashua, NH  03060,

by U.S. Mail; I further certify that I sent a courtesy copy of this document to Mr.

Crawford at his email address petercra@ix.netcom.com on the same date.

<div style="margin-left:40%">

/s/ Jeffrey D. Kuhn_____
Jeffrey D. Kuhn, Esq.

</div>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

PETER A. CRAWFORD,

       Plaintiff,

v.

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,

       Defendants.

Civil Action No.
05-cv-10078 (DPW)

---

## AFFIDAVIT OF JEFFREY D. KUHN

JEFFREY D. KUHN, being duly sworn deposes and says:

1.      I am an attorney licensed to practice law in the Commonwealth of Massachusetts and in this Court. I am counsel for defendants, Wolverine, Proctor & Schwartz, Inc. ("WPS"), Steven F. Chilinski ("Chilinski") and Deepak S. Kulkarni ("Kulkarni") (collectively referred to herein as "defendants"), in the above-captioned matter. As counsel to the defendants, I am fully aware of the facts and circumstances underlying this matter. I submit this Affidavit in support of Defendants' Motion to Compel.

2.      Annexed hereto as Exhibit "1" are true and correct copies of relevant excerpts of the transcripts from the second day of the deposition of the plaintiff, Peter A. Crawford, which was held on February 6, 2006.

3.      Upon information and belief, many of the documents sought by defendants' instant Motion to Compel are no longer stored on WPS's computers and, as a result, there is

reason to believe that some WPS documents currently in plaintiff's possession may be the only copies of such documents available.

Signed under the penalties and pains of perjury this 22nd day of March 2006.


/s/ Jeffrey D. Kuhn
JEFFREY D. KUHN


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 22, 2006, I filed the foregoing document with the Clerk of the Court by using the ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing to the pro se plaintiff, Peter A. Crawford, 23 Newcastle Drive, #11, Nashua, NH  03060, by U.S. mail, on April 8, 2005.

/s/ Jeffrey D. Kuhn
Jeffrey D. Kuhn, Esq.

# Kuhn Affidavit

# Exhibit 1

```
1              UNITED STATES DISTRICT COURT
2               DISTRICT OF MASSACHUSETTS
3
4
5    * * * * * * * * * * * * * * * * *
     PETER A. CRAWFORD,                    *
6          Plaintiff                       *
                                           *
7    VS.                                   *   CIVIL ACTION NO.
                                           *   05-cv-10078(DPW)
8    WOLVERINE, PROCTOR & SCHWARTZ,        *
     INC.; STEVEN F. CHILINSKI and         *
9    DEEPAK S. KULKARNI,                   *
           Defendants                      *
10   * * * * * * * * * * * * * * *         *
11
12
13
14        VOLUME 2 OF THE DEPOSITION OF PETER A. CRAWFORD,
15   called by the Defendants, pursuant to the applicable
16   provisions of the Federal Rules of Civil Procedure,
17   before Ruth E. Hulke, Certified Shorthand Reporter No.
18   114893 and Notary Public for the Commonwealth of
19   Massachusetts, at Morgan, Brown & Joy, LLP, 200 State
20   Street, Boston, Massachusetts, on Monday, February 6,
21   2006, commencing at 10:07 a.m.
22
23
```

Page 2

1    APPEARANCES:

2

     PETER A. CRAWFORD, 23 Newcastle Drive, Number 11,
3    Nashua, New Hampshire, 03060, pro se.

4    MARK WHITNEY and JEFFREY D. KUHN, ESQS., of Morgan,
     Brown & Joy, LLP, 200 State Street, Boston,
5    Massachusetts, 02109-2605, on behalf of the Defendants.

6

7    ALSO PRESENT:    Deepak Kulkarni

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Page 3

```
 1                        I N D E X

 2     WITNESS          DIRECT    CROSS     REDIRECT        RECROSS

 3     Peter Crawford    4

 4

 5

 6                      E X H I B I T S

 7     NUMBER                                      PAGE

 8      16        Document PAC 412                  5

 9      17        Documents PAC 342 - 343           7

10      18        Documents PAC 363 - 370           9

11      19        Documents PAC 264 - 265          112

12      20        Documents PAC 426 - 429          115

13      21        Document PAC 423                 119

14      22        Documents PAC 110 - 101          196

15      23        12-27-01 trial balance           199

16

17

18

19

20

21

22

23
```

Page 4

1                P R O C E E D I N G S

2              MR. CRAWFORD:  Before we start, could I just

3    say a couple of things for the record.

4       First of all, Mr. Kulkarni is here with his laptop,

5    and I have again requested that if there are any

6    documents that are responsive to my prior request for

7    production or interrogatories, that I would like to see

8    them.  He responded that I would not be allowed to see

9    them and indicated that he intended to use what is on his

10   laptop as the basis for certain questions in the

11   deposition.

12      Number two, Mr. Kulkarni is wearing a tee shirt that

13   says along the top Best Wishes, has a hand with a finger

14   pointed upward, which I suppose he has a right to do

15   under the First Amendment.  But I would just like to note

16   that I believe it's unprofessional.

17                PETER A. CRAWFORD, Sworn

18                DIRECT EXAMINATION, Continued

19      Q.   (by Mr. Whitney) Mr. Crawford, since we are

20   resuming your deposition today, you understand you are

21   still under oath?

22      A.   I do.

23              MR. WHITNEY:  Mark this as an exhibit.

Page 5

1            (Document marked Exhibit No. 16 for Id.)

2            MR. WHITNEY:  Let the record reflect I have

3    marked as Exhibit Number 16 a document that has numbers

4    PAC 412, and show it to Mr. Crawford and ask if he

5    recognizes this document.

6         A.   Yes.  I believe I produced that earlier in this

7    case.

8         Q.   Can you tell me what it is?

9         A.   These are notes from discussions with Mr.

10   Kulkarni in December of 1999.

11        Q.   They're your notes.  Is that correct?

12        A.   Yes.

13        Q.   When would you take these notes?  Would it be

14   while you were talking to Mr. Kulkarni or at some other

15   time?

16        A.   I can't remember at this point.

17        Q.   At the bottom of the exhibit there's a note

18   that appears to say, "You will be an employee at will."

19   Do you see that?

20        A.   Yes.

21        Q.   Can you tell me why that's written there and

22   why you wrote it?

23        A.   To the best of my recollection, I wrote it

Page 6

1  because Mr. Kulkarni had asked me to add that to the

2  agreement.

3      Q.    Did you understand that you were an employee at

4  will under your agreement when you worked at Wolverine,

5  Proctor and Schwartz, Inc.?

6      A.    Well, I believe that's in the employment

7  agreement, the letter dated January 4th, 2000.

8      Q.    So is that a yes?

9      A.    Well, I believe that agreement governs the

10 relationship, and it does include the sentence "You will

11 be an employee at will."

12     Q.    At the time in December, '99, did you have an

13 understanding of what employee at will meant?

14     A.    General understanding, yes.

15     Q.    Do you recall what that understanding was in

16 December, '99?

17     A.    In general, that either party could terminate

18 the agreement without incurring liabilities.

19     Q.    Or without cause?  Is that correct?

20     A.    Well, certain causes would be permissible

21 reasons.  Others would not be.

22     Q.    What reasons under your contract would be

23 impermissible reasons to terminate you?

Page 187

1      Q.    Is the information preserved that was on your

2   laptop?

3      A.    That I can't be sure of.

4      Q.    Why did you not take steps to ensure that the

5   information on your laptop was preserved in some way when

6   you knew that you had not been paid a bonus that you

7   believed was due and owing to you at least as early as

8   April of 2002?

9      A.    Well, I attempted to make backup copies of the

10  material before I deleted it.

11     Q.    What do you mean by you attempted?

12     A.    I copied the information to CDs and DVDs.

13     Q.    Where are those CDs and DVDs?

14     A.    They're at home.

15     Q.    Why did you say attempted?  Because that

16  implies that perhaps they're not preserved.

17     A.    Well, I don't know for sure they are preserved.

18     Q.    Well, shouldn't you know because shouldn't you

19  have been looking through them in response to our

20  discovery requests?

21     A.    No, I don't believe that any of your discovery

22  requests required that I look through those particular

23  files.

1      Q.   So let me ask it a different way.  Did you look

2  through any of the files that you kept on your laptop in

3  connection to responding to any of the discovery requests

4  that the defendants have issued upon you in this case?

5      A.   Well, there was my personal e-mail file which

6  was still on the laptop which had occasional e-mails

7  relating to Wolverine, and that's where I found the

8  documents that I already produced which are the earlier

9  drafts of the January 4, 2000 agreement.

10     Q.   I'm going to ask you it again.  Did you look

11 through any of your hard drive backup disks that you just

12 testified about in responding to any of the discovery

13 requests propounded by the defendants in this case?

14     A.   No.  I didn't.  I think that's one of the

15 reasons for my objection as to undue burden with respect

16 to some of your requests.

17     Q.   So you --

18     A.   They were not responsive or it was too

19 difficult to do.

20     Q.   What would it be interfering with, Mr.

21 Crawford?  You're bringing a seven-figure case here.  Are

22 you contending it's too burdensome for you to go looking

23 through electronic files that are in your possession?

Page 189

1        A.    Well, you have to understand the format that

2    these files are in.

3        Q.    What format are the files in?

4        A.    Some of them are disk images.  They can only be

5    recovered by restoring them back to a hard drive of

6    exactly the same size as the one it was copied from.

7        Q.    So how many disks do you have?

8        A.    Hundreds.

9        Q.    You have hundreds of disks?

10       A.    In total, yes.

11       Q.    You haven't looked through any of them in

12   connection with this case?

13       A.    Other than the one on the laptop that had my

14   personal e-mail file that occasionally had e-mails

15   relating to Wolverine.

16       Q.    So your laptop resulted in the creation, when

17   you attempted to preserve it, it resulted in the creation

18   of hundreds of CD disks?

19       A.    No.  I'm talking about -- You asked me how many

20   disks I had.

21       Q.    You testified that you downloaded or you

22   attempted to preserve your hard drive, right, onto CD and

23   DVD disks?

Page 190

1          A.    Yes.

2          Q.    How many of those disks exist that relate to

3    your attempts to preserve your Wolverine hard drive?

4          A.    There is no Wolverine hard drive.

5          Q.    But, in any event, it's clear that you did not

6    look through any electronic files that had been removed

7    from your Wolverine laptop, the one that you personally

8    bought but used for work purposes, other than that?

9          A.    I don't call it a Wolverine laptop.  I call it

10   a Peter Crawford laptop.

11         Q.    What happened to the Wolverine-related

12   information that was on the Peter Crawford laptop?

13         A.    It may still exist on backup copies.

14         Q.    How many backup copies do you have?

15         A.    I periodically backed the laptop up, including

16   all of my personal files that are completely unrelated to

17   Wolverine, and any Wolverine files that were on there.

18         Q.    Before you deleted Wolverine files from your

19   laptop, did you make an effort to preserve them for this

20   case?

21         A.    Well, I made an effort to preserve them.

22         Q.    Did you succeed in your effort of preserving

23   them for this case?

1       A.    The backup was done before this case was filed.

2       Q.    You knew when you left Wolverine that you

3   believed they owed you upwards of a half million dollars,

4   Mr. Crawford, and you knew you weren't paid that, right?

5       A.    Right.  But you're talking about this case.

6   This case was not filed.  I attempted to preserve

7   everything that was on my laptop in some fashion.

8       Q.    Did you succeed in preserving the items?

9       A.    That I don't know because I haven't tried to

10  restore it.

11      Q.    Why have you not tried?  We've had discovery

12  requests outstanding for months in this case, months and

13  months.  You haven't even looked at the files that you

14  attempted to preserve from the laptop that you used while

15  working at Wolverine?

16      A.    They were either not responsive to any of your

17  requests or, if they were, there was an undue burden

18  involved in retrieving the information.

19      Q.    Now, this is the first day that you have

20  clarified that when you say undue burden that you

21  actually mean you were refusing to go looking through

22  your electronic files that you copied off of the laptop

23  that you used for Wolverine, right?  You never said that

Page 192

1    before?

2         A.    You never asked to clarify what you meant by

3    undue burden.  Come now, Mr. Whitney, I think you have

4    asserted the undue burden issue numerous times and have

5    dissembled many times with respect to documents,

6    including the omnibus agreement.

7         Q.    We have even looked through backup tapes.

8    Imagine that.  So as you sit here right now, you haven't

9    looked through any of your backup tapes in response to

10   our discovery requests?

11        A.    They're not tapes.

12        Q.    Whatever they are.  They're DVDs and CDs?

13        A.    Primarily.

14        Q.    You haven't looked through any of them?

15        A.    No.

16        Q.    How many of them exist?

17        A.    I have hundreds of CDs, mostly CDs, some DVDs,

18   that have various backups of various things from my

19   computers, including the Peter Crawford laptop.

20        Q.    When specifically did you delete Wolverine

21   information from your laptop?

22        A.    Probably in 2002 and 2003.  I don't remember

23   exactly.

—

Page 193

1      Q.    Was it after April of 2002?

2      A.    May well have been.

3      Q.    You are aware, aren't you, of a duty not to

4   destroy evidence?

5      A.    Yes.  That's why I backed it up.

6      Q.    And you haven't looked through it --

7      A.    No.

8      Q.    -- to date?

9      A.    No.

10      Q.    Now, you have testified about a variety of

11   payments that were made to Mr. Kulkarni prior to the

12   closing of the Parthenon closing at the end of 2001?

13      A.    Did I testify to that?

14      Q.    Well, in your interrogatory answers.

15      A.    Oh, yeah.  I mentioned those.

16      Q.    So is it your testimony today that you believe

17   that improper payments were made to Mr. Kulkarni in some

18   fashion prior to the Parthenon closing?

19      A.    Yes.  I believe so.

20      Q.    And how many, roughly, do you contend were

21   improper prior to the end of 2001?

22      A.    Well, it's hard to say, as I think I indicated

23   in my interrogatories, because I think the answer to that