UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

PETER A. CRAWFORD,

    Plaintiff,

v.

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,

    Defendants.

Civil Action No.
05-cv-10078 (DPW)

---

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF ELECTRONIC DATA FILES

Defendants Wolverine, Proctor & Schwartz, Inc. ("Wolverine"), Steven F. Chilinski ("Chilinski") and Deepak S. Kulkarni ("Kulkarni") (collectively "Defendants") hereby submit the following memorandum in support of their Motion to Compel plaintiff *pro se* Peter A. Crawford ("Crawford"), pursuant to Fed. R. Civ. P. 26, to produce certain electronic data files currently in his possession which relate to his employment as the Chief Operating Officer ("COO") of WPS from January 2000 through January 14, 2002.

### DISCOVERY CONFERENCE

On February 10, 2006 at 1:00 p.m., and again on February 14, 2006 at 2:00 p.m., plaintiff *pro se* Peter A. Crawford and defense counsel Jeffrey D. Kuhn held telephonic discovery conferences. The February 10 conference lasted approximately two hours. The February 14 conference lasted approximately one hour. During these conferences and various subsequent discussions, the parties discussed, *inter alia*, the plaintiff's production of electronic data files which are currently stored at plaintiff's apartment in

Nashua, New Hampshire. The data on these electronic files include emails, spreadsheets and presumably all manner of other documentation relating to plaintiff's tenure as WPS's COO from January 2000 through January 14, 2002.

The plaintiff did not fully reveal the extent of the information incorporated into his electronic data files until the second day of his deposition, which took place on February 6, 2006. During his testimony, plaintiff revealed that although he had deleted most of his WPS data off of his personal laptop in either 2002 or 2003, he had saved the WPS data to either CDs or DVDs prior to deletion. As a result of this revelation, by mid-February 2006, defense counsel was pressing the plaintiff to produce all the data relevant to this case which were stored on plaintiff's CDs and DVDs.

Plaintiff responded to defense counsel's requests for production by claiming that retrieval of the relevant electronic data would prove unduly burdensome and time consuming. In response to these arguments, the defendants offered to pay for a neutral electronics expert to retrieve the relevant data from plaintiff's discs. Plaintiff then offered to allow some examination of his electronic data files, but only if defendants agreed both to produce certain irrelevant materials *and* to assent to the dissolution of this Court's January 6, 2006 Protective Order. Defense counsel rejected plaintiff's offer.[1]

## NATURE OF THE CASE AND FACTUAL BACKGROUND

A.   Crawford's Employment History

Crawford began his employment as WPS's Chief Operating Officer on December 30, 1999. See, Amended Complaint ¶ 9. On January 4, 2000, Crawford and Kulkarni, then WPS's President and Chief Executive Officer, executed a written employment

---

[1] Both of plaintiff's demands were later the subject of two discovery motions brought by the plaintiff on or about February 22, 2006.

2

contract (the "Employment Contract"). Id. Crawford's Employment Contract provided for an annual base salary of $150,000, stock options and an annual bonus ("Bonus"). Id. The Employment Contract contained a formula by which any potential Bonus due Crawford was to be calculated. See, Amended Complaint ¶ 14.

On December 28, 2001, Crawford entered into a Transition Agreement with WPS (the "Transition Agreement"). See, Amended Complaint ¶ 18. Under Section 2 of Crawford's Transition Agreement, Crawford's ongoing employment with WPS was limited to a maximum of three additional months, viz., until March 31, 2002 at the latest. Besides the three-month sunset provision, the Transition Agreement also allowed WPS to terminate Crawford's employment at an earlier point "for any reason or no reason."

On January 14, 2002, Crawford was informed that the WPS Board of Directors had elected to terminate his employment. See, Amended Complaint ¶ 23. Crawford's Complaint alleges that the WPS Board terminated Crawford's employment under the Transition Agreement as a result of the tortious interference of Kulkarni. See, Amended Complaint ¶ 22. On January 18, 2002, Crawford received formal written notice and confirmation of the Board's action terminating his employment with WPS. See, Amended Complaint ¶ 23.

On December 2, 2004, Crawford forwarded a letter to WPS's then-CEO, Steven Chilinski, in which Crawford argued that he was entitled to a Bonus based on his 2001 employment. Crawford's letter also argued that, under the provisions of the Transition Agreement, Crawford was owed $25,000 for approximately ten weeks of unpaid salary (for the post-termination period of January 15 through March 31, 2002) because the

written notice of termination Crawford received on January 18, 2002 was not signed by the proper party. Id.

B.   Relevant Procedural History

Crawford commenced the instant suit on January 15, 2005. Crawford filed an Amended Complaint in this action on or about March 13, 2006 which asserts nine separate causes of action:

1. WPS breach Crawford's written Employment Contract by failing to pay Crawford's 2001 Bonus;

2. WPS violated the Massachusetts Wage Statute by failing to pay Crawford's 2001 Bonus;[2]

3. WPS breached an oral amendment to Crawford's Employment Contract whereby Crawford's Bonus was increased from 5% to 8% of WPS's adjusted EBITDA;

4. WPS violated the Massachusetts Wage Statute by failing to pay Crawford's 2001 Bonus pursuant to the 8% oral adjustment;

5. WPS breached Crawford's Transition Agreement by terminating him in January 2002 without providing Crawford with proper written confirmation;

6. Given Crawford's invalid termination under the Transition Agreement, WPS violated the Massachusetts Wage Statute by failing to pay Crawford an additional ten weeks of compensation; and

---

[2] Crawford has named WPS's former CEO, Steven Chilinksi, as a defendant to his three Massachusetts Wage Statute claims.

4

7. Deepak Kulkarni tortiously interfered with Crawford's transition Agreement by wrongfully influencing WPS to terminate Crawford's employment.

8. By persuading Crawford to sign a Settlement Agreement on December 28, 2001 without revealing the true character of certain payments he was entitled to, Kulkarni defrauded Crawford.

9. Crawford seeks an accounting to determine the precise amounts he is entitled to under the Settlement Agreement.

On April 8, 2005, defendant WPS filed its Answer. Following dispositive motion practice, the defendants filed an Amended Answer on November 16, 2005.

On January 17, 2006, Crawford brought a motion for leave to amend his Complaint. Crawford's motion for leave to amend was unopposed. Crawford filed his Amended Complaint on or about March 13, 2006.

C.   Relevant Discovery History

On June 22, 2005, Crawford served defendants with his initial Rule 26 Disclosure Statement. Of the twenty-five separate categories of documents described by Crawford pursuant to Fed. R. Civ. P. 26(a)(1)(B), two are of interest for the purposes of the instant motion:

u.   Various electronic mail communications, most stored on magnetic or optical media, which may nor may not be retrievable.

v.   Various electronic spreadsheets and word processing documents relating to Wolverine, Proctor & Schwartz, Inc., stored on magnetic or optical media, which may or may not be retrievable.

On November 11, 2005, defendants served Crawford with their first request for the production of documents. Crawford served his written responses to defendant's first request for production of documents on December 13, 2005.

"Request No. 1" of defendants' November 11, 2005 first request for production of documents asked plaintiff to produce:

> All documents, notes, diaries, journals, logs, chronologies of events, correspondence files, meeting notes, minutes, calendars, tape recordings, videotapes, photographs or other documents maintained or created by plaintiff that depict, relate or pertain to events, communications or allegations set forth in his Complaint.

While admittedly broad in scope, defendants expected that in responding to this request plaintiff would, at the very least, produce all of those materials described in plaintiff's initial disclosure statement since their inclusion by plaintiff was an acknowledgement that the documents were both relevant and in plaintiff's possession.

Plaintiff responded to defendants' "Request No. 1" as follows:

Plaintiff objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence...

"Request No. 9" of defendants' first request for the production of documents asked plaintiff to produce:

> All documents that reflect, relate or refer to the terms and/or conditions of plaintiff's employment with WPS or any related entity.

Plaintiff responded to defendants' "Request No. 9" as follows:

Plaintiff objects to this request on the grounds that it is vague and ambiguous...

Finally, "Request No. 18" of defendants' first request for production of documents asked plaintiff to produce:

6

> Any and all documentation currently in plaintiff's possession which was removed by plaintiff from WPS's facilities while plaintiff was a WPS employee.

Plaintiff responded to defendants' "Request No. 18" as follows:

> Plaintiff objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further state that, with respect to certain documents, it is not possible to tell when, if eve, they were removed from WPS's facilities.

As was stated above, during the course of plaintiff's February 6, 2006 deposition, defendants learned for the first time the full extent of the horde of WPS documents which plaintiff had failed to produce. During his deposition, plaintiff revealed that he saved an unknown quantity of WPS documentation to CDs and DVDs prior to deleting that documentation from his laptop's hard-drive. Plaintiff also revealed that he had not even so much as examined his CDs and DVDs in connection with this case because he did not believe any of defendants' document requests "required that I look through those particular files." [See, February 6, 2006 deposition of plaintiff Peter A. Crawford, pg. 187, attached to accompanying Affidavit of Jeffrey D. Kuhn as <u>Exhibit 1</u>]. Plaintiff then testified that, despite the fact that he had presumably created the discs for purposes of preserving information relating to this litigation, he believed that he was not required to examine the discs for relevant information or documentation in response to defendants' request for production because doing so may prove unduly burdensome. [See, Kuhn Aff., exh. 1, pg. 188-193].

On January 30, 2006, following the Court granting Crawford leave to amend his Complaint, defendants served Crawford with a third request for production of documents, which included only a single numbered request:[3]

> All documents that relate to or otherwise reflect the day-to-day duties, functions, and tasks that plaintiff performed and communications that he sent or received as the COO of Wolverine from January 1, 2000 to the date of his termination. These documents should include but not necessarily be limited to copies of all email communications (with attachments) that were sent to or received by plaintiff during the requested period, regardless of whether plaintiff was listed as the "to", "cc" or "bcc" recipient on the email. This request seeks all documents that are in plaintiff's possession custody or control, and in any manner that they may be stored, including but not limited to all documents that should be stored on plaintiff's laptop that he used while working at Wolverine and that remained in his possession after his termination.
>
> For purposes of responding to this request, copies of email communications need not be printed onto hard copy. Production of email by CD or other electronic means is sufficient.

Crawford has steadfastly refused to respond in any manner to plaintiff's third request for production of documents by arguing that the request is *per se* invalid under the provisions of Local Rule 26.1(C) which limit a party to "two separate sets of requests for production... unless the judicial officer orders otherwise."

## ARGUMENT

**DEFENDANTS ARE ENTITLED TO AN ORDER COMPELLING PLAINTIFF TO PRODUCE ALL ELECTRONIC WPS MATERIALS CURRENTLY IN PLAINTIFF'S CUSTODY OR CONTROL.**

By this instant motion, defendants move this Court to compel the plaintiff to produce an unknown number of digital files, stored on an unspecified number of DVDs and CDs, which contain, by plaintiff's admission, documents generated in connection

---

[3] Defendants had earlier served Crawford with a second request for the production of documents, which also included only a single numbered request.

with plaintiff's employment as WPS's COO from January 2000 through January 14, 2002. The electronic documents plaintiff has failed to produce likely included emails, spreadsheets, word documents and various other documents types generated by plaintiff and other WPS employees during plaintiff's tenure as WPS's COO. These documents were apparently stored on plaintiff's laptop computer until some time in either 2002 or 2003 when plaintiff moved the files to disc in contemplation of bringing this suit at some future date.

Despite repeated requests by defendants, plaintiff has refused to produce either the electronic discs or hard-copies of the electronic data. In refusing to produce the documentation, plaintiff has relied on two different lines of reasoning: first, plaintiff argues that removing the electronic files from the various discs will subject the plaintiff to an undue burden in terms of time and/or expense; second, plaintiff argues that the materials present on his various backup CDs and DVDs are not responsive to defendants' various discovery requests. Both of plaintiff's arguments, however, are without merit.

Plaintiff has repeatedly maintained that retrieval of the various WPS files stored on his backup CDs and DVDs will unduly burden the plaintiff inasmuch as restoration of the files will be either extremely time-consuming or prohibitively expensive. Defense counsel has countered plaintiff's contention in this regard by offering to procure the services of an independent computer expert to assist the parties in restoring the data to a usable format. Crawford has shown no interest in this compromise solution, however.

Furthermore, Crawford's entire undue burden argument is belied by his own actions. Prior to bringing his two February 22, 2006 discovery motions, Crawford offered to produce the long-demanded electronic files stored on his backup CDs and

9

DVDs if the defendants would: 1.) drop their objections and produce documents relating to Kulkarni's accrued dividends/expenses, *and* 2.) assent to Crawford's motion to dissolve the Court's January 6, 2006 Protective Orders. That Crawford was willing to offer this *quid quo pro* resolution demonstrates that production of the electronic data files is not nearly as burdensome as Crawford would lead the defendants or this Court to believe.

Crawford's undue burden argument is also dubious given that it was Crawford himself who created his library of backup WPS electronic files in contemplation of this litigation. It is unclear why Crawford would go to the effort of backing up his old WPS files if later retrieval of those documents would prove (as Crawford now maintains) so difficult as to be practically impossible.

Crawford's argument that the electronic backup files are not responsive to the defendants' requests should also be rejected. The various backup files of Crawford's WPS emails, spreadsheets, word documents and other files relating to his tenure as WPS's COO are responsive to at least three of the individual numbered requests included in the defendants' November 11, 2005 First Request for the Production of Documents. It bears repeating that the subject electronic data files are actually composed of emails, spreadsheets and word documents generated by Crawford and other WPS employees in the scope of their duties to the corporation. These electronic files are no doubt responsive to "Request No. 9" of defendants' First Request for the Production of Documents, which sought production of "[a]ll documents that reflect, relate or refer to the terms and/or conditions of plaintiff's employment with WPS..." Not only are the electronic files

clearly responsive to this request, but Crawford objected to Request No. 9 only on the basis that it was "vague and ambiguous," *not* on the basis that it was unduly burdensome.

Moreover, the electronic data files are clearly responsive to defendants' Request No. 18, which demanded that Crawford produce "[a]ny and all documentation currently in plaintiff's possession which was removed by plaintiff from WPS's facilities while plaintiff was a WPS employee." While plaintiff did object to defendants' Request No. 18 as "vague, ambiguous, overly broad [and] unduly burdensome," it is inconceivable how Crawford can seriously maintain that his backup electronic data files of WPS documents are not responsive to this request.

Perhaps most importantly, however, *all* electronic backup files of WPS documents currently in Crawford's possession must be immediately turned over to WPS for the simple reason that Crawford has no legal entitlement to possess such documents. Any documents in Crawford's current possession which were generated either by Crawford or other WPS employees during Crawford's tenure as WPS's COO <u>belong to the company</u>, not to Crawford. Crawford was terminated as a WPS employee well over four years ago. It is unclear by what right Crawford believes that he may not only retain a great deal of presumably confidential corporate materials belonging to his former employer, but that he may also flatly refuse his former employer's repeated requests to return the documents to their rightful owner.

Although Crawford has never argued to defense counsel that his library of back-up WPS electronic documents are not relevant to this litigation – Crawford essentially conceded their relevance by listing the documents in his initial Rule 26 Disclosure

11

Statement – it is worth noting the inherent relevance of Crawford's electronic WPS files to this litigation.

Crawford's central claim is that he is entitled to a sizable Bonus for 2001 in part because his successful management of WPS resulted in the company's turnaround. Thus, any documents relating to the performance of Crawford's duties as WPS's COO are relevant to this matter.

Also, Crawford's seventh claim alleges that his January 14, 2002 termination amounted to tortious interference by Kulkarni in Crawford's Transition Agreement with WPS. Inasmuch as the defendants maintain that Crawford was actually terminated because of Crawford's own job performance issues, the library of WPS documents maintained on Crawford's various backup CDs and DVDs are relevant to the claims and defenses in this case.

Finally, as an affirmative defense to Crawford's Bonus claim, the defendants maintain that Crawford should be equitably estopped from receiving any 2001 Bonus because Crawford intentionally and deceitfully concealed his alleged Bonus entitlement from everyone at both WPS and Parthenon Investments LLC ("Parthenon") (an investment company which purchased a controlling interest in WPS in late 2001) in order to ensure that the Bonus issue would not imperil Parthenon's purchase of WPS and thereby imperil Crawford's ultimate receipt of the Bonus itself. Obviously, the electronic WPS documents on Crawford's various CDs and DVDs may establish numerous opportunities when Crawford refused to disclose his alleged Bonus entitlement to anyone at WPS or Parthenon.

## CONCLUSION

Based on the foregoing, defendants respectfully request an Order from this Court compelling plaintiff *pro se* Peter A. Crawford to produce to the defendants all electronic documents or files, whether on computer hard-drive, DVD, CD or another form of digital storage, which relate in any manner to Crawford's employment at WPS.

Dated: March 22, 2006

>Respectfully submitted,
>
>WOLVERINE, PROCTOR &
>SCHWARTZ, INC.,
>STEVEN F. CHILINSKI, and
>DEEPAK S. KULKARNI
>
>By their attorneys,
>
>/s/ Jeffrey D. Kuhn
>Mark Whitney (BBO #637054)
>Jeffrey D. Kuhn (BBO #662326)
>MORGAN, BROWN & JOY, LLP
>200 State Street
>Boston, Massachusetts 02109
>(617) 523-6666

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 22, 2006, I mailed the foregoing document to the pro se plaintiff, Peter A. Crawford, 23 Newcastle Drive, #11, Nashua, NH 03060, by U.S. Mail; I further certify that I sent a courtesy copy of this document to Mr. Crawford at his email address petercra@ix.netcom.com on the same date.

>/s/ Jeffrey D. Kuhn
>Jeffrey D. Kuhn, Esq.