UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
───────────────────────────────────────────────────

PETER A. CRAWFORD,

        Plaintiff,

v.

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,

        Defendants.
───────────────────────────────────────────────────

Civil Action No.
05-cv-10078 (DPW)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND AND DISSOLVE THE PROTECTIVE ORDER IN LIGHT OF THE AMENDED COMPLAINT**

        Defendants Wolverine, Proctor & Schwartz, Inc. ("WPS"), Steven F. Chilinski and Deepak S. Kulkarni ("Kulkarni") (collectively, the "defendants") hereby submit the following memorandum of law in opposition to plaintiff *pro se* Peter A. Crawford's ("Crawford") Motion to Amend and Dissolve this Court's January 6, 2006 Protective Orders.

        Crawford's Motion should be denied for the following reasons:

- Protective orders should only be modified where a change in circumstances of the litigation so justifies. Since the Court issued its protective orders on January 6, 2006, the only change in circumstances in this litigation has been Crawford's filing of an Amended Complaint. Because the interposition of Crawford's new claims – specifically a claim sounding in fraud – cannot possibly justify the dissolution and amendment of the protective orders on the scale Crawford demands, Crawford's instant motion should be denied.

For the foregoing reasons, and those more fully articulated below, defendants request that this Court deny Crawford's Motion to Amend and Dissolve this Court's January 6, 2006 Protective Order.

## RELEVANT PROCEDURAL HISTORY

Crawford commenced the instant suit on January 15, 2005. Crawford's original Complaint asserted seven separate causes of action against the defendants.

On April 8, 2005, defendant WPS filed its Answer. Following dispositive motion practice, all of the defendants filed an Amended Answer on November 16, 2005.

In mid-October 2005, it became apparent the parties were at impasse with respect to the relevance and discoverability of certain of Crawford's discovery requests. Specifically at issue were Crawford's repeated and wide-ranging inquiries into the private finances of defendant Deepak S. Kulkarni <u>and</u> Crawford's demands that the defendants produce documentation and interrogatory responses relating to Wolverine, Proctor & Schwartz, LLC's ("WPS LLC") 2005 financial performance and WPS LLC's February 2005 recapitalization.

Unable to resolve their discovery differences, the parties eventually sought judicial intervention. On October 25, 2005, Crawford filed a Motion to Compel the defendants to produce materials relevant to WPS's February 2005 recapitalization and the company's 2005 financial performance. On November 4, 2005, the defendants filed their opposition to Crawford's Motion to Compel and filed two mirror-image Motions for Protective Orders.

Defendants' first motion sought a protective order prohibiting Crawford from seeking disclosure from any party or non-party of any documents, materials or other information relating to either:

1.WPS LLC's February 2005 recapitalization; or

2.WPS LLC's current (fiscal year 2005) financial statements.

In support of their Motions for a Protective Order, defendants argued that, in light of the allegations contained in Crawford's Complaint, WPS LLC's 2005 recapitalization and the company's 2005 financial statements could have no conceivable relevance to the factual merits of Crawford's claims. Defendants further argued that the rationale offered by Crawford in support of his Motion to Compel – that the demanded discovery was relevant to WPS's capacity to satisfy a judgment – was not only devoid of merit under the Federal Rules, but was a pretext for Crawford's actual reason for attempting to compel disclosure. Crawford acknowledged to defense counsel during discovery conferences (and to the Court at oral argument) that he was attempting to use the discovery process to procure documents which would allow Crawford to develop and flesh-out certain unspecified and unasserted claims he planned to bring against Kulkarni in the future.

Defendants' second motion sought to prohibit Crawford from continuing his wide-ranging and apparently limitless exploration into defendant Kulkarni's personal financial matters. Defendants' motion sought to prohibit Crawford from inquiring into any payments to Kulkarni other than the $135,000 payment alleged in paragraph 22 of plaintiff's Complaint. As grounds for the requested protective order, defendants argued that Crawford's continual efforts to delve into such manifestly irrelevant areas of inquiry

3

was unnecessarily annoying, harassing and intrusive to Kulkarni with no countervailing prospect of unearthing pertinent or probative evidence.

Oral arguments on Crawford's Motion to Compel and defendants' countervailing Motion for a Protective Order were heard by the Hon. Robert B. Collings on November 28, 2005.

On January 6, 2006, the Court issued its Orders resolving all of the then-pending discovery motions. The Court granted defendants' first motion for a protective order and barred Crawford from conducting any discovery on WPS's 2005 recapitalization and the company's 2005 financial performance.

The Court partially granted defendants' second motion for a protective order. The Court allowed Crawford to conduct discovery on payments to Kulkarni, but only with respect to those payments to Kulkarni from either WPS, Inc. or WPS, LLC which occurred in 2001 or 2002.

On January 17, 2006, dissatisfied with the Court's Orders resolving the parties' discovery disputes, Crawford filed two Rule 72 objections to the Magistrate's January 6, 2006 Orders.

Also on January 17, 2006, in an effort to circumvent the Court's Protective Orders, Crawford brought a motion for Leave to Amend his Complaint. Crawford's Amended Complaint asserted two additional causes of action – for fraud and an accounting – in the hopes that by amending his Complaint and broadening the scope of this litigation, Crawford could force the Court to dissolve its earlier-issued protective orders.

4

On January 31, 2006, defendants filed a Notice of Non-Opposition to Crawford's Motion for Leave to Amend.

On February 1, 2006, the Court granted Crawford's unopposed Motion for Leave to Amend his Complaint.

Crawford filed his Amended Complaint on or about March 14, 2006.

## ARGUMENT

### CRAWFORD'S MOTION TO DISSOLVE AND AMEND THIS COURT'S JANUARY 6, 2006 PROTECTIVE ORDERS SHOULD BE DENIED BECAUSE THE CHANGE IN CIRCUMSTANCES IN THIS LITIGATION DO NOT JUSTIFY THE DISSOLUTION AND AMENDMENTS SOUGHT BY CRAWFORD.

In his Memorandum of Law, Crawford argues that the Court's first January 6, 2006 protective order, which precluded discovery into WPS's 2005 recapitalization and WPS's 2005 financial data, should be dissolved based on a change of circumstance in this litigation.

Crawford also argues that the Court's second January 6 protective order, which limited discovery into defendant Kulkarni's personal finances, should be radically amended.  Whereas the current protective order allows discovery only regarding payments to Kulkarni from WPS, Inc. or WPS, LLC in either 2001 or 2002, Crawford's proposed "amendment" would effectively eviscerate the protective order in its entirety. Crawford proposes that the Court's protective order be amended to allow discovery into all post-2000 payments to Kulkarni by any entity remotely related to WPS, Inc.

In Public Citizen v. Liggett Group, Inc., 858 F.2d 775, 782 (1st Cir. 1988), the First Circuit noted that courts have "inherent power to modify discovery-related protective orders… when circumstances justify."  However, "although a district court has

power to modify a protective order… the required showing must be more substantial than the good cause" required to obtain a Rule 26(c) protective order in the first place. Geller v. Branic Int'l Realty Corp., 212 F.3d 734, 738 (2nd Cir. 2000). Crawford's instant motion to amend and dissolve the protective orders is predicated exclusively on the argument that the interposition of Crawford's Amended Complaint has so altered the circumstances of this litigation that the Court must amend and dissolve its January 6 protective orders.

Notwithstanding that Crawford has asserted two additional claims since this Court issued its January 6 protective orders, the circumstances of this litigation have not been so radically altered that Crawford should be allowed *carte blanche* to reinitiate the incredibly wide-ranging discovery inquisition that necessitated this Court's previous intercession.

The Amended Complaint which Crawford filed and served on or about March 14, 2006 asserts two novel causes of action, for fraud and an accounting. Only Crawford's fraud claim, however, incorporates new substantive factual allegations.

A.   Crawford's Fraud Claim

Under the terms of his January 4, 2000 Employment Contract with WPS, Crawford was granted a potential entitlement to options of WPS stock (the "stock options"). Crawford's stock options, however, vested only "upon the completion of [Crawford's] 24th month of employment with [WPS], or upon a change in control."

On December 28, 2001, prior to "the completion of [Crawford's] 24th month of employment" and prior to the completion of Parthenon Capital, LLC's ("Parthenon") purchase of a controlling interest in WPS, Crawford entered into a Settlement Agreement

6

with WPS. [See, Amended Complaint ¶ 76]. Under the terms of the Settlement Agreement, Crawford exchanged his right to the stock options (which had not yet vested) for a right to 4-8 percent of any distributions to Kulkarni under section 5.3 of the so-called LLC Agreement (an agreement which governed the respective rights of Kulkarni and Parthenon in a newly created entity known as Wolverine Proctor, LLC). [See, Amended Complaint ¶¶ 76, 78].

Crawford alleges that prior to executing his Settlement Agreement, Kulkarni informed Crawford that Kulkarni had no rights to distributions from WPS or Wolverine Proctor LLC other that a $1 million per year consulting fee and distributions under sections 5.2 and 5.3 of the LLC Agreement. [See, Amended Complaint ¶ 76]. Thus, Crawford's Amended Complaint concedes that Kulkarni expressly informed Crawford, prior to Crawford's execution of the Settlement Agreement, of the possibility that Kulkarni would be entitled to distributions under *either* section 5.2 or 5.3 of the LLC Agreement. [Id.] This fact notwithstanding, Crawford knowingly agreed to terms of the Settlement Agreement which entitled Crawford only to a percentage of distributions made to Kulkarni under section 5.3 of the LLC Agreement.

Crawford alleges that Kulkarni represented to him prior to executing the Settlement Agreement that any distributions to which Kulkarni was entitled under "section 5.2 of the LLC Agreement were *likely* to be deferred or forgiven."[1] [Amended

---

[1] Crawford's allegations raise serious doubts of the ultimate viability of his fraud claim. It is well-established under Massachusetts law that alleged misrepresentations or statements "of opinion" or "of conditions to exist in the future, or of matters promissory in nature" are not actionable as fraud. See, Rodowicz v. Massachusetts Mut. Life Ins. Co., 192 F.3d 162 (1st Cir. 1999); 37 Am. Jur. 2d Fraud and Deceit § 80. Here, Kulkarni's alleged misrepresentations regarding his intention to collect on entitlements to distributions which were "likely to be deferred or forgiven" in the future cannot serve as the basis for a viable claim for fraud. [Amended Complaint ¶ 76]. Not only does the alleged misrepresentation unquestionably concern a future event, but the use of the word "likely" establishes that Kulkarni was, at worst, expressing an opinion as to the probability of a future event. [Id.]

Complaint ¶ 76. Emphasis supplied.] Crawford further alleges that Kulkarni represented to him that any potential future "unshared payments" (*i.e.,* payments under section 5.2 of the LLC Agreement) "would be limited in scope." [Amended Complaint ¶ 80].

The crux of Crawford's fraud claim is his allegation that on November 13, 2002 Kulkarni entered into an Omnibus Agreement with Parthenon and Wolverine Proctor, LLC whereby Kulkarni received $765,980 in distributions under section 5.2 of the LLC Agreement. [See, Amended Complaint ¶ 87]. Crawford alleges that this section 5.2 distribution (of which Crawford was not entitled to share under his Settlement Agreement) was based, in part, on Kulkarni's right to $624,263 in accrued dividends which Kulkarni failed to disclose to Crawford prior to execution of the Settlement Agreement.[2] [See, Amended Complaint ¶¶ 81, 87]. It is Crawford's apparent contention that in deciding to enter into the Settlement Agreement, he relied on Kulkarni's alleged misrepresentations concerning potential future entitlement to payments under section 5.2.

B.    The Effect of Crawford's Fraud Claim on the Court's Second Protective Order

As was stated earlier, the second of this Court's January 6, 2006 protective orders barred Crawford from conducting discovery into payments to Kulkarni other than those payments made to Kulkarni by WPS, Inc. or WPS, LLC in 2001 or 2002. In granting defendants' application for a protective order, the Magistrate correctly concluded that the discovery process should not be utilized by Crawford to conduct a limitless and open-ended inquiry into substantially all of Mr. Kulkarni's finances. The Court exercised its discretion in crafting a compromise protective order which limited Crawford's inquiry to

---

[2] Even assuming, *arguendo*, that Kulkarni failed to disclose to Crawford his specific entitlement to the $624,263 in accrued dividends which formed the basis of Kulkarni's subsequent section 5.2 distribution under the Omnibus Agreement, Crawford's Amended Complaint concedes that Kulkarni *expressly informed* Crawford prior to execution of the Settlement Agreement of the possibility that Kulkarni would be entitled to future distributions under section 5.2. [See, Amended Complaint ¶ 76].

8

those business dealings of Kulkarni which were most related to this litigation – either temporally or by subject matter. Although the Court's eventual protective order was not as restrictive as defendants would have hoped – the Court properly exercised its discretionary authority in crafting a compromise resolution to the parties' discovery dispute.

Crawford now moves this Court to amend its second protective order to read as follows:

> The motion is allowed as to any payment to defendant Kulkarni by any entity other than Wolverine, Proctor & Schwartz, Inc. and Wolverine Proctor, LLC prior to December 28, 2001. The motion is allowed as to any payments to defendant Kulkarni by an entity other than Wolverine, Proctor & Schwartz, Inc., Wolverine Proctor, LLC, Wolverine Proctor, Inc., Wolverine, Proctor & Schwartz, LLC (the "Wolverine Entities") or any entity that was at any time majority-owned, either directly or indirectly, by any of the Wolverine Entities. The motion is allowed as to any payments to defendant Kulkarni by Wolverine, Proctor & Schwartz, Inc. and Wolverine Proctor LLC before January 1, 2001. The motion is otherwise denied.

[See, Crawford's Memo, pg. 13]. Thus, Crawford is apparently asking this Court to modify the January 6 protective order so as to allow Crawford to conduct discovery into any payments to Kulkarni by any entity even remotely related to WPS, so long as those payments took place after January 1, 2001. The addition of Crawford's limited fraud claim in his Amended Complaint, however, cannot justify such a radical evisceration of this Court's January 6, 2006 protective order.

In ruling on defendants' application for a protective order, this Court examined the allegations of Crawford's original Complaint and issued a protective order which effectively ended Crawford's use of the discovery process to endlessly investigate Kulkarni's personal finances. In light of the allegations present in the original

9

Complaint, this Court properly concluded that Crawford's area of inquiry should be limited to payments to Kulkarni from WPS, Inc. and WPS, LLC which took place in 2001 or 2002. Since January 6, 2006 – the date the Court issued its protective order – the only significant change in the scope of this litigation has been the interposition of Crawford's fraud claim in the Amended Complaint. Thus, the protective order which limited discovery into Kulkarni's finances should be modified only to the extent required by Crawford's fraud claim.

The allegations of Crawford's fraud claim are quite limited and do not justify the wholesale amendment of the protective order proposed by Crawford. Every payment to Kulkarni since 2001 by any entity remotely related to WPS has not become suddenly relevant to this litigation as a result of Crawford's fraud claim. Rather, <u>only</u> specific distributions and payments to Kulkarni under section 5.3 of the LLC Agreement are actually pertinent to Crawford's allegations of fraud.

Because Kulkarni's alleged failure to disclose his entitlement to $624,263 in accrued dividends prior to execution of the Settlement Agreement is admittedly relevant to Crawford's fraud claim, any payments or distributions to Kulkarni after December 28, 2001 (the date on which both the alleged misrepresentation took place and the Settlement Agreement was executed) relating to the $624,263 in accrued dividends are likely the proper subject of discovery.

Furthermore, as was stated above, the Settlement Agreement entitled Crawford to a percentage of any distributions made to Kulkarni under section 5.3 of the LLC Agreement only. Thus, Crawford is likely entitled to conduct discovery regarding any distributions to Kulkarni under section 5.3 in order to determine whether Crawford has

been defrauded out of any funds that he was contractually entitled to under the Settlement Agreement.

To accept Crawford's proposed amendment to the protective order, however, would allow Crawford to resume his unfettered exploration of Kulkarni's personal finances. Despite Crawford's proposed amendment, it is inconceivable that each and every payment to Kulkarni by any "Wolverine Entity" since 2001 is relevant to Crawford's fraud claim. Rather, the <u>only</u> payments to Kulkarni relevant to Crawford's fraud claim are specific and particular distributions <u>under section 5.3</u> of the LLC Agreement or payments on the $624,263 accrued dividend.

Based on the foregoing, defendants propose the following revised wording to the second protective order issued by this Court on January 6, 2006:

> The motion is allowed as to any payments to defendant Kulkarni by an entity other than Wolverine, Proctor & Schwartz, Inc., Wolverine Proctor, LLC, Wolverine Proctor, Inc., Wolverine, Proctor & Schwartz, LLC (the "Wolverine Entities"). The motion is allowed as to any payments to defendant Kulkarni by any Wolverine Entity before January 1, 2001 and after December 31, 2002 with the following exception: The motion is denied as to any payments to defendant Kulkarni by any Wolverine Entity after January 1, 2001 relating to the $624,263 in accrued dividends or distributions to Kulkarni under section 5.3 of the LLC Agreement.

C.    <u>The Effect of Crawford's Fraud Claim on the Court's First Protective Order</u>

Crawford also moves to dissolve the Court's first January 6, 2006 protective order. Dissolution of the Court's protective order would allow Crawford to conduct discovery into WPS LLC's February 2005 recapitalization and the company's fiscal year 2005 financial statements. Given the very limited nature of Crawford's fraud claim, there is no justification for dissolution of the Court's protective order.

Crawford argues that WPS LLC's recapitalization documents are now relevant to his fraud claim because those documents *may* evidence distributions made to Kulkarni under section 5.3 of the LLC Agreement. However, the Court's protective order could easily be modified (as opposed to dissolved) in such a way as to provide Crawford with access to any discoverable information relevant to his fraud claim. For instance, the Court could modify the protective order so as to compel the defendants to provide Crawford with any portions of the February 2005 recapitalization documents that relate specifically to any section 5.3 distributions to Kulkarni. By modifying its protective order in such a fashion, the Court could ensure Crawford access to the documentation relevant to his fraud claim without forcing WPS LLC to disclose the entirety of an otherwise confidential recapitalization agreement – the overwhelming majority of which has nothing to do with this litigation.

Furthermore, WPS LLC's 2005 financial statements have even less relevance to this litigation than the company's recapitalization agreement. Crawford's memorandum offers only a single sentence in support of his argument that the Court's protective order with respect to the 2005 financial statements should be dissolved:

> Furthermore, the 2005 financial statements, as the first such statements issued after the 2005 recapitalization, are also very likely to shed additional light upon that recapitalization and the extent to which the plaintiff may have been injured.

[Plaintiff's Memo, pgs. 11-12]. Thus, the only rationale provided by Crawford in support of dissolving the Court's protective order with respect to WPS LLC's 2005 financial statements is the temporal proximity of those documents to the recapitalization agreement (which is itself of dubious relevance to this litigation). Besides arguing in conclusory fashion that the 2005 financial documents may be "shed additional light" upon his

alleged injuries, Crawford fails to articulate the manner in which the contents of those documents relate to his allegations of fraud. This Court has already concluded that WPS LLC's 2005 financial statements are irrelevant to Crawford's original Complaint, and Crawford's motion papers contain nothing which would compel a different conclusion with respect to his newly-asserted claims.

## CONCLUSION

Based on the foregoing, Crawford's motion to dissolve this Court's first January 6, 2006 protective order (relating to WPS LLC's 2005 financial statements and the company's 2005 recapitalization) should be denied.

Likewise, Crawford's motion for a modification of the Court's second January 6, 2006 protective order (relating to payments to defendant Deepak S. Kulkarni) should also be denied or, in the alternative, modified in the manner articulated in defendants' foregoing memorandum of law.

Dated: April 5, 2006

        Respectfully submitted,

        WOLVERINE, PROCTOR &
        SCHWARTZ, INC.,
        STEVEN F. CHILINSKI, and
        DEEPAK S. KULKARNI

        By their attorneys,

        /s/ Jeffrey D. Kuhn
        Mark Whitney (BBO #637054)
        Jeffrey D. Kuhn (BBO #662326)
        MORGAN, BROWN & JOY, LLP
        200 State Street
        Boston, Massachusetts  02109
        (617) 523-6666

TO: Peter A. Crawford, *pro se*
    23 Newcastle Drive #11
    Nashua, New Hampshire  03060
    (603) 888-4574

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 5, 2006, I filed the foregoing document with the Clerk of the Court by using the ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing to plaintiff *pro se* Peter A. Crawford, 23 Newcastle Drive #11, Nashua, New Hampshire 03060 by U.S. mail, on this 10th day of March, 2006.

/s/ Jeffrey D. Kuhn
_____