UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

PETER A. CRAWFORD,

    Plaintiff,

v.

WOLVERINE, PROCTOR & SCHWARTZ, INC.;
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,

    Defendants.

Civil Action No.
05-cv-10078 (DPW)

---

### AFFIDAVIT OF RICHARD CUMMINGS

I, Richard M. Cummings, on oath depose and say that:

1. I am a certified public accountant with the firm of Vitale, Caturano & Company, Ltd ("Vitale Caturano"). My principal place of business is located at 80 City Square in Boston Massachusetts.

2. I have been employed in public accounting for over 28 years. Prior to being employed with Vitale Caturano, I was a partner with the accounting firm of Arthur Andersen LLP ("Arthur Andersen").

3. During my tenure at Arthur Andersen, my clients included Wolverine Proctor LLC (named as defendant in this action as Wolverine, Proctor & Schwartz, Inc.) ("Wolverine").

4. Arthur Andersen audited Wolverine's 2001 consolidated Financial Statements and issued a report hereon. I was the Arthur Andersen partner in charge of

the audit. The Auditors' Report was dated on March 26, 2002. A copy of Wolverine's 2001 Consolidated Financial Statements and Auditors' Report (the "Auditors' Report") is attached hereto as Exhibit "A".

5. As noted in the Auditors' Report, Arthur Andersen conducted Wolverine's audit in accordance with auditing standards generally accepted in the United States. As the Audit Report goes on to state, the Financial Statements present fairly, in all material respects, the financial position of Wolverine as of December 31, 2001, and the results of Wolverine's operations and cash flows for 2001, in conformity with accounting principles generally accepted in the United States.

6. EBITDA is a financial term which generally means earnings before interest, taxes, depreciation and amortization. In the 2001 Wolverine Financial Statements "EBITDA" is represented by the page 3 line item "Loss before interest expense, taxes, depreciation and amortization and extraordinary gain." Thus, as presented in their 2001 Audited Financial Statements, Wolverine's EBITDA for fiscal year 2001 was an aggregate loss of $486,116.

Signed under the penalties and pains of perjury the ___8th___ day of April, 2005.

_____
Richard M. Cummings

2

# EXHIBIT A to
# CUMMINGS AFFIDAVIT

# April 7, 2006


ANDERSEN

# WOLVERINE PROCTOR LLC

Consolidated Financial Statements
as of December 31, 2001
Together with Auditors' Report



Report of Independent Public Accountants

To the Board of Directors of
Wolverine Proctor LLC:

We have audited the accompanying consolidated balance sheet of Wolverine Proctor LLC (a Delaware limited liability company) and subsidiaries as of December 31, 2001 and the related consolidated statements of operations and comprehensive income, members' equity and cash flows for the year then ended. These consolidated financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these consolidated financial statements based on our audit.

We conducted our audit in accordance with auditing standards generally accepted in the United States. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audit provides a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Wolverine Proctor LLC and subsidiaries as of December 31, 2001, and the results of their operations and their cash flows for the year then ended, in conformity with accounting principles generally accepted in the United States.

*Arthur Andersen LLP*

Boston, Massachusetts
March 26, 2002

**WOLVERINE PROCTOR LLC**

Consolidated Balance Sheet
December 31, 2001

|  | 2001 |
|---|---:|
| **ASSETS** |  |
| Current Assets: |  |
| Cash and cash equivalents | $ 1,432,726 |
| Accounts receivable, net of allowance for doubtful accounts of $556,228 | 3,284,040 |
| Costs and estimated earnings in excess of billings on uncompleted contracts | 2,833,523 |
| Inventories | 1,658,431 |
| Prepaid expenses and other | 416,968 |
| Total current assets | 9,625,688 |
| Property and Equipment, at cost, less accumulated depreciation | 5,598,811 |
| Goodwill, net | 10,340,099 |
|  | $ 25,564,598 |
| **LIABILITIES AND MEMBERS' EQUITY** |  |
| Current Liabilities: |  |
| Accounts payable | $ 5,549,697 |
| Billings in excess of costs and estimated earnings on uncompleted contracts | 55,969 |
| Accrued expenses and other | 6,024,705 |
| Customer deposits | 4,163,814 |
| Total current liabilities | 15,794,185 |
| Other Long-term Liabilities | 5,708,951 |
| Total liabilities | 21,503,136 |
| Members' Equity: |  |
| Class A Units, $0.01 par value |  |
| Authorized—1,000 shares |  |
| Issued and outstanding—1,000 shares | 10 |
| Class B Units, $0.01 par value |  |
| Authorized—1,000 shares |  |
| Issued and outstanding—1,000 shares | 10 |
| Additional paid-in capital | 13,139,058 |
| Accumulated other comprehensive loss | (908,581) |
| Retained deficit | (8,169,035) |
| Total members' equity | 4,061,462 |
|  | $ 25,564,598 |

*The accompanying notes are an integral part of these consolidated financial statements.*

2
31905.doc

## WOLVERINE PROCTOR LLC

Consolidated Statement of Operations and Comprehensive Income
for the Year Ended December 31, 2001

|  | 2001 |
|---|---:|
| Sales | $ 34,357,906 |
| Cost of Sales | (23,030,351) |
| Gross profit, excluding depreciation expense | 11,327,555 |
| Selling, General and Administrative Expenses | (11,895,187) |
| Interest and Other Income | 81,516 |
| Loss before interest expense, taxes, depreciation and amortization and extraordinary gain | (486,116) |
| Other Expenses: | |
| Interest expense | (2,152,470) |
| Depreciation | (1,267,769) |
| Amortization | (1,461,939) |
| Minority interest expense | (61,814) |
| Loss before provision for income taxes and extraordinary gain | (5,430,108) |
| Provision for Income Taxes | (43,894) |
| Loss before extraordinary gain | (5,474,002) |
| Extraordinary Gain | 10,169,839 |
| Net Income | 4,695,837 |
| Other Comprehensive Income, net of tax: | |
| Minimum pension liability expense | (1,150,406) |
| Foreign currency translation adjustments | 21,593 |
| Comprehensive income | $ 3,567,024 |

The accompanying notes are an integral part of these consolidated financial statements.

3
31908.doc

**WOLVERINE PROCTOR LLC**
Consolidated Statement of Members' Equity
for the Year Ended December 31, 2001

| | Number of Shares/Units | Par Value | Additional Paid-in Capital | Put Warrants | Retained Deficit | Accumulated Other Comprehensive Loss | Total |
|---|---|---|---|---|---|---|---|
| Balance, December 31, 2000 | 655 | $ 7 | $ 1,493 | $ 183,195 | $ (12,864,872) | $ 220,232 | $ (12,459,945) |
| Net Income | | | | | 4,695,837 | | 4,695,837 |
| Minimum pension liability | | | | | | (1,150,406) | (1,150,406) |
| Retirement of warrants | | | 183,195 | (183,195) | | | - |
| Redemption of common stock | (655) | (7) | (1,493) | | | | (1,500) |
| Issuance of LLC Units—Class A | 1,000 | 10 | 290,892 | | | | 290,902 |
| Issuance of LLC Units—Class B | 1,000 | 10 | 13,999,990 | | | | 14,000,000 |
| Recapitalization transaction costs | | | (1,335,019) | | | | (1,335,019) |
| Effect of cumulative translation adjustment | | | | | | 21,593 | 21,593 |
| Balance, December 31, 2001 | 2,000 | $ 20 | $ 13,139,058 | $ - | $ (8,169,035) | $ (908,581) | $ 4,061,462 |

*The accompanying notes are an integral part of these consolidated financial statements.*

4

**WOLVERINE PROCTOR LLC**

Consolidated Statement of Cash Flows
for the Year Ended December 31, 2001

|  | 2001 |
|---|---:|
| **Cash Flows from Operating Activities:** |  |
| Net income | $ 4,695,837 |
| Adjustments to reconcile net income to net cash used in operating activities, net of acquisitions— |  |
| Depreciation and amortization | 2,729,708 |
| Extraordinary gain | (10,169,839) |
| Interest income—Friel | (81,516) |
| Minority interest | 61,814 |
| Changes in assets and liabilities— |  |
| Accounts receivable | 2,130,735 |
| Costs and estimated earnings in excess of billings on uncompleted contracts | 82,466 |
| Inventories | 1,718,902 |
| Prepaid expenses and other | 932,081 |
| Accounts payable | (1,734,074) |
| Billings in excess of costs and estimated earnings on uncompleted contracts | (1,992,877) |
| Accrued expenses and other | (373,145) |
| Customer deposits | 752,165 |
| Net cash used in by operating activities | (1,247,743) |
| **Cash Flows from Investing Activities:** |  |
| Purchases of property and equipment | (411,750) |
| Net cash used in investing activities | (411,750) |
| **Cash Flows from financing Activities:** |  |
| Issuance of Class B units | 14,000,000 |
| Payment of long-term debt during the year | (12,000,000) |
| Recapitalization transactions costs | (1,335,019) |
| Proceeds from revolving loan payable | 2,151,314 |
| Net cash provided by financing activities | 2,816,295 |
| Effect of Exchange Rates on Cash and Cash Equivalents | 21,593 |
| Net Increase in Cash and Cash Equivalents | 1,178,395 |
| Cash and Cash Equivalents, beginning of year | 254,331 |
| Cash and Cash Equivalents, end of year | $ 1,432,726 |
| **Supplemental Disclosure of Cash Flow Information:** |  |
| Cash paid during the period for— |  |
| Interest | $ 1,503,054 |
| **Supplemental Disclosure of Noncash Information:** |  |
| Minimum pension liability | $ 1,150,406 |
| Issuance of Class A units | $ 290,902 |
| Retirement of warrants | $ 183,195 |

The accompanying notes are an integral part of these consolidated financial statements.

5
31908.doc

WOLVERINE PROCTOR LLC

Notes to Consolidated Financial Statements
December 31, 2001

(1) **THE COMPANY**

Wolverine Proctor LLC (the Company) was formed on December 28, 2001 for the purpose of holding the securities of Wolverine Proctor, Inc. (WPI), a Delaware corporation, and its Subsidiaries. The purpose of WPI is to hold the securities of all of the operating entities of the Company. These operating entities include Wolverine Proctor & Schwartz, Inc. (WP&S), Friel Engineering Limited (Friel) and Mawlaw 492 Ltd. (Mawlaw).

WP&S designs and manufactures thermal processing and converting equipment use for a variety of industry applications. WP&S was formed from the 1994 acquisition of Proctor & Schwartz by Wolverine (Massachusetts) Corporation and their subsequent merger. The Company has manufacturing operations located in Merrimac, Massachusetts; Lexington, North Carolina; Fitchburg, Massachusetts and Glasgow, Scotland.

(2) **RECAPITALIZATION**

Pursuant to a recapitalization plan, on December 31, 2001, an investor group assigned a series of promissory notes (Notes) to the Company amounting to $14 million in exchange for 1,000 Class B member units. The Notes had been issued by WP&S to the investor group to fund the retirement of WP&S bank debt on December 28, 2001 and provide funds for working capital. As a result of the debt retirement, the Company has recognized an extraordinary gain of $10,169,639 in the consolidated statement of operations.

On or about December 31, 2001, a sole shareholder contributed 100% of the outstanding shares of WP&S, Mawlaw and Friel in exchange for 1,000 Class A member units.

Costs associated with the recapitalization amounting to $1,335,019 were netted against the equity proceeds.

The accompanying consolidated statement of operations for the year ended December 31, 2001 include the operating results of Mawlaw and the 51% of Friel Engineering Limited not previously owned by the Company from the date of their contribution to the Company. The assets and liabilities of Mawlaw and Friel are reflected in the accompanying balance sheet as of December 31, 2001 at their historical cost basis.

(3) **SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES**

The accompanying consolidated financial statements include the accounts of the Company and its divisions. All material intercompany transactions have been eliminated in consolidation. Other significant accounting policies are described below and elsewhere in the footnotes.

(a) Use of Estimates

The preparation of financial statements requires management to make estimates and assumptions that affect the reported amounts of assets and

6
31908.doc

WOLVERINE PROCTOR LLC

Notes to Consolidated Financial Statements
December 31, 2001

liabilities and disclosure of contingent assets and liabilities as of the date of the financial statements and the reported amounts of revenues and expenses during the reporting periods. Actual results could differ from those estimates.

(b) **Cash and Cash Equivalents**

Cash and cash equivalents consist primarily of overnight cash investments, which are swept daily by the Company's bank. The Company values these temporary cash investments at cost, which approximates market.

(c) **Inventories**

Inventories at December 31, 2001 consisted of the following:

|  | 2001 |
|---|---|
| Raw material | $ 876,478 |
| Work-in-process | 777,690 |
| Finished goods | 4,263 |
|  | $ 1,658,431 |

Raw materials, work-in-process and finished goods inventories are stated at the lower of cost (first-in, first-out method) or market. Raw materials inventory consists of sheet steel, piping, wire, fasteners and other items used in the manufacturing process. Work-in-process inventory represents materials released into production and labor and overhead applied on a job-order cost basis. Finished goods inventory includes goods awaiting shipment to fulfill open sales orders and component parts available for sale to customers for repairs or modifications to existing equipment.

(d) **Property and Equipment**

Property and equipment are recorded at cost. Additions and improvements are capitalized, and ordinary repairs and maintenance are charged to expense as incurred.

The Company provides for depreciation on property and equipment on the straight-line basis over their estimated useful lives, ranging from three to 50 years.

(e) **Goodwill**

The unallocated excess of purchase cost over net assets acquired in acquisitions has been amortized on the straight-line basis over 10 years. Accumulated amortization of goodwill at December 31, 2001 amounted to $8,065,901. The Company regularly assesses the realizability of goodwill in accordance with Statement of Financial Accounting Standards (SFAS) No. 121, *Accounting for the Impairment of Long-Lived Assets and for Long-Lived Assets to Be Disposed Of*, and has concluded that no impairment has occurred.

7
31908.doc

**WOLVERINE PROCTOR LLC**

Notes to Consolidated Financial Statements
December 31, 2001

(f) Income Taxes

The Company (prior to the Recapitalization) has elected to be treated as a small business corporation (a Subchapter S corporation) under the Internal Revenue Code and state tax law. Accordingly, no provision for federal income taxes is reflected in the Company's accompanying consolidated financial statements, since the stockholder, not the Company, is liable for federal income taxes on corporate income. The Company's WP&S branch is subject to corporate income taxes in the United Kingdom.

As a result of the Recapitalization, the Company's Subchapter S corporation status has been revoked. Beginning January 1, 2002, the Company will be subject to Subchapter C corporation federal and state income tax requirements.

The Company records income taxes in accordance with SFAS No. 109, *Accounting for Income Taxes*. Under SFAS No. 109, deferred tax assets and liabilities are recognized for the expected future tax consequences of events that have been included in the consolidated financial statements or tax returns. The amount of deferred tax assets and liabilities is based on the differences between the financial statement and tax bases of assets and liabilities using currently enacted tax rates.

(g) Revenue Recognition

Revenue from sales contracts for machinery is recognized under the percentage-of-completion method, measured by the percentage ratio of either costs incurred to date to the estimated total costs of the contract or labor hours incurred to date to the estimated total labor hours of the contract. When an ultimate loss is indicated on a contract, the entire estimated loss is recorded. Revenue from sales of machine parts and repair services is recognized when the parts are shipped or the services are rendered. The Company provides for a reserve for its estimate of warranty costs at the time of shipment.

(h) Comprehensive Income

The Company follows SFAS No. 130, *Reporting Comprehensive Income*, which established standards for the reporting and display of comprehensive income and other comprehensive income items. In general, comprehensive income combines net income and other changes in equity from nonowner sources during the year. At year-end, the balance of accumulated other comprehensive income represents the Company's cumulative translation adjustment and the minimum pension liability.

(i) Foreign Currency Translation

Assets and liabilities of the Company's foreign subsidiaries are translated using the exchange rate in effect at the balance sheet date. Revenue and expense accounts are translated using a weighted average of exchange rates in effect during the period cumulative translation gains and losses are shown in the accompanying consolidated balance sheet as a separate component of

8
31906.doc

WOLVERINE PROCTOR LLC

Notes to Consolidated Financial Statements
December 31, 2001

members' equity. Exchange gains and losses arising from transactions denominated in foreign currencies are included in current operations.

(j) **New Accounting Standards**

In June 2001, the Financial Accounting Standards Board (FASB) issued SFAS No. 141, *Business Combinations*. SFAS No. 141 addresses changes in the financial accounting and reporting for business combinations and supersedes Accounting Principles Board (APB) Opinion No. 16, *Business Combinations*, and SFAS No. 38, *Accounting for Pre-acquisition Contingencies of Purchased Enterprises*. Effective July 1, 2001, all business combinations should be accounted for using only the purchase method of accounting. The adoption of this statement did not have a material effect on its financial position, results of operations of cash flows.

In June 2001, the FASB issued SFAS No. 142, *Goodwill and Other Intangible Assets*, which requires use of a nonamortization approach to account for purchased goodwill and certain intangibles, effective January 1, 2002. Under the nonamortization approach, goodwill and certain intangibles will not be amortized into the results of operations, but instead will be reviewed for impairment and written down and charged to results of operations only in the periods in which the recorded value of goodwill and certain intangibles is more than its fair value. Management is currently evaluating the impact that this statement will have on the Company's financial statements.

In October 2001, the FASB issued SFAS No. 144, *Accounting for the Impairment of Disposal of Long-Lived Assets*, which replaces SFAS No. 121. This statement addresses financial accounting and reporting for the impairment or disposal of long-lived assets. Under SFAS No. 144, asset write-downs from discontinuing a business segment will be treated the same as other assets held for sale. The new standard also broadens the financial statement presentation of discontinued operations to include the disposal of an asset group (rather than a segment of a business). SFAS No. 144 is effective beginning January 1, 2002 and, generally is to be applied prospectively. Management is currently evaluating the impact that this statement will have on the Company's financial statements.

(k) **Disclosures about the Fair Value of Financial Instruments**

As of December 31, 2001, the Company's financial instruments, which consist of cash equivalents and accounts receivable, are carried at amounts that approximate fair value, due to their short-term maturity.

(4) **PARTNERSHIP AGREEMENT**

(a) **Advisory Agreement**

On December 28, 2001, WPI entered into a five-year advisory agreement with its investor group. The agreement requires the investor group to render advisory services to the Company in return for an annual fee of $500,000, payable in quarterly installments.

9
31908.doc

**WOLVERINE PROCTOR LLC**

Notes to Consolidated Financial Statements
December 31, 2001

(b) **Distributions**

The distributions to the LLC partners will be allocated based upon the specific provisions of the LLC agreement up to a total amount of distributions of approximately $68 million.

Thereafter, 40% of any distribution will be made to the holders of Class A units and 60% of any distributions will be made to the holders of Class B units.

Notwithstanding the foregoing, the proceeds distributed after the occurrence of a liquidation event shall be distributed solely to the holders of Class B units until the holders of Class B units have received $14,000,000 in the aggregate pursuant to the agreement.

(5) **PUT OPTION**

The Company has issued a put option to its minority shareholder to put the Class A units back to the Company at any time after December 31, 2006. The Class A units will be repurchased at the fair market value thereof, determined with no discount for the fact that Class A units may represent a minority interest or that the Class B units may represent a controlling interest.

(6) **CONTRACTS**

Costs, estimated earnings and related billings on uncompleted contracts at December 31, 2001 are as follows:

| | |
|---|---|
| Cost incurred to date | $ 6,257,533 |
| Estimated earnings | 1,725,507 |
| | 7,983,040 |
| Less—Billings to date | 5,205,486 |
| | $ 2,777,554 |

Included in the accompanying consolidated balance sheet are the following at December 31, 2001:

| | |
|---|---|
| Costs and estimated earnings in excess of billings on uncompleted contracts | $ 2,833,523 |
| Billings in excess of costs and estimated earnings on uncompleted contracts | (55,969) |
| | $ 2,777,554 |

(7) **INCOME TAXES**

The Company's state income tax provision consists of corporate-level state income taxes that are levied against the Company as a Subchapter S corporation. As a

10
31908.doc

WOLVERINE PROCTOR LLC

Notes to Consolidated Financial Statements
December 31, 2001

result of the recapitalization, the Company's Subchapter S corporation status has been revoked. Beginning January 1, 2002 the Company will be subject to Subchapter C corporation federal and state income tax requirements.

Deferred income taxes are based on differences between financial reporting and income tax bases due to purchase accounting. These differences result from using accelerated depreciation methods on property and equipment for income tax reporting purposes, and from recognizing certain expenses for financial reporting purposes in advance of income tax reporting recognition.

(8) PROPERTY AND EQUIPMENT

Property and equipment consists of the following at December 31, 2001:

|  | Useful Life |  |
|---|---|---|
| Buildings and improvements | 31–50 years | $ 4,093,651 |
| Office equipment and motor vehicles | 3–10 years | 2,105,380 |
| Machinery and equipment | 7–10 years | 6,357,603 |
| Laboratory and computer equipment | 7–10 years | 3,142,058 |
| Leasehold interest | Life of lease | 170,300 |
|  |  | 15,868,992 |
| Less—Accumulated depreciation |  | 11,618,538 |
|  |  | 4,250,454 |
| Land |  | 1,348,357 |
|  |  | $ 5,598,811 |

(9) LONG-TERM OBLIGATIONS

WP&S had a loan and security agreement with a bank throughout the majority of 2001. The Company had outstanding debt with a bank amounting to $20,967,514 as well as accrued interest of $702,325 as of December 28, 2001. As a part of the recapitalization, the Company extinguished the debt with the bank by settling all facilities for $11,500,000. This has resulted in an extraordinary gain of $10,169,839, which is reflected in the consolidated statement of operations as of December 31, 2001.

(10) EMPLOYEE BENEFIT PLANS

The Company has 401(k) contribution plans, covering substantially all of their employees, in which participants may invest up to 6% of their gross compensation. Under the terms of the plans, the Company provides a 60% matching contribution and pays all fees and expenses related to the plans. During 2001 the contribution to the plans, including fees and expenses, totaled $166,682.

11

31908.doc

WOLVERINE PROCTOR LLC

Notes to Consolidated Financial Statements
December 31, 2001

The Company also has a noncontributory, collectively bargained, multi-employer defined benefit pension plan covering substantially all nonmanagement employees at a manufacturing facility in Fitchburg, Massachusetts. The Company contributed $30,269 in 2001. The pension fund has advised the Company that there were no unfunded vested benefits for withdrawal liability purposes during the plan year ended December 31, 2001.

WP&S maintains a noncontributory defined benefit pension plan covering certain qualified salaried and hourly employees, previously employed by Proctor & Schwartz. All Plan benefits were frozen as of December 31, 1997. WP&S's policy is to fund amounts as are necessary, on the actuarial basis, to provide assets sufficient to meet the benefits to be paid to plan members in accordance with the requirements of the Employee Retirement Income Security Act of 1974. Pension income related to this plan was $121,343 in 2001. Unrecognized prior-service costs are being amortized over 15 years.

The following table sets forth the reconciliation of the plan's funded status as of December 31, 2001:

|  | Pension | Life and Medical |
|---|---|---|
| Benefit cost | $ (121,343) | $ 16,682 |
| Employer contribution | $ — | $ 186,108 |
| Benefits paid | $ (1,463,956) | $ (186,108) |
| Benefit obligation at December 31 | $ (14,135,360) | $ (2,536,324) |
| Fair value of plan assets at December 31 | 12,820,574 | — |
| Funded status | $ (1,314,786) | $ (2,536,324) |
| Accrued benefit cost recorded in the statement of financial position | $ (1,314,786) | $ (4,394,165) |
| Weighted average assumptions as of December 31, 2001— | | |
| Discount rate | 7.50% | 7.50% |
| Expected return on plan assets | 9.00% | N/A |
| Rate of compensation increase | N/A | N/A |

All benefit costs above are shown net of any plan participant contributions. Included in the pension accrued benefit cost above is $1,150,406 of minimum pension liability, which was included as a 2001 charge to comprehensive income.

During 1998, the Company changed the method of coverage from self-insured to managed care programs for the majority of their retirees. This change results in a reduction of the plan's liabilities of approximately $898,000 that is currently being amortized over 12 years.

WP&S's postretirement health care plans currently are not funded. Under the terms of the plan, retirees will pay up to 50% of the premiums, but all currently employed

12
31908.doc

WOLVERINE PROCTOR LLC

Notes to Consolidated Financial Statements
December 31, 2001

personnel will pay 100% of their premiums upon retirement. The expenses included in the consolidated statement of operations and comprehensive income relating to the postretirement plan amounted to $65,638 in 2001.

The assumed health care cost trend rates used in measuring the accumulated postretirement benefit obligations as of December 31, 2001 were 9.0% for pre-65 coverage and 7.0% for post-65 coverage, decreasing linearly each successive year until it reaches 5.0% in the year 2009 for pre-65 coverage and 2005 for post 65 coverage, after which it remains constant. A 1% increase or (decrease) in the assumed health care cost trend rate for each year would change the accumulated postretirement benefit obligations as of December 31, 2001 by approximately $148,144 and $(133,341), respectively. The assumed discount rate used in determining the accumulated postretirement benefit obligation was 7.50%.

(11) RELATED PARTY TRANSACTIONS

(a) Management Agreement

The Company's subsidiaries had a management agreement (the Agreement) with DSK Management Corporation (the Management Company), a company owned by the previous sole stockholder of the Company. The Management Company has forgiven the amount owed each year under the Agreement for all periods through December 28, 2001. In conjunction with the recapitalization, the management agreement was cancelled.

In addition, management fees of approximately $342,000 payable to the sole previous stockholder of the Company were charged to expense of Friel in 2001. Approximately $53,400 is included in the amount payable described in Note 11(c) below.

(b) Cardwell Write-Off

The Company had issued an irrevocable standby letter of credit of $1,500,000 to support certain obligations of The Cardwell Machine Company (Cardwell), a wholly owned company of the previous sole stockholder. During 2001, Wolverine was required to repay the letter of credit, and subsequently wrote off the related receivable from Cardwell.

(c) Accrued Expenses

Included in accrued expenses at December 31, 2001 is approximately $787,325 payable to the previous sole stockholder of the Company.

(d) Consulting Agreement

As of December 28, 2001, WP&S has entered into a consulting agreement with the Class A unitholder. The agreement calls for the unitholder to provide advice and consulting services to the Company in return for an annual salary of $500,000 and a potential performance bonus.

13
31908.doc

WOLVERINE PROCTOR LLC

Notes to Consolidated Financial Statements
December 31, 2001

(e) **Severance Agreement**

WP&S and a former executive officer of the Company agreed to a $150,000 termination and separation payment effective December 28, 2001.

(12) **PUT WARRANTS**

In connection with a prior revolving credit agreement, WP&S issued a warrant to a bank to purchase 7.5% of the prior outstanding common stock of WP&S.

Also, in connection with the acquisition of Proctor & Schwartz as of September 23, 1994, WP&S additionally issued warrants to purchase 15% of the prior outstanding common stock of WP&S.

During 1999 and 2000, the put warrants were purchased by the previous sole shareholder of WP&S. These warrants were retired as a part of the recapitalization.

(13) **COMMITMENTS AND CONTINGENCIES**

(a) **Lease Commitments**

The Company leases office space and equipment under noncancelable operating leases. The following is a schedule, by year, of minimum future lease commitments under such leases as of December 31, 2001:

| | |
|---|---:|
| 2002 | $ 494,794 |
| 2003 | 415,306 |
| 2004 | 421,306 |
| 2005 | 427,306 |
| Thereafter | 433,306 |
| Total future minimum rentals | $ 2,192,018 |

Rent expense incurred under operating leases was approximately $610,886 in 2001. Renewal options ranging from one to 10 years exist for several of these leases.

(b) **Other Contingencies**

At December 31, 2001, there were lawsuits pending that arose in the ordinary course of business. Management has reviewed these actions with legal counsel and has taken into consideration the view of counsel concerning the outcome of the litigation. In the opinion of management, final disposition of these lawsuits is not expected to have a material adverse effect on the Company's financial position or results of operations. In addition, the Company has been indemnified against unfavorable outcomes in certain legal matters of Proctor & Schwartz assumed as part of the acquisition of Proctor & Schwartz.

14
31908.doc

WOLVERINE PROCTOR LLC

Notes to Consolidated Financial Statements
December 31, 2001

(14) **SUBSEQUENT EVENTS**

Effective March 15, 2002, the Company closed its manufacturing facility in Fitchburg, Massachusetts. The Company is currently in negotiation with various parties to discuss a sale of the building and the property.

(15) **BRIDGE LOAN**

Also, in March 2002, the Company entered into an agreement with a bank pursuant to which the Corporation may borrow up to $2,000,000 in a revolving credit facility.