UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
————————————————————————————

PETER A. CRAWFORD,

        Plaintiff,

                                          Civil Action No.

v.                                     05-cv-10078 (DPW)

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,

        Defendants.

————————————————————————————

## <u>AFFIDAVIT OF CHRISTOPHER GEORGIOU, CPA</u>

        I, Christopher Georgiou, CPA, do hereby state and swear under the pains and penalties of perjury:

        1.      I am a partner in the New York Forensic & Dispute Services practice of Deloitte Financial Advisory Services LLP ("Deloitte FAS"), and am a certified public accountant, licensed by the states of Massachusetts and New York.

        2.      I have been retained by Morgan, Brown & Joy, LLP, counsel for the Defendants in this matter to provide expert testimony.

        3.      Specifically, my role has involved reading  financial information and other data relevant to this matter to assess whether, on the basis of that information, it would be appropriate to include an extraordinary gain from the early extinguishment of debt in a bonus calculation made pursuant to the terms of the January 4, 2000 employment contract of Plaintiff Peter A. Crawford ("Plaintiff").

        4.      My opinion in this matter is set forth in the Expert Report of Christopher Georgiou, CPA, attached to this Affidavit as <u>Exhibit 1</u> and fully incorporated herein.

5.      I have also reviewed the Plaintiff's Memorandum in Support of His Motion for Partial Summary Judgment.

6.      In his Memorandum (pg. 13), the Plaintiff argues that Defendant Wolverine, Proctor & Schwartz, Inc. (the "Company") must have considered EBITDA to include extraordinary gains for the reason that the EBITDA line-item from the company's 2001 Consolidated Financial Statements includes language which specifically excluded extraordinary gain.

7.      However, Plaintiff's argument is misleading for the following reason: both Accounting Principles Board Opinion 30 and Rule 5-03 of SEC Regulation S-X require the following line items on the income statement when there is an extraordinary item:

- income or loss before extraordinary items;

- extraordinary items; and

-  net income and loss.

In practice, companies generally specify items that are or are not included on summary lines of the income statement. Examples would include captions such as income from continuing operations excluding minority interest income, or income from continuing operations excluding an extraordinary loss. As the plaintiff has suggested, EBITDA is a term of art, therefore the fact that the Company has included a caption in its consolidated financial statements should not be construed to mean that the extraordinary gain is to be included in the calculation of EBITDA.  Furthermore, the company has defined EBITDA in its consolidated financial statements and the definition does not include extraordinary items.

Signed under the pains and penalties of perjury on April 7, 2006.


/s/ Christopher Georgiou
Christopher Georgiou, CPA

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on April 7, 2006, I filed the foregoing document with the Clerk of the Court by using the ECF system and served an electronic copy upon the plaintiff. I further certify that I mailed the foregoing document and the notice of electronic filing to the pro se plaintiff, Peter A. Crawford, 23 Newcastle Drive, #11, Nashua, NH 03060, by U.S. mail, on April 7, 2006.

/s/ Jeffrey D. Kuhn
Jeffrey D. Kuhn, Esq.

# GEORGIOU EXHIBIT 1

# April 7, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


PETER A. CRAWFORD,
**Plaintiff**
v.
WOLVERINE, PROCTOR & SCHWARTZ, INC.
STEVEN F. CHILINSKI
DEEPAK S. KULKARNI,
**Defendants**
CIV No. 05-10078-DPW


EXPERT REPORT OF CHRISTOPHER GEORGIOU, CPA

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     QUALIFICATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    BACKGROUND AND SUMMARY OF OPINIONS. . . . . . . . . . . . . . . . . . . . . 2

IV.     BASES FOR OPINIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

       A.      GENERAL DEFINITION OF EBITDA . . . . . . . . . . . . . . . . . . . . . . . . 3

       B.      THE COMPANY'S DEFINITION OF EBITDA . . . . . . . . . . . . . . . . 4

       C.      EBITDA AS DISCUSSED IN THE CONTRACT . . . . . . . . . . . . . . . 7

       D.      EXCLUSION OF BONUS FROM COMPANY DOCUMENTS . . . . . . 8

ATTACHMENT A    CHRISTOPHER GEORGIOU, CPA – CURRICULUM VITAE

ATTACHMENT B    DOCUMENTS CONSIDERED AND RELIED UPON

ATTACHMENT C    GAIN ON EARLY EXTINGUISHMENT OF DEBT IN 2001
                                      RESULTS OF PUBLIC FILING SEARCH

## I.    INTRODUCTION

I, Christopher Georgiou, of Deloitte Financial Advisory Services LLP ("Deloitte FAS"), have been retained by Morgan, Brown & Joy, LLP, counsel for the Defendants, Wolverine, Proctor & Schwartz, Inc. (the "Company"), Deepak S. Kulkarni, and Steven F. Chilinski, to provide expert testimony in the matter of Crawford v. Wolverine, Proctor & Schwartz, Inc., et al.[1]  This report is prepared in accordance with the Federal Rules of Civil Procedures 26(a)(2)(B).  My role has involved reading the financial information and other data relevant to this matter to assess whether it is appropriate to include an extraordinary gain from the early extinguishment of debt in a calculation to be made under the terms of the employment contract of Mr. Peter A. Crawford (the "Plaintiff").

## II.    QUALIFICATIONS

I am a partner in the New York Forensic & Dispute Services practice of Deloitte FAS.  I am a certified public accountant, licensed by the states of Massachusetts and New York. I have more than 16 years of experience working in the Deloitte U.S. Entities and in the global Deloitte Touche Tohmatsu network of member firms, during which time I have provided auditing and consulting services to both domestic and global clients in a variety of industries.  I am an experienced practitioner in accounting principles generally accepted in the United States of America ("GAAP") and Securities and Exchange Commission ("SEC") reporting matters.  Deloitte FAS is compensated at an hourly rate of $500 per hour for my time and for other personnel assisting me at rates ranging from $90 to $370 per hour.  I have not testified as an expert at trial or by deposition within the past four years.  I have not authored any publications in the past ten years.  A copy of my resume is annexed hereto as Attachment A.

In obtaining an understanding of the issues and background facts relevant to this matter, and in reaching my opinions expressed herein, I have been assisted by other professionals of Deloitte FAS.  Deloitte FAS is a subsidiary of Deloitte & Touche USA LLP, the U.S. member firm of Deloitte Touche Tohmatsu, a large and respected professional services organization with more than 70 member firms in almost 150 countries with 120,000

---

[1] Crawford vs. Wolverine, Proctor & Schwartz, Inc., et. al.  CIV. No. 05-10078-DPW.

employees. In addition to audit, tax, and consulting services, Deloitte & Touche USA LLP has extensive experience and expertise in areas such as the audit of financial statements prepared in accordance with GAAP, as well as non-GAAP financial and accounting measures commonly used by U.S. enterprises.

## III.    BACKGROUND AND SUMMARY OF OPINION

I understand that this dispute results from a disagreement between the Plaintiff and the Plaintiff's former employer, the Company, over the amount of bonus due the Plaintiff for the year ended December 31, 2001. The Plaintiff was employed as Chief Operating Officer of the Company from December 30, 1999 to January 14, 2002. Per the employment contract dated January 4, 2000 between the Plaintiff and Mr. Deepak S. Kulkarni, President and CEO of the Company at the time ("the Contract"), the Plaintiff would receive an annual bonus, commencing for the year 2000. The amount of this bonus would be based on the formula as outlined in the contract which was as follows:

$$BONUS = (EBITDA - CAPX - INT - TAXES) \times .05$$

The Contract further states, "EBITDA means the earnings before any interest, taxes, or deductions for depreciation or amortization. Excluded from EBITDA will be any non-operating adjustments to reserves, to the extent that those adjustments affect EBITDA, or any operating expenses charged against reserves."[2]

The Plaintiff asserts that the effect of an extraordinary gain should be included as a component of EBITDA in the bonus calculation.[3] In 2001, as part of a recapitalization plan, the Company realized an extraordinary gain of approximately $10 million resulting from the early extinguishment of long-term debt previously held with Citizen's Bank. This extraordinary gain caused the Company to shift from a loss before extraordinary gain of approximately $5.5 million to a net income of approximately $4.7 million.[4]

---

[2] Employment Contract between Wolverine, Proctor & Schwartz, Inc. and Mr. Peter Crawford, PAC001.
[3] Letter from Mr. Peter Crawford to Mr. Steven F. Chilinski, 2 December 2004, PAC0023-0026.
[4] Wolverine Proctor LLC, Consolidated Financial Statements as of December 31, 2001, PAC0027-0042.

2

Based on procedures performed, it is my opinion that the extraordinary gain from the early extinguishment of debt is not a component of EBITDA excluding any non-operating adjustments to reserves, to the extent that those adjustments affect EBITDA, or any operating expenses charged against reserves, CAPX, interest, or taxes and accordingly should not be included in the calculation of the bonus made in accordance with the terms of the employment contract.

## IV.    BASES FOR OPINIONS

### A.    General Definition of EBITDA

EBITDA is the acronym for "earnings before interest, taxes, depreciation, and amortization." It is not a defined term under GAAP. Because GAAP takes an "all-inclusive"[5] approach to net income, companies many turn to EBITDA to measure performance from normal operations.

EBITDA is now commonly calculated by companies and disclosed by many public companies in SEC filings. Companies generally define their own EBITDA formula and disclose this metric to encourage investors and analysts to make decisions based on the company's own assessment of the key elements of operating performance.

Finance textbooks define the calculation as beginning with "operating income"[6] or "operating earnings."[7] Industry also views EBITDA as a measure of the results of normal operations. A February 2002 finance article states, "It [EBITDA] is calculated by taking operating income and adding back to it interest, depreciation and amortization expenses."[8] The article goes on to say that "EBITDA is used to analyze a company's operating profitability before non-operating expenses (such as interest and other 'non-

---

[5] Statement of Financial Accounting Standard No. 130: Reporting Other Comprehensive Income, paragraph 2.
[6] Keoun, Arthur J., et al. eds. 2001. *Foundations of Finance: The Logic and Practice of Financial Management, 3rd ed.* Upper Saddle River: Prentice Hall, 88.
[7] See, for example *Finance for Managers.* 2002. Boston: Harvard Business School Publishing Corporation, 15
[8] "The Good, the Bad, and the Ugly," Rick Wayman, 6 February 2002, <http://www.investopedia.com/printable.asp?a=/articles/analyst/020602.asp. (19 December 2005).

core' expenses) and non-cash charges (depreciation and amortization)."[9] Calculating EBITDA by beginning with operating earnings excludes the effects of any transactions outside the normal course of business, which would be required to be included in net income. This idea is echoed in a September 2004 article which states, "One unnamed component of EBITDA is that 'unusual' gains or losses are frequently excluded..."[10]

"Extraordinary items" fall under the category of items that GAAP requires to be included in net income, but that are "unusual" and outside the normal course of operations. Accounting Principles Board Opinion No. 30: Reporting the Results of Operations defines as extraordinary "events and transactions that are distinguished by their unusual nature and by the infrequency of their occurrence."[11] Given the guidance then applicable, the Company properly classified the gain on the early extinguishment of debt as extraordinary in its 2001 financial statements. As the Company's gain on the early extinguishment of debt results from a "non-core" transaction and represents a non-cash effect that is excluded from operating income, practice suggests that is should be excluded from EBITDA.

A reading of the financial statements of public companies with a gain on the early extinguishment of debt in 2001 further supports that general practice was to exclude extraordinary items from the calculation of EBITDA. The financial statements of these companies in our survey show that 100% of the companies where EBITDA was disclosed and readily determinable excluded the extraordinary gain from the early extinguishment of debt from their EBITDA calculation.[12]

*B.    The Company's Definition of EBITDA*

The Company's historical financial statements included a definition of EBITDA which further supports my opinion that the gain on the early extinguishment of debt should not

---

[9] *Ibid.*
[10] "Earnings before everything else: EBITDA measure no substitute for cash flow or income." Al and Mark Rosen. *National Post.* 23 September 2004.
[11] Accounting Principles Board Opinion No. 30: Reporting the Results of Operations, paragraph, 20.
[12] Refer to Attachment C: Gain on Early Extinguishment of Debt in 2001 – Results of Public Filing Search.

4

be included in the calculation of EBITDA for the purposes of the Plaintiff's bonus determination.

The Company's definition of EBITDA is important because, as stated above, EBITDA is a non-GAAP term with no compulsory accounting disclosure or calculation requirements. The Securities and Exchange Commission ("SEC") recognized that this creates a risk of incomparability between companies, and released a series of guidelines on the presentation of non-GAAP measures. In Release No. 33-8039 issued in December 2001, the SEC states that non-GAAP measures, "often referred to as 'pro forma' financial information . . . [have] no defined meaning and no uniform characteristics."[13]  As discussed above, although industry and financial definitions exist for EBITDA, a GAAP definition does not.  As a follow-up to the December 2001 release, the SEC issued a ruling in 2003 that now requires registrants to disclose their internal definitions of non-GAAP terms and reconcile these measures to the most closely related GAAP number. The SEC's guidelines show that the Company's definition is the essential factor to consider in understanding the EBITDA formula in the employment contract.

The Company's Consolidated Financial Statements for the fiscal years ended December 31, 2000 and January 1, 2000 include the Consolidated Statement of Operations. The Consolidated Statement of Operations includes a line item that reads "Earnings (loss) before interest expense, taxes, depreciation and amortization and extraordinary loss."[14] This line item corresponds to the definition of EBITDA in Note 6 to the Consolidated Financial Statements which states "EBITDA to be the sum of its income, including interest income and other income, before interest expenses, minority interest and taxes plus depreciation and amortization."[15]  This definition of EBITDA is consistent with that which is presented in the Company's Consolidated Financial Statements for the previous

---

[13] Securities and Exchange Commission. "Cautionary Advice Regarding the Use of 'Pro Forma' Financial Information in Earnings Releases." Release Nos. 33-8039, 34-45124, FR-59, http://www.sec.gov/rules/other/33-8039.htm (19 January 2006).
[14] Wolverine Proctor & Schwartz, Inc. Consolidated Financial Statements as of December 31, 2000 and January 1, 2000, page 3.
[15] Wolverine Proctor & Schwartz, Inc. Consolidated Financial Statements as of December 31, 2000 and January 1, 2000, page 13.

three fiscal years.[16] The 2001 Consolidated Financial Statements of Wolverine Proctor LLC, the Consolidated Statement of Operations also includes the line for "(Loss) earnings before interest expense, taxes, depreciation and amortization and extraordinary gain."[17] "Income, including interest income and other income" does not include extraordinary gains or losses as these are presented as separate line items in the income statement.

The Company recognized an extraordinary loss in 1999 and the extraordinary gain in 2001, neither of which is included in the aforementioned line item. Thus, the Company's definition and presentation of EBITDA in its financial statements does not include extraordinary items.

The Company also produced internal income statement data on a monthly basis that included EBITDA information. A December 2001 schedule which includes income statement data for 2000 and 2001 reflects EBITDA based on the operating income of the Company. In addition, one schedule includes a line item for extraordinary loss that is not included in the EBITDA calculation as it is listed below the EBITDA line on the schedule.[18] Mr. Crawford testified that he regularly received these monthly financial statements, reviewed them for errors as part of his normal duties, and performed additional analyses if necessary.[19]

In his December 2, 2004 letter to Mr. Chilinski, the Plaintiff includes a formula for EBITDA as:

> Loss before interest, taxes, depreciation, amortization and extraordinary gain
>
> Plus: Extraordinary gain

---

[16] Wolverine Proctor & Schwartz, Inc. Consolidated Financial Statements as of January 1, 2000 and December 26, 1998, page 12; Wolverine (Massachusetts) Corporation Consolidated Financial Statements as of December 26, 1998 and December 31, 1997, page 13; Wolverine (Massachusetts) Corporation Consolidated Financial Statements as of December 31, 1997 and December 29, 1996, page 13.
[17] Wolverine Proctor LLC, Consolidated Financial Statements as of December 31, 2001, PAC0030.
[18] Income Statement Date – Wolverine, 12/21/01, PAC 0100-0101.
[19] Deposition of Peter A. Crawford, 6 February 2006, pages 161-165.

6

The Plaintiff's first component of EBITDA traces directly back to the Statement of Operations line item that represents operating income and EBITDA according to the Company's 2000 definition of the measure.  Given the Company's definition and presentation of EBITDA in its financial statements and internal financial documents, as well as general industry practice regarding EBITDA discussed above, the Plaintiff has no basis for adding the extraordinary gain to arrive at an EBITDA value for the purpose of his bonus calculation.

## C.    *EBITDA as discussed in the Contract*

The other components of the Plaintiff's bonus formula also suggest that the extraordinary gain should not be included in the bonus calculation.

The Contract states that, "Excluded from EBITDA will be any non-operating adjustments to reserves, to the extent that those adjustments affect EBITDA, or any operating expenses charged against reserves."[20]  It is unclear what specific items the parties are trying to exclude by the term "non-operating adjustments to reserves."  Examples of reserves include inventory obsolescence reserves, allowance for doubtful accounts, environmental or litigation liability accruals, warranty reserves, etc.  In my experience, most reserves are operating reserves and thus would not include any non-operating adjustments.  The exclusion of "operating expenses charged against reserves" is also ambiguous as any charges against reserves would not affect income, but rather the reserve balance.

Mr. Crawford testified that the exclusion of "non-operating adjustments to reserves" was due to "the company's EBITDA having been propped up in prior years through pension adjustments, and … the intent was that would not be included in the bonus calculation."[21]  Mr. Crawford also testified that he believed pension and warranty reserve adjustments could be examples of non-operating adjustments to reserves.[22]  In reviewing the historical financial statements of the Company, it appears that the Company did make some

---

[20] Employment Contract between Wolverine, Proctor & Schwartz, Inc. and Mr. Peter Crawford, PAC001.
[21] Deposition of Peter A. Crawford, 6 February 2006, pages 186-187.
[22] Deposition of Peter A. Crawford, 6 February 2006, page 185.

7

pension related adjustments in 1997 and 1998 that resulted in gains. However, based on the financial statement disclosures related to these items and my experience related to pension accounting, these adjustments would be operating in nature and thus would not fall into the category of "non-operating adjustments to reserves." This would lead me to believe that the intention of this clause was to exclude items which were not part of the normal course of running the business, such as the pension adjustment and gain on the early extinguishment of debt.

Deepak Kulkarni, former CEO of the Company who executed the Contract on behalf of the Company, testified as to his intention with respect to the bonus calculation. He states, "My intention was to have you get 5 percent of the Company's cash flow… ignoring working capital changes… and ignoring extraordinary items…"[23] Mr. Kulkarni further discusses the bonus calculation when he states, "… it was very clear to me that all extraordinary type gains or losses for that matter should be excluded from this calculation."[24] As it appears that the Company intended to base Mr. Crawford's bonus on the cash available after paying off necessary obligations, the inclusion of the gain, a non-cash item, in the bonus calculation would distort the value of Mr. Crawford's contribution which the Company was attempting to represent.

Based on the language included in the Contract and the testimony of Mr. Crawford and Mr. Kulkarni, it appears that the parties were trying to exclude for the purpose of the bonus calculation, items from EBITDA that were not a result of normal business operations. A gain from the early extinguishment of debt is both a non-operating and non-cash item. Thus, it would be inappropriate to include this gain in the EBITDA calculation.

D.    *Exclusion of Bonus from Company Documents*

I understand based upon the testimony of Mr. Kulkarni that Wolverine Proctor LLC's 2001 consolidated financial statements do not include an accrual for a bonus due to Mr.

---

[23] Deposition of Deepak Kulkarni, 7 December 2005, page 198.
[24] Deposition of Deepak Kulkarni, 7 December 2005, page 202.

Crawford. A bonus accrual was not included in the internal monthly financial statements that Mr. Crawford received in December 2001 prior to the close of the recapitalization transaction.[25] As an executive officer of the Company, it was Mr. Crawford's duty to disclose any items he knew to be missing from the Company's documentation and financial information. Mr. Crawford also testified that prior to December 31, 2001, he did not disclose to anyone that he would be expecting a sizable bonus in 2002 relating to the Company's 2001 financial performance.[26]

Mr. Kulkarni echoed this point in his testimony when discussing the extraordinary gain and its exclusion from Mr. Crawford's bonus calculation. He states, "… if I thought this was even the remotest possibility, do you think that, A, this would not have to be disclosed to Parthenon; and B, that this would not have to be booked on the books and records of the Company as being accrued compensation to Peter Crawford under the bonus program, and so you think we would have prepared financial statements that would have misrepresented the financial position of the Company by as much as an incremental half a million dollars which is 5 percent of 10 million?"[27] Mr. Kulkarni goes on to state that the auditors were aware of Mr. Crawford's contract and would have required them to book a charge in the books if there was a bonus due.[28]

*****

I understand that the submission of expert reports and related depositions in this matter are still ongoing. Accordingly, I reserve the right to amend my report should additional relevant information come to my attention.

Christopher Georgiou, CPA

---

[25] Deposition of Peter A. Crawford, 6 February 2006, pages 196-199.
[26] Deposition of Peter A. Crawford, 6 February 2006, page 205.
[27] Deposition of Deepak Kulkarni, 7 December 2005, pages 173-4.
[28] Deposition of Deepak Kulkarni, 7 December 2005, page 174.

9

ATTACHMENT A

| | |
|---|---|
| **Name:** | **Christopher Georgiou, CPA** |
| **Education:** | University of New Hampshire: Bachelor of Science in Hotel Administration May 1986, with Honors |
| | Northeastern University Graduate School of Professional Accounting: Masters in Accounting, September 1989, with Honors |
| **Qualifications:** | Certified Public Accountant |
| **Current Position:** | Partner, Forensic & Dispute Services<br>Deloitte Financial Advisory Services LLP (Deloitte FAS) |
| **Profile:** | Mr. Georgiou is a partner in the New York Forensic & Dispute Services practice of Deloitte Financial Advisory Services LLP ("Deloitte FAS") and is an experienced practitioner in U.S. GAAP and SEC matters. He has more than 16 years of experience working in the Deloitte U.S. Entities and in the global Deloitte Touche Tohmatsu network of member firms, during which time he has provided auditing and consulting services to both domestic and global clients in a variety of industries. Prior to joining Deloitte FAS, he spent three years in Budapest, Hungary as a partner of Deloitte & Touche LLP, serving clients in the technology, automotive and consumer business industries. Prior to that, he was based in Boston, where he served clients in the technology, manufacturing and consumer business industries. |

**Key Qualifications:**

**Accounting and Auditing:**

- Planned, administered, and coordinated all aspects for audits conducted in accordance with auditing standards generally accepted in the United States for numerous domestic and foreign subsidiaries of multinational entities.
- Analyzed internal control, accounting and business systems.
- Reviewed and analyzing financial statements and data for unusual fluctuations and discussed these analyses with management.
- Industry coverage of clients includes: manufacturing, retail, consumer products, services, technology and media.
- Preparation of financial statements in accordance with accounting standards generally accepted in the United States (US GAAP) and International Financial Reporting Standards.
- Providing training to internal staff and external clients regarding auditing, accounting issues and understanding financial statements.

1

ATTACHMENT A

**Advisory Services:**

- Led a significant litigation support project involving a large public company. The litigation involved issues relating to revenue recognition, fraudulent journal entries, purchase accounting as well as goodwill and asset impairment.
- Assisted a neutral arbitrator in connection with a number of commercial disputes.
- Lead a forensic investigation relating to misappropriation of funds by the CEO.
- Performed financial due diligence and closing balance sheet audits addressing complex accounting issues.

**Work Experience:**

Partner – New York Office
Deloitte Financial Advisory Services, LLP
August 2004 to Present

Partner – Budapest, Hungary
Deloitte & Touche, LLP
September 2001 to August 2004

Partner – Boston Office
Deloitte & Touche, LLP
September 1989 to September 2001, (Hired as a staff accountant in 1989, was promoted to manager in 1994, Senior manager in 1997 and partner in June 2001.)

**Representative Audit Clients Served:**

**Boston**

- Viewlogic
- Creative Biomolecules Inc.
- DAKA International
- Lightbridge
- Ocean Spray Cranberries
- Legal Sea Foods
- Fisher Scientific International
- Henley
- Jones & Vining
- Tedesco Steakhouse Inc. (Outback Franchisee)

**Hungary**

- General Motors
- Procter & Gamble
- Flextronics
- Graphisoft
- Bunge
- Dow
- Sykes

ATTACHMENT A

**Professional Affiliations:**

- American Institute of Certified Public Accountants
- Massachusetts Society of Certified Public Accountants
- Association Certified Fraud Examiners

ATTACHMENT B

## Crawford vs. Wolverine, Proctor & Schwartz, et. al.  CIV. No. 05-10078-DPW

**Documents Considered**

| Description |
|---|
| **COURT DOCUMENTS** |
| Complaint in the matter of Crawford vs. Wolverine, Proctor & Schwartz, et. al.  CIV. No. 05-10078-DPW |
| Deposition and Exhibits to Deposition of Mr. Richard M. Cummings in the matter of Crawford vs. Wolverine, Proctor & Schwartz, et. al.  CIV. No. 05-10078-DPW |
| Deposition of Mr. Deepak Kulkarni in the matter of Crawford vs. Wolverine, Proctor & Schwartz, et. al.  CIV. No. 05-10078-DPW |
| Exhibit 8 to Deposition of Mr. Deepak Kulkarni, "Income Statement Data", PAC 0100-0101 |
| Deposition of Mr. Peter A. Crawford in the matter of Crawford vs. Wolverine, Proctor & Schwartz, et. al.  CIV. No. 05-10078-DPW |
| Plaintiff's Response to the Defendants' First Set of Interrogatories to Plaintiff in the matter of Crawford vs. Wolverine, Proctor & Schwartz, et. al.  CIV. No. 05-10078-DPW |
| **GENERALLY ACCEPTED ACCOUNTING PRINCIPLES AND OTHER ACCOUNTING LITERATURE** |
| Accounting Principles Board Opinion No. 20: Accounting Changes |
| Accounting Principles Board Opinion No. 30: Reporting the Results of Operations - Reporting the Effects of Disposal of a Segment of a Business, Extraordinary, Unusual and Infrequently Occurring Events and Transactions |
| Accounting Principles Board Opinion No. 9: Reporting the Results of Operations |
| Securities and Exchange Commission Release No. 33-8039. "Cautionary Advice Regarding the Use of 'Pro Forma' Financial Information in Earnings Releases."  Release Nos. 33-8039, 34-45124, FR-59, http://www.sec.gov/rules/other/33-8039.htm (19 January 2006). |
| Statement of Financial Accounting Concepts No. 5: Recognition and Measurement in Financial Statements of Business Enterprises |
| Statement of Financial Accounting Standards No. 130: Reporting Comprehensive Income |
| Statement of Financial Accounting Standards No. 145: Rescission of FASB Statements No. 4, 44, and 64, Amendment of FASB Statement No. 13, and Technical Corrections |
| Statement of Financial Accounting Standards No. 4: Reporting Gains and Losses from the Extinguishment of Debt |
| **COMPANY FINANCIAL STATEMENTS** |
| Consolidated Financial Statements of Wolverine Corporation as of December 31, 1997 and December 29, 1996 |
| Consolidated Financial Statements of Wolverine Corporation as of December 26, 1998 and December 31, 1997 |
| Consolidated Financial Statements of Wolverine Proctor & Schwartz, Inc. as of January 1, 2000 and December 26, 1998 |
| Consolidated Financial Statements of Wolverine Proctor & Schwartz, Inc. as of December 31, 2000 and January 1, 2000 |
| Consolidated Financial Statements of Wolverine Proctor LLC as of December 31, 2001 |
| Consolidated Financial Statements of Wolverine Proctor LLC and Subsidiaries for the years ended December 31, 2002 and 2001 |
| Consolidated Financial Statements of Wolverine Proctor LLC and Subsidiaries for the years ended December 31, 2003 and 2002 |
| Consolidated Financial Statements of Wolverine Proctor LLC and Subsidiaries for the years ended December 31, 2004 and 2003 |

ATTACHMENT B

| Description |
|---|
| **INTERNAL COMPANY DOCUMENTS** |
| Demand Letter from Mr. Peter A. Crawford to Mr. Steven F. Chilinksi, December 2, 2004 |
| Employment Contract between Wolverine Proctor & Schwartz, Inc. and Mr. Peter A. Crawford, January 4, 2000 |
| Loan and Security Agreement between Citizens Banks of Massachusetts and Wolverine Proctor & Schwartz, Inc., February 24, 1999 |
| Mortgage Agreements between Wolverine Proctor & Schwartz, Inc. and Parthenon Investors II, L.P., J&R Founders' Fund, L.P., and PCIP, December 28, 2001 |
| Promissory Note between Wolverine Proctor & Schwartz, Inc. and J&R Founders' Fund, L.P., December 28, 2001 |
| Promissory Note between Wolverine Proctor & Schwartz, Inc. and Parthenon Investors II, L.P., December 28, 2001 |
| Promissory Note between Wolverine Proctor & Schwartz, Inc. and PCIP, December 28, 2001 |
| Settlement Agreement between Wolverine Proctor LLC, Mr. Deepak Kulkarni, and Mr. Peter A. Crawford, December 28, 2001 |
| Transition Agreement between Wolverine Proctor & Schwartz, Inc. and Mr. Peter A. Crawford, December 28, 2001 |
| **FORM 10-K - RESULTS FROM PUBLIC FILING SEARCH FOR GAIN ON EARLY DEBT EXTINGUISHMENT** |
| Aether Systems, Inc. for the fiscal year ended December 31, 2001 |
| American Commercial Lines LLC for the fiscal year ended December 28, 2001 |
| DoubleClick, Inc. for the fiscal year ended December 31, 2001 |
| Harrah's Entertainment, Inc. for the fiscal year ended December 31, 2001 |
| Imperial Credit Industries, Inc. for the fiscal year ended December 31, 2001 |
| Ispat Inland Inc. for the fiscal year ended December 31, 2001 |
| JCC Holding Company, Inc. for the fiscal year ended December 31, 2001 |
| La Quinta Corporation for the fiscal year ended December 31, 2001 |
| Level 3 Communications, Inc. for the fiscal year ended December 31, 2001 |
| Moa Hospitality, Inc. for the fiscal year ended December 31, 2001 |
| Omega Healthcare Investors, Inc. for the fiscal year ended December 31, 2001 |
| Primus Telecommunications Group, Inc. for the fiscal year ended December 31, 2001 |
| Pueblo Xtra International, Inc. for transition period from January 28, 2001 to November 3, 2001 |
| Safety-Kleen Corp. for the fiscal year ended August 31, 2001 |
| Service Corporation International for the fiscal year ended December 31, 2001 |
| The Fortress Group, Inc. for the fiscal year ended December 31, 2001 |
| Vornado Realty Trust for the fiscal year ended December 31, 2001 |
| Xerox Corporation for the fiscal year ended December 31, 2001 |

ATTACHMENT B

| Description |
|---|
| **NEWS ARTICLES** |
| Angell, Mike. "EBITDA Can be Misleading Measure of a Firm's Performance Cash Flow." *Investor's Business Daily,* 24 July 2002. Database on-line. Factiva |
| Wayman, Rick. "The Good, the Bad, and the Ugly," 6 February 2002, <http://www.investopedia.com/printable.asp?a=/articles/analyst/020602.asp. (19 December 2005). |
| "EBITDA is firm's purest bottom line." *The Toronto Star,* 3 June 1998. Database on-line. Factiva. |
| Rosen, Al and Mark Rosen. "Earnings before everything else: EBITDA measure no substitute for cash flow or income." *National Post,* 23 September 2004. Database on-line. Factiva. |
| Peers, Martin and Robin Sidell. "Days May be Numbered for Ebitda Numbers." *Wall Street Journal,* 5 July 2002. Database on-line. Factiva |
| **BOOKS** |
| *Finance for Managers.* 2002. Boston: Harvard Business School Publishing Corporation, 15 |
| Keoun, Arthur J., et al. eds. 2001. *Foundations of Finance: The Logic and Practice of Financial Management, 3rd ed.* Upper Saddle River: Prentice Hall, 88. |
| **WEBSITE DEFINITIONS** |
| "EBITDA - A complete definition," <http://www.streetauthority.com/terms/e/ebitda.asp> ( 19 December 2005). |
| "EBITDA," <http://en.wikipedia.org/wiki/EBITDA> (19 December 2005). |
| "Free Cash Flow," < http://www.investorwords.com/2084/free_cash_flow.html> (17 January 2006). |
| "Free Cash Flow,"< http://www.investopedia.com/terms/f/freecashflow.asp> ( 17 January 2006). |

ATTACHMENT C

| | GAIN ON EARLY EXTINGUISHMENT OF DEBT IN 2001 | | | |
|---|---|---|---|---|
| | RESULTS OF PUBLIC FILING SEARCH | | | |
| | COMPANY | I/S CLASSIFICATION | INCLUDED IN EBITDA? | EBITDA DEFINITION |
| 1 | American Commercial Lines LLC | Extraordinary | NO | EBITDA represents… the subtraction of $1,886 gain from the sale of terminals |
| 2 | Harrah S Entertainment Inc | Extraordinary | NO | EBITDA earnings equal operating earnings |
| 3 | Aether Systems Inc | Extraordinary | NO | Earnings not defined; based on Deloitte recalculation |
| 4 | Level 3 Communications Inc | Extraordinary | NO | defines EBITDA earnings as earnings before "non-cash operating expenses (including stock-based compensation and impairment charges) and other non-operating income or expenses" |
| 5 | Omega Healthcare Investors Inc | Extraordinary | NO | The revenues, expenses, assets and liabilities… which related to our owned and operated assets…; detailed calculation does not include extraordinary item |
| 6 | La Quinta Corp | Extraordinary | NO | EBITDA earnings defined as earnings from continuing operations |
| 7 | Moa Hospitality Inc | Extraordinary | NO | definition of EBITDA earnings appears to represent operating income; earnings before… gain on early extinguishment of debt |
| 8 | Safety Kleen Corp De | Extraordinary | NO | EBITDA earnings equal operating earnings |
| 9 | Service Corp International | Extraordinary | NO | EBITDA earnings equal net income before non-recurring items |
| 10 | Vornado Realty Trust | Extraordinary | NO | EBITDA earnings equal before extraordinary or non-recurring items |
| 11 | Doubleclick Inc | Extraordinary | EBITDA not reported | |
| 12 | Imperial Credit Industries Inc | Extraordinary | EBITDA not reported | |
| 13 | Ispat Inland Inc | Extraordinary | EBITDA not reported | |
| 14 | Fortress Group Inc | Extraordinary | EBITDA calculation not shown or determinable from given information | Discusses EBITDA from continuing operations… |
| 15 | JCC Holding Co | Extraordinary | EBITDA calculation not shown or determinable from given information | Discusses EBITDA adjusted for certain non-recurring items… |
| 16 | Primus Telecommunications Group Inc | Extraordinary | EBITDA calculation not shown or determinable from given information | |
| 17 | Pueblo Xtra International Inc | Extraordinary | EBITDA calculation not shown or determinable from given information | EBITDA (as defined) represents Earnings Before Interest, Taxes, Depreciation, Amortization, the loss on sale/leaseback transaction, sundry, and the write down of impaired assets. |
| 18 | Xerox Corp | Extraordinary | EBITDA calculation not shown or determinable from given information | |