FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
District of Massachusetts

2006 APR -b  P 12: 18

U.S. DISTRICT COURT
DISTRICT OF MASS.

Civil Action
No. 05-10078-DPW

|                                              |   |
|----------------------------------------------|---|
| PETER A. CRAWFORD, Plaintiff                 | ) |
|                                              | ) |
| v.                                           | ) |
|                                              | ) |
| WOLVERINE, PROCTOR & SCHWARTZ, INC.,         | ) |
| Steven F. Chilinski, Deepak S. Kulkarni,     | ) |
|                                              | ) |
| Defendants                                   | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF ELECTRONIC DATA FILES

### REQUEST FOR ORAL ARGUMENT

Plaintiff hereby requests, pursuant to Local Rule 7.1(d) that oral argument be permitted on this motion.

### ARGUMENT

In apparent recognition that their third request for production of documents exceeded the limit established by Local Rule 26.1(c) of two sets, defendants' motion to compel relates solely to requests 1, 9 and 18 from Defendants' First Request for Production of Documents to Plaintiff (hereinafter "First RPD"). However, these requests related specifically to documents involving the allegations in the Complaint (request 1), documents relating to the terms and conditions of plaintiff's employment (request 9) and documents that were removed by the plaintiff from WPS's facilities while he was a WPS employee (request 18). In an attempt to camouflage the nature of their prior requests and

1

obtain what they allege is a "horde"[1] of documents not requested until their impermissible third request for production, defendants motion now goes beyond the scope of the requests in their First RPD and requests "all electronic data files currently in plaintiff's possession which relate to plaintiff's employment as WPS's Chief Operating Officer."

Furthermore, in an attempt to hide from this Court the fact that the plaintiff has already provided the documents responsive to requests 1 and 9, defendants, in violation of Local Rule 37.1(b)(4), fail to reproduce the entire response by the plaintiff to their requests. The full text of plaintiff's responses are reproduced herein. While plaintiff did not produce any documents specifically responsive to request 18, that was because any relevant documents had been produced in response to other requests. Request 18 was arbitrarily based upon the physical location of particular documents at particular times, rather than the content of the documents, and was not reasonably calculated to lead to the discovery of admissible evidence.

## 1. PLAINTIFF HAS PRODUCED ALL DOCUMENTS THAT MAY REASONABLY BE CONSIDERED RESPONSIVE TO REQUESTS ONE AND NINE.

The text of defendants' request 1 of their first request for production was:

> All documents, notes, diaries, journals, logs, chronologies of events, correspondence files, meeting notes, minutes, calendars, tape recordings, videotapes, photographs or other documents maintained or created by plaintiff that depict, relate or pertain to events, communications or allegations set forth in his Complaint.

Plaintiff's response was:

---

[1] Defendants apparently misperceive plaintiff's reference in his deposition to hundreds of CDs in his possession and assume that these all contain WPS, Inc. documents. In fact, plaintiff was referring to various backup copies that plaintiff has made of his computers over the years, most of which have no information relating to WPS, Inc. However, these would need to be gone through to find those CDs that might have information relating to WPS, Inc.

Plaintiff objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the generality of the foregoing plaintiff attaches hereto the meeting notes bearing the page numbers PAC0392-PAC0393, PAC0409-PAC0413 and PAC0416-PAC0425. Plaintiff further states that he has misplaced his calendar for 2001 but is still searching for it. His 2002 calendar has been reviewed and contains no entries relating to WPS. His 2000 calendar has entries relating to WPS, but none responsive to this request.

The text of defendants' request 9 of their first request for production was:

All documents that reflect, relate or refer to the terms and/or conditions of plaintiffs employment with WPS or any related entity.

Plaintiff's response was:

Plaintiff objects to this request on the grounds that it is vague and ambiguous. Without waiving this objection, plaintiff attaches pages PAC0342-PAC0416 and PAC0423-PAC0429 hereto, and references pages PAC0001- PAC0022 and PAC0043-PAC0051 attached to his Rule 26 Disclosure Statement in this matter.

In responding to these two requests, plaintiff reviewed the "events, communications [and] allegations set forth in his Complaint." In so doing, the plaintiff determined that, while the phrase was vague and ambiguous, that there were a number of events that formed the basis for his Complaint. These were, (1) the negotiation of the Employment Agreement in late 1999 and 2000, (2) negotiations relating to the increase in the bonus percentage to eight percent, which occurred in early 2001, (3) the negotiation of the Transition Agreement and the Settlement Agreement in December, 2001, and (4) the events leading up to his termination on January 14, 2002, including defendant Kulkarni's attempt to extract \$135,000 in extracontractual compensation from WPS, Inc. He produced notes, contract drafts, and other documents in each of these areas.

With respect to request nine, the phrase "terms and conditions of plaintiff's employment" is somewhat ambiguous, but plaintiff construed it to refer to written and

3

oral agreements that set forth the terms and conditions of his contract with WPS, Inc..

Responsive documents overlap with 1, 2 and 3 above. In responding to these two

requests, plaintiff produced 88 pages of documents that had not previously been provided

to defendants, and referred to 31 pages of documents that had been produced with his

Rule 26 disclosure. Plaintiff does not believe that any additional information responsive

to either request 1 or 9 is available in electronic form. Plaintiff's Affidavit ¶3.

## II. REQUEST 18 WAS VAGUE, AMBIGUOUS AND NOT REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE

Request 18 of defendants' first request for production requested:

> Any and all documentation currently in plaintiff's position (sic) which was removed by plaintiff from WPS's facilities while plaintiff was a WPS employee.

To this request, plaintiff responded:

> Plaintiff objects to this request on the grounds that it is vague, ambiguous, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further states that, with respect to certain documents, it is not possible to tell when, if ever, they were removed from WPS's facilities.

Clearly, this request is a catch all that is not reasonably calculated to lead to the discovery

of admissible evidence, inasmuch as it relies upon the physical location of particular

items of "documentation" at various times, rather than the content of those items of

"documentation." Thus any "documentation" that might ever have been brought into the

WPS, Inc. offices would fall within the scope of this request. For example a personal

letter, completely unrelated to WPS, Inc., that plaintiff might have had in his briefcase

upon arriving at work, but that he "removed" from the office at the end of the day by

carrying his briefcase out of the office would fall within the scope of this request.

Furthermore, the use of the word "documentation," as opposed to "document" used

elsewhere in the First RPD, indicates that it has a different meaning than "document," but

4

that that meaning is uncertain. In the preamble to the First RPD, defendants define "document" to be "synonymous in meaning and equal in scope to the usage of this term in FRCP 34(a), including, without limitation, electronic or computerized data compilations." See Plaintiff's Affidavit in Support of his Opposition to Defendants' Motion to Compel Production of Electronic Data Files (hereinafter "Plaintiff's Affidavit") ¶5 at 1. Inasmuch as defendants used the word "documentation," rather than "document," they apparently intended it to have a different meaning that in any case does not explicitly encompass electronic or computerized data.

Secondly, defendants use the phrase "currently in plaintiff's position." Plaintiff now learns that this was apparently a typographical error, as the defendants' memorandum substitutes the word "possession," in place of "position," which was not in the original request. See Plaintiff's Affidavit ¶5 at 7. In so doing, defendants fail to acknowledge that the original request did not use that word. Again, their memorandum is misleading to this Court.

Third, the use of the singular form in the phrase "which was removed" indicates that there is only one item of "documentation" that is apparently being requested by defendants, otherwise, the plural form of the verb would presumably have been used. However, defendants fail to specify which item of "documentation" they mean.

Fed. R. Civ. P. 34(b) requires that items to be inspected be "describe[d] [] with reasonable particularity." With respect to request 18, defendants have utterly failed to meet this requirement. There is no conceivable way, without guessing, that the plaintiff would know what documentation item or items were being requested. Does the request include copies of pay stubs that he received while an employee, but removed from the

5

WPS facilities? Does it include items that might have been in his briefcase or wallet at some point when he entered the WPS, Inc. facilities, but which later left the facilities when he left them with his briefcase or wallet? Would it include a copy of his library card? How about the receipt that he obtained when he dropped his shirts off at the laundry on the way into work, but which passed the day folded up in his pocket and was thereby removed from WPS's facilities at the end of the day? Even the label on his coat, instructing that it be dry cleaned, would appear to qualify as items of "documentation" that was removed from WPS's facilities.

Normally, discovery requests include some hint that enables the reader to comprehend the sort of information being requested by the other party. Not so here. Any and all items of "documentation" would appear to have been within the scope of this request. Nor is the plaintiff even able, based upon the request, to determine what documents would be responsive and which would not, inasmuch as he did not keep a log of items of "documentation" that were carried into, or removed from the WPS facilities. Thus, those items that might be in plaintiff's files which at some point might have entered or left WPS's facilities cannot, in many cases, be separated from those items that may never have entered or left such facilities. Plaintiff's Affidavit ¶4. Defendants "ought not to be permitted to use broadswords where scalpels will suffice." Mack v. Great Atlantic and Pacific Tea Co., Inc., 871 F.2d 179, 187 (1st Cir. 1989).

Defendants attempt to bolster their argument by claiming that WPS, Inc. is entitled to the documents as the plaintiff has "no legal entitlement to possess such documents." They point to no contract between the plaintiff and WPS, Inc. that so states, nor do they cite any case law which so provides. Furthermore, whether or not a particular

document is discoverable is a separate issue from whether or not the plaintiff is entitled to retain a copy of a particular document that defendants claim ownership of. Nothing in the Fed. R. Civ. P. permits such claimed ownership to even be considered as a factor in determining whether the item is discoverable.

Finally, the electronic data files that defendants seek were contained on the hard drive of the laptop computer that the plaintiff purchased with his own money and that he owned. Following his termination on January 14, 2002, the plaintiff had a brief discussion with defendant Kulkarni as he left the building. Mr. Kulkarni acknowledged that the plaintiff owned the laptop and permitted it to be removed from the building without protest, while Mr. Kulkarni and the plaintiff agreed that the associated computer monitor that he had been using belonged to the company and the plaintiff left it in his office. Plaintiff's Affidavit ¶6. Defendant Kulkarni was well aware that the plaintiff's laptop included e-mail files, as he had personally overseen the transfer of all of the plaintiff's e-mail files from the main e-mail server at the WPS, Inc. facility to the plaintiff's laptop computer only a little over a month before. Plaintiff's Affidavit ¶7. Since the plaintiff left the WPS Inc. facilities after he had been terminated and thus after he had ceased to be a WPS employee, any items of "documentation" that were on that laptop were, by definition, not responsive to request 18, which by its terms, requests only "documentation" removed by plaintiff while "plaintiff was a WPS employee."

## III. DEFENDANTS' ATTEMPT TO TRANSFORM THEIR FIRST RPD REQUESTS INTO REQUESTS FOR ELECTRONIC DATA FILES "RELATING TO PLAINTIFF'S EMPLOYMENT" IS UNAVAILING

Apparently recognizing the invalidity of their third RPD, defendants' motion relies entirely upon alleged deficiencies in plaintiff's responses to their First RPD.

However, as argued above, plaintiff responded fully to requests 1 and 9, and request 18 was validly objected to. Furthermore, even if request 18 could somehow be construed to include the electronic data files that defendants now seek, these files could not possibly be responsive to request 18 as they were removed from the WPS Inc. facilities after the plaintiff ceased to be a WPS, Inc. employee.

Quite apparently, defendants are attempting to get this Court to order production of documents that were never included in their First RPD. Their motion now seeks an order that the plaintiff "produce all electronic data files currently in plaintiff's possession which relate to plaintiff's employment as WPS's Chief Operating Officer." That is a different request than 1, 9 or even 18. Request 1 sought documents that "depict, relate or pertain to events, communications or allegations set forth" in the Complaint. The plaintiff has already provided all documents in his possession that reasonably could be deemed to satisfy that request, even though defendants concede that the request was "admittedly broad in scope." Now, for the first time from their motion, we learn that they expected that this request would be construed to include "at the very least [] all of those materials described in plaintiff's initial disclosure statement..." See Defendants' Memorandum of Law in Support of Defendants' Motion to Compel Production of Electronic Data Files (hereinafter "Defendants' Memorandum") at 6.

Apparently defendants were expecting that the plaintiff would interpret this particular request, among the 19 propounded, as including all documents identified in the plaintiff's Rule 26 disclosure statement. Clearly, they were anticipating that the plaintiff be clairvoyant. In fact, it is apparent that defendants in all likelihood did not bother to read the Rule 26 disclosure statement, until much later, as it was not until January 30,

2006, over 7 months after he revealed the possible existence of the electronic documents in his Rule 26 disclosure statement that defendants propounded their third (and impermissible) RPD requesting these documents.

Request 9 similarly cannot be related to defendants' current motion. Again, plaintiff has already produced all documents that reasonably can be construed to "relate or refer to the terms and/or conditions of plaintiff's employment." Now, defendants seek documents "which relate to plaintiff's employment as WPS's Chief Operating Officer," and much broader range of documents that clearly was not contemplated by either request 1 or request 9. Furthermore, most of the requested documents fall outside of the range of permissible discovery, as the vast majority of the activities in plaintiff's employment with WPS, Inc. have nothing to do with the claims and defenses in this case. See F.R.C.P. 26(b)(1).

Request 18 requested documents that plaintiff removed from WPS's facilities, while defendants' motion seeks "all electronic data files currently in plaintiff's possession which relates to plaintiff's employment as WPS's Chief Operating Officer." While there might be some overlap between these categories, there are certainly some documents referenced in the motion that came into plaintiff's possession without having been removed from WPS's facilities. For example, the Transition Agreement and Settlement Agreement were generated at the offices of Ropes & Gray in Boston and immediately taken home to be filed by the plaintiff. Plaintiff's Affidavit ¶8. These and other documents would be within the scope of defendants' motion, but not within the scope of request 18. Conversely, copies of newspapers and magazines that plaintiff received at WPS's facilities would have no relationship to plaintiff's employment but

9

nevertheless might have been removed from there and would be responsive to request 18.

## IV. IN ANY EVENT, DEFENDANTS HAVE FAILED TO DEMONSTRATE ANY RELEVANCE TO THE REQUESTED DOCUMENTS AND THEIR PRODUCTION WOULD BE UNDULY BURDENSOME

After spending page after page lambasting the plaintiff for failing to produce

documents that defendants failed even squarely to request until January 30, 2006, despite

having been informed of them in plaintiff's Rule 26 disclosure on June 22, 2005,

defendants wait until page 12 of Defendants' Memorandum to summarize what is

actually the most important issue for this Court to consider, assuming it gets past the

issue of whether the electronic data files fall within the First RPD. That is, whether the

requested documents are reasonably calculated to lead to the discovery of admissible

evidence, and if so, whether the burden to be borne by the plaintiff in producing the

documents outweighs its likely benefit. See Fed. R. Civ. P. 26(b).

Defendants advance three arguments: (1) that documents relating to the

performance of plaintiff's duties relate to the bonus as the plaintiff claims that he is

eligible for a bonus due to his successful management of WPS, Inc., (2) that the

documents may shed light on plaintiff's job performance, which they allege led to his

termination and (3) that the documents may provide support for their equitable estoppel

defense.

However, none of these arguments is persuasive. First, while the plaintiff does

argue that he successfully turned around WPS, Inc., it is not an element of the claims and

defenses of the case. His entitlement to the bonus is a matter of contract, and a simple

issue of applying the contract to the reported 2001 financial results of WPS, Inc. Second,

while the defendants are arguing that plaintiff's termination was a result of job

performance issues, those arguments are based on an alleged lack of interpersonal skills, an issue that spreadsheets and e-mails are unlikely to shed any significant light on,[2] as all of the alleged instances cited by defendant Kulkarni related to in-person, rather than e-mail interactions. Finally, defendants equitable estoppel argument has little merit as will be further argued by the plaintiff in his opposition to defendants' summary judgment motion, due to be submitted later this week. That argument necessarily fails, independent of what any e-mails or other documents show, because both WPS, Inc. and Parthenon were fully aware of the terms of plaintiff's Employment Agreement and could easily have determined that a bonus would be owed, and because Mr. Kulkarni admitted in his deposition that he knew that it was likely that the plaintiff would request a bonus before the December 2001 transaction, and before plaintiff and he executed the Transition Agreement that specifically excluded the bonus from the release in that agreement. See Plaintiff's Affidavit in Support of his Motion for Partial Summary Judgment, Exhibit O at 2-13 to 2-15.

Additionally, substantially all of the e-mails that plaintiff sent and received were to or from other WPS, Inc. employees. Plaintiff's Affidavit ¶9. Thus, the contents of those e-mails and documents is within the corporate memory of WPS, Inc., even if, as they allege, the e-mails may no longer be available within WPS, Inc. Yet, defendants submit no affidavits or other evidence indicating that any of their employees recall

---

[2] Defendant Kulkarni's deposition testimony was that the plaintiff "lost [his] support gradually," but that "the only reason why [the plaintiff] continued to stay employed is because you had my support, okay, and the moment you lost my support you were done." Kulkarni deposition at 101-102. Kulkarni went on to cite a number of the plaintiff's "idiosyncrasies," and then related a number of instances of alleged interactions between the plaintiff and various persons in 2000 and 2001. Coincidentally, after two years, the loss of support and the termination of the plaintiff happened to occur on the same day that the plaintiff blocked a $135,000 extracontractual payment to Kulkarni.

11

receiving or sending any e-mail to or from the plaintiff that would be relevant to the claims and defenses in this case. If any of the e-mails or other documents were that important, it seems likely that defendants would have been able to relate at least one example. Yet, they provide not a single specific example, but only generic speculation as to how the e-mails might be helpful. Furthermore, the e-mails themselves were backed up in early December, 2001 and the backup copy was removed by Mr. Kulkarni from the WPS, Inc. offices. See Plaintiff's Affidavit ¶7. Defendants have not revealed what happened to that backup tape. Plaintiff advised Mr. Kuhn of this during the discovery conference on this issue. However, Mr. Kuhn alleges only that "upon information and belief" that "many of the documents sought by defendants' instant Motion to Compel are no longer stored on WPS's computers and, as a result, there is reason to believe that some WPS documents currently in plaintiff's possession may be the only copies of such documents available." Defendants do not submit any affidavits from WPS, Inc. employees that have actual knowledge of what happened to the other copies of the documents. Furthermore, Mr. Kuhn's affidavit suggests that only some of the documents may be unavailable on WPS's computers.

Given the significant effort involved for the plaintiff to resurrect the requested files, even if it is possible, a greater showing by defendants is necessary, even should it be determined that the information requested is both relevant and somehow legitimately included in request 1, 9 or 18. See Plaintiff's Affidavit ¶10 (the files have been deleted from plaintiff's hard drive and restoring them would likely require repartitioning the hard drive on his laptop computer, destroying new data that has been loaded there).

The issue of discovery of e-mails has come up in other cases, and in some of

12

those the cost of restoration has been in the hundreds of thousands of dollars. In referring

to e-mails that had been deleted in Rowe Entertainment v. William Morris Agency, 205

F.R.D. 421, 431 (S.D.N.Y. 2002), the court noted that

> "[j]ust as a party would not be required to sort through its trash to resurrect
> discarded paper documents, so it should not be obligated to pay the cost of
> retrieving deleted e-mails.

While, the court in Rowe ultimately ordered the e-mails produced, it ordered the

opposing party to bear the cost. Similarly, in Linnen v. A.H. Robin Company, Inc., 10

Mass. L. Rptr. 1989 (August 9, 1999), the court ordered that a sample of e-mails be

restored, in order that their usefulness could be gauged, following which further

restoration could be considered. Similarly, in Playboy Enterprises, Inc. v. Welles, 60

F.Supp.2d 1050, 1054 (S.D. Cal. 1999), the court required that an outside expert, who

signed a protective order, would be required before the defendants' hard drive could be

examined for deleted e-mails.

Defendants' delay in requesting the electronic files must also be considered.

They had ample opportunity to request these files before January 30, 2006, in fact

discovery was originally scheduled to end on December 16, 2005 and was extended only

after the parties filed a joint motion on December 8, 2005. The possible existence of

these files was revealed to the defendants on June 22, 2005, yet they did nothing

specifically to request their disclosure until just before the end of discovery. Thus Fed.

R. Civ. P. 26(b)(2)(ii) (permitting denial of a discovery request when a party has already

had ample time) requires that this discovery should be denied. Under Fed. R. Civ. P.

26(b)(2)(i), it also appears likely that much, if not all, of the information sought may be

available from a source that is more convenient, less burdensome or less expensive,

13

namely WPS, Inc.'s own computers. See Ares-Serono, Inc. v. Organon Intern. B.V., 160
F.R.D. 1, 6 (D. Mass. 1994) (denying discovery when there was a likelihood of obtaining
the information by less intrusive means). Finally, when weighing the burdens on the
plaintiff against the minimal importance of the requested information in resolving the
issues in this case under Fed. R. Civ. P. 26(b)(2)(iii), it is again clear that the plaintiff
must prevail. The requested information is little more than a "vague hope that something
helpful will turn up." Mack, supra, at 187.

In the event that this Court decides to permit the defendants discovery into the
plaintiff's e-mails and other electronic documents, the plaintiff requests that defendants
be required to bear the cost and that they be ordered to identify those documents that they
deem relevant by turning over hard copies, with Bates stamps, to the plaintiff. See Rowe,
supra, at 433.

## CONCLUSION

Because the requested electronic information was not reasonably requested in any
of the document requests cited by defendants, because defendants' motion clearly seeks
information beyond that previously requested in discovery, and because the requested
information would be burdensome for the plaintiff to produce and the defendants have
been unable to argue persuasively that the electronic information is reasonably calculated
to lead to the discovery of admissible evidence, defendants' motion should be denied.

Peter A. Crawford, pro se
23 Newcastle Dr. #11
Nashua, NH 03060
(603)888-4574

Date: April 5, 2006

14

FILED OFFICE.

UNITED STATES DISTRICT COURT
District of Massachusetts

2006 APR -6  P 12: 18

U.S. DISTRICT COURT
Civil Action
DISTRICT OF No. 05-10078-DPW

```
                                              )
PETER A. CRAWFORD, Plaintiff                  )
                                              )
        v.                                    )
                                              )
WOLVERINE, PROCTOR & SCHWARTZ, INC.,          )
  Steven F. Chilinski, Deepak S. Kulkarni,    )
                                              )
        Defendants                            )
                                              )
```

## PLAINTIFF'S AFFIDAVIT IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF ELECTRONIC DATA FILES

I, Peter A. Crawford, do hereby say and depose that:

1. I am the plaintiff in the above-captioned action.

2. I make the statements herein based upon personal knowledge, unless otherwise indicated.

3. In responding to requests 1 and 9 of Defendants' First Request for Production of Documents to Plaintiff, I determined that certain documents, such as notes of events, earlier drafts of agreements, and drafts of proposed agreements, would be responsive and I produced these documents after searching my paper files and my personal e-mail file. I located earlier drafts of the Employment Agreement, dated January 4, 2000 in my personal e-mail file and produced them in response to defendants' request. I also at one time had an e-mail account with Wolverine Proctor & Schwartz, Inc. ("WPS, Inc.") and e-mails from that account were at one time on the hard drive of a laptop computer that I

1

own. By 2005, the e-mails and other files relating to WPS, Inc. had been deleted from that laptop computer after I backed them up. I do not recall that within any of the deleted files there existed other documents in electronic form that, had I seen them in paper form, I would have considered responsive to request 1 and 9 as either pertaining to events, communications or allegations set forth in the Complaint or that relate or refer to the terms or conditions of my employment with WPS, Inc. or any related entity.

4. I did not keep a log of documents that I brought into the offices of WPS, Inc. or that I removed from those offices. It is thus impossible to tell, in many cases, whether certain documents in my files were at one time removed from the offices of WPS, Inc.

5. I attach hereto a true copy of Defendants' First Request for Production of Documents to Plaintiff that I received in November, 2005.

6. On January 14, 2002 after Mr. Brown informed me that the WPS, Inc. Board of Directors had allegedly voted to terminate my employment immediately, Mr. Kulkarni came by my office as I was placing my laptop computer in my briefcase. I had purchased the computer several months earlier with my own funds and used it for both personal and WPS, Inc. business purposes. Mr. Kulkarni and I discussed the ownership of the computer equipment in my office. I acknowledged that the computer monitor was the company's and would remain, and Mr. Kulkarni acknowledged that the laptop computer belonged to me. By the time that I left the WPS, Inc. offices with my laptop computer on January 14, 2002 I was no longer a WPS, Inc. employee. Neither Mr. Kulkarni nor anyone else from WPS, Inc. ever requested a copy of the files from my laptop computer until after this case was filed.

2

7. During early December, 2001, just prior to a hearing on the appointment of a receiver for WPS, Inc. (which didn't actually occur), Mr. Kulkarni was concerned that the receiver might have access to the e-mails of me, Mark Brown, CFO, and him. He therefore had the two of us and a WPS, Inc. information technology specialist meet him at the WPS, Inc. offices after business hours. The four of us waited while all of my e-mails, and those of Mr. Kulkarni and Mr. Brown, were permanently removed from the main WPS, Inc. e-mail server and transferred to our laptop computers. The backup tape of the server, made prior to deletion of our e-mails, was then provided to Mr. Kulkarni for him to take home. My belief is that that backup tape included all e-mails that I sent or received using my WPS, Inc. account from January 2000 through early December 2001.

8. Some documents that relate to WPS, Inc. that are in my files were never removed from the offices of WPS, Inc. For example, the Transition Agreement and Settlement Agreement were drafted and signed at the offices of Ropes & Gray in Boston, MA. I received copies and took them home immediately, where I filed them.

9. Virtually all of the e-mails from the WPS, Inc. e-mail account were either from or to other WPS, Inc. employees. A few might have been to or from WPS, Inc. customers, vendors or investors, but often WPS, Inc. employees would be copied on those e-mails.

10. Sometime in 2002 (after January 14) or 2003, I decided to upgrade the software on the laptop computer that I had utilized for personal and business purposes while I was at WPS, Inc. That required that I repartition the hard drive on the computer so that the newly installed Windows XP could be in a separate partition from the Windows Me that I had utilized at WPS, Inc. To maximize the space available for

3

Windows XP, it was necessary for me to delete as many files as I could out of the Windows Me partition. These included the e-mail and document files that I had used at WPS, Inc. Before deleting these files and repartitioning, I did a partition image backup which caused all of the files in each hard drive partition to be backed up in a special format to a number of CDs. Each CD has but a single file and cannot be separately searched as it is in a special format designed to enable the entire partition to be restored, in its entirety, from the set of CDs used to back up the partition. It was not possible to just copy the WPS, Inc. e-mail file to a single CD as that file was more than the 600-700 megabytes that would fit on a single CD. I did not obtain a DVD writer, that would have enabled such copying, until late 2003. My belief is that, in order to access the files on the partition image backup, it would be necessary to repartition my hard drive back to its prior state so that the partition could be restored in its entirety from the backup CDs. That would probably entail destroying all of the files on my laptop computer, although it might be possible, although risky, to copy these files to other backup CDs before destroying them. I estimate that performing these operations would consume several days and that success could not be assured and I might lose the valuable personal data that I currently have on my laptop computer.

Signed under pains and penalties of perjury this the 27th day of April, 2006

Peter A. Crawford, pro se
23 Newcastle Dr. #11
Nashua, NH 03060
(603)888-4574

4

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

PETER A. CRAWFORD,

      Plaintiff,

                                          Civil Action No.

v.                                          05-cv-10078 (DPW)

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,

      Defendants.

_____

## DEFENDANTS' FIRST REQUEST FOR
## PRODUCTION OF DOCUMENTS TO PLAINTIFF

      In accordance with Rule 34 of the Federal Rules of Civil Procedure, defendants Wolverine Proctor & Schwartz, Inc. ("WPS"), Steven F. Chilinski and Deepak S. Kulkarni (collectively "defendants") hereby request that plaintiff *pro se* Peter A. Crawford produce all of the items described below in his possession, custody, or control. All documents and tangible things responsive hereto should be produced for inspection and/or copying at the offices of Morgan, Brown & Joy, LLP, 200 State Street – 11th Floor, Boston, Massachusetts 02109.

## INSTRUCTIONS AND DEFINITIONS

      Defendants adopt the set of uniform instructions and definitions contained in Local Rule 26.5, presented below.

      1.    **Parties**.   As used herein, "you," "your," "Peter A. Crawford" and "plaintiff," all refer to Peter A. Crawford, the plaintiff in the above-captioned action. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a

pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

2.     **Person**.    The term "person" is defined as any natural person or any business, legal or governmental entity or association.

3.     **Communication**.    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

4.     **Document**.    The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in FRCP 34(a), including, without limitation, electronic or computerized data compilations. A draft or non-identical copy is a separate document within the meaning of this term.

5.     **Assertion of a claim of privilege**.    If you claim that any document or object requested to be identified or any other information is not subject to disclosure because of any privilege, the attorney work product doctrine, or other permissible exclusion from discovery, then for each such document, object or item of information please provide the following information:

(a)     The attorney asserting the privilege shall identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and

(b)     The following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:   the type of document, e.g., letter or memorandum; the general subject matter of the document; the date of the document; and such other

1

information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

6.   The following rules of construction shall apply to all discovery requests:

(a)   All/Each. The terms "all" and "each" shall be construed as all and each.

(b)   And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

(c)   Number. The use of the singular form of any word includes the plural and vice versa.

7.   **YOU ARE REQUESTED PURSUANT TO RULE 26(e) TO SUPPLEMENT SEASONABLY ALL OF YOUR RESPONSES TO THIS REQUEST TO INCLUDE INFORMATION, DOCUMENTS, AND TANGIBLE THINGS ACQUIRED AFTER SERVICE OF YOUR RESPONSE TO THIS REQUEST**.

8.   You are required to produce and permit inspection and copying of every requested document and the inspection and copying, testing or sampling of each tangible thing that is in your possession, custody or control or that is in the possession, custody or control of your principals, agents, employees, attorneys, representatives, insurers, and any other persons or entities, acting or purporting to act on your behalf, and any other persons or entities in active concert and participation with you, whether past or present and

2

without regard to whether their relationship with you currently exists or has been terminated.

9.      The documents to be produced pursuant to this request must be produced either as they are kept in the usual course of business or they must be organized and labeled to correspond with the categories in this request.

10.     You are requested, if you are unable to obtain any document required to be produced pursuant to this request because the document is in the possession, custody, or control of any other person or entity, to state for each document: (i) the nature of the document or communication (e.g., letter, memorandum, etc.); (ii) the date of the document; (iii) the author of the document; (iv) the name and address of each person or entity to whom the document was given, shown or sent; (vi) a description of the efforts taken by you to obtain the document; and (vii) the reasons, if any, given by the person or entity in possession, custody, or control of the document for not providing it to you.

11.     All attachments to any requested documents that are stapled, paper clipped, or otherwise affixed to documents must be produced and must be attached to the document to which they relate.

## DOCUMENTS REQUESTED

### REQUEST NO. 1

All documents, notes, diaries, journals, logs, chronologies of events, correspondence files, meeting notes, minutes, calendars, tape recordings, videotapes, photographs or other documents maintained or created by plaintiff that depict, relate or pertain to events, communications or allegations set forth in his Complaint.

3

## REQUEST NO. 2

All statements, correspondence and other documents that refer or relate to persons contacted or interviewed by plaintiff or anyone acting on his behalf (other than counsel) in connection with this action, including but not limited to any statements that plaintiff obtained from any former or current employees of WPS.

## REQUEST NO. 3

All documents that reflect, relate or refer to any communications between plaintiff and any governmental agency concerning the plaintiff's seeking employment from January 1, 2002 to the present.

## REQUEST NO. 4

All documents or communications that reflect, relate or refer to plaintiff's January 4, 2000 Employment Agreement (PAC 001 – PAC 005) or any earlier drafts of plaintiff's Employment Agreement.

## REQUEST NO. 5

All documents or communications that reflect, relate or refer to plaintiff's December 28, 2001 Transition Agreement (PAC 0043 – PAC 0047) or any earlier drafts of plaintiff's Transition Agreement.

## REQUEST NO. 6

All documents or communications that reflect, relate or refer to plaintiff's December 28, 2001 Settlement Agreement (PAC 0048 – PAC 0051) or any earlier drafts of plaintiff's Settlement Agreement.

## REQUEST NO. 7

All documents that reflect, relate or refer to the allegations contained in paragraph 17 of the Complaint (alleging that, following the transaction between WPS and Parthenon

4

Capital, Deepak Kulkarni ceased to be CEO of Wolverine, Inc. and continued as a member of the Wolverine LLC Board of Directors).

## REQUEST NO. 8

All documents that reflect, relate, refer or otherwise support the calculations used to derive the damages alleged by plaintiff in his Complaint. A response to this request should include, but is in no way limited to, those documents which support, evidence or otherwise relate to plaintiff's alleged entitlement to a 2001 Bonus.

## REQUEST NO. 9

All documents that reflect, relate or refer to the terms and/or conditions of plaintiff's employment with WPS or any related entity.

## REQUEST NO. 10

All documents that reflect, relate, refer or otherwise support the allegations contained in paragraph 22 of the Complaint (alleging that Mr. Kulkarni summoned plaintiff to a January 14, 2002 meeting and demanded the payment of $135,000 to which Mr. Kulkarni was not entitled).

## REQUEST NO. 11

All documents that reflect, relate or refer to the allegations contained in paragraph 38 of the Complaint (alleging that, in February 2001, plaintiff and Mr. Kulkarni reached an oral agreement "to increase the bonus percentage calculation, pursuant to the formula in the Employment Contract, from five percent to eight percent.")

## REQUEST NO. 12

All documents that reflect, relate or refer to the allegations contained in paragraph 59 of the Complaint (alleging that Mr. Kulkarni "took actions to persuade, cause and induce the Board of Directors of Wolverine to terminate the plaintiff's employment.")

## REQUEST NO. 13

All documents that reflect, refer or relate to any lawsuits commenced or filed by the plaintiff against any of his current or former employers other than WPS.

## REQUEST NO. 14

All documents which reflect, relate or refer to plaintiff's income, benefits and/or other compensation that plaintiff earned from any source from January 1, 2001 to the present, including but not limited to copies of plaintiff's U.S. federal and state income tax returns, W-2 Forms, any non-U.S. tax forms or forms filed with any non-U.S. governmental entity that relate to plaintiff's income, and any other documents reflecting plaintiff's income for the calendar year 2001 through the present.

## REQUEST NO. 15

All documents which reflect, relate or refer to any attempts by plaintiff to obtain employment or to enter into any business relationship from January 1, 2000 to the present, including, without limitation, employment applications and related forms, employment advertisements, resumes or other documentation reflecting the plaintiff's background and work experience, cover letters, and correspondence to or from other employers or potential employers, persons, recruiting firms, or governmental agencies, programs, or entities.

## REQUEST NO. 16

All documents which reflect, relate or refer to any self-employment by plaintiff from January 1, 2000 to the present including, without limitation, invoices for services rendered.

## REQUEST NO. 17

All documents that plaintiff has any reason to anticipate asking any witnesses to identify during their depositions.

## REQUEST NO. 18

Any and all documentation currently in plaintiff's position which was removed by plaintiff from WPS's facilities while plaintiff was a WPS employee.

## REQUEST NO. 19

All documents which relate in any manner to any element of plaintiff's tortious/intentional interference claim against defendant Deepak Kulkarni.

Dated: November 11, 2005

Respectfully submitted,

WOLVERINE, PROCTOR &
SCHWARTZ, INC.,
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI
By their attorneys,

Mark Whitney (BBO #637054)
Jeffrey D. Kuhn (BBO #662326)
MORGAN, BROWN & JOY, LLP
200 State Street
Boston, Massachusetts   02109
(617) 523-6666

## CERTIFICATE OF SERVICE

I, Jeffrey D. Kuhn, hereby certify that on the 11th day of November, 2005, I served a copy of the within via email and regular mail to the following party of record:

Peter A. Crawford, *pro se*
23 Newcastle Drive #11
Nashua, New Hampshire   03060

Jeffrey D. Kuhn

7

## Affidavit of Service

I, Peter A. Crawford, plaintiff, hereby say and depose, under pains and penalties of perjury, that I this day served the within papers upon defendants' attorney, by causing copies thereof to be mailed, first class postage prepaid, to Mark Whitney, Morgan Brown & Joy, 200 State St., Boston, MA 02109.

Date: April 5, 2006