UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

PETER A. CRAWFORD,

    Plaintiff,

v.

WOLVERINE, PROCTOR & SCHWARTZ, INC.;
STEVEN F. CHILINSKI, and
DEEPAK S. KULKARNI,

    Defendants.

---

Civil Action No.
05-cv-10078 (DPW)

# MEMORANDUM IN SUPPORT OF DEFENDANT DEEPAK S. KULKARNI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Mark M. Whitney (BBO # 637054)
Jeffrey D. Kuhn (BBO # 662326)
MORGAN, BROWN & JOY, LLP
*Attorneys for the Defendant*
200 State Street – 11th Floor
Boston, Massachusetts 02109
(617) 523-6666

## PRELIMINARY STATEMENT

Defendant Deepak S. Kulkarni ("Kulkarni") hereby submits the following memorandum in support of his Motion for Summary Judgment seeking to dismiss the eighth cause of action included in plaintiff *pro se* Peter A. Crawford's ("Crawford") Amended Complaint pursuant to Federal Rule of Civil Procedure 56(c).[1]  Plaintiff's eighth cause of action sounds in fraud.

Crawford commenced the instant suit on January 12, 2005 and filed an Amended Complaint on March 13, 2006.

On March 17, 2006, defendants moved for summary judgment dismissing the first seven causes of action asserted in Crawford's Complaint (docket # 64).  On April 14, 2006, this Court set a deadline of May 5, 2006 for Kulkarni to file the instant motion for summary judgment dismissing Crawford's remaining claim for fraud.

Plaintiff's fraud claim should be dismissed for any or all of the following independent reasons:

- Kulkarni's alleged misrepresentations represented, at worst, opinions or estimates regarding future events and, as such, are not actionable as fraud;

- Because Crawford could have immediately confirmed the truth of Kulkarni's alleged misrepresentations through a cursory examination of documents readily available to him as the senior executive in charge of WPS's finances and accounting functions for the two-year period leading up to Crawford's

---

[1] Co-defendants, Steven F. Chilinski ("Chilinski") and Wolverine, Proctor & Schwartz, Inc. ("WPS") are not participating in this Motion because the eighth cause of action is asserted only against Kulkarni.

execution of the Settlement Agreement, any reliance by Crawford on Kulkarni's purported statements was inherently unreasonable;

- Any detrimental reliance or damages suffered by Crawford are entirely speculative;

- Crawford may not recover for the reliance of third-parties on the alleged misrepresentations of Kulkarni; and

- Kulkarni's alleged misrepresentations had no bearing on Crawford's contractual entitlement to a share of distributions under Section 5.3 of the LLC Agreement.

Thus, for the reasons fully articulated below, the Court should grant defendant Kulkarni's instant application for partial summary judgment and dismiss the eighth cause of action in Crawford's Amended Complaint.

**LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS[2]**

1. Crawford began his employment as WPS's Chief Operating Officer ("COO") on December 30, 1999. [SOF-1, ¶ 1].

2. On January 4, 2000, Crawford and Kulkarni – in Kulkarni's capacity as WPS's President and Chief Executive Officer ("CEO") – executed a written employment contract (the "Employment Contract"). [SOF-1, ¶ 2].

3. Crawford served as WPS's COO throughout all of 2000 and 2001. [Accompanying Affidavit of Deepak S. Kulkarni, ¶ 3 ("Kulkarni Aff.")].

---

[2] In support of their March 17, 2006 Motion for Summary Judgment, defendants filed under separate cover a detailed Local Rule 56.1 Statement of Undisputed Material Facts (docket # 66) (hereinafter, "SOF-1"). In the interests of brevity and spatial economy, undisputed material facts relevant to this instant motion which have already been articulated in defendants' original SOF-1 will not be restated here. All further references to "SOF-1" are to the March 17, 2006 document (docket # 66). Subsequent citations to the numbered paragraphs of the statement of undisputed material facts included herein will be referenced as "SOF-2".

2

4. Under the terms of his January 4, 2000 Employment Contract with WPS, Crawford was granted a potential entitlement to options of WPS stock (the "stock options"). [See, January 4, 2000 Employment Contract, attached to the March 17, 2006 Affidavit of Deepak S. Kulkarni (docket # 69) as Exhibit 2.] Crawford's stock options, however, vested only "upon the completion of [Crawford's] 24th month of employment with [WPS], or upon a change in control." [Id.]

5. On December 28, 2001, WPS (with Kulkarni as its sole shareholder) and a group of investment entities which included Parthenon Investors II, L.P., PCIP Investors and J&R Founders' Fund, L.P. (collectively referred to hereinafter as "Parthenon") entered into an acquisition agreement whereby Parthenon acquired a controlling ownership interest in WPS. [SOF-1, ¶ 18]. Parthenon's acquisition of WPS was completed on December 31, 2001. [SOF-1, ¶¶ 20, 36].

6. On December 28, 2001, prior to "the completion of [Crawford's] 24th month of employment" and prior to the completion of Parthenon's purchase of WPS, Crawford entered into a Settlement Agreement with Kulkarni and Wolverine Proctor, LLC (a successor entity to WPS). [Amended Complaint ¶ 76].

7. Under the terms of the Settlement Agreement, Crawford exchanged his right to the stock options (which had not yet vested) for a right to 4-8 percent of any distributions to Kulkarni under section 5.3 of the so-called LLC Agreement (an agreement which governed the respective rights of Kulkarni and Parthenon in the newly created Wolverine Proctor, LLC). [Amended Complaint ¶¶ 76, 78].

8. According to Crawford's Amended Complaint,[3] Kulkarni informed Crawford prior to Crawford's execution of the Settlement Agreement that Kulkarni had no rights to distributions from WPS or Wolverine Proctor LLC other than a $1 million per year consulting fee and distributions under sections 5.2 and 5.3 of the LLC Agreement. [Amended Complaint ¶ 76].

9. Thus, Kulkarni informed Crawford prior to Crawford's execution of the Settlement Agreement that a possibility existed that Kulkarni would be entitled to distributions under either section 5.2 or 5.3 of the LLC Agreement. [Amended Complaint, ¶ 76].

10. Crawford knowingly agreed to terms of the Settlement Agreement which entitled him to a percentage of distributions made to Kulkarni *only* under section 5.3 of the LLC Agreement. [Amended Complaint, ¶ 78].

11. According to Crawford's Amended Complaint, prior to executing the Settlement Agreement, Kulkarni informed Crawford that any distributions to which Kulkarni was entitled under "section 5.2 of the LLC Agreement were *likely* to be deferred or forgiven." [Amended Complaint ¶ 76. Emphasis supplied].

12. According to Crawford's Amended Complaint, Kulkarni represented to Crawford that any potential future "unshared payments" (*i.e.,* payments under section 5.2 of the LLC Agreement) "would be limited in scope." [Amended Complaint ¶ 80].

13. On or about November 13, 2002, Kulkarni entered into an Omnibus Agreement with Parthenon and Wolverine Proctor, LLC whereby Kulkarni received $765,980 in distributions under section 5.2 of the LLC Agreement. [Amended Complaint

---

[3] Defendants do not admit to the veracity of any numbered factual paragraphs stated herein where those paragraphs are prefaced as "According to Crawford's Amended Complaint." Such factual allegations are being stipulated to only for the purposes of the summary judgment arguments contained herein.

4

¶ 87]. This section 5.2 distribution (of which Crawford was not entitled to share under his Settlement Agreement) was based, in part, on $624,263 in accrued dividends and expenses owed to Kulkarni pursuant to the WPS's written general ledger and trial balance incorporated into the agreement by which Parthenon acquired WPS. [Kulkarni Aff., ¶ 8].

14.   Parthenon has never brought suit or made any allegations of fraud against Kulkarni arising out of its acquisition of WPS in late December 2001. [Kulkarni Aff., ¶ 11]. Parthenon personnel have taken the position that the $624,263 in accrued dividends/expenses were amongst the funds to which Kulkarni had an unassailable contractual entitlement. [Kulkarni Aff., ¶ 12].

15.   Throughout all of 2001, as WPS's COO, Crawford was the senior corporate executive most involved in the day-to-day operations of the company. [SOF-1, ¶ 32; Kulkarni Aff., ¶ 4]. Furthermore, Crawford was the senior WPS executive in charge of corporate finance and accounting and no single WPS employee had a better understanding of the company's cash flow and profitability than Crawford. [Id.]

16.   As WPS's COO, Crawford had immediate and unfettered access to WPS's trial balance at any time, up to and including December 28, 2001, the day on which Crawford executed his Settlement Agreement. [Kulkarni Aff., ¶ 9]. As the supervisor of WPS's CFO and the entire accounting department, Crawford had a regular weekly meeting on Friday afternoons with the CFO and a staff accountant to go over each week's trial balance. [Id.]

17.   On June 29, 2001, Arthur Andersen LLP issued WPS's Consolidated Financial Statements and Auditors' Report as of December 31, 2000 and January 1, 2000 (the "2000 Financial Statements"). [Kulkarni Aff., ¶ 7]. As WPS's COO, Crawford

5

reviewed this document when it was issued and was fully aware of its contents. [Id.] On page 16 of the 2000 Financial Statements, under the emboldened heading "RELATED PARTY TRANSACTIONS" and the emboldened subheading "Accrued Expenses," is the following text:

> Included in the accrued expenses at December 31, 2000 and January 1, 2000 is approximately $694,000 and $1,374,000, respectively, payable to the sole stockholder of the Company.

The term "sole stockholder of the company" is a reference to Kulkarni. [Id.]

### ARGUMENT

### KULKARNI IS ENTITLED TO SUMMARY JUDGMENT DISMISSING PLAINTIFF'S FRAUD CLAIM.

**A.   The Summary Judgment Standard**

The moving party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, how that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it has the "potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Ventennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). A "genuine" issue of fact is one supported by such evidence that "a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." Triangle Trading Co., Inc. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999) (internal quotations and citations omitted).

Once the movant makes the necessary showing, the non-movant "may not rest upon the mere allegations or denials" of the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see, Nat'l

Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995), cert. denied, 515 U.S. 1103 (1995). "Conclusory allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact. Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). "When the nonmovant bears the ultimate burden of proof on a given issue, he must make a factual showing, by means of competent and specific evidence, sufficient to establish the essential elements of his claim." Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005).

Finally, where a plaintiff has no reasonable expectation of proving an essential element of a particular claim, summary judgment in favor of the defendant with respect to that claim is appropriate. Zhang v. Massachusetts Institute of Technology, 46 Mass. App. Ct. 597, 606 (1999) (citing, Judson v. Essex Agric. & Technical Inst., 418 Mass. 159, 162 (1994)).

**B.    Synopsis of Crawford's Fraud Claim Against Kulkarni**

Because the factual allegations that comprise Crawford's fraud claim are disjointed and complex – and that complexity is exacerbated by the incorporation of entirely superfluous details[4] – it is necessary to summarize the salient details of Crawford's fraud claim in order to expose the claim's intrinsic infirmities. Crawford's fraud claim is particularly lacking coherence, however, with respect to the issues of causation and detrimental reliance.

On December 28, 2001, the first day of Parthenon's acquisition of WPS, Kulkarni and Crawford executed Crawford's Settlement Agreement. [Amended Complaint, ¶ 75].

---

[4]    For instance, Crawford alleges that the Settlement Agreement created a "resulting trust" whereby Kulkarni assumed fiduciary obligations towards Crawford. [Amended Complaint, ¶ 79]. As Crawford has alleged neither breach of contract nor breach of fiduciary duty against Kulkarni, it is unclear how the foregoing allegations have any bearing on a cause of action for fraud.

7

Pursuant to the Settlement Agreement, Crawford's stock option rights under his January 4, 2000 Employment Contract were extinguished in favor of a right to 4-8 percent of distributions to Kulkarni under section 5.3, but not section 5.2, of the Kulkarni/Parthenon LLC Agreement. [Amended Complaint, ¶ 78].

Crawford alleges that, prior to his execution of the Settlement Agreement, Kulkarni informed him that Kulkarni had no right to any distributions or other monies from WPS or Wolverine Proctor, LLC, other than a $1 million annual consulting fee *and* certain distributions under sections 5.2 and 5.3 of the LLC Agreement. [Amended Complaint, ¶ 76]. Kulkarni informed Crawford, however, that any distributions to Kulkarni under section 5.2 of the LLC Agreement (so-called "special distributions") "were *likely* to be deferred or forgiven." [Id. Emphasis supplied.]

This purported statement by Kulkarni notwithstanding, Crawford also alleges that Kulkarni "assured him that unshared [section 5.2 distributions] would be limited in scope."[5] [Amended Complaint, ¶ 80]. Crawford contends that in entering into the Settlement Agreement, he relied on Kulkarni's representations regarding the "limited" scope of future section 5.2 distributions. [Id.] The Amended Complaint is silent, however, as to how either party interpreted such an inherently ambiguous term as "limited in scope."

---

[5] These disparate allegations represent a glaring and significant internal inconsistency in Crawford's Amended Complaint. The alleged misrepresentations by Kulkarni to Crawford concerning future section 5.2 distributions represent the gravamen of Crawford's fraud claim. Yet Crawford's competing allegations cannot be reconciled. Crawford alleges that Kulkarni represented to him that that 5.2 distributions were:
    1. "likely to be deferred or forgiven" (Amended Complaint, ¶ 76); and
    2. "would be limited in scope" (Amended Complaint, ¶ 80).
It is illogical for Crawford to contend that Kulkarni represented to him that future section 5.2 distributions were to be both "limited in scope" and "likely to be deferred or forgiven." Kulkarni would not have represented that future section 5.2 distributions were going to be insignificant while at the same time stating that they were not going to occur at all.

Contrary to Kulkarni's purported representations, however, Kulkarni eventually received $765,980 in section 5.2 special distributions pursuant to an Omnibus Agreement Kulkarni entered into with Parthenon on November 13, 2002. [Amended Complaint, ¶ 87]. This $765,980 distribution to Kulkarni was based, at least in part, on $624,263 in accrued dividends/expenses owed to Kulkarni by WPS at the time Parthenon purchased the company at the end of 2001. [Amended Complaint, ¶¶ 81, 87].

Crawford alleges that neither he nor Parthenon was aware of the accrued dividends/expenses owing to Kulkarni at the time Parthenon purchased the company. [Amended Complaint, ¶¶ 82-86]. Crawford further speculates that had Parthenon not been forced to pay Kulkarni $765,980 in section 5.2 distributions under the Omnibus Agreement, more money would have been available for Parthenon to distribute to Kulkarni under section 5.3 of the LLC Agreement -- monies that Crawford would have been entitled to share in at 4% under the Settlement Agreement. [Amended Complaint, ¶ 88].

**C. Kulkarni's Alleged Misrepresentation Concerned Future Events and Was of an Inherently Predictive Nature**

In order to establish a cognizable claim of fraud, "a plaintiff must show that the defendant, 'made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his detriment.'" Millen Industries, Inc. v. Flexo-Accessories Co, Inc., 5 F. Supp. 2d 72, 73 (D. Mass. 1998) (quoting, Macoviak v. Chase Home Mortgage Corp., 40 Mass. App. Ct. 755, 667 N.E.2d 900, 904 (1996)).

However, "false statements of opinion, of conditions to exist in the future, or of matters promissory in nature are not actionable" as fraud. Id. (quoting, Pepsi-Cola

9

Metro. Bottling Co. v. Pleasure Island, Inc., 345 F.2d 617, 622 (1st Cir. 1965)); see also, Stolzoff v. Waste Systems Int'l, Inc., 58 Mass. App. Ct. 747, 759-760 (2003); Rodowicz v. Massachusetts Mut. Life Ins. Co., 192 F.3d 162 (1st Cir. 1999); Blacksmith Investments, LLC v. Cives Steel Co., Inc., 228 F.R.D. 66, 72 (D. Mass. 2005); 37 Am. Jur. 2d, Fraud and Deceit § 80. "Liability for fraud or misrepresentation cannot be established where the 'alleged misrepresentation concerned a matter of opinion, estimate, or judgment, which was not susceptible of actual knowledge at the time of its utterance.'" Id.; see also, Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 333 N.E.2d 421, 428 (1975); Stigman v. Nickerson Enterprises, Inc., No. 9638, 2000 WL 1162237, *2 (Mass. App. Div. Aug. 8, 2000) ("To be actionable [as fraud], a false statement must be one of fact rather than one of 'expectation, estimate, opinion or judgment.'"); Blacksmith Investments, 228 F.R.D. at 72.

      Here, Crawford's fraud claim alleges that Kulkarni induced him to enter into the Settlement Agreement by misrepresenting the likelihood and/or the quantity of any future distributions to Kulkarni under section 5.2 of Kulkarni's LLC Agreement with Parthenon. Crawford contends that Kulkarni's statement to him in late December 2001, that any 5.2 distributions were "likely to be deferred or forgiven" and/or "would be limited in scope," was an actionable misrepresentation given that Kulkarni would eventually receive $765,980 in section 5.2 distributions under the November 2002 Omnibus Agreement. Crawford argues that Kulkarni's right to $624,263 in accrued dividends from WPS on December 28, 2001 should have alerted Kulkarni to the erroneous nature of Kulkarni's predictions to Crawford as to the probability or size of future distributions under section

5.2. Even if true, however, these allegations cannot give rise to an actionable claim for fraud.

Kulkarni's statement in December 2001 as to the nature of potential distributions under section 5.2 – distributions which Parthenon did not even agree to make until November 2002 – was clearly related to future events and, as a result, cannot form the basis of a fraud claim. See, Millen Industries, 5 F. Supp. 2d at 73. At worst, Kulkarni offered an inaccurate "opinion" or "estimate" as to the size or probability of his eventual distributions under section 5.2, but the inherently uncertain and predicative nature of these statements insulates Kulkarni from liability. Stigman, 2000 WL 1162237, *2.

According to Crawford's own allegations, Kulkarni did not represent to Crawford in December 2001 that he possessed "actual knowledge" as to the ultimate value of any future distributions under section 5.2. The Amended Complaint concedes that Kulkarni left open the distinct possibility of future distributions under 5.2. [Amended Complaint, ¶ 76]. Also conceded is that Kulkarni's right to any distributions under 5.2 did not crystallize until Kulkarni and Parthenon executed the Omnibus Agreement in November 2002. [Amended Complaint, ¶ 87]. Thus, the ultimate accuracy or inaccuracy of Kulkarni's December 2001 statements was not borne out until approximately eleven months later. Because Kulkarni lacks the power of clairvoyance, his December 2001 statement concerning distributions he became entitled to in November 2002 was not "susceptible of actual knowledge at the time of its utterance." Millen Industries, 5 F. Supp. 2d at 73.

If, hypothetically, Kulkarni had misrepresented to Crawford, prior to executing the Settlement Agreement, that there was zero possibility of section 5.2 distributions,

11

then Kulkarni's statement would have been of an inaccurate factual nature "at the time of its utterance" and Crawford may have had a viable claim for fraud. But because, in reality, Kulkarni left open the district possibility of 5.2 distributions, and then characterized the probability of those distributions, his statement was of an inherently predicative nature and, as a result, *cannot* form the basis of an actionable claim for fraud. Millen Industries, 5 F. Supp. 2d at 73 (fraud claim barred when based on statements as to "conditions to exist in the future").

Finally, it must be noted that "when a future event is not substantially within the defendant's control, a defendant's statement about a future event cannot be a misrepresentation" or actionable as fraud. Benham v. Lenox Savings Bank, 26 F. Supp. 2d 231, 236 (D. Mass. 1998) (citing, Yerid v. Mason, 341 Mass. 527, 170 N.E.2d 718 (1960)).

Here, under the provisions of section 5.1 of the LLC Agreement, the determination as to whether Wolverine Proctor, LLC declared a distributions under sections 5.2 or 5.3 of the LLC Agreement was left to the "sole discretion" of Wolverine Proctor, LLC's Board of Managers. [Kulkarni Aff., exh. 4]. Following Parthenon's acquisition of WPS, Kulkarni was reduced to a non-controlling, minority interest in Wolverine Proctor, LLC. Thus, as of December 28, 2001, the declaration of future distributions by Wolverine Proctor, LLC was a "future event [] not substantially within" Kulkarni's control. Benham, 26 F. Supp. 2d at 236. As such, Kulkarni's statements concerning, even if erroneous, concerning the probability or size of future distributions by Wolverine Proctor, LLC cannot serve as the basis for a viable claim of fraud.

**D.    Any Reliance by Crawford on Kulkarni's Alleged Misrepresentations was Unreasonable**

In an action for fraud, "the plaintiff's reliance on the defendant's false statement must be reasonable and justifiable under the circumstances." Collins v. Huculak, 57 Mass. App. Ct. 387, 391-392 (2003) (citing, *Restatement (Second) Torts,* § 537 (1977) ("The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss resulting from it if, but only if, [a] he relies on the misrepresentation in acting or refraining from action, and [b] his reliance is justifiable."))  "The person claiming justifiable reliance is 'required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he utilized his opportunity to make a cursory examination or investigation." Id.; see, Kuwaiti Danish Computer Co. v. Digital Equip. Corp., 438 Mass. 459, 468 (2003).

Besides the predicative statements regarding prospective section 5.2 distributions discussed above, Crawford also alleges that Kulkarni defrauded him by failing to disclose in December 2001 that Kulkarni retained a right to $624,263 in accrued expenses/dividends from WPS. [Amended Complaint, ¶¶ 81-83]. Assuming, *arguendo*, that Kulkarni failed to expressly inform Crawford of the $624,263 in accrued dividends/expenses prior to execution of the Settlement Agreement, Crawford's contention that he was ignorant of the accrued dividend/expenses defies credulity.

Throughout all of 2000 and 2001, Crawford served as WPS's COO. [SOF-2, *supra*, ¶ 3]. Crawford (who has a Masters of Business Administration degree from Harvard University, in addition to multiple other undergraduate and graduate degrees from Stanford University) was the senior executive in charge of WPS's day-to-day operations, corporate finance and accounting. [SOF-2, *supra*, ¶ 16]. In his own

13

previously submitted Affidavit, Crawford admits that he has "extensive experience in reviewing financial statements and with accounting matters." [Docket # 71-1, ¶ 4]. Crawford's sophistication and encyclopedic knowledge of the company's finances notwithstanding, he now maintains that he was unaware in December 2001 of accrued dividends/expenses payable to Kulkarni which were prominently discussed in WPS's 2000 Financial Statements (issued by Arthur Andersen on June 29, 2001) *and* included as a line-item in WPS's weekly trial balance (which Crawford regularly analyzed during a weekly meeting with the CFO and a staff accountant on Friday afternoons). [SOF-2, *supra*, ¶¶ 17-18].

Even if one credits the otherwise incredible contention that Crawford was unaware of Kulkarni's right to the accrued expenses/dividends prior to executing the Settlement Agreement, Crawford's failure to undertake even a cursory examination of WPS's books to confirm the veracity of Kulkarni's purported contention amounts to willful blindness. At any point during June through December 2001, a casual perusal of either WPS's most recent financial statements or the company's current trial balance would have immediately revealed Kulkarni's accrued dividends/expenses. Given the greatest of ease by which Crawford could have confirmed or disconfirmed the truth of the representations he now contends he relied on in executing the Settlement Agreement, that alleged reliance by Crawford was inherently unreasonable.

Crawford cannot recover where he relied upon alleged misrepresentations "the falsity of which would be patent to him if he utilized his opportunity to make a cursory examination or investigation." Collins, 57 Mass. App. Ct. at 391-392. Because

Crawford's alleged reliance was intrinsically unreasonable, Kulkarni is entitled to summary judgment dismissing Crawford's fraud claim.

E. **Kulkarni's Purported Misrepresentations Did Not Result in Any Detrimental Reliance or Actual Damages to Crawford**

As was stated above, one of the essential elements of a viable fraud claim is detrimental reliance. See, Millen Industries, 5 F. Supp. 2d at 73. A plaintiff in a fraud action must allege and prove not only that the defendant made a knowingly false representation which the plaintiff relied upon, but also that the plaintiff's reliance resulted in some concrete detriment or damage. Id. Because Crawford is unable to demonstrate any detriment to his position as a result of Kulkarni's alleged misrepresentations, Crawford's fraud claim must be rejected.

> Paragraph 88 of the Amended Complaint reads as follows:
>
> But for Kulkarni's alleged right to the accrued dividend, Parthenon would not have entered into the Omnibus Agreement and the funds paid out thereunder would have been retained for the benefit of Wolverine Proctor, LLC and Wolverine Inc., immediately or subsequently increasing the value of General Distributions under section 5.3 of the LLC Agreement, and benefiting the plaintiff through his share of such distributions under the Settlement Agreement.

The foregoing paragraph, which represents the sum total of Crawford's detrimental reliance allegations, is composed entirely of hypothetical suppositions spun out of a series of counter-factual statements. Crawford cannot and will not be able to provide this Court with a shred of admissible evidence in support of this tortured logic.

For instance, Crawford alleges that "but for" Kulkarni's entitlement to the $624,263 in accrued dividend/expenses payable to Kulkarni as of December 28, 2001, those funds would have been paid as "General Distributions" under section 5.3 of the LLC Agreement (to which Crawford was entitled to 4% under his Settlement

15

Agreement). This argument is not only pure speculation, however, but is also at odds with the language of the LLC Agreement itself. Section 5.1 of the LLC Agreement, which controls distributions under sections 5.2 or 5.3, unambiguously states that:

> The Board of Managers shall determine *in its sole discretion* the timing and the aggregate amount of any Distributions to Members…

[Kulkarni Aff., exh. 4. Emphasis supplied.] Thus, other than Crawford's self-serving prognostications, there is no reason to conclude that any monies not paid to Kulkarni would have automatically become part of shared distributions under section 5.3.

Moreover, even accepting Crawford's paragraph 88 allegations as true, the parties that are alleged to have acted in reliance on Kulkarni's misrepresentations are either Wolverine Proctor, LLC or Parthenon. Thus, it is Crawford's apparent contention that he was indirectly damaged when the Board of Managers of Wolverine Proctor, LLC failed to declare a section 5.3 distribution partially as a result of Kulkarni's misrepresentations. The law is clear, however, that a viable cause of action for fraud cannot be sustained where it was a third-party, and not the plaintiff, who relied on the purported misrepresentations. See, Swartz v. Schering-Plough Corp., 53 F. Supp. 2d 95, 105 (D. Mass. 1999) (dismissing plaintiff's misrepresentation claim where plaintiff alleged damages were based upon third party's reliance on defendant's misrepresentation).

Finally, given Crawford's contractual rights under the unambiguous terms of the Settlement Agreement, it is clear that Kulkarni's alleged misrepresentations regarding his entitlement to $624,263 in accrued dividend/expenses could never have resulted in actual damages to Crawford.

Paragraph 1(a) of the Settlement Agreement reads as follows:

16

> In the event that [Kulkarni] receive[s] a Distribution pursuant to Section 5.3.1. of the LLC Agreement, Crawford shall be entitled to a payment in an amount equal to four percent (4%) of the aggregate Distributions actually received by [Kulkarni]…

[Kulkarni Aff., exh. 14]. Under paragraph 1(a), however, Crawford received an Equity Advance of $150,000.[6] Paragraph 1(a) then goes on to state that:

> Crawford shall not be entitled to any payment under this clause (a) until the foregoing amount exceeds the Equity Advance [] in which case he shall only be entitled to the amount in excess of the Equity Advance.

[Id.] Because Crawford had already been furnished with an Equity Advance of $150,000, he was entitled to nothing under the Settlement Agreement until distributions to Kulkarni under section 5.3 of the LLC Agreement exceeded $3,750,000.[7] Thus, Crawford's contention that "but for" Kulkarni's hidden right to the accrued dividend/expenses Crawford would have automatically shared in a 5.3 distribution is intrinsically flawed for yet another reason: the $624,263 in accrued dividends/expenses that Kulkarni purportedly kept secret was nowhere near the threshold level needed to activate Crawford's dormant rights under the Settlement Agreement. Even stipulating to Crawford's earlier speculation that Wolverine Proctor LLC would have inevitably included the $624,263 in a subsequent 5.3 distribution, Crawford would not have been entitled to share in that distribution anyway. As a result, Crawford neither detrimentally relied upon nor was damaged by any misrepresentations Kulkarni is alleged to have made in the Amended Complaint.

---

[6] Crawford's "Equity Advance" was set at $150,000 in paragraph 4.4 of his December 28, 2001 Transition Agreement, which is attached as Exhibit 4 to the March 17, 2006 Affidavit of Deepak S. Kulkarni (docket # 69).

[7] Said differently, only after Kulkarni's section 5.3 distributions exceeded $3,750,000 would Crawford's right to a 4% share therein exceed Crawford's initial $150,000 Equity Advance. ($3,750,000 x 0.04 = $150,000)

## CONCLUSION

For the foregoing reasons, Defendant Deepak S. Kulkarni's Motion for Partial Summary Judgment dismissing Crawford's eighth cause of action for fraud should be allowed.

Dated: May 5, 2005

>Respectfully submitted,
>
>DEEPAK S. KULKARNI,
>
>By his attorneys,
>
>/s/ Jeffrey D. Kuhn_____
>Mark Whitney (BBO #637054)
>Jeffrey D. Kuhn
>MORGAN, BROWN & JOY, LLP
>200 State Street
>Boston, Massachusetts   02109
>(617) 523-6666

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 5, 2006, I filed the foregoing document with the Clerk of the Court using the ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing to the pro se plaintiff, Peter A. Crawford, 23 Newcastle Drive, #11, Nashua, NH 03060, by U.S. mail, on the same date. I further certify that I sent a courtesy copy of this filing and its ECF confirmation to plaintiff at his email address petercra@ix.netcom.com on the same date.

/s/ Jeffrey D. Kuhn
Jeffrey D. Kuhn, Esq.