

UNITED STATES DISTRICT COURT
District of Massachusetts

Civil Action
No. 05-10078-DPW

PETER A. CRAWFORD, Plaintiff

v.

WOLVERINE, PROCTOR & SCHWARTZ, INC.,
Steven F. Chilinski, Deepak S. Kulkarni,

    Defendants

PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTION TO LIFT THE
STAY APPLYING TO DEFENDANT
WOLVERINE, PROCTOR & SCHWARTZ, INC.

I. SUMMARY OF THE FACTS

This case was filed on January 12, 2005. On February 11, 2005, as a result of a recapitalization, it appears that defendant Wolverine, Proctor & Schwartz, Inc. ("WPS, Inc."), a Delaware corporation, distributed substantially all of its assets, other than 49 shares (representing a 49% interest) of Wolverine, Proctor & Schwartz, Limited ("WPS, Ltd.") a U.K. corporation, to a new entity, Wolverine, Proctor & Schwartz, LLC, ("WPS, LLC") a Delaware Limited Liability Company. Plaintiff has not been able to discover the details of this recapitalization as a result of a protective order put in place on January 6, 2006. According to the Delaware Secretary of State's web site, WPS, Inc. has been dissolved (per the defendant's docket entry below, that occurred in February 2005). According to the U.K. Companies House, on April 18, 2005, the 49 shares of WPS, Ltd.

that had been owned by WPS, Inc. were transferred to Phoenix UK, LLC, a Delaware Limited Liability Company with an address c/o Remedial Capital in Boston. Remedial Capital is an entity with which defendant Kulkarni is associated; it appears based on other information that defendant Kulkarni owns the common shares of Phoenix UK, LLC.

On April 1, 2006, WPS, LLC filed for bankruptcy under Chapter 7 of Title 11 of the United States Code. That fact was not revealed to plaintiff until April 10, 2005 when defense counsel in this case contacted him to so inform him. Defense counsel indicated that they had not previously been made aware of the bankruptcy filing either. On the same day, defendants filed a Suggestion of Bankruptcy, with the docket entry indicating that it applied to the defendant WPS, Inc. At plaintiff's insistence, the docket entry was updated to reflect the fact that it was WPS, LLC that filed for bankruptcy:

> "SUGGESTION OF BANKRUPTCY Upon the Record as to Wolverine, Proctor & Schwartz, LLC (the successor in interest to WPS Inc. with respect to any liability that could result against WPS Inc. in the instant action - WPS Inc. was dissolved in 2/05) *[CORRECTIVE FILING]* by Wolverine Proctor & Schwartz, Inc., Steven F. Chilinski, Deepak S. Kulkarni. (Attachments: # 1 Exhibit Exhibit A - notice of Ch. 7 filing)(Whitney, Mark) (Entered: 04/11/2006)

In any event, oppositions to the pending motions for Summary Judgment had already been filed by both parties on April 6, 2006 and April 7, 2006. On April 13, 2006, a previously scheduled Status Conference was held in which the Court indicated that it intended to proceed with deciding the pending Summary Judgment Motions, except as to defendant WPS, Inc. After the plaintiff raised the issue that the defendant WPS, Inc. was not a party to the bankruptcy filing and therefore not subject to any stay, the Court invited the plaintiff to file this brief.

## II. THE AUTOMATIC STAY DOES NOT BY ITS TERMS APPLY TO ENTITIES OTHER THAN THE DEBTOR

The applicable statute is 11 U.S.C. §362, which provides that:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title…

This section is known as the automatic stay, as it arises immediately and automatically upon the filing of a petition for bankruptcy. See 11 U.S.C. §301. But, 11 U.S.C. §101(13) defines "debtor" to mean "the person or municipality concerning which a case under this title has been commenced." Manifestly, no case under Title 11 has been commenced by WPS, Inc., thus there is no extant "proceeding against the debtor" the continuation of which would violate the automatic stay provisions of 11 U.S.C. §362(a)(1). This Court is thus not bound by any automatic stay and can proceed as it wishes.

Not surprisingly, the authorities are in accord. See Collier on Bankruptcy (hereinafter "Collier") ¶362.03[3] (litigation in which the debtor is not a party and that only collaterally affects the debtor is not stayed), Collier ¶362.03[3][d] (actions against nondebtors are not stayed). Although the bankruptcy court retains the power to enjoin other actions in the exercise of its equitable powers under 11 U.S.C. §105(a), no such action has been requested or taken in this case. There is thus no bar to this case proceeding against defendant WPS, Inc.

This issue was decided in Austin v. Unarco Industries, Inc., 705 F.2d 1, 4-5 (1st Cir. 1983). "...[B]ecause we expect that the issue will arise again in this circuit, we express our judgment that the Bankruptcy Court was correct in deciding that the automatic stay provisions of 11 U.S.C. §362(a) apply only to the bankrupt debtor." See also McCartney v. Integra National Bank North, 106 F.3d 506, 509 (3rd Cir. 1997) (although the scope of the stay is broad, by its terms the stay applies only to actions against the debtor); Croyden Assoc. v. Alleco, Inc., 969 F.2d 675, 677 (8th Cir. 1992), cert den, 507 U.S. 908 (1993) (automatic stay not applicable to nonbankrupt codefendants even if in a similar legal or factual nexus); A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986) (unusual circumstances would be required to stay action against non-bankrupt co-defendants. Stay would not be granted where third party defendant would be independently liable, for example as a joint tortfeasor, or where liability is based on his own breach of duty).

In this case, the issue is even more compelling, where none of the defendants have filed for bankruptcy. While bankruptcy courts have on occasion stayed proceedings against non-bankrupt parties through the exercise of their equitable powers, such cases have generally been limited to circumstances where the continuation of the case would interfere with the debtor's reorganization, or where the debtor is the real party in interest. However, the issuance of such a stay is an issue for the bankruptcy court in the first instance, with the possibility that the district court could independently consider the issue in the interest of judicial economy and fairness to the parties. Austin at 5. This was implicitly recognized in Austin, where the First Circuit deferred to the Illinois Bankruptcy Court with regard to a decision on the applicability of the stay. See Austin at

4. Since the Austin decision, it appears that the First Circuit would in no case hold that the automatic stay is applicable to a non-debtor. See Austin at 5 (refusal to read into §362 additional considerations).

In this case, defendants have submitted no evidence or made any arguments that would justify this court staying the proceedings against defendant WPS, Inc. on the grounds of judicial economy or fairness to the parties. See Austin at 5. Only if and when the defendants submit such evidence or make such arguments should this Court entertain the issuance of a stay as to WPS, Inc.

While it might appear that WPS, LLC is the real party in interest, it has not been established that WPS, Inc. has no assets, and there is strong evidence that WPS, Inc. transferred a valuable 49% ownership interest in WPS, Ltd. to Phoenix UK, LLC, a Delaware Limited Liability Company that is apparently owned and controlled by defendant Kulkarni. In 2004, WPS, Ltd., according to a filing with Companies House in the U.K., had sales (called "turnover" in the U.K.) of £7,994,065, or approximately $14.7 million at an estimated average exchange rate for the year 2004 of 1.84 dollars per pound. It is highly likely that the value of a 49% interest in such a large corporation exceeds the approximately $1.8 million that the plaintiff seeks from WPS, Inc. in this case. Plaintiff believes that the transfer of the WPS, Ltd. shares may have been accomplished without consideration, or for inadequate consideration. That issue, and the fact that the Second Amended Complaint, submitted herewith, seeks to hold defendant Kulkarni liable for the debts of WPS, LLC (which assumed substantially all of the liabilities of WPS, Inc. on February 11, 2005) through a piercing the corporate veil theory, makes the issue of the liability of WPS, Inc. far from moot, and provides a basis for defendant Kulkarni, and

possibly other entities, to be liable for the debts of WPS, Inc. and/or WPS, LLC. Such determinations can proceed without interfering with the WPS, LLC reorganization[1].

### III. AS A DELAWARE CORPORATION, WPS, INC. AUTOMATICALLY CONTINUES IN EXISTENCE FOR THREE YEARS AFTER DISSOLUTION

While defendants suggest in their docket entry that only WPS, LLC could be liable because WPS, Inc. was dissolved in February, 2005, that statement is contrary to Delaware law, applicable because WPS, Inc. is a Delaware corporation. Under Del. Code Ann. tit. 8 §278, Delaware corporations specifically continue in existence for purposes of prosecuting or defending suits for a minimum of 3 years:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3-year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

The situation with Delaware corporations varies from that of other states and the common law. At common law, the dissolution of a corporation ended its existence and suits against it abated. In Re Citadel Industries, Inc., 423 A.2d 500, 503 (Del. Ch. 1980). Other than the fact that a dissolved Delaware corporation is not permitted to carry on its

---

[1] WPS, LLC filed under Chapter 7, not Chapter 11, of the Bankruptcy Code (Title 11, United States Code), and it appears highly likely that it will liquidate rather than reorganize and resume operations.

business, it appears to have all of the other powers of other Delaware corporations, and it exists in order to wind up its affairs. Citadel at 501. It appears that the directors of a dissolved Delaware corporation continue to have as much authority after dissolution as they had before. Lonestar v. Redwine Industries, 757 F.2d 1544, 1550 n. 7 (5th Cir. 1985).

While defendants may well argue that WPS, Inc. has no assets and only WPS, LLC could satisfy any judgment against it, defendants have as yet submitted no evidence that in fact that is the case. Furthermore, plaintiff never received any notice that WPS, Inc. was being dissolved and proceeding in accordance with Del. Code Ann. tit. 8 §280(a) (providing notice to potential claimants of a dissolved Delaware corporation and requiring them to submit claims). Therefore Del. Code Ann. tit. 8 §281(b) is applicable. That section requires that provision be made for payment in full of all claims likely to arise over the 10 years after dissolution, and it permits only the remaining assets to be distributed to shareholders. In the absence of such a provision for payment in full, the directors and stockholders of the dissolved corporation become personally liable if assets are wrongfully distributed. See Del. Code Ann. tit. 8 §§281(c), 282.

In this case, it appears that the 49 shares of WPS, Ltd. stock that had been owned by WPS, Inc. were transferred on April 18, 2005 to Phoenix UK, LLC, and that such transfer occurred after the February 2005 dissolution of WPS, Inc. That asset was held in trust by the officers and directors of WPS, Inc., and the apparent distribution for the benefit of defendant Kulkarni of these shares is probably unlawful and subjects him to personal liability. Phoenix UK, LLC obtained those shares presumably by virtue of defendant Kulkarni having been an indirect shareholder of WPS, Inc. and by virtue of the

2005 recapitalization. If the distribution was for no or inadequate consideration, it clearly violated Del. Code Ann. tit. 8 §281(b) which permits stockholders to receive distributions from a dissolved corporation only after all claims have been paid in full. In addition, if the transfer of these shares was for little or no consideration, it was likely a fraudulent transfer in violation of M.G.L. c. 109A.

## IV. CONCLUSION

Therefore, it is apparent that permitting this case to proceed against WPS, Inc. will have significant benefit in bringing this case to a conclusion. If and when the plaintiff discovers additional facts that would permit a claim to be brought against defendant Kulkarni or others arising out of a fraudulent transfer of the assets of WPS, Inc., or the violation of Del. Code Ann. tit. 8 §281(b) in distributing assets to shareholders in preference to claimants, then the plaintiff will move to further amend his Complaint in accordance with Fed. R. Civ. P. 18(b). These and a number of the other claims in the Complaint, as amended, become cognizable only after it is demonstrated that WPS, Inc. is liable on the underlying claims against it. Thus, whether or not WPS, Inc. has any assets, the resolution of the claims against it is critical to the ultimate resolution of this case.

Furthermore, inasmuch as the discovery period in this case has ended and cross motions for summary judgment have been filed, there would be no interference with the reorganization of WPS, LLC that would result from this Court considering the summary judgment motions that involve defendant WPS, Inc. Additionally, inasmuch as WPS, LLC terminated all of its employees in April, 2006, there would similarly be no interference with the reorganization of that entity that might result from trial of this

matter, which would involve calling several former employees of WPS, LLC and WPS, Inc. as witnesses.

Respectfully submitted,

*/s/ Peter A. Crawford*

Peter A. Crawford, pro se
23 Newcastle Dr. #11
Nashua, NH 03060
(603)888-4574

Date: 5 May 2006