

UNITED STATES DISTRICT COURT
District of Massachusetts

Civil Action
No. 05-10078-DPW

PETER A. CRAWFORD, Plaintiff      )
                                  )
    v.                            )
                                  )
WOLVERINE, PROCTOR & SCHWARTZ, INC.,  )
    Steven F. Chilinski, Deepak S. Kulkarni,  )
                                  )
    Defendants                    )

PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS
SECOND MOTION FOR LEAVE TO AMEND HIS COMPLAINT

I. Background

This motion arises out of new facts that were revealed as a result of the filing for bankruptcy of Wolverine, Proctor & Schwartz, LLC ("WPS, LLC"), the successor in interest to defendant Wolverine, Proctor & Schwartz, Inc. ("WPS, Inc.") on April 1, 2006, and in discovery in this matter. On February 11, 2005, Wolverine, Proctor & Schwartz, Inc. was recapitalized and the assets of Wolverine Proctor, LLC ("WP LLC") and certain of its subsidiaries distributed to new U.S. and U.K. entities, including WPS, LLC. This fact was not disclosed by defendants until September 28, 2005. As a result of the 2005 recapitalization, defendant Kulkarni apparently regained 100 percent ownership of WPS, LLC in the U.S. and WPS, Ltd. in the U.K., approximately one month after the original Complaint in this action was filed. The motivation for the 2005 recapitalization has now become apparent from facts disclosed by the WPS, LLC bankruptcy.

1

When the original Complaint in this matter was filed, defendant Chilinski was still CEO of defendant WPS, Inc. and defendant Kulkarni was a consultant to WPS, Inc. and Chairman of the Board. The plaintiff at that time did not believe that he had a basis to hold defendant Kulkarni liable under the Wage Act, M.G.L. c. 149 §148, as it was not clear that defendant Kulkarni was an "officer or agent[] having the management of such corporation..." as would permit him to be liable under that section. However, during discovery, the depositions of defendant Chilinski, defendant Kulkarni and Marshall Bartlett of Parthenon (majority shareholder of WPS, Inc. through Wolverine Proctor LLC[1] prior to the 2005 recapitalization), were taken. Messrs. Chilinski and Kulkarni agreed that the matter of the plaintiff's bonus was left in Kulkarni's hands. Mr. Bartlett recalled little about the bonus, except that during the December 2004 to January 2005 time frame, that the recapitalization transaction was imminent, and Parthenon was focused on the recapitalization rather than company matters at the time, and would have left the issue of the plaintiff's bonus (requested in a letter dated December 2, 2004) in the company's hands. Clearly, even prior to the February 11, 2005 recapitalization, defendant Kulkarni was playing a greater role in the management of WPS, Inc. than merely the advisory role of a consultant.

Furthermore, subsequent to the filing of the original Complaint in this case, WPS, Inc. was recapitalized and defendant Kulkarni became Managing Member of WPS, LLC, its successor. That fact was not fully revealed until the bankruptcy filing of that company on April 1, 2006. In an apparent attempt to hide defendant Kulkarni's involvement with WPS, LLC, defendants submitted interrogatory responses on August 5, 2005 alleging that

---

[1] Not to be confused with Wolverine, Proctor & Schwartz, LLC.

2

defendant Kulkarni was CEO of Longlite, LLC, and not mentioning any current involvement by him with WPS, Inc. or WPS, LLC. See Plaintiff's Affidavit in Support of his Motion for Partial Summary Judgment, Exhibit T at 5. In fact, filings in the bankruptcy case have revealed that, during August, 2005, and in every month from April 2005 through February 2006, defendant Kulkarni was paid $38,461.54 by WPS, LLC[2].

II. New cause of action against defendant Kulkarni under the Wage Act

Plaintiff seeks to add an eleventh cause of action against Kulkarni under M.G.L. c. 149 §148 by virtue of his having effectively had the management of WPS, Inc. and having participated to a substantial degree in formulating the corporation's policy in the December 2004 to January 2005 time frame when WPS, Inc. was considering whether to pay the bonus requested by the plaintiff's December 2, 2004 letter. See Wiedmann v. The Bradford Group, Inc., 444 Mass. 698, 711-712 (2005) (construing the words "having the management of [the] corporation" to mean "participating to a substantial degree in formulating and determining policy of a corporation") Furthermore, after the February 11, 2005 recapitalization, defendant Kulkarni was undeniably the Managing Member, equivalent to Chief Executive Officer, of the successor WPS, LLC. By virtue of the de facto merger doctrine, WPS, LLC is the successor of WPS, Inc. See Cargill, Incorporated v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 359-360 (1997). Effectively, therefore, for purposes of M.G.L. c. 149 §148, WPS, LLC is the same corporation as WPS, Inc., and pursuant to M.G.L. c. 156B §80(b) all of the creditors' rights continue unimpaired against the surviving corporation and its officers.

---

[2] Even though the debtor, WPS, LLC, reported having only $1950 in petty cash at the time of filing, defendant Kulkarni was apparently paid his entire April salary on March 30, 2006, two days before WPS, LLC filed for bankruptcy. Thus the amount paid to him for March, 2006 was twice the normal amount.

3

Furthermore, inasmuch as WPS, LLC continued to fail to pay the plaintiff his bonus, which obligation it had assumed, defendant Kulkarni is liable as the primary person having the management of that corporation. See Second Amended Complaint ¶¶107-123.

### III. New cause of action to pierce the corporate veil

Second, the material submitted in connection with the bankruptcy filing of WPS, LLC, and what has been learned from the Chapter 7 trustee and others reveals that defendant Kulkarni misused, and attempted to misuse, the corporate form in an egregious manner in an attempt to erase the debts of WPS, Inc. and its successor WPS, LLC. First, on February 11, 2005, he recapitalized the U.S. and U.K. portions of Wolverine Proctor LLC, the parent company of WPS, Inc., separating the U.S. and U.K. entities and becoming a direct or indirect sole common shareholder of each. Parthenon was paid $2 million in connection with this transaction, and was relegated to the status of a preferred shareholder, while defendant Kulkarni became the sole common shareholder of the U.S. and U.K. entities. To pay Parthenon the $2 million for part of its equity stake, additional debt was taken on at that time by WPS, Inc., including $1.9 million in junior secured debt borrowed from Tencara, LLC, an entity controlled by a personal friend of defendant Kulkarni, and with whom Kulkarni shares other business interests, including the ownership and management of Longlite, LLC. In August, 2005, the two major facilities owned by WPS, LLC were sold and leased back, replacing a portion of the senior secured debt with lease obligations that could be rejected in bankruptcy. Then, in early March, 2006, apparently prompted by WPS LLC's proposed bankruptcy filing and what appears to be intentional accumulation of approximately $800,000 in cash relative to a $900,000 remaining loan balance, the senior lender predictably swept the cash out of the WPS,

4

LLC bank accounts, setting the cash off against the loan balance. Subsequently, WPS, LLC negotiated a settlement of the remaining balance, thus releasing the senior liens and leaving Tencara, LLC, conveniently controlled by defendant Kulkarni's friend and business associate, as the sole secured lender.

Meanwhile, on January 1, 2006, WPS, LLC had transferred its intellectual property to the U.K. entity, Wolverine Proctor & Schwartz, Ltd. and licensed it back. However, the consideration for that license was minimal. Although WPS, LLC got the right to use the intellectual property of WPS, Ltd., historically almost all of the designs and intellectual property had been developed in the U.S. and transferred to the U.K. rather than vice versa. The licensing agreement appears to have been intended as a poison pill to discourage anyone, other than entities related with defendant Kulkarni, from purchasing the assets of WPS, LLC out of bankruptcy. Anyone so doing would have to contend with competition from WPS, Ltd., controlled by defendant Kulkarni, utilizing the same designs, intellectual property, trademarks and trade names that had been assets of WPS, LLC. See 11 U.S.C. §365(n)(1)(B) (unlike most other executory contracts, licenses of intellectual property may not effectively be rejected in bankruptcy).

On April 1, 2006, WPS, LLC filed for Chapter 7 bankruptcy. Until their plans were thwarted by the bankruptcy judge's refusal to approve a sale notice and bidding procedures, Tencara, LLC planned to bid in its purported secured claim and repurchase for its nominee the assets of WPS, LLC free and clear of all liens and successor liability claims. Apparently, Tencara and defendant Kulkarni hoped that the license of intellectual property, trademarks and trade names of WPS, LLC would cause other bidders to abstain. It appears that such a sale would have completed a scheme planned for as early as the

2005 recapitalization, and would have had the effect of leaving defendant Kulkarni in effective control of the same business, without the debt and creditor claims against WPS, Inc. and WPS, LLC, including those arising out of this suit. As more fully detailed in the Second Amended Complaint ¶¶124-155, this egregious conduct warrants piercing the corporate veil and holding defendant Kulkarni personally liable for the causes of action in this suit against WPS, Inc. See My Bread Baking Co. v. Cumberland Farms, Inc. 353 Mass. 614 (1968), Pepsi-Cola Metro. Bottling Co., Inc. v. Checkers, Inc., 754 F.2d 10, 15 (1st Cir. 1985) (listing twelve factors to consider when deciding whether to pierce the corporate veil).

IV. New cause of action supporting an alternative theory for damages arising out of the hidden accrued dividend and amendment of the LLC Agreement

Third, plaintiff seeks to amend the Complaint to add a Tenth Cause of Action for breach of the implied warranty of non-interference with assignment. The Settlement Agreement entered into between the plaintiff, Mr. Kulkarni, and Wolverine Proctor LLC is specifically structured as an assignment of defendant Kulkarni's interest in certain distributions from Wolverine Proctor LLC to the plaintiff. See Plaintiff's Affidavit in Support of his Opposition to Defendants' Motion for Partial Summary Judgment, Exhibit J at PAC0051. The Eighth Cause of Action is for fraud arising out of defendant Kulkarni's conversion of his hidden right to an accrued dividend and the amendment of the underlying LLC Agreement to permit defendant Kulkarni to receive distributions under that agreement without sharing them with either the plaintiff or Parthenon. The proposed Tenth Cause of Action is based on a slightly different theory arising out of the same facts, and relies upon clearly established principles of Massachusetts law. See Restatement (Second) of Contracts §333(1)(a) (assignor of contract rights warrants that

6

he will do nothing to defeat or impair the value of the assignment), Abbot v. Bean, 295 Mass. 268, 278 (1936) (citing with approval the substantially identical language of Am. Law Inst. Restatement: Contracts §175); Easton v. Mellus, 73 Mass. (7 Gray) 566, 573 (1856) (assignee of right to collect payment for the gunpowder used in the conquest of California was not required to incur the risk that the assignor had done anything to defeat collection).

V. Minor corrections

Finally, the Second Amended Complaint makes some corrections to Amended Complaint, most for clarity. The original Complaint and the Amended Complaint used the abbreviation "Wolverine, Inc." for the defendant Wolverine, Proctor & Schwartz, Inc. That has been changed to "WPS, Inc." to be consistent with the other filings in this case. Additionally, ¶16 of the Amended Complaint erroneously referred to the entity involved in the 2001 recapitalization as Wolverine, Proctor & Schwartz, LLC, rather than Wolverine Proctor LLC. The former entity was not created until 2004, and became part of the 2005 recapitalization. Paragraph 4 was updated to refer to defendant Chilinski as the former President and CEO and make other updates. Paragraph 10 updates a minor error in the 1999 EBITDA, ¶26 was updated to clarify the entity for which financial statements were produced, ¶29 was updated to reflect the fact that reasons for non-payment of the Bonus were provided to the plaintiff during discovery in this matter, and ¶91 was reworded slightly to reflect the fact that the 2005 recapitalization created separate U.S. and U.K. entities. In addition, a number of typographical errors have been corrected.

VI. Conclusion

This motion does not seek to add any defendants. Fed. R. Civ. P. 15(a) provides that leave to amend should be "freely given when justice so requires." There is no "undue delay, bad faith or dilatory motive," nor is there any "undue prejudice to the opposing party" as would justify a denial of this motion. See Foman v. Davis, 371 U.S. 178, 182 (1962). Plaintiff is filing this motion a little more than a month after the bankruptcy filing of WPS, LLC that provided additional information, long obfuscated by defendants, to support new causes of action. Furthermore, the bankruptcy filing underscores the importance of pursuing causes of actions against defendants other than WPS, Inc. and WPS, LLC, the latter being in bankruptcy and at this point appearing unlikely to end up with significant assets from which to satisfy the liability of WPS, Inc. arising out of this suit, which liability WPS, LLC has apparently assumed. On the other hand, denying this motion would permit the defendants to benefit from their obfuscation and false statements, prejudice the plaintiff and prevent the realization of judicial economies by necessitating that he bring a separate action against defendant Kulkarni for the new causes of action.

Respectfully submitted,

_____
Peter A. Crawford, pro se
23 Newcastle Dr. #11
Nashua, NH  03060
(603)888-4574

Date: _5 May 2006_

## Affidavit of Service

I, Peter A. Crawford, plaintiff, hereby say and depose, under pains and penalties of perjury, that I this day served the within papers upon defendants' attorney, by causing copies thereof to be mailed, first class postage prepaid, to Mark Whitney, Morgan Brown & Joy, 200 State St., Boston, MA 02109.

_____
Peter A. Crawford

Date: 5 May 2006