UNITED STATES DISTRICT COURT
District of Massachusetts

Civil Action
No. 05-10078-DPW

)
PETER A. CRAWFORD, Plaintiff                     )
                                                 )
      v.                                         )
                                                 )
WOLVERINE, PROCTOR & SCHWARTZ, INC.,             )
      Steven F. Chilinski, Deepak S. Kulkarni,   )
                                                 )
      Defendants                                 )
_____ )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS EMERGENCY MOTION TO CLARIFY THAT THE PROTECTIVE ORDERS DO NOT APPLY TO OTHER PROCEEDINGS

### I.  INTRODUCTION

This memorandum is in support of an accompanying motion seeking to modify or clarify the two protective orders that were entered in this case on January 6, 2006. Also in support thereof is an accompanying affidavit. On April 1, 2006, Wolverine, Proctor & Schwartz, LLC ("WPS, LLC") filed for bankruptcy under Chapter 7 of the U.S. Bankruptcy Code, Title 11, United States Code. WPS, LLC has apparently assumed all of the liabilities, including that for any judgment in this case, of defendant Wolverine, Proctor & Schwartz, Inc. ("WPS, Inc."). Plaintiff has been participating in that bankruptcy case, and on April 25, 2006 the trustee's motion to approve bidding procedures was denied by the bankruptcy judge with the following docket entry:

> Order Dated 4/25/06 Re: 47 Trustee's Emergency Motion to Approve
> Bidding Procedures, Approval of Form of Notice Re: 46 Motion To Sell.
> #47 DENIED. #47, 57, 59 - FOR THE REASONS STATED IN THE
> OBJECTION OF FERGUSON PERFORATING & WIRE CO. TO THE

1

TRUSTEE'S MOTION AND BY ITS COUNSEL AT THE HEARING, AND CERTAIN ARGUMENTS MADE BY PETER A. CRAWFORD IN HIS OBJECTION TO THE PROPOSED SALE AND AT THE HEARING, IN PARTICULAR, THAT THE OVERBID AMOUNT IS EXCESSIVE, THAT THE ASSETS BEING SOLD ARE NOT SUFFICIENTLY IDENTIFIED, THAT THE SALE ON THE TIMETABLE PROPOSED BY THE TRUSTEE AND PROPOSED BIDDING PROCEDURES MAY NOT BE IN THE BEST INTERESTS OF CREDITORS AND THE ESTATE IN VIEW OF NUMEROUS QUESTIONS CONCERNING THE CONNECTIONS OF TENCARA TO THE DEBTOR AND THE DEBTOR'S RELATIONSHIP WITH WPS UK, THE COURT SUSTAINS THE OBJECTIONS AND DENIES THE MOTION. #58 IS MOOT. (pkn, usbc) (Entered: 04/26/2006)

Wolverine, Proctor & Schwartz Limited (hereinafter "WPS, Ltd.") is referred to in the above docket entry as "WPS UK." It is a U.K. corporation apparently owned by defendant Kulkarni. See Plaintiff's Affidavit in Support of his Motion to Clarify that the Protective Orders Do Not Apply to Other Proceedings (hereinafter "Plaintiff's Affidavit") ¶3, Exhibit A. Information revealed in the WPS, LLC bankruptcy strongly suggests that defendant Kulkarni and WPS, LLC are attempting fraudulently to use the bankruptcy process to erase the debts of WPS, Inc. and WPS, LLC and repurchase, using Tencara, LLC, an entity closely associated with defendant Kulkarni, for grossly inadequate consideration, the assets of WPS, LLC through a bidding process that is structured to chill bidding by anyone not associated with defendant Kulkarni.

At a hearing in the bankruptcy court on May 8, 2006 it was revealed that a second bidder, proposed by defendant Kulkarni, is considering an offer for these assets. The fast moving nature of this matter necessitates prompt action by this Court to enable the plaintiff to gather further information to counter, if appropriate, any further attempts by defendant Kulkarni or those associated with him again to attempt to misuse the bankruptcy process. Sale procedures often move to completion in a matter of days. Fed. R. Bankr. P. 2002(a)(2) permits sales of substantially all of a debtor's assets with only 20

2

days notice, 11 U.S.C. §363(m) limits the effectiveness of any appeal, and Fed. R. Bankr.

P. 6004(g) permits the bankruptcy judge to waive a 10 day stay and make a sale effective

immediately. As a practical matter, the debtor's estate and the plaintiff's prospects of

recovering against WPS, Inc. could be severely and irreparably damaged if he is not

permitted to gather further evidence of the facts surrounding the bankruptcy of WPS,

LLC and the relationships between WPS, LLC, WPS, Ltd., defendant Kulkarni and

Tencara, LLC.

On May 8, 2006, plaintiff's motion under Fed. R. Bankr. P. 2004 to examine the

debtor and three of its employees was allowed by the bankruptcy judge, with the

following order:

> "The movant may examine the debtor and its employees, however the
> court ordered that he continue to abide by the protective orders of the
> United States District Court. In the event the District Court modifies those
> orders, he may request an expansion of the Rule 2004 examination.

See Plaintiff's Affidavit ¶4, Exhibit B. In papers filed in opposition to plaintiff's Rule

2004 motion, the existence of the two protective orders issued in this case on January 6,

2006 was revealed, and the bankruptcy judge, cautiously deferred to this Court as to the

applicability of the protective orders outside of this action.

Unfortunately, it would be very difficult to conduct the Rule 2004 examination without

touching upon the 2005 financial performance of WPS, LLC and its formation in the

2005 recapitalization, which recapitalization gave rise to the relationships concerning the

bankruptcy judge in her denial of the bidding procedures order. Therefore, in order to

avoid needless disputes and enable completion of the examinations without ongoing

intervention by either this court or the bankruptcy court, plaintiff is requesting that this

3

court clarify that the two January 6, 2006 protective orders do not apply outside of this action.

## II.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND

This case was filed on January 13, 2005.  On February 11, 2005, the parent company of defendant WPS, Inc., Wolverine Proctor LLC ("WP LLC")[1], was recapitalized (the "2005 recapitalization").  While the details of the recapitalization are not fully known due to the protective orders, a number of details have emerged during the bankruptcy proceedings, in documents produced by defendants in this matter, and in public filings made by the various entities.  It is clear that the assets and liabilities of WPS, Inc. were substantially all assumed by a new entity, WPS, LLC, except for 49 shares of WPS, Ltd. (a 49 percent interest) that had been held by WPS, Inc.  See Plaintiff's Affidavit ¶¶5, 10, Exhibit C at W0367, Exhibit D at Continuation Page 2. Those shares were transferred to Phoenix UK, LLC on April 18, 2005.  That entity is apparently controlled by defendant Kulkarni.  Defendant Kulkarni apparently now controls, directly or indirectly, both WPS, LLC and WPS, Ltd.  WPS, Ltd. is continuing in business and its web site, www.wolverineproctor.co.uk is advertising that it is unaffected by the filing of WPS, LLC.  Until the plaintiff raised the issue with the Chapter 7 trustee, the web sites www.wolverineproctor.com and www.jetzone.com, both owned by the debtor WPS, LLC, had been redirected to the WPS, Ltd. web site (or a facsimile thereof), thus enabling WPS, Ltd. to capture business that otherwise would have gone to the debtor, WPS, LLC.

Prior to the 2005 recapitalization, substantially all of the shares of both WPS, Inc. and WPS, Ltd. had been directly or indirectly owned by WP LLC.  In connection with the

---

[1] Not to be confused with Wolverine, Proctor & Schwartz, LLC, or WPS, LLC

2005 recapitalization, WPS, LLC borrowed in excess of $3.25 million from

CapitalSource Finance LLC ("CapitalSource"), and Tencara LLC lent an additional $1.9

million to WPS, LLC, receiving in return a purported junior security interest in the assets

of WPS, LLC and warrants to purchase WPS, LLC stock. Tencara, LLC also apparently

invested in WPS, Ltd. as that entity owes Tencara, LLC $100,000 and Tencara, LLC has

warrants to purchase 10% of the WPS, Ltd. stock. Tencara, LLC is owned by David

Callan, a personal friend of defendant Kulkarni. Messrs. Callan and Kulkarni also share

equity interests in Longlite, LLC, a company based in Portsmouth, NH. During 2005, the

Longlite, LLC web site listed Mr. Callan as Chairman, and Mr. Kulkarni as CEO of

Longlite. Plaintiff's Affidavit ¶7, Exhibit E at ¶5.07.

In August, 2005, the two buildings that had been owned by WPS, LLC were sold

in a sale leaseback transaction for $3.25 million and the funds used to pay down the

CapitalSource loan, leaving a smaller "revolver" amount. These buildings were the

largest ones used by WPS, LLC, a smaller sales and support office in Horsham, PA had

been leased for a number of years.

On or about January 1, 2006 WPS, LLC and WPS, Ltd. entered into a Technology

Transfer and License-Back Agreement. See Plaintiff's Affidavit ¶8, Exhibit F. Under

this agreement, it appears that the designs, other intellectual property, trademarks and

trade names previously owned by WPS, LLC were transferred to WPS, Ltd. for grossly

inadequate consideration consisting solely of a license of certain rights from WPS, Ltd. to

WPS, LLC. In return for this transfer, WPS, LLC received the rights to certain

intellectual property developed in the U.K. However, historically, almost all of the

designs and intellectual property of WPS, LLC and its predecessor WPS, Inc. flowed

5

from the U.S. to the U.K., not vice versa. The WPS, Ltd. designs and intellectual property are largely derivative of what originally came from the U.S. and is of little value to the U.S. entity. In fact, until 2002 or later, substantially all of the engineering and design activity in the U.K. was conducted by a branch of WPS, Inc. in the U.S. Plaintiff's Affidavit ¶9.

In March, 2006, the balance on the CapitalSource loan was approximately $900,000, and WPS, LLC had $800,000 in cash in bank accounts that CapitalSource apparently had visibility to. To be holding that amount of cash was unusual for WPS, LLC, and it appears that WPS, LLC had been unable to make significant shipments during January and February 2006 at least in part because it was not using the cash to pay vendors to obtain material shipments, but rather because it had accumulated the cash. While the WPS, LLC sales for 2005 were $26,611,000, sales for January and February 2006 had dropped to $1,402,100, less than 32% of the 2005 monthly run rate. In fact, it appears that WPS, LLC had a fairly successful 2005, at least from a sales standpoint. For 2004, the sales of WP LLC were $37,600,954, which included the sales of WPS, Ltd. According to filings with U.K. Companies House, the sales of WPS, Ltd. for 2004 were £7,994,065 or approximately $14.7 million at an average exchange rate for 2004 of 1.84 dollars per U.K. pound. Thus, it appears that the U.S. sales of WPS, Inc. and its successor WPS, LLC increased from $22.9 million in 2004 to $26.6 million in 2005. Plaintiff's Affidavit ¶¶5, 6, Exhibit C at W0363, Exhibit D at 5.

Nevertheless, WPS, LLC commenced negotiations with CapitalSource regarding a Chapter 11 bankruptcy filing, in early March, 2006. Around that same time, CapitalSource predictably swept the WPS, LLC bank accounts and set off the cash

6

against their loan. This left only approximately $100,000 still owing, and on March 7, 2006, WPS, LLC and CapitalSource negotiated a settlement whereby CapitalSource accepted $31,476.57 and in return extinguished any remaining balance and terminated any security interest in the WPS, LLC assets. This conveniently left Tencara, LLC, previously the purported junior secured creditor, as the sole creditor having a security interest in the assets of WPS, LLC.

On April 1, 2006, WPS, LLC filed for bankruptcy in the U.S. Bankruptcy Court in Boston, MA. On January 6, 2006, this Court had issued protective orders in this case relating to the 2005 recapitalization, the 2005 financials, and payments to defendant Kulkarni. While permitting discovery by the plaintiff into payments made to defendant Kulkarni by WPS, Inc. or WPS, LLC[2] during 2001 or 2002, the order prevented discovery of payments to defendant Kulkarni outside of that period.

Subsequently, the plaintiff amended his Complaint to add causes of action for fraud and an accounting, arising in part out of his 4% interest in distributions from WP LLC to defendant Kulkarni established by the December 28, 2001 Settlement Agreement between the plaintiff, defendant Kulkarni and WP LLC. As a result of the Amended Complaint, the 2005 recapitalization and the 2005 financial statements, as well as payments to defendant Kulkarni after 2002 became undeniably relevant, as further detailed in Plaintiff's Memorandum in Support of his Motion to Amend and Dissolve Protective Orders in Light of the Amended Complaint.

The Plaintiff's Motion to Amend and Dissolve the Protective Orders in Light of the Amended Complaint was to have been heard on April 11, 2006. On April 10, 2006,

---

[2] It appears that the Magistrate intended to refer to WP, LLC as WPS, LLC was not even formed until 2004.

defendants filed a suggestion of bankruptcy as to defendant WPS, Inc. The docket entry

that they made read as follows:

> "SUGGESTION OF BANKRUPTCY Upon the Record as to Wolverine,
> Proctor & Schwartz, Inc. by Wolverine Proctor & Schwartz, Inc., Steven
> F. Chilinski, Deepak S. Kulkarni. (Attachments: # 1 Exhibit Exhibit A -
> Notice of Ch. 7 Bankruptcy Filing)(Whitney, Mark) (Entered: 04/10/2006)

On April 6 and 7, 2006 the parties had filed their oppositions to the pending cross

motions for summary judgment, the plaintiff, and apparently the defendants, not being

aware at that time of the April 1, 2006 bankruptcy filing by WPS, LLC.

Apparently relying upon the above docket entry, which falsely indicated that it

was defendant WPS, Inc., not WPS, LLC, that had filed for bankruptcy, Magistrate

Collings canceled the hearing and pretermitted the motions that were to have been heard

the next day. Plaintiff insisted that defendants revise their false docket entry, which was

done on April 11, 2006:

> SUGGESTION OF BANKRUPTCY Upon the Record as to Wolverine,
> Proctor & Schwartz, LLC (the successor in interest to WPS Inc. with
> respect to any liability that could result against WPS Inc. in the instant
> action - WPS Inc. was dissolved in 2/05) *[CORRECTIVE FILING]* by
> Wolverine Proctor & Schwartz, Inc., Steven F. Chilinski, Deepak S.
> Kulkarni. (Attachments: # 1 Exhibit Exhibit A - notice of Ch. 7
> filing)(Whitney, Mark) (Entered: 04/11/2006)

On April 13, 2006, a previously scheduled status conference was held before Judge

Woodlock, during which the Court indicated that it intended to proceed with ruling on the

pending cross motions for summary judgment, except perhaps as to defendant WPS, Inc.,

and declined to consider the pending motions to amend the protective orders until the

hearing on those motions. Further motions were submitted by both defendants and the

plaintiff on May 5, 2006, including further motions for summary judgment by both the

plaintiff and defendants. In addition, defendant Chilinski moved to stay proceedings against

him as well, and plaintiff moved to lift the stay against defendant WPS, Inc., and to amend

his Complaint. A further hearing is not set to occur before June 28, 2006.

Discovery in this case ended on February 24, 2006, other than expert discovery and the resolution of the pending discovery motions. The second extension of the discovery deadline was solely at defendants' request and was assented to by the plaintiff as a compromise after defendants indicated that they intended to request an even longer extension in light of the Amended Complaint.

## III. PROTECTIVE ORDERS LIMITING THE SCOPE OF DISCOVERY DO NOT APPLY OUTSIDE OF THE PROCEEDING FOR WHICH THEY WERE ISSUED

Fed. R. Civ. P. 26 governs both the scope of discovery and the issuance of protective orders. Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(c) provides that "[u]pon motion by a party or by a person from whom discovery is sought..." certain orders may be made. Fed. R. Civ. P. 26(c)(3) permits a court to order "that certain matters not be inquired into, or that the scope of the disclosure or discovery is limited to certain matters." It appears that the January 6, 2006 protective orders were issued pursuant to Rule 26(c)(3).

Manifestly, Rule 26 relates to discovery and disclosure, apparently the word "disclosure" referring to the required disclosures under Rule 26(a). But, as used in Rule 26, discovery relates to the claims and defenses of any party, or the subject matter of the action. Rule 26 is focused on ensuring that discovery is limited appropriately to the scope of the action and its claims and defenses, and provides for protective orders preventing the use of the discovery process in a particular action for inquiring into unrelated matters. Among the factors that may be considered is "undue burden or expense..." to a party or person. See Fed. R. Civ. P. 26(c). The meaning of "undue burden" is made clear in Rule 26(b)(2)(iii) that permits discovery to be limited if "the

9

burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Clearly, taken as a whole, Rule 26 is intended to permit the tailoring of discovery limits and protective orders to suit the needs of a particular case, its claims and defenses, and the subject matter involved in the action.

Viewed in this light, it is clear that Rule 26 is not intended to apply outside of the particular action giving rise to the request for a protective order, unless there is a need for confidentiality. See Fed. R. Civ. P. 26(c)(7) (permitting protective orders to prevent the disclosure of trade secrets or other confidential information). That is because every case has different claims and defenses and the needs of discovery in any particular case are governed by those claims and defenses. In this case, neither of the protective orders prevents the disclosure of any matters that either party has discovered, thus the protective orders that have been issued have no effect outside of this action.

This same issue was addressed in Poliquin v. Garden Way, Inc., 154 F.R.D. 29, 30 (D. Me. 1994). In that case, an attorney had "filed a Motion to Amend the Protective Order, alleging that the Order was barring him from conducting discovery in a similar case pending in a state court in New York." The magistrate denied the motion, "[s]tating that the Protective Order 'in no respect limits a party's discovery rights in any other case...'" Poliquin at 30. Clearly, the magistrate in that case interpreted Fed. R. Civ. P. 26 to limit that the effect of protective orders to the particular case in which they were issued, thus no amendment of the protective order was either required or permitted under

10

these circumstances. The protective order simply never had, and never would, apply outside of the case in which it was issued.

Similarly in <u>Superior Oil Company v. American Petrofina Company of Texas, et al.</u>, 785 F.2d 130 (5th Cir. 1986), the Fifth Circuit declined to extend the effect of a protective order beyond the particular action in which it was issued. It held that "the protective order cannot bar Fina's discovery efforts in the state court proceeding..." and that "[q]uestions of the discoverability in the state litigation of the materials discovered in the federal litigation are, of course, for the state courts of Louisiana, before whom the litigation [] is pending." <u>Superior</u> at 130.

## IV. COLLATERAL LITIGATION DOES NOT AFFECT THE SCOPE OF RULE 2004 EXAMINATION IF IT SEEKS INFORMATION RELEVANT TO THE BANKRUPTCY PROCEEDING

Furthermore, the very materials that the plaintiff is barred from seeking inquiry into by the protective orders, particularly the 2005 recapitalization and 2005 financial statements of WPS, Inc. and its successor WPS, LLC, are critical to the issues in the bankruptcy case of WPS, LLC. Indeed, the very concerns of the bankruptcy judge, namely the relationships among WPS, LLC, WPS, Ltd. and Tencara, LLC were created by the 2005 recapitalization. Furthermore, WPS, LLC filed for Chapter 7 bankruptcy only slightly more than a year after it assumed the assets and liabilities of WPS, Inc., and took on additional debt, raising fraudulent transfer and inadequate capitalization issues.

The U.S. and U.K. operations of WP LLC were separated by the 2005 recapitalization and separately financed entities were apparently created, with both owned and controlled by defendant Kulkarni. The shares of WPS, Ltd. that had been owned by WPS, Inc. were acquired by Phoenix UK, LLC on April 18, 2005, in all

11

likelihood for no or inadequate consideration. The net result of the 2005 recapitalization appears to have been to burden WPS, LLC with most of the debt[3] previously held by WP LLC and its subsidiaries, while stripping it of one of its most valuable assets, its 49% ownership of WPS, Ltd. By December 2004, total members' equity of WP LLC was down to $2,962,685 which included the equity of WPS, Ltd., which according to the WPS, Ltd. financial statements was £758,174, or approximately $1,460,000 at the December 31, 2005 exchange rate of 1.9266 dollars per pound. That suggests that the equity of WPS, LLC was approximately $1.5 million upon formation, an amount exceeded by the plaintiff's claims in this case, for which it appears no provision was made. Thus, WPS, LLC may well have been insolvent upon formation, in that its liabilities exceeded its assets, even before considering the value of the WPS, Ltd. shares.

Furthermore, the January 1, 2006 transfer of the intellectual property of WPS, LLC to WPS, Ltd., and the apparently intentional acts leading to Tencara, LLC becoming the sole secured lender to WPS, LLC less than one month before it filed for bankruptcy raise serious questions that need to be addressed.

---

[3] According to the WP LLC 2004 financial statements (see Exhibit C at W0362), as of December 31, 2004, a little over a month before the 2004 recapitalization, WP LLC and its subsidiaries had $3,526,009 in lines of credit and long-term debt due within a year, plus a small capital lease obligation. Of this, £400,000, or $771,000 at the December 31, 2004 exchange rate of 1.9266 dollars per pound, was debt of WPS, Ltd. Exhibit D at 13. Thus, it appears that WPS, LLC's debt may have increased by approximately $2.4 million in the 2005 recapitalization. As part of the 2005 recapitalization, it appears that WPS, LLC took on at least $3.25 million in debt from CapitalSource plus $1.9 million in purported debt from Tencara, LLC. While defendants are likely to argue that there was a $14 million loan from Wolverine Proctor, Inc. to WPS, Inc. that was "forgiven" as part of the 2005 recapitalization, in reality that "loan" did not appear on the WP LLC financial statements as it was eliminated in consolidation. The $14 million was advanced by Parthenon in December 2001 as part of the 2001 recapitalization, and Parthenon received equity for this investment. It also does not appear that any interest was paid to Parthenon on this purported "loan," at least after a small payment in the first quarter of 2002. Manifestly, the $14 million was equity. See In re AtlanticRancher, Inc., 279 B.R. 411 (Bkrtcy. D. Mass. 2002).

It is apparent that the Chapter 7 trustee and the estate of WPS, LLC may benefit from a number of possible causes of action, including fraudulent transfer pursuant to 11 U.S.C. §548 or M.G.L. c. 109A (providing a cause of action to the Chapter 7 trustee under 11 U.S.C. §544(b)(1)) or 11 U.S.C. §547. These are all causes of actions that accrue to the trustee under Title 11 of the United States Code, even though plaintiff may have his own causes of action against transferees of the property of WPS, Inc. or WPS, LLC under M.G.L. c. 109A.

Fed. R. Bankr. P. 2004(b) permits examinations that relate to the "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate…" Clearly, the 2005 financial statement relate to the property, liabilities and financial condition of the debtor, and the 2005 recapitalization documents also relate to the financial condition of the debtor and to matters that may affect the administration of the debtor's estate in that information therein may provide support for fraudulent transfer or other claims to be brought by the Chapter 7 trustee.

Furthermore, payments by WPS, LLC, WPS, Inc., WPS, Ltd. (previously named Friel Engineering Limited), WP LLC, Wolverine Proctor, Inc. or other associated entities, such as Phoenix UK, LLC or MawLaw 492 (both apparently holding companies for the shares of WPS, Ltd.) to defendant Kulkarni may provide evidence of payments that constitute fraudulent transfers, voidable preference payments, or other voidable transfers to defendant Kulkarni funneled to him from WPS, LLC. Like the payments in 2000, 2001 and 2002 that were documented by plaintiff's discovery in this action, these transfers may have been disguised as ostensibly legitimate payments among the entities

13

that defendant Kulkarni controls, such as WPS, Ltd. Thus, payments made to defendant Kulkarni, in particular those made in 2005 and 2006 are specifically relevant to its bankruptcy proceeding.

The interaction between Fed. R. Bankr. P. 2004 and pending litigation in other forums has been addressed in a number of cases. In In re Table Talk, Inc., 51 B.R. 143, 145 (Bkrtcy. D. Mass. 1985), the issue of a Rule 2004 examination arose. The persons to be examined objected on the basis that the use of such an examination was unfair because of pending future litigation between the parties. The court, in allowing the Rule 2004 examination, noted that it is "'clear that pending litigation... against the person sought to be examined and the possible use of 205 [now 2004] testimony in that collateral litigation is not sufficient reasons for denying examination.'" Table Talk at 145. Similarly, in In re Mantolesky, 14 B.R. 973 (Bkrtcy. D. Mass. 1981) the examination of the debtor's former business associate was permitted to proceed with certain limitations. That examination was permitted pursuant to Rule 205, the predecessor of Rule 2004. Citing Collier on Bankruptcy ¶205.15[1] at p. 2-94 (14th Ed. 1978), the court noted that "[t]he examination cannot be used to delve into the private affairs of a witness, where such affairs have no connection with the matters set out in Rule 205(d) but if a relationship can be shown with the bankrupt's [debtor's] affairs, the witness will be required to answer." Mantolesky at 976. The court went on specifically to state that "the law is clear that pending litigation by others against the person sought to be examined and the possible use of 205 testimony in that collateral litigation is not sufficient reason for denying examination." Mantolesky at 979.

14

In <u>re GHR Energy Corp.</u>, 35 B.R. 534 (Bkrtcy. D. Mass. 1983), the debtors sought to use Rule 2004 to examine the assignees of certain of their drilling rights. In denying the motion to examine pursuant to Rule 2004, the court noted that the "Rule 2004 is creditor and trustee oriented." <u>GHR</u> at 537. Inasmuch as it appeared that the debtors were already in a position to file an action and "attempting to use Rule 2004 to circumvent the procedural safeguards provided a litigant under the Federal Rules of Civil Procedure," the court denied the motion for the Rule 2004 examination. <u>GHR</u> at 538.

The plaintiff's situation is entirely different, where he is a creditor, and is seeking to examine the debtor, precisely the primary purpose contemplated by Rule 2004. Conversely, as a debtor in a bankruptcy proceeding, WPS, LLC, as represented by its employees and agents, is subject to broad inquiry under Rule 2004. See <u>Table Talk</u> at 145 (scope of Rule 2004 examination is unfettered and broad and the rule itself is peculiar to bankruptcy law). These principles are no doubt derived from applicable English law at the time of the adoption of the U.S. Constitution. See 2 W. Blackstone, Commentaries *481-482 (bankrupt to be examined on all matters relating to his trade and effects, and "is bound upon pain of death to make a full discovery of all his estate and effects, as well in expectancy as possession, and how he has disposed of the same; together with all books and writings relating thereto…").

Other out of state cases do not contradict the holdings of the Massachusetts cases. In <u>re Coffee Cupboard, Inc.</u>, 128 B.R. 509 (Bkrtcy. E.D.N.Y. 1991), examination and document production was limited to "issues which the court, at that time, still has the power to entertain." <u>Coffee Cupboard</u> at 515. Unlike the WPS, LLC bankruptcy case, which just commenced on April 1, 2006 and where the court still has the power to

15

entertain a broad range of issues, Coffee Cupboard related to an old case where a Chapter 11 plan had been confirmed and then reopened and converted to one under Chapter 7. See Coffee Cupboard at 511. While the court noted other pending litigation in New York state court, and its concern that the "Rule 2004 examination is being used to obtain information for use in that action," it cited Table Talk, and noted that "[t]he mere fact that there is pending litigation against a person sought to be examined under Rule 2004 and possible use of such testimony in collateral litigation is not a sufficient reason for denying the examination." Coffee Cupboard at 516. When the court concluded that certain requests "could serve no useful purpose here," and concluded that "the above request could only be used in connection with the state court litigation," it refused to order production except to the extent that it was related to the issues in the bankruptcy case. Coffee Cupboard at 517.

In Snyder v. Society Bank, 181 B.R. 40 (S.D. Texas 1994), the District Court upheld a Bankruptcy Judge on appeal when the judge had decided that the reason given for requesting the documents, namely that they were for use in his dispute with the Internal Revenue Service ("IRS"), was without merit as Snyder's motion to reconsider an order granting summary judgment in favor of the IRS had been denied and that the documents were therefore of "use only in the Michigan [state court] action." Snyder at 42. Conversely, the information sought by the plaintiff for his Rule 2004 examination is far from moot, as the WPS, LLC bankruptcy case has only recently been filed, and few, if any issues, are moot at this point.

In In re Enron Corp., et al., 281 B.R. 836 (Bkrtcy. S.D.N.Y. 2002), the bankruptcy court denied a motion for a Rule 2004 examination, because of another

16

pending action (the Newby Action) between the party seeking the examination and the debtors accountants and other advisors. Enron at 837. In denying the motion, the court noted that it "finds no basis upon which the Regents would request the Rule 2004 Material at the present time unless there was some other purpose motivating the request. It follows therefrom that the only reasonable conclusion that can be drawn is that discovery is sought solely for purposes of the Newby Action." Enron at 844. Unlike the situation in Enron, the plaintiff has obtained approval for the examination of the debtor WPS, LLC and its employees, has clearly enumerated several reasons why the information sought in the examination is directly relevant and critical to the issues in the ongoing bankruptcy case, and the debtor's predecessor in interest, WPS, Inc., not just its advisors, is a defendant in this action. Enron therefore has no applicability here.

While it is true that information that the plaintiff obtains in his Rule 2004 examinations in the WPS, LLC bankruptcy case could be used in the instant case, that is no bar to him obtaining that information. See In re American Anthracite & Bituminous Coal Corp., 22 F.R.D. 504, 508 (S.D.N.Y. 1958) ("…it is no objection to the examination that the deposition may be used in some other action or proceeding, if it is relevant to the pending action"); Johnson Foils, Inc. v. Huyck Corp., 61 F.R.D. 405, 410 (N.D.N.Y. 1973) ("…unless it can be shown that the discovering party is exploiting the instant litigation solely to assist in other litigation before a foreign forum, federal courts do allow full use of the information in other forums." See also Wilk v. American Medical Ass'n, 635 F.2d 1295, 1300 (7th Cir. 1980) (bona fide litigant entitled to use discovery from another proceeding). Here, the plaintiff is simply seeking to protect his interests in the bankruptcy court by acting to raise issues aimed at preserving the assets of the estate

from which it appears that any judgment against WPS, Inc. must be satisfied. While the issues in this case and the bankruptcy case overlap to some extent, there is no evidence that the plaintiff is exploiting either action to obtain discovery for the other action.

## V.  CONCLUSION

The plaintiff's intervention in the bankruptcy case of WPS, LLC has already proven beneficial to the estate by preventing an ill-advised sale of the assets of WPS, LLC to Tencara, LLC or its nominee, an entity controlled by a personal friend and business associate of defendant Kulkarni. A second attempt to sell the estate's assets, again to a bidder that defendant Kulkarni has identified, appears likely to be attempted in the very near future. Nothing in Fed. R. Civ. P. 26 suggests that a protective order applies outside of the case in which it was issued, in fact the case law indicates the contrary. Plaintiff is entitled to an order clarifying this fact, or in the alternative to an order amending the two protective orders issued on January 6, 2006 to limit their scope to this case.

Respectfully submitted,

Peter A. Crawford, pro se
23 Newcastle Dr. #11
Nashua, NH  03060
(603)888-4574

Date: 10 May 2006

18

FILED
UNITED STATES DISTRICT COURT
District of Massachusetts

Civil Action
No. 05-10078-DPW

|  |  |
|---|---|
| PETER A. CRAWFORD, Plaintiff | ) |
|  | ) |
|  | ) |
| v. | ) |
|  | ) |
| WOLVERINE, PROCTOR & SCHWARTZ, INC., | ) |
| Steven F. Chilinski, Deepak S. Kulkarni, | ) |
|  | ) |
| Defendants | ) |
|  | ) |

## PLAINTIFF'S AFFIDAVIT IN SUPPORT OF HIS EMERGENCY MOTION TO CLARIFY THAT THE PROTECTIVE ORDERS DO NOT APPLY TO OTHER PROCEEDINGS

I, Peter A. Crawford, do hereby say and depose that:

1.    I am the plaintiff in the above-captioned action. I was employed by the defendant Wolverine, Proctor & Schwartz, Inc. ("WPS, Inc.") as Chief Operating Officer ("COO") on or about December 30, 1999, and served in that capacity until January 14, 2002.

2.    I make the statements herein based upon personal knowledge, unless otherwise indicated.

3.    I attach hereto as Exhibit A a true copy of the order entered in the case in U.S. Bankruptcy Court in Boston, Chapter 7 case number 06-10815-JNF on April 25, 2006 that I downloaded from that Court's Pacer web site.

1

4.     I attach hereto as Exhibit B a true copy of the order entered in that same case on May 8, 2006 that I downloaded from that Court's Pacer web site.

5.     I attach hereto as Exhibit C a true copy of selected pages of the 2004 consolidated financial statements of Wolverine Proctor LLC that were produced by defendants during discovery in this matter.

6.     I attach hereto as Exhibit D a true copy of selected pages of the 2004 financial statements of Wolverine, Proctor & Schwartz, Ltd. that I downloaded from the web site of the U.K. Companies House.

7.     I attach hereto as Exhibit E a true copy of selected pages from the Asset Purchase Agreement that was filed in the previously referenced bankruptcy case of WPS, LLC, on or about April 21, 2006. I downloaded these pages from the court's Pacer web site. During 2000 and 2001, Deepak Kulkarni told me that he and David Callan were personal friends, and I learned from Mr. Kulkarni that the two often went to Florida together for brief vacations during the winter. During 2005, I visited the web site www.longlite.com. At that time, it listed David Callan as Chairman, or a similar title, and Mr. Kulkarni as CEO, of Longlite, LLC.

8.     I attach hereto as Exhibit F a true copy of selected pages of the Form 6 Schedule filed by the debtor WPS, LLC on or about April 1, 2006 in the above-mentioned bankruptcy case.

9.     As Chief Operating Officer of WPS, Inc., I have personal knowledge of the conduct of the affairs of that entity during 2000 and 2001. Throughout that time period, WPS, Inc. conducted its operations in the United Kingdom through a branch office located in East Kilbride, outside of Glasgow, Scotland, U.K. The activities in that

2

office included sales, service, support, engineering, purchasing, accounting, finance and management for the European and certain other non-U.S. customers of WPS, Inc. Manufacturing for one of the WPS, Inc. product lines for European and certain other non-U.S. markets was subcontracted to Friel Engineering Limited ("Friel") in Chester, England. At the time, Friel was 49% owned by WPS, Inc. and 51% owned by Deepak Kulkarni or MawLaw 492, an entity owned and controlled by him. WPS, Inc. in the U.K. purchased material from European vendors and from WPS, Inc. in the U.S. that was shipped to Friel for assembly into finished products. Friel did little if any design work, and substantially all of its revenues consisted of labor charges billed to the WPS, Inc. branch near Glasgow. Friel was closely managed in nearly all respects by the WPS, Inc. office in Glasgow. The designs utilized in the products sold by WPS, Inc.'s U.K. branch office largely were derivatives of existing designs developed by WPS, Inc. offices in the U.S. Certain minor changes were often made so that the designs used metric, rather than English, units, and to provide other minor changes to meet individual customer needs as was typically also done by designers in the WPS, Inc. offices in the U.S. I am not aware of any instances where designs had been developed in the U.K. and sent back for use by the U.S. operations of WPS, Inc. When I was COO of WPS, Inc. virtually all of the designs and intellectual property of significant value were transferred from the U.S. to the U.K., rather than vice versa. The U.S. operations of WPS, Inc. had been around since the mid-1800s and there were large numbers of designs that the company and its predecessors had designed and built over the years. On the other hand, the U.K. branch office of WPS, Inc. was formed in the 1990s, was substantially smaller than the U.S. operations, and did not have nearly the base of experience that the U.S. operations had. I

am aware of a machine sizing program developed by WPS, Inc. in the U.K. that the U.S.

staff used on occasion, but my understanding is that that was a relatively simple piece of

software that could easily have been duplicated in the U.S. I personally visited the WPS,

Inc. branch near Glasgow and the Friel facility in Chester during 2000, and oversaw the

U.K. management of the WPS, Inc. branch in the U.K. on a weekly, if not daily, basis.

    10.    I attach hereto as Exhibit G a true copy of the Annual Return dated

September 18, 2005 of Wolverine, Proctor & Schwartz, Limited that I downloaded from

the web site of the U.K. Companies House.

    Signed under pains and penalties of perjury this the 10th day of May, 2006

Peter A. Crawford, pro se
23 Newcastle Dr. #11
Nashua, NH  03060
(603)888-4574

4

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT, DISTRICT OF MASSACHUSETTS
### Proceeding Memorandum/Order of Court

**In Re:** Wolverine Proctor & Schwartz, LLC      **Case Number:** 06-10815          **Ch:** 7

### MOVANT/APPLICANT/PARTIES:

#47 Trustee's Emergency Motion to Approve Bidding Procedures, Approval of Form of Notice RE: #46 Motion to Sell.
#57 Limited Objection by Creditor Peter A. Crawford
#58 Limited Objection by Creditor NL Ventures V Wolverine LP.
#59 Objection by Creditor Ferguson Perforating & Wire Co.
J. Bostwick, for Chapter 7 Trustee
M Parker for NL Ventures V Wolverine, LP
J. Doran for Ferguson Perforating & Wire Co.

### OUTCOME:

_____Granted_ **47**_Denied_____Approved_____Sustained

_____Denied_____Denied without prejudice_____Withdrawn in open court_____Overruled

_____OSC enforced/released

_____Continued to:_____For:_____

_____Formal order/stipulation to be submitted by:_____Date due:_____

_____Findings and conclusions dictated at close of hearing incorporated by reference

_____Taken under advise ment: Brief(s) due_____From_____

                              Response(s) due_____From_____

_____Fees allowed in the amount of: $_____Expenses of: $_____

_____No appearance/response by:_____

_____DECISION SET OUT MORE FULLY BY COURT AS FOLLOWS:

\# 47, 57, 59 - For the reasons stated in the Objection of Ferguson Perforating & Wire Co. to the Trustee's Motion and by its counsel at the hearing, and certain arguments made by Peter A. Crawford in his objection to the proposed sale and at the hearing, in particular, that the overbid amount is excessive, that the assets being sold are not sufficiently identified, that the sale on the timetable proposed by the trustee and proposed bidding procedures may not be in the best interests of creditors and the estate in view of numerous questions concerning the connections of Tencara to the debtor and the debtor's relationship with WPS UK, the court sustains the objections and denies the motion. # 58 is moot.

IT IS SO NOTED:                                          IT IS SO ORDERED:

                                                         _Joan N. Feeney_

_____                                  _____Dated: 04/25/2006
Courtroom Deputy                                         Joan N. Feeney, U.S. Bankruptcy Judge

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT DISTRICT OF MASSACHUSETTS
Proceeding Memorandum Order of Court

**In Re:** ............................   Case Number   ......   Ch:

**MOVANT/APPLICANT/PARTIES:**

#45 Rule 2004 Motion of Peter Crawford for examination of the Debtor and its Employees
#41 Limited Objection of Deepak Kulkarni
#40 Limited Objection of Chapter 7 Trustee
J. Becker k for Chapter 7 Trustee
Peter Crawford
D. Doan for Deepak Kulkarni

**OUTCOME:**

____Granted ____Denied____Approved____Sustained
____Denied____Denied without prejudice____Withdrawn ... on this ____Overruled
____Self enforced/released
____Continued to: _____ for _____
____Formal order/stipulation to be submitted by_____ Date due_____
____Findings and conclusions dictated at close of ... incorporated by reference
____Taken under advisement. Brief(s) due_____ From _____
                              Response(s) due_____ From _____
____Service upon the amount of $_____ _____ ___Expended of $_____ _____
____No appearance/response by_____ _____
____Decision set up more fully by further order

#45, 41, 40  The movant may examine the Debtor and its employees, however the Court ordered that he continue to abide by the protective orders of the United States District Court. In the event the District Court modifies those orders, he may request an expansion of the Rule 2004 examination.

# EXHIBIT C



# Wolverine Proctor LLC and Subsidiaries

Consolidated Financial Statements

Years Ended December 31, 2004 and 2003

VITALE, CATURANO & COMPANY ™

W0357

## *WOLVERINE PROCTOR LLC AND SUBSIDIARIES*

Consolidated Balance Sheets
December 31, 2004 and 2003

|  | 2004 | 2003 |
|---|---|---|
| **ASSETS** |  |  |
| Current assets: |  |  |
| Cash and cash equivalents | $ 285,450 $ | 1,787,073 |
| Accounts receivable, net | 3,431,415 | 3,229,381 |
| Costs and estimated earnings in excess |  |  |
| of billings on uncompleted contracts | 4,885,038 | 1,987,816 |
| Inventories | 2,234,249 | 1,896,426 |
| Prepaid expenses and other current assets | 266,967 | 526,014 |
| Restricted cash | - | 777,095 |
| Total current assets | 11,103,119 | 10,203,805 |
| Property and equipment, net | 4,438,204 | 4,426,323 |
| Goodwill | 10,340,099 | 10,340,099 |
| Other assets | 298,859 | 419,057 |
|  | 15,077,162 | 15,185,479 |

$ **26,180,281** $  25,389,284



|  | 2004 | 2003 |
|---|---|---|
| **LIABILITIES AND MEMBERS' EQUITY** | | |
| Current liabilities: | | |
| Revolving lines of credit | **$ 2,140,203** | $ 2,309,499 |
| Current portion of long-term debt | **1,385,806** | 193,667 |
| Current portion of capital lease obligations | **64,606** | 50,970 |
| Accounts payable | **3,927,902** | 4,458,471 |
| Billings in excess of costs and estimated | | |
| earnings on uncompleted contracts | **3,537,014** | 2,738,546 |
| Accrued expenses and other current liabilities | **3,849,863** | 2,693,584 |
| Customer deposits | **557,920** | 118,753 |
| Accrued advisory fees | **1,375,000** | 875,000 |
| Total current liabilities | **16,838,314** | 13,438,490 |
| | | |
| Long-term debt, net of current portion | **-** | 1,385,806 |
| Capital lease obligations, less current portion | **109,202** | 108,444 |
| Other long-term liabilities | **6,083,796** | 5,466,795 |
| Total liabilities | **23,031,312** | 20,399,535 |
| | | |
| Minority interest in subsidiaries | **186,284** | 180,575 |
| | | |
| Members' equity: | | |
| Class A units, $0.01 par value | | |
| Authorized - 1,000 shares | | |
| Issued and outstanding - 1,000 shares | **10** | 10 |
| Class B units, $0.01 par value | | |
| Authorized - 1,000 shares | | |
| Issued and outstanding - 1,000 shares | **10** | 10 |
| Additional paid-in capital | **13,139,058** | 13,139,058 |
| Accumulated deficit | **(4,378,143)** | (3,429,137) |
| Accumulated other comprehensive loss | **(5,798,250)** | (4,900,767) |
| Total members' equity | **2,962,685** | 4,809,174 |
| | | |
| | **$ 26,180,281** | $ 25,389,284 |



*The accompanying notes are an integral part of these consolidated financial statements.*

## *WOLVERINE PROCTOR LLC AND SUBSIDIARIES*

Consolidated Statements of Income (Loss) and Comprehensive Income (Loss)
Years Ended December 31, 2004 and 2003

|  | 2004 | 2003 |
|---|---|---|
| Sales | $ 37,600,954 | $ 37,314,699 |
| Cost of sales | (26,574,505) | (26,050,496) |
| Gross profit, excluding depreciation expense | 11,026,449 | 11,264,203 |
| Selling, general and administrative expenses | (11,107,809) | (11,263,400) |
| Interest and other income | 55,806 | 12,879 |
| Income (loss) before interest expense, taxes, depreciation and amortization | (25,554) | 13,682 |
| Other income (expenses): |  |  |
| Depreciation | (357,044) | (643,193) |
| Interest expense | (458,394) | (226,158) |
| Amortization of deferred financing costs | (174,304) | (168,134) |
| Minority interest in subsidiaries earnings | (5,709) | (47,901) |
| Gain on termination of post-retirement life and medical plan | - | 3,340,491 |
| Income (loss) before benefit for income taxes | (1,021,005) | 2,268,787 |
| Benefit for income taxes | 71,999 | 262,169 |
| Net income (loss) | (949,006) | 2,530,956 |
| Other comprehensive income (loss): |  |  |
| Minimum pension liability income (expense) | (1,036,970) | 402,630 |
| Foreign currency translation adjustments | 139,487 | 57,700 |
| Comprehensive income (loss) | $ (1,846,489) $ | 2,991,286 |



*The accompanying notes are an integral part of these consolidated financial statements.*

## *WOLVERINE PROCTOR LLC AND SUBSIDIARIES*
Notes to Consolidated Financial Statements
Years Ended December 31, 2004 and 2003

### 1.    THE COMPANY

Wolverine Proctor LLC (the Company), a limited liability company, was formed on December 28, 2001 for the purpose of holding the securities of Wolverine Proctor, Inc. (WPI), a Delaware corporation, and its Subsidiaries. The purpose of WPI is to hold the securities of all of the operating entities of the Company. These operating entities include Wolverine Proctor & Schwartz, Inc. (WP&S), Wolverine Proctor & Schwartz Limited (Limited) and Mawlaw 492 Ltd. (Mawlaw).

The Company designs and manufactures thermal processing and converting equipment used for a variety of industry applications. WP&S was formed from the 1994 acquisition of Proctor & Schwartz by Wolverine (Massachusetts) Corporation and their subsequent merger. The Company has manufacturing operations located in Merrimac, Massachusetts; Lexington, North Carolina; and Deeside, Wales. The Company also maintains sales offices in Horsham, Pennsylvania and Glasgow, Scotland.

### 2.    RECAPITALIZATIONS

Pursuant to a recapitalization plan (Recapitalization), on December 28, 2001, an investor group assigned a series of promissory notes (Notes) to the Company amounting to $14 million in exchange for 1,000 Class B member units. The Notes had been issued by WP&S to the investor group to fund the retirement of WP&S bank debt on December 28, 2001 and provide funds for working capital. On or about December 31, 2001, the previous sole shareholder contributed 100% of the outstanding shares of WP&S, Mawlaw and Limited in exchange for 1,000 Class A member units.

On February 11, 2005, the Company and the Class A and B shareholders entered into a series of transactions reorganizing and continuing the Company in which the Class A member acquired new equity interests and the Class B member received approximately $2,000,000 in cash from the Company and certain preferred interests in newly-formed US and UK entities. Also as part of the transactions, the newly-formed US and UK entities acquired the operating net assets of the Company, resulting in effective liquidation and dissolution of the Company. The outstanding debt of the Company was refinanced.

### 3.    SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

#### Principles of Consolidation

The accompanying consolidated financial statements include the accounts of the Company and its subsidiaries. All material intercompany accounts and transactions have been eliminated in consolidation.



# EXHIBIT D

# Wolverine Proctor & Schwartz Limited

## FINANCIAL STATEMENTS

for the year ended

31 December 2004



A33
COMPANIES HOUSE    7
19/01/2006

Company Registration No. 2423408

# Wolverine Proctor & Schwartz Limited
## PROFIT AND LOSS ACCOUNT
for the year ended 31 December 2004

| | Notes | 2004 £ | 2003 £ |
|---|---|---|---|
| TURNOVER | 1 | 7,994,065 | 8,118,632 |
| Cost of sales | | 6,096,878 | 5,792,061 |
| Gross profit | | 1,897,187 | 2,326,571 |
| Administrative expenses | | 2,030,395 | 2,155,939 |
| OPERATING (LOSS)/PROFIT | 2 | (133,208) | 170,632 |
| Interest payable and similar charges | 5 | 48,738 | 16,312 |
| (LOSS)/PROFIT ON ORDINARY ACTIVITIES BEFORE TAXATION | | (181,946) | 154,320 |
| Taxation | 6 | (51,755) | (164,000) |
| (LOSS)/RETAINED PROFIT FOR THE FINANCIAL YEAR | | (130,191) | 318,320 |

The operating loss/profit for the year arises from the company's continuing operations.

No separate Statement of Total Recognised Gains and Losses has been presented as all such gains and losses have been dealt with in the Profit and Loss Account.

# Wolverine Proctor & Schwartz Limited
## BALANCE SHEET
31 December 2004

|  | Notes | 2004 £ | 2003 £ |
|---|---|---|---|
| **FIXED ASSETS** |  |  |  |
| Tangible assets | 7 | 590,500 | 647,723 |
| **CURRENT ASSETS** |  |  |  |
| Stocks | 8 | 417,564 | 292,733 |
| Debtors | 9 | 2,706,565 | 2,233,839 |
| Cash at bank and in hand |  | 59,074 | 1,439,551 |
|  |  | 3,183,203 | 3,966,123 |
| **CREDITORS** |  |  |  |
| Amounts falling due within one year | 10 | 2,984,250 | 3,662,392 |
| NET CURRENT ASSETS |  | 198,953 | 303,731 |
| TOTAL ASSETS LESS CURRENT LIABILITIES |  | 789,453 | 951,454 |
| **CREDITORS** |  |  |  |
| Amounts falling due after more than one year | 11 | 31,279 | 63,089 |
|  |  | 758,174 | 888,365 |
| **CAPITAL AND RESERVES** |  |  |  |
| Called up equity share capital | 15 | 100 | 100 |
| Profit and loss account | 16 | 758,074 | 888,265 |
| SHAREHOLDERS' FUNDS | 17 | 758,174 | 888,365 |

These financial statements were approved by the directors on the 11th January 2006 and are signed on their behalf by:

*[signature]*

Director
I Gillies

# Wolverine Proctor & Schwartz Limited
## NOTES TO THE FINANCIAL STATEMENTS
for the year ended 31 December 2004

10    CREDITORS: Amounts falling due within one year

|  | 2004 £ | 2003 £ |
|---|---|---|
| Bank loans and overdrafts | 400,000 | 328,329 |
| Trade creditors | 1,185,424 | 1,230,515 |
| Amounts owed to group undertakings | 23,366 | – |
| Corporation tax | – | 50,442 |
| Other taxation and social security | 236,734 | 264,481 |
| Hire purchase agreements | 31,810 | 29,653 |
| Other creditors | 315,799 | 1,041,897 |
| Accruals and deferred income | 791,117 | 717,075 |
|  | 2,984,250 | 3,662,392 |

The bank overdraft is secured by a fixed and floating charge over the property and assets of the company.

11    CREDITORS: Amounts falling due after more than one year

|  | 2004 £ | 2003 £ |
|---|---|---|
| Hire purchase agreements | 31,279 | 63,089 |

12    COMMITMENTS UNDER HIRE PURCHASE AGREEMENTS

Future commitments under hire purchase agreements are as follows:

|  | 2004 £ | 2003 £ |
|---|---|---|
| Amounts payable within 1 year | 31,810 | 29,653 |
| Amounts payable between 1 and 2 years | 31,279 | 31,810 |
| Amounts payable between 3 and 5 years | – | 31,279 |
|  | 63,089 | 92,742 |

13    COMMITMENTS UNDER OPERATING LEASES

At 31 December 2004 the company had annual commitments under non-cancellable operating leases as set out below.

|  | Land and buildings | |
|---|---|---|
|  | 2004 £ | 2003 £ |
| Operating leases which expire: |  |  |
| Within 2 to 5 years | 4,855 | 4,855 |
| After more than 5 years | 152,598 | 152,598 |
|  | 157,453 | 157,453 |

*13*

# EXHIBIT E

Exhibit 1

## ASSET PURCHASE AGREEMENT

**dated as of April 20, 2006**

**between Tencara, LLC, a Delaware limited liability company or its nominee WPS Tencara LLC, a Delaware limited liability company**

**as Purchaser**

**and**

**Lynne F. Riley, as Chapter 7 Trustee for the Estate of**

**Wolverine, Proctor & Schwartz, LLC, a Delaware limited liability company**

**as Seller**

on the part of Purchaser and do not and will not violate any provisions of its organizational documents, any applicable Regulation or any Contract or Order binding upon it. This Agreement constitutes a valid and binding agreement of Purchaser, enforceable against Purchaser in accordance with its terms, subject to (i) applicable bankruptcy, insolvency, reorganization and moratorium laws, (ii) other laws of general application affecting the enforcement of creditors' rights generally and general principles of equity, (iii) the discretion of the court before which proceeding therefor may be brought, and (iv) as rights to indemnity may be limited by federal or state securities laws or by public policy.

5.03     Consents. No notice to, filing with, authorization of, exemption by, or consent of any authority is required in order for Purchaser to consummate the transactions contemplated hereby.

5.04     Brokers. Purchaser has incurred no liability to any broker, finder or agent with respect to the payment of any commission regarding the consummation of the transactions contemplated hereby. Purchaser agrees that if any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees, or commissions are ever asserted against Purchaser or Seller in connection with this transaction, all such claims shall be handled and paid by the party whose actions form the basis of such claim and such party shall indemnify (with counsel reasonably satisfactory to the party(ies) entitled to indemnification) and hold the other harmless from and against any and all such claims or demands asserted by any person, film or corporation in connection with the transaction contemplated hereby.

5.05     "AS IS" "WHERE IS" Purchase. Except for Seller's representations and warranties contained in Article 4 above, (i) Seller has not made, and Purchaser has not relied, and will not rely, on any representations or warranties whatsoever, express or implied, with respect to any matter relating to the Acquired Assets and (ii) Purchaser shall accept the Acquired Assets on an "AS IS" and "WHERE IS" basis.

5.06     Sufficient Funds. Purchaser has (or has the right to receive from Affiliates), and on the Closing Date will have, sufficient funds to pay the cash portion of the Purchase Price and satisfy its other obligations under this Agreement.

5.07     Representations Regarding Secured Debt and Transactions. The Indebtedness under the Secured Promissory Note as of the Petition Date was at least $1,900,000. Secured Party is the holder of the Secured Promissory Note and the Purchaser has (or has the right to receive from Secured Party at the Closing) the authority to release and discharge the Secured Debt at the Closing in the event it is the Successful Bidder. Except for the Secured Debt (and the agreements, documents and instruments giving rise thereto), neither the Purchaser nor the Secured Party has engaged in any transaction with the Debtor or with **Deepak S. Kulkarni** (**"KULKARNI"**) or with any of their Affiliates in the two year period preceding the Petition Date, except as follows: *(i) the Managing Member of Tencara, LLC, David Callan and Kulkarni are each investors holding more than a ten percent (10%) ownership interest in Longlite LLC, an entity that is not related or an Affiliate of the Debtor; (ii) Tencara is a lender to Wolverine Proctor & Schwartz, Ltd., a United Kingdom corporation("WPS, Ltd.") in the amount of $100,000 pursuant to a 10% Secured Subordinated Note which has been provided to the Trustee; (iii) Tencara holds a warrant that may be converted into a ten percent (10%)*

*equity interest in WPS, Ltd. plus a warrant that may be converted into 31 common units of the Debtor; and (iv) in November, 2004, in connection with CapitalSource Finance LLC's ("CapitalSource") secured pre-petition financing of the Debtor, Kulkarni personally paid $75,000 of the $150,000 commitment fee to CapitalSource, borrowing $37,500 of that $75,000 he paid to CapitalSource from David Callan, which debt remains outstanding.* Within ten business days after the execution of this Agreement, Purchaser will provide or cause to be provided to the Trustee all material documents relating to the Secured Promissory Note, including any documents evidencing advances and repayments under the Secured Promissory Note and all transactions between the Purchaser or the Secured Party, its Affiliates or principals and the Debtor **IN THE EVENT THAT PURCHASER IS THE SUCCESSFUL BIDDER, PURCHASER INTENDS TO NEGOTIATE AND POSSIBLY EMPLOY SOME OR ALL OF THE KEY EMPLOYEES OF THE COMPANY, INCLUDING, WITHOUT LIMITATION, KULKARNI. TERMS OF EMPLOYMENT OF SUCH KEY EMPLOYEES MAY INCLUDE SOME, ALL OR NONE OF THE COMMON STANDARD EMPLOYMENT INCENTIVES AND COMPENSATION PROVISIONS SUCH AS STOCK OPTIONS, INDEMNIFICATION AGREEMENTS FROM THE COMPANY AND EQUITY INVESTMENTS FROM ONE OR MORE OF THE KEY. AS OF THE DATE OF THIS AGREEMENT, PURCHASER HAS HAD NO NEGOTIATIONS WITH KEY EMPLOYEES REGARDING ANY OF THE FOREGOING. AS OF THE DATE OF THIS AGREEMENT NONE OF THE MEMBERS OR PARENTS OF THE SECURED PARTY OR THE PURCHASER ARE KEY EMPLOYEES OF THE COMPANY OR THE DEBTOR.**

The representations and warranties in this Section 5.07 shall survive (i) the Closing and (ii) any termination of this Agreement to the extent that such termination is, directly or indirectly, a result of a material breach or omission of any representation, warranty, covenant or obligation of Purchaser under this Agreement.

## ARTICLE 6

### COVENANTS OF SELLER

6.01    [intentionally deleted].

6.02    Access to Information and Facilities.  Seller agrees that, provided Purchaser has executed a Confidentiality Agreement, prior to the Closing Date, Purchaser shall, upon reasonable notice and so long as such access does not unreasonably interfere with the Company's business operations, through its authorized officers, employees, agents and representatives (including, without limitation, its counsel and accountants), have reasonable access during normal business hours to all corporate offices and other facilities of the Company and shall be entitled to make such reasonable investigation of the properties, businesses and operations of the Company relating to the Business and such examination of the books, records and financial

# EXHIBIT F

Form 6-Summary
(10/05)

# United States Bankruptcy Court

District Of___Massachusetts___

In re Wolverine, Proctor & Schwartz, LLC,___        Case No. _____

              Debtor

Chapter 7_____

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities."

AMOUNTS SCHEDULED

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | YES | 1 | $ 0.00 | | |
| B - Personal Property | YES | 3 | $ 3,100,889.00 | | |
| C -Property Claimed as Exempt | YES | 1 | | | |
| D -Creditors Holding Secured Claims | YES | 1 | | $ 1,900,000.00 | |
| E - Creditors Holding Unsecured Priority Claims | YES | 16 | | $ 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | YES | 58 | | $ 4,654,601.24 | |
| G - Executory Contracts and Unexpired Leases | YES | 1 | | | |
| H - Codebtors | YES | 1 | | | |
| I - Current Income of Individual Debtor(s) | NO | 0 | | | $ |
| J - Current Expenditures of Individual Debtors(s) | NO | 0 | | | $ |
| TOTAL | | | $ 3,100,889.00 | $ 6,554,601.24 | |

American LegalNet, Inc.
www.USCourtForms.com

Form B6B-cont.
(10/05)

In re Wolverine Proctor & Schwartz, LLC, _____        Case No. _____
           **Debtor**        **(If known)**

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND,WIFE,JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH- OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | | See attached schedule | | 0.00 |
| | | License Agreement dated April 10, 2003 with Arakawa Co., Ltd. | | 0.00 |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | | Technology Transfer and License-Back Agreement dated January 1, 2006 with Wolverine, Proctor & Schwartz, LLC | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41 A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | 0.00 |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | See attached schedule | | 8,000.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | See attached schedule | | 29.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | See attached schedule | | 700,000.00 |
| 30. Inventory. | | Raw Materials Locations: 51 East Main Street, Merrimac, MA and 121 Proctor Lane, Lexington, NC | | 158,000.00 |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

               54    continuation sheets attached    Total ▶    **$**           3,100,918.00
(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)

American LegalNet, Inc.
www.USCourtForms.com

Form B6G
(10/05)

In re  Wolverine Proctor & Schwartz, LLC                      Case No. _____
                    **Debtor**                                                    **(if known)**

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed.R. Bankr. P. 1007 (m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST. STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY. STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
| Liberty Property Limited Partnership<br>P.O. Box 828438<br>Philadelphia, PA 19182-8438 | Lease of Horsham, PA facility |
| AIC Ventures<br>8080 N. Central Expressway<br>Suite 1080<br>Dallas, TX 75206 | Lease of Merrimac, MA and Lexington, NC facilities |
| GE Capital<br>P.O. Box 642333<br>Pittsburgh, PA 15264-2333<br>Acct Schedule #4347321-001 | Lease - Canon copier system<br>Location:<br>251 Gilbratar Road<br>Horsham, PA 19044 |
| Ascom Hasler/GE Capital Prog.<br>P.O. Box 802585<br>Chicago, IL 60680-2585<br>Acct #4133862-001 | Ascom mailing machine<br>Location: Merrimac, MA |
| Purchase Power (Pitney Bowes)<br>P.O. Box 856390<br>Louisville, KY 40285-6390<br>Acct #909-4922-86-1 | Postage meter<br>Location: Horsham, PA |
| Systel Business Equipment<br>Ref. No. 000000000190017<br>P.O. Box 41601<br>Philadelphia, PA 19101-1601 | Ricoh 450<br>Location: Lexington, NC |
| Arakawa Co., Ltd.<br>7-5, 8 Ban-cho, Atsuta-Ku<br>Nagoya, Japan | License Agreement |
| Wolverine, Proctor & Schwartz, Ltd.<br>3 Langlands Avenue<br>Kelvin South Business Park<br>East Kilbride<br>Glasgow, United Kingdom G75 0YG | Technology Transfer and License-Bank Agreement |

American LegalNet, Inc.<br>www.USCourtForms.com

# EXHIBIT G



326949/30

# 363a

Please complete in typescript,
or in bold black capitals.

## Annual Return

CHFP010

**Company Number** | 2423408

**Company Name in full** | WOLVERINE PROCTOR & SCHWARTZ LIMITED

|

### Date of this return
The information in this return is made up to

Day Month Year
| 1 | 8 | 0 | 9 | 2 | 0 | 0 | 5 |

### Date of next return

If you wish to make your next return to a date earlier than the anniversary of this return please show the date here. Companies House will then send a form at the appropriate time.

Day Month Year

### Registered Office
Show here the address **at the date of this return.**

| 20 BLACK FRIARS LANE

|

*Any change of registered office **must** be notified on form 287.*

Post town | LONDON

County / Region |

UK Postcode | EC4V 6HD

### Principal business activities

*Show trade classification code number(s) for the principal activity or activities.*

| 2852     | 2811

|          |

*If the code number cannot be determined, give a brief description of principal activity.*

|

|



A09
COMPANIES HOUSE        0303
                      22/09/05

When you have completed and signed the form please send it to the Registrar of Companies at:
**Companies House, Crown Way, Cardiff, CF14 3UZ      DX 33050 Cardiff**
for companies registered in England and Wales
**or**
**Companies House, 37 Castle Terrace, Edinburgh, EH1 2EB**
for companies registered in Scotland                  **DX 235 Edinburgh**

Company No 2423408

## Register of members

If the register of members is not kept at the registered office, state here where it is kept.

Post town

County / Region                                    UK Postcode

## Register of Debenture holders

If there is a register of debenture holders, or a duplicate of any such register or part of it, which is not kept at the registered office, state where it is kept.

Post town

County / Region                                    UK Postcode

## Company type

| | |
|---|---|
| Public limited company | ☐ |
| Private company limited by shares | ☒ |
| Private company limited by guarantee without share capital | ☐ |
| Private company limited by shares exempt under section 30 | ☐ |
| Private company limited by guarantee exempt under section 30 | ☐ |
| Private unlimited company with share capital | ☐ |
| Private unlimited company without share capital | ☐ |

Please tick the appropriate box

## Company Secretary

**Details of a new company secretary must be notified on form 288a.**

*(Please photocopy this area to provide details of joint secretaries).*

* Voluntary details.

If a partnership give the names and addresses of the partners or the name of the partnership and office address.

*Usual residential address* must be given. In the case of a corporation, give the registered or principal office address.

**Name**

* Style / Title

Forename(s)

Surname        MAWLAW SECRETARIES LIMITED

**Address**        20 BLACK FRIARS LANE

Post town        LONDON

County / Region                            UK Postcode   EC4V 6HD

Country

BLUEPRINT

Page

Company No 2423408

## Directors
*Please list directors in alphabetical order.*

Details of new directors must be notified on form 288a

**Name**

* Style / Title | MR

*Directors* In the case of a director that is a corporate or a Scottish firm, the name is the corporate or firm name.

Date of birth | Day | Month | Year
| 0 | 4 | 1 | 0 | 1 | 9 | 4 | 2 |

Forename(s) | IAIN ARCHIBALD

Surname | GILLIES

**Address**

39 KINGSLYNN DRIVE

*Usual residential address* must be given. In the case of a corporation, give the registered or principal office address.

Post town | GLASGOW

County / Region | LANARKSHIRE          UK Postcode | G44 4JB

Country | SCOTLAND          Nationality | BRITISH

Business occupation | MANAGING DIRECTOR

* Voluntary details.

**Name**

* Style / Title | Mr

*Directors* In the case of a director that is a corporate or a Scottish firm, the name is the corporate or firm name.

Date of birth | Day | Month | Year
| 1 | 4 | 1 | 1 | 1 | 9 | 5 | 5 |

Forename(s) | DEEPAK SHIVRAO

Surname | KULKARNI

**Address**

124 COMMONWEALTH AVENUE

*Usual residential address* must be given. In the case of a corporation, give the registered or principal office address.

Post town | BOSTON

County / Region | MASSACHUSETTS          UK Postcode | MA 02116

Country | USA          Nationality | AMERICAN

Business occupation | EXECUTIVE

BLUEPRINT

Company No 2423408

## Issued share capital

Enter details of all the shares in issue
at the date of this return.

| | Class<br>(e.g. Ordinary/Preference) | Number of shares<br>issued | Aggregate Nominal<br>Value<br>(i.e. Number of shares issued<br>multiplied by nominal value per<br>share, or total amount of stock) |
|---|---|---|---|
| "A" Ordinary Shares | | 51 | £51.00 |
| "B" Ordinary Shares | | 49 | £49.00 |
| ORDINARY | | 0 | £0.00 |
| | | | |
| **Totals** | | 100 | 100.00 |

## List of past and present shareholders

*(use attached schedule where appropriate)*

A full list is required if one was not
included with either of the last two
returns.

There were no changes in the period

A list of changes is enclosed

A full list of shareholders is enclosed

on paper          in another format

X

## Certificate

I certify that the information given in this return is true to the best of my
knowledge and belief.
For and on behalf of

**Signed**

MAWLAW SECRETARIES LTD

**Date**  20.9.200

† *Please delete as appropriate.*

† a director / secretary

When you have signed the return send it
with the fee to the Registrar of
Companies.
Cheques should be made payable to
**Companies House.**

This return includes     2     continuation sheets.
*(enter number)*

Please give the name, address, telephone
number and, if available, a DX number
and Exchange of the person Companies
House should contact if there is any query.

REF: 20356/20852, MAYER, BROWN, ROWE & MAW LLP,

11 PILGRIM STREET, LONDON, EC4V 6RW

Tel

BLUEPRINT

DX number | LDE 93        DX exchange | CHANCERY LANE

Page 4

# BLUEPRINT
## OneWorld

## List of past and present shareholders
## Schedule to form 363a

CHFP010

**Company Number** | 2423408

**Company Name in full** | WOLVERINE PROCTOR & SCHWARTZ LIMITED

➤ Changes to shareholders particulars or details of the amount of stock or shares transferred must be completed each year

➤ You must provide a "full list" of all the company shareholders on:
- The company's first annual return following the incorporation;
- Every third annual return after a full list has been provided

➤ List the company shareholders in alphabetical order or provide an index

➤ List joint shareholders consecutively

| Shareholders' details | Class and number of shares or amount of stock held | Shares or amount of stock transferred *(if appropriate)* | |
|---|---|---|---|
| | | Class and number of shares or amount of stock transferred | Date of registration of transfer |
| **Name** MAWLAW 492 LIMITED **Address** 20 BLACK FRIARS LANE, LONDON **UK postcode** EC4V 6HD | £1.00 "A" Ordinary Shares Shares Held 51 | | |
| **Name** **Address** **UK postcode** | | | |
| **Name** **Address** **UK postcode** | | | |

Continuation Page 1

# BLUEPRINT
## OneWorld

# List of past and present shareholders
# Schedule to form 363a

CHFP010    **Company Number**   | 2423408

     **Company Name in full**   | WOLVERINE PROCTOR & SCHWARTZ LIMITED

➤ Changes to shareholders particulars or details of the amount of stock or shares transferred must be completed each year

➤ You must provide a "full list" of all the company shareholders on:
   - The company's first annual return following the incorporation;
   - Every third annual return after a full list has been provided

➤ List the company shareholders in alphabetical order or provide an index

➤ List joint shareholders consecutively

| Shareholders' details | Class and number of shares or amount of stock held | Shares or amount of stock transferred *(if appropriate)* | |
|---|---|---|---|
| | | Class and number of shares or amount of stock transferred | Date of registration of transfer |
| **Name**<br>PHOENIX UK, LLC | £1.00 "B" Ordinary Shares | | |
| **Address**<br>c/o REMEDIAL CAPITAL LLC, 111 HUNTINGTON AVENUE, 27TH FLOOR, BOSTON, MA, USA | | | |
| | Shares Held<br>49 | | |
| UK postcode | 02199 | | | |
| **Name**<br>WOLVERINE PROCTOR & SCHWARTZ, INC. | £1.00 "B" Ordinary Shares | 49 | 18/04/2005 |
| **Address**<br>51 EAST MAIN STREET, MERRIMAC, MA 01860-2099, USA | | | |
| | Shares Held<br>0 | | |
| UK postcode | | | | |
| **Name** | | | |
| **Address** | | | |
| UK postcode | | | | |

Continuation Page 2